E.W BURTON #F02720 IN PROPER
P.O. BOX 5246 CSATF/SP-C1-182C CORCORAN, CA. 93212

Case 3:08-cv-00325-LAB-POR   Document 1-4   Filed 02/19/2008   Page 1 of 101

## TABLE OF CONTENTS

ATTACHMENT IN SUPPORT OF — 1
GROUNDS 3, PAGES 1-100. — 2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

ATTACHMENT IN SUPPORT OF GROUNDS 3.

1  GROUND 3 - VIOLATIONS OF U.S. CONST 5TH, AND 14TH AMENDMENTS DUE PROCESS AND

2  EQUAL PROTECTION CLAUSES FOR PROSECUTIONS FAILURE TO DISCLOSE MATERIAL

3  EXCULPATORY EVIDENCE TO DEFENSE, AND SUPPRESSION, LOSS AND DESTRUCTION OF
                                    CONTENTIONS-

4  FAVORABLE EVIDENCE, AND DEPORTATION OF MATERIAL WITNESSES TO FACTS FAVORABLE

5  TO DEFENSE.  STATEMENT OF FACTS.  SEE EXHIBIT B, PAGE 1, R.T. EXCERPT 177, LINES

6  1-7, 11-16: THE COURT: ALL RIGHT, ANY RESPONSE BY THE PEOPLE? MS. HANNAH: — —

7  CIRCUMSTANCES AND THE RESULT OF THE INCIDENT THAT OCCURED ON MARCH 19TH

8  (04) OF LAST YEAR. WHETHER THE ISSUE -- THE WHOLE QUESTION OF THE TRIAL IS

9  WHETHER MR. BURTON IS THE PERSON THAT COMMITTED THE (ALLEGED) CRIME,

10  NOT WHETHER OR NOT MR. THOMAS IS, IN FACT, A VICTIM OF A (ALLEGED) CRIME,

11  MS. HANNAH: I THINK THE QUESTION IS WHETHER OR NOT MR. BURTON IS THE PERSON

12  THAT COMMITTED THE (ALLEGED) CRIME, BUT THE PEOPLE CAN CERTAINLY REFER TO MR. THOMAS

13  AS MR. THOMAS, THE COURT: ALL RIGHT. SEE EXHIBIT B, PAGE 2, R.T. EXCERPT 719, LINES

14  1-7, 21-23 THE COURT: ALL RIGHT, LET'S GO BACK IN THE HALLWAY FOR A MOMENT. (THE

15  COURT, BOTH COUNSEL, AND THE COURT REPORTER EXIT THE COURTROOM.) THE FOLLOWING

16  PROCEEDINGS WERE HEARD AT SIDE BAR ) MR. ADAIR: I HAVE CONCERNS UNDER 352,

17  MR. TROCHA: — — WE HAVE EVIDENCE THAT THE DEFENSE HAS BROUGHT OUT, AND IS

18  GOING TO BRING OUT FURTHER IN THEIR CASE IN CHIEF, THAT MR. THOMAS IS, IN

19  FACT, THE A GGRESSOR. NOW SEE EXHIBIT "B", PAGE 3, R.T. EXCERPT 720, LINES 26 AND 27.

20  THE COURT: SO IF THE DEFENDANT WERE TO TESTIFY HE DIDN'T SHOOT ANYONE, NOW SEE

21  EXHIBIT "B" PAGE 57, R.T. EXCERPT 1071, LINES 1-1021; EL CAJON, CALIFORNIA; WEDNESDAY 7/27/05;

22  1:34 P.M. ( THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT OUT OF THE PRESENCE

23  OF THE JURY) THE COURT: LET'S GO ON THE RECORD. COUNSEL AND DEFENDANT ARE PRESENT.

24  "THE JURY IS NOT," MR. TROCHA: RIGHT. THE COURT: ALL RIGHT. SO WE'LL DO THAT AFTER

25  THEY REST. ON THE JUDICIAL NOTICE, I REVIEWED THE FILE, WOULD IT BE SIMPLY

26  ADEQUATE TO NOTE UNDER THE CASE NUMBER THAT ON SUCH AND SUCH A DATE

27  AN ORDER FOR INJUNCTION PROHIBITING HARASSMENT WAS ISSUED BY THE COURT

28  AGAINST MR. THOMAS PROTECTING MR. BURTON? MR. ADAIR: CORRECT. THE COURT: THAT'S ALL

MICHAEL BURTON #FB7287 PRO PER
P.O. BOX 5246 - CSATF/SP C1-132L
CORCORAN, CA. 93212

1  YOU NEED? MR. ADAIR: THAT WOULD BE FINE, YOUR HONOR. THE COURT: ALL RIGHT, I'LL

2  DO THAT. NOW SEE EXHIBIT "B", PAGE 23, R.T. EXCERPT 389, LINES 4-10, 12, 15-18, 20-23, AND 27

3  MR. ADAIR: WELL, WE'VE REQUESTED PHOTOGRAPHS -- I THINK IT STARTED WITH -- WITH

4  THE PRIOR ATTORNEY ON THE CASE APPROXIMATELY A YEAR AGO REQUESTING

5  PHOTOGRAPHS, AND THEY -- I'VE RENEWED -- THAT WAS IN THE FORM OF, I THINK,

6  A LETTER AND AN ACTUAL FILED MOTION THAT WAS NEVER HEARD. [A DISCOVERY MOTION]

7  THAT WAS LAST YEAR, I FOLLOWED UP WITH A LETTER. -- I FOLLOWED UP WITH

8  A LETTER REQUESTING PHOTOGRAPHS, AND -- SO I'M JUST SAYING WE JUST DIDN'T

9  HAVE THE PHOTOGRAPHS, AND THE PHOTOGRAPH SHOWS EXACTLY WHERE THE CAR WAS.

10  -- SUPPRESSION MOTION --- CONCERNING THE SUPPRESSION MOTION. THE COURT: MR.

11  TROCHA, (PROSECUTION'S REBUTTAL ON RECORD) DO YOU HAVE ANYTHING TO SAY IN RESPONSE?

12  MR. TROCHA: [I DON'T KNOW THE HISTORY OF THE PHOTOGRAPHS OR ANYTHING.] THE

13  COURT: OKAY. NOW SEE EXHIBIT "B" PAGE 24, R.T. EXCERPT 0023 (MR. PLUMMER'S INFORMAL REQUEST

14  FOR DISCOVERY) NOW SEE EXHIBIT "B" PAGES 5,6,7,8,9,10,11,12,13,14,15,16, R.T. EXCERPTS 0011, 0012,

15  0013, 0014, 0015, 0016, 0017, 0018, 0019, 0020, 0021, 0022, LINES 1-28 ON ALL EXCERPT PAGES LISTED.

16  (MR. PLUMMER'S DEFENSE MOTION FOR DISCOVERY FILED JULY 30, 2004, SERVED ON PROSECUTION) SEE NOW EXHIBIT "B"

17  PAGES 27, AND 28, LINES 1-28 ON BOTH PAGES. (ORDER DENYING MOTION FOR DISCOVERY PURSUANT TO

18  PENAL CODE §1054.9) (PETITIONER'S UNSUCCESSFUL POST TRIAL MOTION FOR DISCOVERY), SEE EXHIBIT "B"

19  PAGE 55, R.T. EXCERPT 1069, LINES 2-6, 15, 16, 19, 25, 26-28. THE COURT WELL, I'M NOT

20  EVEN SURE HOW WE WOULD KNOW THAT IT'S HIS BACKPACK. (MEANING THE DEFENDANT)

21  WE DON'T HAVE TESTIMONY AS TO WHOSE IT IS OR ANYTHING, SO I THINK IT WOULD BE

22  DIFFICULT - STATEMENT OF CASE. AN ALLEGED BACKPACK WAS RECOVERED ALLEGEDLY

23  FROM THE TOP OF DEFENDANTS VEHICLE PARKED ON THE CURTILAGE OF HIS HOME. FALSE EVIDENCE

24  OF A NOTEBOOK WITH STATEMENTS ALLEGEDLY WRITTEN BY PETITIONER, DEFAMING HIS

25  CHARACTER, AND PREJUDICIALLY USED AS EVIDENCE IN PUBLIC RECORD AGAINST DEFENDANT.

26  SEE EXHIBIT "D" PAGE 80, R.T. EXCERPT 55, LINES 11-28, EXHIBIT "D" PAGE 81, R.T. EXCERPT 56, LINE 1-14.

27  (TESTIMONY OF AGENT KIRK AT 1538.5 SUPPRESSION HEARING.) Q. WAS THERE ALSO A BACKPACK

28  THERE AT THE SCENE? (DEFENDANTS RESIDENCE AT 425, E. MAIN ST, E.C., CA. 92020 19 MARCH 04 UPON HIS ARREST).

2

MR. ERW. BURTON #E93-238    IN PRO PER
P.O. BOX 5246-C SATF/SP    Correction
COR CORAN, CA. 93212

REQUEST FOR THE STAY IS DENIED, THE MOTION WAS RULED UPON FEBRUARY
24TH -- ALSO MR. BURTON WILL NOT BE DEPRIVED OF HIS APPELLATE RIGHTS,
SHOULD THE CASE PROCEED ADVERSELY TO HIM AND HE WISHES TO APPEAL ON THOSE
ISSUES, HE WILL CERTAINLY BE ABLE. [STATEMENT OF FACTS] SEE EXHIBIT D, PAGE 19, RT 164, LINES 19-22,
24-28, SEE ALSO EXHIBIT D, PAGE 20, RT EXCERPT 165, LINES 4-9, 13-19, SEE ALSO
EXHIBIT "D" PAGE 21, RT EXCERPT 166, LINES 8-10. THE COURT: OKAY; ALL RIGHT.
THEN I THINK THAT COVERS THE PEOPLE'S MOTIONS FOR THE MOMENT, AND LET'S
TURN TO THE DEFENSE MOTIONS. AND LOOKING FIRST AT THE MOTION TO SUPPRESS
DEFENDANT'S (ALLEGED ADMISSIONS OR - THE AUDIO INTERVIEW, AND AS I
UNDERSTAND IT, AT THIS POINT, THE PEOPLE ARE NOT PLANNING TO PRESENT
THOSE (ALLEGED) STATEMENTS IN THEIR CASE -IN- CHIEF; IS THAT CORRECT?
MS. HANNAH: IT IS. THE COURT. ALL RIGHT. THE COURT: ALL RIGHT IN LIGHT
OF THAT, I DON'T THINK I NEED TO RULE ON THE MOTION; DO YOU AGREE? MR. ADAIR:
I BELIEVE THAT'S CORRECT, YOUR HONOR. THE COURT: ALL RIGHT. DO YOU ANTICIPATE
ANY MOTION OR -- I DON'T SEE ANYTHING IN HERE THAT WOULD GO TO BARRING
PEOPLE'S -- SUCH AS VOLUNTARINESS, WHICH I -- MR. ADAIR: I BELIEVE MY
CLIENT WOULD BRING A FURTHER ISSUE CONCERNING VOLUNTARINESS -- HIS
POSITION IS THAT HE WAS, IN ESSENCE, TORTURED. THAT HE WAS PUT IN A
PAPER SUIT, THAT HE WAS BAREFOOT, THAT HE WAS REFUSED THE RIGHT
TO CALL AN ATTORNEY, AND THAT THERE WERE OTHER INFLICTIONS
OF DISCOMFORT AND DISTRESS -- THE COURT: ALL RIGHT, THE COURT:
"VOLUNTARY" HAS A LAY MEANING THAT MIGHT BE VIEWED A LITTLE
DIFFERENTLY BY MR. BURTON BECAUSE OBVIOUSLY HE WAS IN CUSTODY
AND PROBABLY DIDN'T FEEL HE WAS FREE TO LEAVE, SEE NOW EXHIBIT "A", PAGE 111
RT EXCERPT 14, LINES 14-18, 21-26. THE COURT: MR. BURTON, IS THERE ANYTHING FURTHER
YOU WISH TO SAY? THE DEFENDANT: YES, SIR YOUR HONOR, --THAT THERE ALSO
WAS INFRINGEMENT UPON MY 14TH AMENDMENT RIGHTS TO DUE PROCESS, AND
ALSO MY DAUGHTER WHO -- ORDERS, AND SHE DID NOT RECEIVE EQUAL  -

13

1 PROTECTION UNDER THE LAW, AND I FEEL I DIDN'T EITHER BECAUSE WHEN IT

2 CAME UP CONCERNING THE RESTRAINING ORDER -- ONCE RESTRAINING ORDERS--

3 FROM THE INFORMATION I GATHERED, WHETHER THEY HAVE BEEN SERVED

4 OR NOT, THEY'RE SUPPOSED TO BE MAINTAINED BY LAW ENFORCEMENT OFFICERS,

5 SEE EXHIBIT "A", PAGE 97, LINES 6-7, 17-19. THE COURT; --AND YOU'VE BEEN THROWING

6 AROUND THE MAJORITY OF THE AMENDMENTS IN THE BILL OF RIGHTS AND

7 A FEW OTHERS TO BOOT-- IT'S THE ATTORNEY'S JOB TO REPRESENT YOU

8 AND TO ADVOCATE AND NOT 8008 YOUR POSITION AND PROTECT YOUR RIGHTS

9 AND INTERESTS, SEE EXHIBIT "A" PAGE 81, AT EK CEAPT 79?, LINES 1-8. THE COURT;

10 ALL RIGHT, SO YOU HAVE YOUR FRAME WORK AS TO WHAT YOU CAN DO, MR. ADAIR;

11 YES YOUR HONOR. THE COURT; I THINK-- MR. ADAIR; "IT'S FUN BEING A

12 PROSECUTOR." THE COURT; "["IT DOES PUT YOU IN A DIFFERENT ROLE,"

13 DOESN'T IT?"] ALL RIGHT, SEE EXIBIT "D", PAGE 32, A.T. EK CERAT 5, LINES, 14-

14 23, SEE ALSO EXHIBIT "D" PAGE 33, AT EK CERAT 6, 3-22, SEE ALSO EXHIBIT "D" PAGE 34,

15 LINES, 3-10, 17-21, SEE ALSO EXHIBIT "D" PAGE 35, AT EXCEPT 8, LINE 9 [THE DEFENDANT] LINES 1, 22, 23 B

16 --I HAVE NOT AS OF YET (11-05-04) AT THIS POINT, AFTER REQUESTING SEVERAL TIMES

17 (FROM MR. PLUMMER) TO HAVE RECEIPT OF THE PROPERTY THAT WAS SEIZED

18 FROM ME, MY LIFE, MY PROPERTY HAVE BEEN SEIZED FROM ME UNLAWFULLY, IT

19 WAS NOT MENTIONED IN THE FIRST MOTION THAT WAS SUBMITTED THAT PRIOR

20 TO INTERROGATION THERE WAS ALSO AN ADDITIONAL 4TH AMENDMENT

21 VIOLATION WHEREAS EVIDENCE WAS TAKEN FROM MY BODY, BELT, PANTS,

22 SHIRT, SOCKS, SHOES, AND GLASSES WERE REMOVED FROM MY BODY-- TAKEN

23 AND PLACED WITH OTHER PROPERTY SEIZED, -- THAT VIOLATION OF THE 4TH

24 AMENDMENT SHOULD HAVE BEEN MENTIONED IN THE MOTION BECAUSE IT

25 WAS DONE WITHOUT WARRANT, AND ALSO THERE WAS. A VIOLATION OF

26 PENAL CODE 147 AS I BELIEVE PRIOR TO INTERROGATION, I WAS

27 STRIPPED NAKED, PUT INTO A WHITE PAPER SUIT, BARE FOOT AND FREEZING

28 AND PLACED IN THE ISOLATION CELL FOR APPROXIMATELY ONE HOUR,

14

1  PRIOR TO INTERROGATION. THE COURT: YOU WERE UNDER ARREST DURING

2  ALL OF THAT? THE DEFENDANT: I WAS PLACED IMMEDIATELY UNDER

3  ARREST, YOUR HONOR, FROM THE POINT OF CONTACT WITH THE POLICE,

4  THE COURT: GO AHEAD. THE DEFENDANT: THERE WAS STATEMENTS

5  ENTERED ALSO IN THAT FIRST MOTION THAT WERE FALSE STATEMENTS

6  THAT I SPECIFICALLY TOLD MY ATTORNEY, MR. PLUMMER, THAT I DID NOT

7  MAKE, AFTER THE POLICE MADE DIRECT INCRIMINATING STATEMENTS,

8  "WHERE IS--" OR QUESTION AND DIRECT INCRIMINATING QUESTION,-- I

9  STUCK TO MY RIGHT TO REMAIN SILENT, I SAID NOTHING.-- BEFORE

10  INTERROGATION I INVOKED MY 6TH AMENDMENT RIGHT TO COUNSEL

11  IMMEDIATELY FOLLOWED BY MY 5TH AMENDMENT RIGHT TO REMAIN

12  SILENT, MR. PLUMMER DID NOT MENTION THAT IN THE MOTION, HE

13  OMITTED THAT-- AFTER I INVOKE MY 5TH AMENDMENT RIGHT THE

14  OFFICER INITIATED THE CONVERSATION. I DID NOT, I THEN AGAIN WAS

15  QUESTIONED. -- A ROLE IN DENYING MY 1ST AMENDMENT RIGHT TO FREEDOM

16  OF SPEECH AND EXPRESSION IN VIOLATION OF PENAL CODE 851(b) ~ I WAS

17  DETAINED PAST THREE HOURS, UPON MY IMMEDIATE REQUEST TO SPEAK

18  TO MY ATTORNEY, I SHOULD HAVE BEEN ALLOWED TO CALL MY ATTORNEY,

19  -- LIKE A SLAVE, SHACKLED AND BAREFOOT. PHOTOGRAPHS WERE TAKEN.

20  --SINCE I AM BASICALLY A LAYMAN IN THIS FIELD. SEE NOW EXHIBIT "A"

21  PAGE 2, R.T. EXCERPT 10, LINES 16-22, 27, 28, SEE EXHIBIT "A", PAGE 3, R.T. EXCERPT 11, LINES

22  1-17, 20-24, 27, 28, THE DEFENDANT. -- FACT IS THAT AFTER NUMEROUS TIMES AFTER

23  I INDEPENDENTLY DID MY OWN RESEARCH AND HAD LEARNED-- AFTER I IMPLEMENTED

24  MY 6TH AND MY 5TH AMENDMENT RIGHTS, THAT ONCE THE OFFICER INITIATED

25  CONVERSATION, THE INTERROGATION WAS SUPPOSED TO STOP; -- I LATER FOUND OUT

26  THAT A MOTION COULD HAVE BEEN MADE DURING THE PRELIMINARY HEARING TO SET

27  FORTH THE LITIGATION OF THE VALIDITY OF THESE SEIZURES. SO COUNSEL, IN A

28  SENSE -- I DON'T WANT TO BE HARSH AND SAY HE LIED TO ME, BUT HE DECEIVED ME

 5

1 AND HE CAME TO VISIT ME AND WE HAD A CONVERSATION AND I ASKED

2 HIM AGAIN, "IS THERE ANYTHING I CAN DO PRIOR TO TRIAL TO SUPPRESS THIS

3 EVIDENCE THAT WAS UNLAWFULLY OBTAINED, INCLUDING MY ARREST," BECAUSE

4 IN THE BEGINNING, AS I SAID, THERE WAS A MIRANDA VIOLATION. I SHOULD

5 HAVE BEEN MIRANDIZED WHEN THE OFFICER BEGAN ASKING ME THAT

6 DIRECT INCRIMINATING QUESTION, -- ALSO, HE ENTERED MY APARTMENT

7 UNLAWFULLY IN VIOLATION OF 4TH AMENDMENT -- ATTORNEY HAD

8 TOLD ME NUMEROUS TIMES THAT THERE'S NOTHING YOU CAN DO UNTIL TRIAL,

9 OKAY. SO I'M VERY UPSET AT THE FACT THAT I'VE WORKED INDEPEND-

10 -- WORKED INDEPENDENT OF HIM BECAUSE ALSO HE IS NOT GATHERED,

11 IN SEVEN MONTHS, ANY EXCULPATORY EVIDENCE. I DO NOT HAVE HARD DISCOVERY,

12 -- I HAVE INEFFECTIVE COUNSEL, AND THE CONSTITUTION OF THE UNITED STATES

13 OF THE 6TH AMENDMENT GUARANTEES ME THE RIGHT TO HAVE EFFECTIVE

14 COUNSEL, AND BEING CHARGED WITH A FELONY AND SO SAID THAT I AM, --

15 EVERY LEVEL OF THESE PROCEEDINGS AND TRIAL, -- COUNSEL AS GUARANTEED

16 BY MY RIGHTS AS THE ACCUSED BY THE CONSTITUTION OF THE UNITED

17 STATES. SEE EXHIBIT D," PAGE 12, RT EXCERPT 326, LINES 7 & 25, SEE ALSO EXHIBIT A)

18 PAGE 13, RT EXCERPT 327, LINES 2-6, 9-15, 17-23, 25, SEE ALSO EXHIBIT "D" PAGE 14, RT. EXCERPT,

19 328, LINES 1-4, 6-11. SEE NOW EXHIBIT B," PAGE 23, RT. EXCERPT 329, LINES 1-10, 18, 20-23

20 AND 27. SEE NOW EXHIBIT D, PAGE 22, RT EXCERPT 330, LINES 6-9, 12-13, MR. TROCHAI - TOOK

21 PICTURES OF THE CAR AS IT WAS AT THE SCENE AT HIS HOUSE; TOWED THE CAR BACK

22 TO THE EL CAJON POLICE DEPARTMENT, AND TOOK PICTURES THERE; MR. ADAIR: PERHAPS

23 TO SUPPLEMENT THE RECORD, AT THE TIME OF THE SUPPRESSION MOTION, WE DID

24 NOT HAVE PHOTOGRAPHS, -- THERE IS A PHOTOGRAPH OF MR. BURTON'S CAR AS IT'S

25 PARKED DIRECTLY IN FRONT OF HIS UNIT, IT'S OUR POSITION THAT THE CAR WAS

26 PART OF THE CURTILAGE OF MR. BURTON'S RESIDENCE AND COULD NOT BE

27 SEARCHED WITHOUT A SEARCH WARRANT. THE COURT; AND WHERE WAS IT

28 PARKED EXACTLY? MR. ADAIR : IT WAS PARKED APPARENTLY DIRECTLY IN FRONT


6

1. OF HIS UNIT. I THINK THAT'S WHAT THE PHOTOGRAPH WOULD SHOW. --

2. THE COURT: IF YOU WANT TO SUBMIT THE PHOTOGRAPHS FOR THE RECORD, YOU

3. MAY DO THAT. (MR. ADAIR REVIEWS THE PHOTOGRAPHS. MR. ADAIR: YES, YOUR HONOR.

4. THANK YOU. THE COURT: ALL RIGHT. -- PHOTO OF DEFENDANT'S VEHICLE, WAS

5. MARKED FOR IDENTIFICATION.) THE COURT: DID YOU SHOW IT TO MR. TROCHA?

6. MR. TROCHA: I'VE SEEN THE PICTURE, YOUR HONOR. THE COURT: ALL RIGHT. IF

7. YOU WANT TO EXPLAIN FOR THE RECORD, WHAT IT DEPICTS AND WHAT WOULD

8. BE -- MR. ADAIR: I THINK WE CAN STIPULATE FACTS. -- MR. TROCHA: IT'S

9. ESSENTIALLY DEFENDANT'S CAR PARKED IN HIS PARKING SPACE, IT'S PROPERTY OF

10. THE APARTMENT COMPLEX HE LIVES IN. MR. ADAIR: DIRECTLY ON THE

11. OTHER SIDE OF THE CAR -- IS MR. BURTON'S APARTMENT UNIT, WHICH WOULD

12. BE SEEN OVER THE HOOD -- OVER THE TOP OF THE CAR, AND THE -- CORRESPONDS,

13. I BELIEVE, TO HIS UNIT. BELIEVE THE MANAGER HAD TESTIFIED AT THE HEARING

14. (1538.5) THAT HE WAS STANDING THERE IN FRONT OF HIS UNIT WITHIN

15. A COUPLE OF FEET OF THE DOOR, WHEN THE -- WITH MR. BURTON AT THE

16. TIME THE POLICE ARRIVED. -- FRONT OF THE MANAGER'S UNIT. THE CAR

17. WAS PARKED IN MR. BURTON'S SPACE, -- IN FRONT OF MR. BURTON'S

18. APARTMENT, AND IT'S OUR CONTENTION THAT MR. BURTON WAS NOT IN

19. CONTACT WITH THE CAR. THE CAR IS PARKED IN THE CURTILAGE

20. OF MR. BURTON'S APARTMENT AND NEEDED A SEARCH WARRANT TO

21. BE SEARCHED. THE COURT: PROCEDURALLY I COULD EVEN CONSIDER THE

22. MOTION. AND THEN WE NEED TO GET OVER THAT HURDLE BEFORE WE GO TO THE

23. NEXT. MR. ADAIR: WELL, WE'VE REQUESTED PHOTOGRAPHS -- I THINK IT STARTED WITH

24. WITH THE PRIOR ATTORNEY ON THE CASE APPROXIMATELY A YEAR AGO REQUESTING

25. PHOTOGRAPHS, AND THEY -- THAT WAS IN A FORM OF, I THINK A LETTER AND AN

26. ACTUAL FIELD MOTION THAT WAS NEVER HEARD, A DISCOVERY MOTION

27. THAT WAS LAST YEAR. I FOLLOWED UP WITH A LETTER. -- SUPPRESSION MOTION -- CONCERNING

28. THE SUPPRESSION MOTION. THE COURT: MR. TROCHA, DO YOU HAVE ANYTHING IN RESPONSE?

 7

MR. TROCHA: "I DON'T KNOW THE HISTORY OF THE PHOTOGRAPHS OR ANYTHING".

2 THE COURT: OKAY. THE COURT: (SEE EXHIBIT "D" PAGE 22, RT EXCERPT 330, LINES 6-9, 12, 13)

3 SO I DON'T BELIEVE THAT I DO HAVE JURISDICTION TO ENTERTAIN THE MOTION

4 AND EVEN IF I DID, THE THEORIS PREVIOUSLY EXPLAINED BY THE PEOPLE AND

5 THE VEHICLE EXCEPTION AND -- APPEAR TO APPLY. SO FOR ALL THOSE REASONS THE

6 MOTION IS DENIED, SEE NOW EXHIBIT "D", PAGE 23, RT EXCERPT 331, LINES

7 14-16, 34, 17-19, 22, 23. MR. ADAIR: WE'D ASK THE CASE BE DISMISSED FOR

8 THE DESTRUCTION OF EVIDENCE THAT MIGHT TEND TO SHOW MR. BURTON'S

9 INNOCENCE. MR. TROCHA (LINES 3 AND 4) THEY WERE INADVERTENTLY DESTROYED

10 BY THE POLICE DEPARTMENT. THE COURT: WELL THAT MOTION WILL BE DENIED.

11 AND I THINK THAT THAT MOTION HAS BEEN RAISED BEFORE IF MY MEMORY'S CORRECT.

12 LET ME LOOK BACK. WELL, I DON'T. -- IT WAS INADVERTENTLY DESTROYED AND THE

13 MOTION IS DENIED. SEE EXHIBIT "D", PAGE 37, RT EXCERPT 0068, LINE 27, AND

14 ALSO SEE EXHIBIT "D", PAGE 38, RT EXCERPT 0069, LINES 1, 2, 4, 5, 18, 22-26 -'10

15 STATES '" MORE SPECIFICALLY, (1538.5) THIS MOTION IS BASED ON VIOLATION OF

16 DEFENDANTS REASONABLE EXPECTATION OF PRIVACY, AS GUARANTEED BY THE

17 FOURTH, FIFTH, AND FOURTEETH AMENDMENTS TO THE UNITED STATES CONSTITUTION,

18 AND ON THE FOLLOWING GROUNDS: -- THE POLICE ACTION WAS WITHOUT A WARRANT,

19 AND LACKED SUFFICIENT CAUSE TO JUSTIFY THE INVASION OF LIBERTY COMPLAINED

20 OF', -- THE ARREST OUTSIDE DEFENDANTS PLACE OF RESIDENCE WITHOUT A

21 WARRANT -- THIS MOTION WILL BE BASED ON THE FOLLOWING EVIDENCE: --

22 MEMORANDUM AND POINTS OF AUTHORITY, (DATED 10-19-04 (SIGNED BY, MR. PLUMMER

23 SEE EXHIBIT "D" PAGE 1, RT EXERPT 0132, LINES 1-28, SEE ALSO EXHIBIT "D"

24 PAGE 2, RT EXCERPT 0133, LINES 1-28. SEE EXHIBIT "D" PAGE 9, RT EXCERPT

25 323, LINES 5, 10, 13, 18, 19, 22, 23, 24, 26, 27, 28. SEE ALSO EXHIBIT "D", PAGE

26 10, RT EXCERPT 324, LINES 1-5, 10. MR. ADAIR: I GUESS A FURTHER

27 TROMBETTA MOTION -- (MEANING DEFENDANT) -- HE WAS DOING OTHER THINGS,

28 THE COURT: ALL RIGHT ANY RESPONSE TO THAT? MR. TROCHA: I MEAN --

1   CELL PHONE, I DON'T KNOW. BUT I REVIEWED THE EVIDENCE.

2   MR. ADAIR: IS THIS THE CELL PHONE THAT BELONGED TO MR.

3   BURTON? MR. TROCHA: I DON'T KNOW WHO IT BELONGED TO.

4   THE COURT: OKAY. — AND I DON'T HAVE SUFFICIENT EVIDENCE

5   AT THIS POINT — PARTICULARLY UNDER A TROM BETTA MOTION — SO

6   THAT MOTION IS DENIED. MR. ADAIR, THERE IS ONE OTHER WITNESS

7   (ALIBI WITNESS) APPARENTLY, ACCORDING TO MR. BURTON, THAT

8   HE MAY WANT CALLED. AND THAT'S BARBARA SAVAGLIO,

9   THE COURT: MS. SAVAGLIO, ALL RIGHT. THANK YOU. SEE EXHIBIT "D"

10  PAGE 43, RT EXCERPT 35, T AND SUB — PAGE 41, RT EXCERPT 33, LINES, 16-28.

11  SEE ALSO EXHIBIT D, PAGE 44 — AND SUB — PAGE 42, RT EXCERPT 34, LINES 1-5,

12  SEE ALSO EXHIBIT "D" PAGE 43, RT EXCERPT 35, LINES 1-19, 21, 22, 24-28.

13  BY MS. HANNAH: Q. OFFICER HOLMES, WHERE ARE YOU EMPLOYED? A. OFFICER HOLMES,

14  POLICE OFFICER WITH THE CITY OF EL CAJON. Q. HOW LONG HAVE YOU BEEN SO

15  EMPLOYED? A. THREE YEARS. Q. WERE YOU WORKING ON MARCH 19TH OF THE

16  YEAR 2004? A. I WAS. Q. DO YOU RECALL WHAT SHIFT YOU WERE WORKING?

17  A. DAY SHIFT, PATROL. Q. DID YOU RECEIVE A DISPATCH CALL OR RESPOND

18  TO DISPATCH CALL TO REPORT TO 425 EAST MAIN STREET?

19  A. I DID. Q. DID YOU, IN FACT, RESPOND TO THAT ADDRESS? A. YES

20  Q. DO YOU RECALL APPROXIMATELY WHAT TIME YOU RESPONDED

21  TO THAT LOCATION? A. I DON'T RECALL THE TIME OFF HAND,

22  I KNOW IT WAS THE AFTERNOON. BY MS. HANNA: Q. OFFICER

23  HOLMES, WHEN YOU ARRIVED AT THAT LOCATION, WERE YOU ALONE

24  OR WITH A PARTNER? A. I WAS ALONE AT THAT TIME. Q. WHEN YOU

25  ARRIVED WERE THERE OTHER POLICE OFFICERS ARRIVING AT THE

26  SAME TIME OR WERE YOU THE FIRST TO ARRIVE? A. I WAS THE FIRST Q.

27  WHEN YOU ARRIVED AT 425 EAST MAIN STREET, DID YOU IMMEDIATELY

28  SEE THE DEFENDANT? A. YES. Q. COULD YOU DESCRIBE TO US WHERE HE

4

MR. E. W. BURTON #F02720 IN PROPER
P.O. BOX 5246 - C-5 ATF/SP
CORCORAN, CA. 93212

1  WAS AND WHAT HE WAS DOING? A. HE WAS -- IN ORDER TO GET TO THE
2  APARTMENT COMPLEX, YOU HAVE TO DRIVE THROUGH A DRIVEWAY IN
3  BETWEEN TWO BUSINESSES, AND IT OPENS UP INTO A PARKING LOT.
4  HE WAS STANDING DIRECTLY -- IF YOU DROVE STRAIGHT DOWN THE
5  DRIVEWAY, DIRECTLY OUT IN FRONT OF ONE OF THE APARTMENTS.
6  Q. WAS HE INSIDE A VEHICLE OR OUTSIDE A VEHICLE? A. NO, HE WAS
7  OUTSIDE. -- Q. DID YOU NOTICE HOW CLOSE HE WAS OR WHETHER
8  OR NOT HE WAS STANDING CLOSE TO A VEHICLE? A. -- THERE WERE
9  VEHICLES IN THE PARKING LOT, BUT I WASN'T REALLY, AT THAT POINT
10 IN TIME, PAYING ATTENTION TO ANY VEHICLES IN PARTICULAR. SEE EXHIBIT "D",
11 PAGE 44, R.T. EXCERPT 36, LINES 1-7, 9, 10, 11, 15, 16, 17, SEE ALSO EXHIBIT "D" PAGE
12 45, R.T. EXCERPT 37, LINES 5, 13, 15, 16, 17, 20-24, SEE EXHIBIT "D", PAGE 46,
13 R.T EXCERPT 38, LINES 8-18, 21-26, SEE EXHIBIT "D" PAGE 47, R.T EXCERPT 39,
14 LINES, 4-6, 9-11, 19-25, 28. SEE EXHIBIT "D" PAGE 48, R.T. EXCERPT 40, LINES
15 1-5, 8-11, 19-28, SEE ALSO EXHIBIT "D", PAGE 49, R.T EXCERPT 41, LINES 1-28,
16 SEE EXHIBIT "D", PAGE 50, R.T EXCERPT 42, LINES, 1-3, 7 23. SEE ALSO
17 EXHIBIT "D", PAGE 51, R.T EXCERPT 43 LINES 1-5, 9-26. BY MS. HANNAH:
18 Q. (OFFICER HOLMES ANSWERING) WHEN YOU SAW THE DEFENDANT
19 WHAT DID YOU DO? A. I CONDUCTED WHAT WE WOULD CALL A
20 PEDESTRIAN HOT STOP. Q. CAN YOU PLEASE DESCRIBE FOR THE COURT
21 WHAT THAT IS? A. BASICALLY, JUST GIVING HIM DIRECTION AT
22 GUNPOINT. Q. WHEN YOU GAVE THESE INSTRUCTIONS, DID THE
23 DEFENDANT RESPOND? A. YES. BY MS. HANNAH: Q WHAT INSTRUCTIONS
24 DID YOU GIVE HIM? A. (OFFICER HOLMES) -- FROM ME, HAD HIM KNEELING
25 DOWN, PUT HIS HANDS BEHIND HIS HEAD AND SPREAD HIS KNEES ACROSS
26 HIS ANKLES SO THAT HE WAS IN A POSITION WHERE HE COULDN'T
27 EASILY MOVE. Q. AT SOME POINT DID YOU PLACE THE DEFENDANT INTO
28 HAND CUFFS? A. I DID NOT, BUT HE WAS PLACED INTO HAND CUFFS. Q. DID

MR. E.W. BURTON  POE 72017 INMATE
P.O. BOX 5246 - CSATF/SP.CI-132L
COR COR AN CA. 93212

1  YOU OBSERVE THAT HAPPENING? A. YES Q.  HOW LONG AFTER YOU

2  ARRIVED DID YOU ESTIMATE THAT YOU PLACED THE DEFENDANT INTO

3  CUSTODY? A. AS FAR AS PUTTING HIM INTO HANDCUFFS? Q. YES.

4  A. PROBABLY WITHIN 10, 15 SECONDS. Q. DID YOU OBSERVE ANY OTHER

5  PERSONS AROUND THE DEFENDANT'S LOCATION EITHER BEFORE OR AFTER

6  THE DEFENDANT WAS PLACED INTO HANDCUFFS? A. YES, Q. WHO DID YOU

7  NOTICE? A. THERE WAS A SUBJECT WHO HAD LATER BEEN Q. WHAT

8  HAPPENED TO THAT SECOND INDIVIDUAL? A. I TOLD HIM TO REMAIN

9  WHERE HE WAS WHILE I WAS GIVING MR. BURTON DIRECTIONS, AND HE

10  STOOD BY WITH HIS HANDS IN THE AIR WHILE WE SECURED MR. BURTON IN

11  HANDCUFFS. Q. AFTER MR. BURTON WAS PLACED INTO HANDCUFFS, DID AN AGENT

12  OR OFFICER KIRK ARRIVE? A. YES, Q. CAN YOU TELL US WHAT YOU

13  OBSERVED OR HEARD? A. AS I WAS WALKING MR. BURTON TO THE

14  PATROL CAR, AGENT KIRK ASKED HIM WHERE THE (ALLEGED) WEAPON

15  WAS OR THE (ALLEGED) GUN WAS. I Q. DID YOU HEAR AGENT KIRK

16  ASK THE DEFENDANT IF HE COULD SEARCH THE RESIDENCE? A. I DID

17  NOT. Q. WERE YOU THE OFFICER THAT TRASPORTED THE DEFENDANT

18  TO EL CAJON POLICE STATION? A. YES, Q. WHEN DID THAT OCCUR?

19  A. WITHIN A FEW MINUTES OF PLACING HIM UNDER ARREST, I

20  THINK I GOT SOME INFORMATION FROM THE OTHER SUBJECT

21  WHO WAS THERE WITH HIM, Q. WHEN YOU TRANSPORTED THE

22  DEFENDANT TO THE POLICE STATION, DID YOU PROCESS THE

23  DEFENDANT? A. YES, Q.  AT SOME POINT DID YOU INDICATE TO THE

24  DEPARTMENT THAT ANOTHER OFFICER WOULD THEN COME IN AND SPEAK

25  WITH HIM? A. I DID, Q. OFFICER HOLMES, AT THE POLICE STATION

26  YOU INDICATED THAT YOU TOLD THE DEFENDANT ANOTHER OFFICER

27  WOULD SPEAK TO HIM, IS THAT CORRECT? A. YES, Q. UPON INFORMING

28  THE DEFENDANT THAT ANOTHER OFFICER WOULD BE IN TO SPEAK WITH

11

1  HIM, DID THE DEFENDANT HAVE A RESPONSE? A. YES, HE DID, Q. DO YOU
2  REMEMBER WHAT HIS REPLY WAS? A. HE TOLD ME THAT HE
3  WOULD LIKE TO SPEAK TO AN ATTORNEY AND EXERCISE HIS 5TH
4  AMENDMENT RIGHT, Q. DID HE USE THAT LANGUAGE SPECIFICALLY
5  "CONCERNING MY 5TH AMENDMENT RIGHTS"? A. YES HE DID,
6  MS. HANNAH. THANK YOU, NOTHING FURTHER. THE COURT: MR. ADAIR. MR.
7  ADAIR? THANK YOU, YOUR HONOR. CROSS-EXAMINATION BY MR. ADAIR:
8  Q. OFFICER HOLMES, GOOD MORNING. A. GOOD MORNING. Q. OFFICER
9  YOU ARRIVED AT THE LOCATION WHERE MR. BURTON WAS, CORRECT?
10 A. CORRECT. Q. I TAKE IT YOU WERE THE FIRST OFFICER OUT OR ON THAT
11 SCENE, CORRECT? A. YES. Q. YOU HAD YOUR GUN OUT? A. EVENTUALLY, YES,
12 Q. MR. BURTON WAS THERE WITH HIS HANDS UP AT SOME POINT? A. CORRECT,
13 Q. WAS IT THAT POINT WHERE THE OTHER OFFICERS STARTED TO
14 ARRIVE? A. CORRECT, AND THE PROCESS I DIDN'T EXACTLY SEE BECAUSE
15 I WAS FOCUSED ON HIM, BUT THEY WERE ARRIVING DURING THAT
16 PROCESS, YES. Q. YOU SAID THAT YOU DIDN'T HANDCUFF HIM BUT SOMEBODY
17 ELSE DID? A. CORRECT, Q. AND DID YOU STILL HAVE YOUR GUN OUT
18 COVERING MR. BURTON AT THAT TIME? A. YES. Q. WHOSE RESPONSIBILITY
19 WAS MR. BURTON AT THAT TIME? A. I WOULD SAY MINE, Q. AND DID YOU
20 STAY WITH MR. BURTON TO MAKE SURE THAT HE DIDN'T DO ANYTHING THAT
21 WOULD BE DANGEROUS TO THE OFFICERS OR ANYBODY ELSE? A. I GUESS
22 I'M NOT UNDERSTANDING YOUR QUESTION, Q. ALL RIGHT. PUT IT SIMPLY,
23 YOU WERE STILL WATCHING MR. BURTON VERY CLOSELY, A. I MEAN,
24 THERE WERE TWO OTHER OFFICERS ON THE SCENE, SO IT WASN'T THAT
25 I WAS DIRECTLY STANDING THERE WATCHING HIM FOR 100 PERCENT OF
26 THE TIME, THERE WERE OTHER THINGS THAT WERE GOING ON AT THAT
27 TIME. "ONCE HE WAS SECURED" Q. DID YOU PUT MR. BURTON IN YOUR PATROL
28 VEHICLE? A. YES. Q. WHEN HE WAS IN YOUR PATROL CAR, WERE YOU

13  1 2

MR. E.W. BURTON #F02720 IN PROPER
P.O. BOX 5248-4B4/PR-C
CORCORAN CA. 93212

## STATEMENT OF FACTS

THE TRIAL JUDGE HON. LAURA HALGREN, DEPORTED HERSELF AS A MATERIAL WITNESS TO FACT ON GENUINE COURT BUSINESS RECORDS, THE TRIAL JUDGE HON. LAURA HALGREN ON OR ABOUT 23 FEB. 04, SIGNED OFF ON THE RESTRAINING ORDER AND ISSUED A TRO AGAINST MR. THOMAS AS HE APPEARED IN HER FAMILY COURT EX PARTE HEARING OF MR. BURTON AND MS. SANDERS, PETITIONER WAS AFRAID WHEN HE RECOGNIZED THE VOICE OF MR. THOMAS IN HER COURTROOM. PETITIONER ALERTED TRIAL JUDGES BALIFF OF HIS PRESENCE AND GAVE THE BALIFF THE EVIDENCE OF HIS RESTRAINING ORDER. WHO THEN SERVED MR. THOMAS. THE TRIAL JUDGE HALGREN ORDERED HIM TO LEAVE THE COURTHOUSE AND BECAUSE PETITIONER WAS SO AFRAID FOR HIS LIFE THE TRIAL JUDGE HALGREN ORDERED HER FEMALE WHITE BALIFF AND ANOTHER WHITE MALE DEPUTY TO ESCORT PETITIONER THROUGH REAR COURT BUILDING AREA TO ESCAPE A POSSIBLE ASSAULT BY THOMAS. INITIALLY PETITIONER WAS THE PETITIONER OF THE ACTION, BUT THE TRIAL JUDGE CONVERTED PETITIONER INTO A DEFENDANT. STATING ERRONEOUSLY THAT THE ACTION BEGAN IN THE CHILD SUPPORT DIVISION. A MATTER OF WHICH HAD ALREADY BEEN RESOLVED IN THE CHILD SUPPORT DIVISION 10/04. PETITIONER WAS A PRO PER LITIGANT WHO AFTER SIGNING OUT OF A COURT CLERK FILE A CASE INVOLVING MS. SANDERS AND MR. THOMAS, OF WHICH HE VANDALIZED HER VEHICLE AND THREATENED "TO KICK HER ASS". PETITIONER HAD ALSO BECAME AWARE BY THE FILES OBTAINED, THAT THERE HAD BEEN A PREVIOUS ORDER OF PROTECTION FOR ANGELA SANDERS, ANDRE LEWIS, AYONA FRENCH, AND DREONA BURTON AGAINST MR. THOMAS, INCIDENTS AND FACTS PETITIONER WAS AWARE OF PRIOR TO THE DAY IN QUESTION 19 MARCH 04.

13

PETITIONER HAD RECEIVED INSTRUCTION ON RESTRAINING ORDER,
HOW TO APPLY FOR EMERGENCY CUSTODY OF HIS
MINOR DAUGHTER DREONA BURTON FROM THE EL CAJON
COURT FAMILY FACILATATOR'S OFFICE WHO
TYPED UP ALL THE COURT PAPERS, AS MS. SANDERS
HAD TOLD PETITIONER ABOUT HER SON ANDRE LEWIS
BEING MOLESTED, DURING THE TIME SHE WAS
WITH MR. THOMAS, MR. THOMAS HAD THREATENED
TO KILL PETITIONER IN FRONT OF HIS DAUGHTER
DREONA BURTON APPROX 13 FEB 04, PETITIONER HAD
SHERIFF MARSHALL'S SERVE ANGELA SANDERS
NOTICE TO APPEAR AND MR. THOMAS OF WHOM WAS
LIVING WITH SANDERS AT THE TIME AT 171 E.
LEXINGTON AVE E.C. CA. SANDERS TOLD MARSHALL SERVED
THOMAS DIDN'T LIVE THERE AS WELL AS THE ANDREW
TRIAL JUDGE HALGREN AT THE EX PARTE HEARING
WHO MADE US SWITCH SEATS, CONVERTING PETITIONER
FROM PLAINTIFF TO DEFENDANT! PETITIONER HAD
ALLEGED THAT MS. SANDERS HAD FAILED TO
PROTECT HIS MINOR DAUGHTER FROM MR. THOMAS'S ABUSE
DESPITE A PREVIOUS ORDER OF PROTECTION HE HAD
BECAME AWARE OF AFTER SIGNING OUT THE FILE
ON OR ABOUT 20 FEB. 04, PETITIONER WAS DENIED
HIS OFFER TO SHOW THIS PROOF BY JUDGE HALGREN,
WHO THEN DISCLOSED THAT MR. THOMAS ASSAULTED
SANDERS AT A CLUB OF SORTS, SOON THERE AFTER
MR. THOMAS PRESENCE WAS ANNOUNCED THROUGH
INQUIRY BY THE TRIAL JUDGE. DEFENSE COUNSEL
ADAIR FAILED TO NOTIFY THE COURT OF IT'S BEING A
MATERIAL WITNESS TO FACT TIMELY BEFORE TRIAL
PER DEFENDANTS REPEATED URGING. IN ADDITION THE
POLICE AND PROSECUTION HELD POSSESSED AND SUPPRESSED
FAVORABLE MATERIAL EXCULPATORY EVIDENCE (ALLEGED)
DEFENCE EXHIBIT F. PROSECUTOR STATED ON RECORD THAT
HE HAD GONE THROUGH THE "BACK PACK" AND SHOULD'VE
KNOWN ABOUT AND DISCLOSED EVIDENCE FAVORABLE

14

MR. ED. BURTON #F02720 IN PROPER
P.O. BOX 5244 CORTINE 3A-1
CORCORAN, CA 93212

1  A. HE WAS — IN ORDER TO GET TO THE APARTMENT COMPLEX, YOU HAVE TO DRIVE

2  TO DRIVE THROUGH A DRIVEWAY IN BETWEEN TWO BUSINESSES, AND IT KIND OF

3  OPENS UP INTO A — GROUP OF —

4  TO DEFENSE PRIOR TO JULY 27, 05, THE SECOND

5  WEEK OF TRIAL, THE TRIAL JUDGE PREDJUDICIALLY

6  DENIED ADMISSIBLE EVIDENCE UNDER 352, EVIDENCE

7  WHICH SUPPORTED DEFENDANT'S STATE OF MIND, SINCE

8  THE COURT AND PROSECUTION, DESPITE EVIDENCE

9  HELD IN THEIR POSSESSION THAT PETITIONER HAD

10 KNOWN ABOUT MR. THOMAS'S CRIMINAL VIOLENCE,

11 PRISON RECORD, PAROLE, PREVIOUS PROTECTION

12 ORDER FOR HIS MINOR DAUGHTER DREONA BURTON.

13 DISPITE THE VIOLATION OF THE TRIAL JUDGES TRO,

14 PROTECTING PETITIONERS MINOR DAUGHTER DREONA

15 BURTON, AS THOMAS BY HIS OWN TESTIMONY THE

16 JUDGE FAILED TO MAKE AN ARREST AND CHARGE

17 MR. THOMAS, AT LEAST TO PETITIONER'S KNOWLEDGE,

18 AS THE ORDER'S OF A FAMILY COURT JUDGE

19 SUPERSEDES ANY OTHER ORDER OF A STATE COURT

20 JUDGE, ALSO, PETITIONER BEING A LAYMAN WAS

21 MANIPULATED BY MR. ADAIR TO A PEREMPTORY CHALLENGE

22 IN A CONFLICT OF INTEREST OF THE MAGISTRATE THAT

23 BOUND HIM OVER FOR TRIAL JUDGE HANOIAN. PETITIONER

24 BELIEVES LEGALLY THIS COULD NOT BE DONE UNDER

25 170.6, AND WAS DONE TO DENY PETITIONER OF HIS 14TH

26 AMENDMENT EQUAL PROTECTION. THE TRIAL JUDGE

27 HON.L. HALGREN WAS A DEPARTED MATERIAL WITNESS ON

28 GENUINE OFFICIAL "STIPULATED" COURT BUSINESS RECORDS

15

MR. E. W. BURTON #T-52138 EN PROPER
P.O. BOX 5246-C9AT/ISP-C1-132L
CORCORAN, CA. 93212

1  STATEMENT OF FACTS—

2  THE TRIAL JUDGE HON. L. HALGREN, DEPORTED HERSELF AS A MATERIAL

3  WITNESS TO FACT. I.e. THAT ALLEGED VICTIM, (MR. THOMAS) WAS SERVED IN HER

4  COURTROOM ON OR ABOUT 23 FEB. 04. EVIDENCE OF HIM STALKING

5  DEFENDANT APPROX 3 WEEKS BEFORE THE DAY IN QUESTION OF 19 MARCH 04,

6  THE TRIAL JUDGE WAS A BIAS PREJUDICAL TRIER OF FACT, AS SHE

7  DENIED ALL OF DEFENDANTS PRO SE MOTIONS, FAILED TO RULE ON HIS

8  PRETRIAL MOTIONS, WAS A MATERIAL WITNESS, TO FACTS ON GENUINE COURT

9  BUSINESS RECORDS AS THE ONE WHO SIGNED OFF ON THE

10  ERO, AGAINST MR. THOMAS (AND ISSUED) PROTECTING BOTH THE DEFENDANT

11  AND HIS MINOR DAUGHTER DREONA BURTON, THE TRIAL JUDGE

12  DESPITE OF EVIDENCE THAT MR. THOMAS ON 19 MARCH 04,

13  HAD MADE UNLAWFULLY PHYSICAL CONTACT WITH

14  DREONA BURTON, AND UNDER THE CALIFORNIA PENAL CODE

15  STATUTES, STATE OF CALIFORNIA JURISDICTION, BY HIS OWN

16  TESTIMONY AND MS. SANDERS UNDER THE LAW HAD KIDNAPED

17  PETITIONERS MINOR DAUGHTER BY MOVING HER VIA TELEPHONE

18  AND MANIPULATION BY HER MOTHER ANGELA SANDERS WITHIN

19  THE COUNTY OF SAN DIEGO FROM HER HOME, AGAINST

20  COURT ORDERS, THE TRIAL JUDGE HON. L. HAL GREN FAILED

21  TO MAKE A DUAL ARREST, DENIED PETITIONER OF HIS FEDERAL

22  GUARANTEED RIGHT TO A FAIR AND IMPARTIAL TRIAL, VIOLATING

23  HIS 14TH U.S. CONST AMENDMENT DUE PROCESS AND EQUAL PROTECTION

24  CLAUSES, RIGHT TO COMPULSORY PROCESS OF THE 6TH AMENDMENT

25  AND RIGHT TO CROSS-EXAMINE UNDER THE FIFTH AMENDMENT

26  DUE PROCESS CLAUSE, AS WELL AS HIS RIGHT TO DISCOVERY

27  DISCLOSURE BY THE PROSECUTION, AFTER A DEFENSE DISCOVERY

28  MOTION HAD BEEN FILED AND SERVED 7-30-04 ON DA. MS. HANNAH

86

1. WHO DEFENSE COUNSEL MR. PLUMMER, AND MR. ADAIR, STATES THAT
2. PROSECUTION FAILED TO RESPOND. FURTHERMORE PETITIONER' CONTENDS
3. THAT THE DENIAL OF HIS MOTION FOR A MISTRIAL, BY HIMSELF AND
4. COUNSEL WAS ERRONEOUS AND PREJUDICIAL IN LIGHT OF THE
5. RELAYED DISCLOSURE BY DEFENDANT AND DEFENSE COUNSEL
6. AT TRIAL MARSDEN HEARING, THAT SHE WAS ALERTED THAT
7. SHE WAS INFACT A MATERIAL WITNESS ON STIPULATED GENUINE
8. COURT BUSINESS RECORDS, AND SHERIFF MARSHALL BUSINESS
9. RECORDS BOTH HER AND HER BALIFF A. JANE DOE, ACTING
10. UNDER COLOR OF LAW AS A COURT BALIFF, E.C. CA, CALIFORNIA
11. STATE JURISDICTION. IN LIGHT OF THE FACT OF EVIDENCE, THE
12. NEWLY DISCOVERED DEFENSE EVIDENCE OF THE ADVERSE TRIER OF
13. FACT, AND COUNSEL'S KNOWING FAILURE TO NOTIFY THE COURTS
14. THE COURT ERRORED PREJUDICIALLY IN DENYING DEFENDANT HIS
15. MARSDEN AS COUNSEL'S CONFLICTING INTEREST AND THE DEPORTATION
16. THROUGH GOVERNMENT MISCONDUCT, DENIED PETITIONER HIS
17. FEDERALLY GUARANTEED RIGHT TO MAKE A DEFENSE AS WE
18. KNOW IT. THE TRIAL COURT PREVENTED DEFENDANT FROM
19. MAKING ANY MOTIONS, OR OBJECTION, BY STATING ANY MOTIONS
20. HAVE TO BE MADE THROUGH COUNSEL, DURING SENTENCING
21. THE COURT WENT ON TO VIOLATE PETITIONERS FEDERALLY
22. GUARANTEED RIGHT TO NOTICE, IN THAT PROSECUTION
23. WITHOUT GIVING DEFENDANT PRIOR NOTICE OR OPPORTUNITY
24. TO CROSS EXAMINE, SENTENCED DEFENDANT ON AN UNPROVEN,
25. UNCHARGED, AND UNDISCLOSED ALLEGED VICTIM A, KIAH MANCEY.
26. DEFENDANT RECEIVED A CULMATIVE PENALTY IN VIOLATION OF HIS
27. 5, 7TH, 6TH, AND 14TH, DUE PROCESS, EQUAL PROTECTION CLAUSES AND
28. RIGHT TO NOTICE, EVEN FURTHER. THE COURT MISLEAD RIGHT TO CROSS EXAMINE, RIGHT TO COMPULSORY PROCESS.

P. 7

1  PETITIONER AFTER STATING, TO HIM ON RECORD OF EXCERPTS

2  INCLUDED IN THIS PETITIONER, THAT DEFENDANTS, ALLEGED

3  ADMISSIONS THAT WERE UNLAWFULLY OBTAINED AFTER HIS

4  INVOCATION OF HIS 6TH, AND 5TH AMENDMENT RIGHTS TO

5  OFFICER HOLMES AT TIME OF ARRIVAL AT E.C. POLICE STATION

6  ON 19 MARCH 04, OFFICER INITIATED CONVERSATION AFTER

7  DEFENDANT INVOKED HIS RIGHT TO COUNSEL AND RIGHT TO REMAIN

8  SILENT, PETITIONER WAS NOT FREE TO GO AND UNDER ARREST

9  WITHOUT PROBABLE CAUSE, NOR INFERENCE WITHIN 15 SECONDS

10  AFTER POLICE INITIATED CONTACT EXCEEDING THE TERRY

11  LINE OF AUTHORITY IN HIS REASONABLE EXPECTATION OF

12  PRIVACY IN HIS PRIVATE RESIDENTIAL AREA, ALLEGED BY

13  POLICE TO BE MAKING A PHONE CALL, AFTER WHICH THE

14  INVOCATION OF PETITIONERS 6TH AND 5TH AMENDMENT RIGHTS. PETITIONER

15  WAS STRIPPED NAKED, BAREFOOT, FREEZING, SHACKLED, AND FORCED

16  TO INTERROGATION ROOM, OF WHICH HE REINVOKED HIS 5TH AND

17  6TH AMENDMENT RIGHTS TO COUNSEL, ANY ALLEGED ADMISSIONS OR ANY

18  RESPONSES WAS DUE TO POLICE INITIATED CONVERSATION, AND

19  COERSIVE POLICE ATMOSPHERE, AND SHOCKS TO DEFENDANTS

20  CONCIOUS BY ENSLAVEMENT OF SHACKLES, AND INTIMIDATION BY

21  ALL WHITE MALE OFFICERS, AS PETITIONER IS AFRICAN AMERICAN, POLICE

22  WITHOUT CONSENT UNLAWFULLY ENTERED, SEARCH, AND SEIZED HIS HOME,

23  AND VEHICLE PARKED ON THE CURTILAGE WARRANTLESSLY, AS RULED

24  BY THE HON. JUDGE PRECLE APPROX. 24 FEB. 04, A 4TH/14TH AMENDMENT

25  VIOLATION IN HIS REASONABLE EXPECTATION OF PRIVACY, THE TRIAL JUDGE

26  HON. L. HALGREN ABUSED HER DISCRETION, AND LACKED JURISDICTION TO

27  AND DENIED PETITIONER A WRIT OF MANDATE, PROSECUTION FAILED

28  TO DISCLOSE THE FACT THAT KIAH MINCEY, AT THE ALLEGED

1  CRIME SCENE, IS INFACT A CONVICTED FELONY, WHO WAS A

2  REPRESENTATIVE IN THE PRISONER/PAROLEE CLASS LAWSUIT

3  AGAINST A CALIFORNIA GOVERNOR REPRESENTING THE VISUALLY IMPAIRED

4  PLAINTIFF CLASS, PROSECUTIONS FAILURE TO DISCLOSE

5  THIS DEPORTED WITNESS, AND DEVULGE HIS CRIMINAL PAST

6  VIOLATED PETITIONERS FEDERAL GUARANTEED RIGHT TO

7  DUE PROCESS, EQUAL PROTECTION AND RIGHT TO DISCOVERY,

8  PARTICULARLY AFTER TRIAL, WITHOUT INDICTMENT OF A

9  GRAND JURY NOR PRIOR OPPORTUNITY FOR CROSS-EXAMINATION,

10 PETITIONER ALSO SPECULATES THAT A KIAH MINCEY WAS

11 MISS REPRESENTED AT OCT 21,05 SENTENCING, BY A JUNIOR

12 CHILD OF THE SAME NAME, AS PETITIONER AS OF APPOX 9-07

13 RECEIVE A POST TRIAL VICTIM'S COMPENSATION GOVERNMENT CLAIM FROM MR. ADAIR

14 OF AN ALLEGED VICTIM A "KIAH MINCEY DATE OF BIRTH IN THE

15 YEAR "1963", AT ANY RATE, PROSECUTION, FAILED TO GIVE PRIOR

16 NOTICE OF THIS ALLEGED VICTIM, THAT WAS NOT ON

17 PROSECUTIONS WITNESS LIST FOR TRIAL. THE COURT

18 ALSO WENT AGAINST IT'S OWN ASSERTIONS, AND RELIED UPON

19 A POLICE REPORT OF OFFICER GONSALVES, AFTER PETITIONER HAD

20 INVOKED HIS 5TH AND 6TH AMENDMENT RIGHT, INADMISSIBLE EVIDENCE

21 UNDER CRAWFORD, AS IT IS NOT A BUSINESS RECORD, AND AFTER

22 ASSURING PETITIONER AT TRIAL THAT HIS ALLEGED ADMISSIONS

23 WERE NOT BEING USED, PROSECUTION USED THEM AND RELIED UPON A FALSE

24 PROBATION REPORT AS PETITIONER WAS NEVER INTERVIEWED BY A

25 MS. PARKS, WHO RELIED UPON OFFICER GONSALVES POLICE REPORT

26 PETITIONER HAD NO PRIOR OPPORTUNITY TO CROSS EXAMINE MISS PARKS,

27 PETITIONER FURTHER CONTENDS AS WILL BE SUPPORTED BY THE

28 EXCERPTS THAT THE ARRAIGNMENT OF AN AMENDED COMPLAINT

14

1  WITHOUT PRIOR NOTICE VIOLATED HIS FEDERALLY GUARANTEED

2  14TH U.S. CONST AMENDMENT RIGHT TO NOTICE AND DUE PROCESS AND

3  EQUAL PROTECTION CLAUSES. THE ACCUSATIONAL DELAY VIOLATED

4  HIS FEDERALLY GUARANTEED RIGHT TO A SPEEDY TRIAL FAIR TRIAL, AND WAS

5  DONE TO TAKE UNFAIR TACTICAL ADVANTAGE OF PETITIONER, AS

6  THE CRAFTING OF STATUTES BY THE PROSECUTOR NOT IN

7  THE CAL. VICS, AND THE UNCONSTITUTIONAL CHANGING OF THE

8  CHARGING INDICTMENT NOT SUPPORTED BY THE EVIDENCE

9  AT THE PRELIMINARY HEARING, THAT WERE BASED ON TESTIMONY

10 RELATED TO UNCONSTITUTIONALLY SEIZED EVIDENCE LATER

11 SUPPRESSED AFTER THE 1538.5, JUDGE CONCLUDING AN UNLAWFUL

12 ENTRY, SEARCH AND SEIZURE BY POLICE WARRANTLESSLY AND

13 WITHOUT CONSENT, IN VIOLATION OF THE 14TH AMENDMENT AS

14 WELL AS THE 4TH AMENDMENT. PROSECUTIONS FAILURE TO

15 DISCLOSE MATERIAL EXCULPATORY EVIDENCE VIOLATED PETITIONERS

16 FEDERALLY DUE PROCESS AND EQUAL PROTECTIONS OF THE 14TH U.S.

17 CONST. AMENDMENT. THE FAILURE OF THE PROSECUTION TO

18 DISCLOSE SPECIFICALLY REQUESTED MATERIALS AFTER

19 A DEFENSE DISCOVERY MOTION HAD BEEN FILED, AND PROSECUTION

20 'S REBUTTAL STATING "I DON'T KNOW THE HISTORY OF THE

21 PHOTOGRAPH'S OR ANYTHING", DOES NOT QUALIFY TO JUSTIFY

22 THE FAILURE TO DISCLOSE. PROSECUTION HAS AN INDEPENDANT

23 DUTY TO DISCLOSE, PETITIONER WAS TAKEN BY SURPRISE

24 BOTH AT TRIAL AND SENTENCING, WAS PREVENTED, AND SHOCKED OVERCOME

25 TO OBJECT BY THE TRIAL JUDGE, COUNSEL ADAIR DID OBJECT TO

26 THE MANDATORY NATURE AND INELIGIBILITY FOR PROBATION.

27 ALSO, THERE IS AN IMPERMISSIBLE CONSTITUTIONAL VERIABLE,

28 BY ALLEGED EYE WITNESS SHANE COLBERT, WHO DESCRIBES

1   THE ALLEGED SUSPECT, AS A 20 YEAR OLD, ONE PERSON ALONE

2   AS PROSECUTION RELATES A BLACK JETTA VEHICLE ADVERSE DEFENSE

3   WITNESS MCKELVEY WAS IN PETITIONERS HOME AT TIME OF HIS

4   ARREST, PETITIONER'S HOME APARTMENT WAS 425 E. MAIN ST #5, EC, CA,

5   PETITIONER WAS STANDING IN THE THRESHOLD OF HIS APARTMENT

6   MANAGERS DOOR WAY APT #6, OF SPECIFIC NOTE MCKELVEY WAS

7   IN PETITIONERS APARTMENT UN BE KNOWST TO HIM, WHEN OFFICERS

8   ARRIVED, AND SEIZED HIS PERSON UNLAWFUL EVIDENCE, PETITIONER WAS NOT

9   IN POSSESSION OF ANY PHONE, BACK PACK, VEHICLE OR ANY OTHER

10  INSTRUMENT, IN FACT PETITIONER WAS 25 FEET AWAY FROM HIS

11  HOME AND VEHICLE AT THE TIME HIS PERSON WAS UNLAWFULLY

12  SEIZED, HANDCUFF, AND ARRESTED, IN HIS REASONABLE

13  EXPECTATION OF PRIVACY, PETITIONER NOW AGE 44, WAS A

14  MATURE LOOKING GRANDFATHER OF AGE 40 AT TIME OF

15  HIS ARREST, PETITIONER WAS IN CUSTODY IN PATROL VEHICLE

16  DURING THE SEARCH WITHOUT CONSENT, AND INTERROGATION

17  OF HIS HOME AND VEHICLE PARKED ON THE CURTILAGE. NOW

18  SEE EXHIBIT "A", PAGE 112, RT. EXCERPT 815, LINES 5, 6, 8-12, 16-18, 21-28, SEE

19  ALSO EXHIBIT "A", PAGE 113, RT EXCERPT 816, LINES, 1-28, SEE EXHIBIT "A", PAGE 114, RT

20  EXCERPT 817, LINES, 1, 2, 4-18, 21-28, SEE EXHIBIT "A", PAGE 115, RT EXCERPT 818

21

22

23

24

25

26

27

28

ARGUMENT, STATEMENT OF FACTS.

IT IS CLEAR FROM THE STATEMENTS OF FACTS IN THE ATTACHED AND ARGUMENTS QUOTED EXCERPTS, THAT PETITIONER'S FEDERALLY GUARANTEED 14TH AMENDMENT DUE PROCESS RIGHTS AND EQUAL PROTECTION CLAUSES WERE BLATANTLY VIOLATED BY THE PROSECUTIONS FAILURE TO DISCLOSE MATERIAL EXCULPATORY EVIDENCE REQUESTED APPROXIMATELY A YEAR BEFORE TRIAL BY A DEFENSE DISCO- VERY MOTION THAT PROSECUTION, BY DEFENSE COUNSEL'S MR. PLUMMER'S AND MR. ADAIRS ACCOUNT FAILED TO RESPOND, AND ALSO THE TRIAL COURT'S PREJUDICIALLY ACTIONS OF TAKING THE DISCOVERY MOTION PROCEEDINGS OFF CALENDER WITHOUT WRITTEN NOTICE TO DEFENDANT. THE LOSS AND DESTRUCTION OF THE 911 TAPES PROVING THE DEFENDANT'S INNOCENSE, AFTER A DEFENSE MOTION FOR DISCOVERY WAS SERVED ON D.A. MS. HANNAH ON OR ABOUT 7-30-04, THAT SHE, BY DEFENSE COUNSEL ACCOUNTS FAILED TO RESPOND TO. HER (MS. HANNAH'S) ALLEGED RESPONSE, CONTRADICTS MR. TROCHA'S ACCOUNT IN STATING THAT THEY WERE NEVER REQUESTED, HOWEVER AS PETITIONER HAS ILLUSTRATED BY THE EXCERPT OF THIS PETITION, SPECIFICALLY, IN EXHIBIT "D", PAGE 24, R.T. EXCERPT 0026, LINES 1, 9, 15, 17-29, PETITIONER DENIES OMITTED PORTIONS, PETITIONER ALSO STIPULATES THAT HE DIDN'T RECEIVE A SERVED COPY OF THE ALLEGED RESPONSE AS HE NOTICED IN UPON RECEIPT OF SOME TRANSCRIPTS FROM APPEALS COUNSEL MS. KORYN AFTER REMITTUR. PETITIONER HAD NEVER BEEN PERSONALLY SERVED A WRITTEN NOTICE.

22

THE DESTRUCTION OF THE ALLEGED CRIME SCENE AND FAILURE BY

THE POLICE TO PRESERVE MATERIAL EXCULPATORY EVIDENCE e.g. VOMIT,

THE HOSING DOWN OF THE STREET, THE HOSING DOWN OF THE GRASS,

AS DEFENSE COULD NO LONGER GATHER COMPARATIVE EVIDENCE,

THAT COULD'VE BEEN FORENSICALLY TESTED AS DEFENDANT HAD

REQUESTED TO TEST EVIDENCE FOR ILLEGAL SUBSTANCES

WELL IN ADVANCE OF TRIAL SEE EXHIBIT "A", PAGE 25 RT EXCERPT 89

LINES, SECTIONS 2 AND 1-8, 11-19, 21-28    , SEE ALSO EXHIBIT "A" PAGE 26 RT EXCERPT 90

LINES 4.7 (16 MARCH. 05 MARSDEN HEARING) THE DEFENDANT; DISSUADING OF A WITNESS

(MEANING BY MR. THOMAS A T PRELIMINARY HEARING). MY DAUGHTER, BECAUSE SHE WAS

ALSO A EQUAL PROTECTANT ON THAT ORDER, WHICH WAS VIOLATED. THE COURT;

ALL RIGHT, ANY OTHER MOTIONS YOU THOUGHT SHOULD BE FILED? THE DEFENDANT;

YES, ALSO, THERE ARE FALSE STATEMENTS THAT HAVE BEEN ENTERED INTO

THE RECORD AS FAR AS ME ALLEGEDLY -- AS FAR AS THE MOTION THAT

WAS WRITTEN TO 1538.5. THE COURT; ALL RIGHT. IS THAT THE SAME ISSUE

YOU HAD RAISED TO JUDGE PRECKEL, WHERE THERE WAS CONCERN RAISED BY

YOU THAT THE STATEMENT OF FACTS DIDN'T FULLY SET FORTH THINGS

AAPROPRIATELY? THE DEFENDANT; WELL, WITH JUDGE PRECKEL --

THE COURT; I JUST WANT TO KNOW IF THAT'S THE SAME ISSUE YOU'RE TALKING

ABOUT? THE DEFENDANT; -- BUT I WAS DENIED MY MARSDEN BY JUDGE

PRECKEL, HE NEVER GAVE ME AN OPPORTUNITY TO. THE COURT; -- WHAT

OTHER ISSUES ARE THERE BEYOND WHAT YOU'VE TOLD ME HAVE NOT

BEEN ADEQUATE BY THE DEFENSE? THE DEFENDANT; THE FACTS OF THE

CASE HAVE BEEN MISSTATED -- I ASKED HIM TO FILE A MOTION WITH

THE JUDGE -- YOURSELF -- ORDERING PROSECUTION TO TURN OVER ALL DISCOVERY BECAUSE MOTIONS THAT WERE FILED BY MR. PLUMMER JULY -- TO COMPEL PROSECUTION TO TURN OVER ALL DISCOVERY. SEE EXHIBIT "A", PAGE 27, RT EXCERPT 191, LINES 18-28. SEE ALSO EXHIBIT "A", PAGE 29, RT EXCERPT 193, LINES 12-25.] THE COURT: IS THAT SOMETHING YOU HAD ORIGINALLY ASKED YOUR EARLIER ON THE DEFENDANT: EXTRAORDINARY WRIT OF MANDATE FOR REVIEW OF THE 1538.5 MOTION -- APPEALING JUDGE ARECKEL'S DECISION AS FAR AS HIS DENIAL OF SUPPRESSING THE VEHICLE, BECAUSE THE VEHICLE WAS UNLAWFULLY ENTERED, SEIZED AND REMOVED FROM MY RESIDENCE WITHOUT -- THE COURT: -- THE WRIT OF MANDATE FROM THE SUPPRESSION? THE DEFENDANT: YES. THE COURT: HOW LONG HAVE YOU BEEN REPRESENTING MR. BURTON? MR. ADAIR: SINCE SOMETIME IN NOVEMBER. THE COURT: WAS HIS SUMMARY OF THE SEQUENCE OF EVENTS ACCURATE, TO THE BEST OF YOUR KNOWLEDGE? MR. ADAIR: I BELIEVE IT WAS. PUBLIC DEFENDER FIRST WITH, MR. ERICSEN. THERE WAS A CONFLICT, HE GOT OFF. MR. PLUMMER WAS APPOINTED, PCC, REPRESENTED MR. BURTON UNTIL ABOUT NOVEMBER, -- AND MR. NEWTON WAS APPOINTED THROUGH PCC. AND WITHIN A DAY OR SO, MR. NEWTON REALIZED THERE WAS A CONFLICT, AND I WAS APPOINTED. THE COURT: OKAY. AND IF YOU COULD BRIEFLY EXPLAIN WHAT TYPE OF WORK YOU'VE DONE TO REPRESENT MR. BURTON SINCE YOU CAME ONTO THE CASE? MR. ADAIR: SEE EXHIBIT "A" PAGE 31, RT EXCERPT 195, LINES 2, 7-9, 14, 15, SEE ALSO EXHIBIT "A", PAGE 32, RT EXCERPT 196, LINES 17-23, 25-28. SEE ALSO, EXHIBIT "A", PAGE 33, RT EXCERPT 197, LINES 1, 4, 7, 8, 10, 16-20. SEE ALSO EXHIBIT, A, PAGE 34, RT EXCERPT 198, LINES 3, 6, 8-17, 21-23, 25, 27, 28.] THE COURT:

24

BEFORE WE GO DOWN HIS LIST OF COMPLAINTS, MR. ADAIR: WELL, PART OF IT

IS MR. BURTON HAS BEEN DOING A LOT OF RESEARCH ON HIS OWN IN THE

LAW LIBRARY AND HAS A LOT OF LEGAL THEORIES AS FAR AS WHY THE

CASE SHOULD BE DISMISSED. THE COURT: WHY DON'T WE GO, THEN TO

THE ISSUES HE'S RAISED, AND IF YOU COULD BRIEFLY RESPOND, HE FIRST

RAISED. THE COURT: -- MEETING WITH HIM, AND SO DO YOU HAVE ANY TYPE OF

ESTIMATE TO -- SINCE YOU CAME ON THE CASE BACK IN NOVEMBER, (04) DO YOU

HAVE ANY WAY TO ESTIMATE HOW OFTEN YOU'VE EITHER MET FACE TO FACE

OR BY. MR. ADAIR: I DON'T KNOW -- I DON'T KNOW HOW MANY TIMES ON THE

TELEPHONE WE'VE TALKED, I DID NOT TALK TO HIM MONDAY BECAUSE

I -- AFTER WE TRAILED THE CASE FOR TWO DAYS, I HAD TO LEAVE

IMMEDIATELY TO MAKE AN APPOINTMENT DOWNTOWN." HE WAS NOT IN THE

COURTROOM FOR THE TRIALING". THE COURT: HE INDICATES THAT -- INSUFFICIENT,

MR. ADAIR: WELL, THE THREATS ON THE CELL PHONE -- I HAVE NOT CHECKED

ON THAT. BUT MY UNDERSTANDING WOULD BE ANY CONVERSATION WITH THREATS

WOULD HAVE BEEN RECORDED ON SOME SORT OF VOICE MAIL THAT WOULD HAVE.

THE COURT: "HE'S RAISED THE ISSUE ABOUT FORENSIC TESTING" -- AGAIN

I CAME ON THE CASE SIX -- APPROXIMATELY SIX MONTHS, SEVEN, EIGHT

MONTHS -- EIGHT MONTHS LATER. AND AT LEAST "IN MY MIND" -- IT WOULD

APPEAR THAT ANY ATTEMPT TO DO LUMINAL TESTING OR WHATEVER

WILL NOT BE PRODUCTIVE. SEE. EXHIBIT A, PAGE 63, RT EXCERPT 252,

LINES 18-26-28, ALSO SEE EXHIBIT "A", PAGE 64, RT EXCEPT 253, LINES 1,19,

23,24, SEE EXHIBIT "A" PAGE 67, RT EXCERPT 256, LINES 4,5,10,16, SEE EXHIBIT A, PAGE

69, RT EXCERPT 258, LINES 6-13,15,16,27,28, SEE ALSO EXHIBIT "A" PAGE 70, RT EXCERPT

259, LINES 1-9, 13-15, 21,22, 27,28, SEE EXHIBIT A, PAGE 71, RT EXCERPT 260, LINES

1-8, 13,16-24, SEE EXHIBIT "A", PAGE 71, RT EXCERPT 261, LINES 18-22, SEE EXHIBIT "A" PAGE

73, RT EXCEPT 263, LINES 1-13, 15-17, 28, SEE EXHIBIT A, PAGE 74, RT EXCERPT 264, LINES 1,9,15,20-28,

1. SEE EXHIBIT "A", PAGE 75, RT. EXCERPT 265, LINES 1, 2, 9-13, 15, 16, 20-22, SEE
2. EXHIBIT "A", PAGE 76, RT EXCERPT 266, LINES 3-7, 16, 17, 21, 22, 25-28, SEE
3. EXHIBIT "A", PAGE 77, RT. EXCERPT 267, LINES 1, 2, 6-28, SEE EXHIBIT "A", PAGE 78, RT
4. EXCERPT 268, LINES 11, 14, 16, ( STARTING WITH EXHIBIT "A" PAGE 63, RT EXCERPT 252 LINE 16)
5. (MARSDEN HEARING 6-01-05) THE COURT: WHY DO YOU THINK HE (MR. ADAIR) SHOULD
6. BE DISCHARGED AS YOUR ATTORNEY OF RECORD? THE DEFENDANT: I HAVE RECKLESS
7. (NEGLIGENT) MISREPRESENTATION - CONFLICT OF INTEREST -- PERTAINING TO
8. MY SIXTH AMENDMENT RIGHTS, FROM WHAT I UNDERSTAND, NO ONE CAN PREVENT A
9. CLIENT FROM HAVING CONTACT WITH HIS ATTORNEY. THE COURT: GO AHEAD.
10. THE DEFENDANT: -- I BELIEVE, (MR. ADAIR) PREJUDICED THE COURT AGAINST ME.
11. THE DEFENDANT: SIR. HE CAME TO YOU, HE MANIPULATED ME TO GET A PEREMPTORY
12. CHALLENGE, THE COURT: -WAS A PEREMPTORY CHALLENGE FILED IN THIS CASE?
13. MR. ADAIR: IT WAS, YOUR HONOR. THE COURT: AGAINST WHO? MR. ADAIR: AGAINST JUDGE
14. THE COURT: HANOIAN? MR. ADAIR: HANOIAN, YES, YOUR HONOR. STATEMENT OF
15. RELEVANT FACTUAL BACK GROUND - JUDGE HANOIAN, WAS THE PRESIDING JUDGE
16. OVER DEFENDANTS PRELIMINARY HEARING WHO BOUND PETITIONER OVER FOR TRIAL.
17. PETITIONER DOESN'T BELIEVE HE COULD BE CONSTITUTIONALLY CHALLENGED
18. AFTER DEFENDANT HAD PREVIOUSLY BEEN IN HIS COURT. THE DEFENDANT: (EXHIBIT "A", RT.
19. EXCERPT 258, LINES 6-13, 15, 16, 27, 28) I FELT THAT THE COURT ERRORED AND
20. VIOLATED MY SIXTH AMENDMENT RIGHTS, THE JUDGE (HON L. HALGREN) ALSO
21. VIOLATED MY 14TH RIGHTS TO DUE PROCESS, AND WHEN YOUR DUE PROCESS IS
22. VIOLATED, FROM MY UNDERSTANDING, I'D LIKE TO MOTION THE COURT TO
23. RELEASE ME FROM CUSTODY. I HAVE BEEN UNLAWFULLY DETAINED.
24. THE COURT: NOW, MR. BURTON, -- WE'RE NOT HERE ON UNLAWFUL DETENTION
25. OR PRO PER RIGHTS, THE COURT: OKAY, ALL RIGHT. ANYTHING FURTHER?
26. THE DEFENDANT: YES, ALSO MR. ADAIR HAS BEEN MY ATTORNEY FOR APPROX-
27. IMATELY SIX MONTHS, HE HAS FAILED TO GATHER MEDICAL EVIDENCE WHICH
28. WOULD SUPPORT MY DEFENSE. I HAVE WITNESSES THAT I WANT

1  SUBPOENAED. HE HAS BASICALLY, I FELT, GIVEN ME AN INEFFECTIVE

2  ASSISTANCE, THERE IS EVIDENCE THAT THE PROSECUTION IS SUPPRESSING

3  THAT THE DEFENSE NEEDS TO EXAMINE -- THAT I WANTED

4  TESTED FOR ILLEGAL SUBSTANCES AND ALCOHOL -- THE

5  COMMUNICATION IS VERY POOR. THERE ARE PHONE CALLS THAT HAVE

6  NOT BEEN ACCEPTED WHEN I WOULD CALL. THE COURT: HOW

7  MANY ATTORNEYS HAVE YOU ALREADY HAD, MR. BURTON? THE DEFENDANT:

8  WELL SIR, VIC ERIKSEN WAS THE FIRST AND HE HAD A CONFLICT

9  BECAUSE HE REPRESENTED MR. THOMAS, I SAT IN JAIL FOR TWO WEEKS

10  AND HAD NOT MET WITH AN ATTORNEY. THE NEXT ATTORNEY WAS MR. PL-

11  UMMER - BECAUSE HE DID A MOTION, FRUIT OF THE POISONOUS TREE -

12  - BEGIN WITH A MIRANDA (5TH, AND 6TH AMENDMENT) VIOLATION -- A

13  FOURTH AMENDMENT VIOLATION. --"ALL ITEMS SEIZED", WHICH

14  DEEMED THE MOTION TO BE AN -- I WAS THEN ASSIGNED AN

15  ATTORNEY NEWTON -- (ALLEGED) CODEFENDANT AND HE REPRESENTED

16  HIM THE DAY OF MY PRELIMINARY HEARING -- CONFLICT OF

17  INTEREST AND THEN I WAS ASSIGNED MR. ADAIR. THE COURT: ANYTHING

18  ELSE ON YOUR MARSDEN HEARING, ON YOUR MARSDEN MOTION? THE COURT:

19  MR. ADAIR, PLEASE RESPOND, AMONG OTHER THINGS, TO THE COMMUNICATION

20  ALLEGATION AND THE THIRD PARTY AND THE ACCUSATION THAT YOU'RE

21  SEEKING TO INTRODUCE EVIDENCE THAT HAS OTHERWISE BEEN

22  EXCLUDED, IF I UNDERSTAND CORRECTLY? MR. ADAIR: AS FAR AS

23  COMMUNICATION, YOUR HONOR, - BE MORE SPECIFIC, I DON'T HAVE

24  THE DATES & HAVE MET WITH MR. BURTON WITH ME, I DON'T HAVE THEM IN AN

25  ORGANIZED FASHION. AS FAR AS TRYING TO INTRODUCE EVIDENCE THAT

26  HAS BEEN SUPPRESSED, -- CONCERNING DIFFERENT THINGS AND MY RESPONSE

27  TO THEM, THE COURT: I'M NOT SURE I FOLLOW YOU, AS TO EVIDENTIARY

28  MATTERS, DISAGREEMENTS BETWEEN THE TWO OF YOU ON EVIDENTIARY MATTERS

27

1  MR. ADAIR: PRETTY MUCH, YOUR HONOR. THE COURT: I ACKNOWLEDGE THAT

2  THERE MAY BE DISAGREEMENTS AS TO EVIDENTIARY MATTERS,

3  THAT GOES TO THE ATTORNEY/CLIENT RELATIONSHIP. I AM MOST

4  CONCERNED ABOUT THE ACCUSATION OF THE COMMUNICATION --AND

5  THE ACCUSATION THAT YOU ARE NOT WORKING IN HIS BEST

6  INTEREST BY SEEKING TO INTRODUCE EVIDENCE OR ASSISTING THE

7  DISTRICT ATTORNEY, MR. ADAIR; -- HE WANTS CERTAIN THINGS

8  DONE. THE COURT: ANYTHING FURTHER MR. BURTON? THE DEFENDANT:

9  YES, SIR, YOUR HONOR, THE ISSUE -- EVIDENCE. --COMMUNICATION.

10 THE COURT: ALL RIGHT, MR. ADAIR: WE DID SUBPOENA A NUMBER

11 OF RECORDS. THE COURT: NOW MR. ADAIR, THIS MATTER WAS SENT

12 OUT FOR TRIAL A COUPLE OF MONTHS AGO AND IT WAS ON THE EVE

13 OF THAT TRIAL OR THE DAY OF THAT TRIAL THAT CRIMINAL PROCEE-

14 DINGS WERE SUSPENDED; SO IS IT A FAIR ASSUMPTION TO SAY

15 THAT YOU WERE PREPARED FOR TRIAL AT THAT TIME? MR. ADAIR: I

16 BELIEVE SO, YOUR HONOR, YES, SIR THE COURT: AND ERGO, YOU WILL

17 BE PREPARED FOR A FUTURE TRIAL DATE. MR ADAIR: YES SIR.

18 THE COURT: NOW, MR. BURTON, -- THE DEFENDANT: MY POINT IS, YOUR

19 HONOR, THAT I'M INNOCENT OF ALL CHARGES, THE COURT: OKAY, FINE,

20 NOW STOP. MR. ADAIR IS OBLIGATED TO COMMUNICATE WITH -- ALSO

21 OBLIGATED TO GIVE YOU THE BENIFIT OF HIS PROFESSIONAL OPINION, --

22 YOU HAVE CHOSEN TO PLEAD NOT GUILTY AND MAINTAIN YOUR INNOCENCE,

23 SO YOU HAVE THE ABSOLUTE RIGHT TO DO SO. THE COURT: ANYTHING

24 FURTHER MR. BURTON? THE DEFENDANT: THE PROBLEM IS, SIR, THAT I WAS

25 UNLAWFULLY ARRESTED AND DETAINED. THE COURT: I DON'T WANT TO GO

26 INTO THE FACTS OF THE CASE -- THERE IS NO BASIS TO DISCHARGE MR. ADAIR

27 AT THIS TIME --YOUR MOTION TO DISCHARGE HIM AS YOUR ATTORNEY OF RECORD

28 IS DENIED. --NOW, WE WILL BE OPEN AGAIN TO THE DISTRICT ATTORNEY.

1   WE ARE AGAIN IN SESSION, PRESENT IS THE DISTRICT ATTORNEY, MR.

2   TROCHA. THE PURPOSE OF THE HEARING NOW IS TO SET A TRIAL DATE

3   AFTER CRIMINAL PROCEEDINGS HAVE BEEN REINSTATED. THE TRIAL

4   WILL BE-- THREE DAYS REMAINING. IF YOU WANT IT ON THE 19TH. I CAN

5   DO THAT WITH OR WITHOUT A TIME WAIVER. MR. ADAIR: HE'D PREFER NOT

6   TO WAIVE TIME, THE COURT; ALL RIGHT. YOU STILL WANT IT ON THE

7   19TH, MR. ADAIR? MR. ADAIR: YES, SIR. THE COURT: WITH THREE DAYS

8   REMAINING? MR. ADAIR: YES, SIR. THE COURT: TUESDAY, JULY 19TH, 9 O'CLOCK

9   A.M. IN THIS DEPARTMENT. MR ADAIR: ALSO, THERE MAY BE, AS WE

10  DISCUSSED, THERE MAY BE SOME RECORDS THAT I HANDED TO THE

11  COURT PURSUANT TO A SUBPOENA, IF THOSE COULD BE RELEASED

12  TO ME? THE COURT: WHO ARE THEY FROM? MR. ADAIR: THEY'RE

13  MR. BURTONS MEDICAL RECORDS. MR. TROCHA: "THEY'RE THE (ALLEGED)

14  VICTIM'S POLICE RECORDS, THE COURT; WELL, SEE EXHIBIT "A", PAGE

15  80, RT EXCERPT 797, LINES 1-11.7 THE COURT: (HON.L. HALGREN) ALL RIGHT.

16  SO YOU HAVE YOUR FRAME WORK AS TO WHAT YOU CAN DO. MR. ADAIR: YES,

17  YOUR HONOR, THE COURT: I THINK-- MR. ADAIR: IT'S FUN BEING A PROSECUTOR.

18  THE COURT: IT DOES PUT YOU IN A DIFFERENT ROLE, DOESN'T IT? ALL RIGHT,

19  LET'S TALK ABOUT EXHIBITS. WE DON'T REALLY IN MY VIEW NEED TO

20  DO THIS ON THE RECORD BECAUSE WE WILL DO A MORE FULL INSTRUCTION

21  REVIEW ON THE RECORD AT THE END OF THE CASE. SEE EXHIBIT A, PAGE

22  81, RT EXCERPT 0358 (7-19-05) SEE AT 10:00 AM. COURT IS AGAIN IN SESSION

23  WITH ALL PARTIES PRESENT AS NOTED PREVIOUSLY, ATTORNEY ADAIR REQUESTS

24  THAT MOTIONS THE DEFENDANT "PREVIOUSLY FILED, WITHOUT THE KNOWLEDGE OF

25  ATTORNEY ADAIR BE ACCEPTED. THE MOTION IS DENIED. ~~SEE EXHIBIT "D" PAGE 27, RT~~   Error EωB

26  ~~EXERPT 0359 (7-19-05, FIRST DAY OF TRIAL PRIOR TO JURY BEING SWORN FOR CAUSE) STATES~~ Error EωB

27  ~~ATTORNEY ADAIR MAKES A REQUEST FOR THE 911 TAPES, THE PEOPLE INDICATE THAT THERE WAS~~ Error EωB

28  ~~NEVER A REQUEST AND THE TAPES WERE RECORDED OVER. ATTORNEY ADAIR MAKES A MOTION~~ Error EωB

1  TO DISMISS BASED ON DESTRUCTION OF EVIDENCE THAT SHOW THE DEFENDANTS

2  INNOCENCE. THE MOTION IS DENIED.; ATTORNEY ADAIR MAKES A DISCOVERY

3  MOTION FOR PRODUCTION OF VIDEO FROM THE POLICE CAR, THE MOTION

4  IS DENIED (SHOWING DEFENDANTS ARREST FROM OFFICER KIRKS AND HOLMES

5  POLICE VEHICLES) THAT PROVES THE FACT THAT DEFENDANTS 14TH

6  AMENDMENT RIGHTS WERE VIOLATED BY THE POLICE IN HIS

7  REASONABLE EXPECTATION OF PRIVACY IN HIS PRIVATE RESIDENTIAL

8  PLACE, WARRANTLESSLY SEIZED, IN HIS PERSON, HOME AND VEHICLE.

9  BOTH OF WHICH AT THE TIME OF HIS ARREST, HE WAS NOT NEAR, NOR

10  IN. SEE EXHIBIT "D". PAGE 19, RT. EXCERPT 164, LINES 21-28 THE COURT: AND

11  LET'S TURN TO DEFENSE MOTIONS. AND LOOKING FIRST AT THE MOTION

12  TO SUPPRESS DEFENDANT'S (ALLEGED) ADMISSIONS OR -- THE AUDIO

13  INTERVIEW. AND AS I UNDERSTAND IT, AT THIS POINT, THE PEOPLE ARE NOT

14  PLANNING TO PRESENT IT, THOSE STATEMENTS (ALLEGED) IN THEIR CASE-

15  IN-CHIEF; IS THAT CORRECT? MS HANNAH: IT IS, THE COURT: ALL

16  RIGHT. SEE NOW EXHIBIT "D" PAGE 20, RT EXCERPT 165, LINES 4-10, 13-19 >

17  THE COURT: ALL RIGHT, IN LIGHT OF THAT, I DON'T THINK I NEED TO

18  RULE ON THE MOTION. DO YOU AGREE? MR. ADAIR: I BELIEVE THAT'S

19  CORRECT, YOUR HONOR. THE COURT: ALL RIGHT. DO YOU ANTICIPATE

20  ANY MOTION OR -- I DON'T SEE ANYTHING HERE THAT WOULD GO TO

21  BARRING PEOPLE'S -- SUCH AS VOLUNTARINESS, WHICH I -- MR. ADAIR: I

22  BELIEVE MY CLIENT WHO WOULD BRING A FURTHER ISSUE CONCERNING

23  VOLUNTARINESS -- HIS POSITION IS THAT HE WAS, IN ESSENCE TORTURED.

24  THAT HE WAS PUT IN A PAPER SUIT, THAT HE WAS BARE FOOT, THAT

25  HE WAS REFUSED THE RIGHT TO CALL AN ATTORNEY, AND THAT

26  THERE WERE OTHER INFLICTIONS OF DISCOMFORT AND DISTRESS --

27  THE COURT: ALL RIGHT. SEE EXHIBIT "D", PAGE 21 RT EXCERPT 166, LINES,

28  8-10 THE COURT: "VOLUNTARY" ALSO HAS A LAY MEANING THAT MIGHT

30.

1  BE VIEWED A LITTLE DIFFERENT BY MR. BURTON BECAUSE OBVIOUSLY
2  HE WAS IN CUSTODY AND PROBABLY DIDN'T FEEL HE WAS FREE TO
3  LEAVE. SEE EXHIBIT "D", PAGE 41, RT EXCERPT 33 LINES, 15-28, AND ALSO SEE
4  EXHIBIT "D" PAGE 42, RT EXCERPT 34, LINES 1-5, SEE EXHIBIT D, PAGE 43, RT EXCERPT,
5  35, LINES 1-8,10-19,21,22, 24-28, SEE ALSO EXHIBIT D," PAGE 44, RT EXCERPT 36,
6  LINES 1-7, 9-11,15-17, SEE EXHIBIT "D", PAGE 45, RT EXCERPT 37, LINES 5,13,15-
7  17, 20-24, SEE ALSO EXHIBIT D," PAGE 46, RT EXCERPT 38, LINES 8-18, 21-27,
8  SEE ALSO EXHIBIT "D" PAGE 47, RT EXCERPT 39, LINES 4-6, 19-25, 28, SEE ALSO
9  EXHIBIT "D", PAGE 48, RT EXCERPT 40, LINES 1-5, 8-11, 19-25, 27, 28. SEE EXHIBIT
10 "D" PAGE 49, RT EXCERPT 41 LINES. 1-28, SEE EXHIBIT "D", PAGE 50, RT EXCERPT 42,
11 LINES, 1-3, 7-23, SEE EXHIBIT D," PAGE 51, RT EXCERPT 43, LINES, 1-5, 9-14,
12 20-26 7 DIRECT EXAMINATION (1538.5 HEARING ON OR ABOUT 1-31-05) BY
13 DA. MS. HANNAH Q. OFFICER HOLMES, WHERE ARE YOU EMPLOYED? A. POLICE
14 OFFICER WITH THE CITY OF EL CAJON, Q. HOW LONG HAVE YOU BEEN SO
15 EMPLOYED? A. THREE YEARS. Q. WERE YOU WORKING ON MARCH 19TH OF
16 THE YEAR 2004? A. I WAS. Q. DO YOU RECALL WHAT SHIFT YOU
17 WERE WORKING? A. DAY SHIFT, PATROL. Q. DID YOU RECEIVE A DISPATCH
18 CALL OR RESPOND TO DISPATCH CALL TO REPORT TO 425 EAST MAIN
19 STREET? A. I DID. Q. DID YOU, IN FACT RESPOND TO THAT ADDRESS?
20 A. YES Q. DO YOU RECALL APPROXIMATELY WHAT TIME YOU RESPONDED
21 TO THAT LOCATION? A. I DON'T RECALL THE TIME OFFHAND, I KNOW
22 IT WAS THE AFTERNOON. BY MS HANNAH: Q. OFFICER HOLMES, WHEN YOU
23 ARRIVED AT THAT LOCATION, WERE YOU ALONE OR WITH A PARTNER? A. I
24 WAS ALONE AT THAT TIME. Q. WHEN YOU ARRIVED WERE THERE OTHER
25 POLICE OFFICERS ARRIVING AT THE SAME TIME OR WERE YOU THE
26 FIRST TO ARRIVE? A. I WAS THE FIRST. Q. WHEN YOU ARRIVED AT 425
27 EAST MAIN STREET, DID YOU IMMEDIATELY SEE THE DEFENDANT? A. YES,
28 Q. COULD YOU DESCRIBE TO US WHERE HE WAS AND WHAT HE WAS DOING?

1   A. HE WAS -- COMPLEX -- HE WAS STANDING DIRECTLY -- IF YOU

2   DROVE STRAIGHT DOWN THE DRIVEWAY, DIRECTLY OUT IN FRONT OF ONE

3   OF THE APARTMENTS. Q. WAS HE INSIDE A VEHICLE OR OUTSIDE A

4   VEHICLE? A. NO, HE WAS OUTSIDE. Q. DID YOU NOTICE HOW CLOSE

5   HE WAS OR WHETHER OR NOT HE WAS STANDING CLOSE TO A VEHICLE?

6   A. -- THERE WERE VEHICLES IN THE PARKING LOT, BUT I WASN'T

7   REALLY, AT THAT POINT IN TIME, PAYING ATTENTION TO ANY VEHICLES

8   IN PARTICULAR. Q. WHEN YOU SAW THE DEFENDANT, WHAT DID YOU DO?

9   A. I CONDUCTED WHAT WE WOULD CALL A PEDESTRIAN HOT STOP.

10  Q. CAN YOU PLEASE DESCRIBE FOR THE COURT WHAT THAT IS?

11  A. BASICALLY, JUST GIVING HIM DIRECTION AT GUN POINT. Q. WHEN YOU

12  DID THIS, HAD OTHER OFFICERS ARRIVED AT THE SCENE A. YES.

13  Q. WHEN YOU GAVE THESE INSTRUCTIONS, DID THE DEFENDANT RESPOND?

14  A. YES BY MSCHANNAH; Q. WHAT INSTRUCTIONS DID YOU GIVE HIM? A. FROM

15  ME, I HAD HIM KNEELING DOWN, PUT HIS HANDS BEHIND HIS HEAD AND

16  SPREAD HIS KNEES ACROSS HIS ANKLES SO THAT HE WAS IN A

17  POSITION WHERE HE COULDN'T EASILY MOVE. Q. AT SOME POINT

18  DID YOU PLACE THE DEFENDANT INTO HAND CUFFS? A. I DID NOT, BUT

19  HE WAS PLACED INTO HAND CUFFS. Q. DID YOU OBSERVE THAT HAPPENING?

20  A. YES. Q. HOW LONG AFTER YOU ARRIVED DID YOU ESTIMATE THAT

21  YOU PLACED THE DEFENDANT INTO CUSTODY? A. AS FAR AS PUTTING

22  HAND CUFFS? Q. YES A. PROBABLY WITHIN 10, 15 SECONDS. Q. DID

23  YOU OBSERVE ANY OTHER PERSONS AROUND THE DEFENDANT'S

24  LOCATION EITHER BEFORE OR AFTER THE DEFENDANT WAS PLACED

25  INTO HAND CUFFS? A. YES. Q. WHO DID YOU NOTICE? A. THERE WAS

26  A SUBJECT WHO HAD LATER BEEN Q. WHAT HAPPENED TO THAT

27  SECOND INDIVIDUAL? A. I TOLD HIM TO REMAIN WHERE HE WAS

28  WHILE I WAS GIVING MR. BURTON DIRECTIONS, AND HE STOOD BY

32

1  WITH HIS HANDS IN THE AIR WHILE WE SECURED MR. BURTON

2  IN HANDCUFFS. Q. AFTER MR. BURTON WAS PLACED INTO HANDCUFFS,

3  DID AN AGENT OR OFFICER KIRK ARRIVE? A. YES. Q. CAN YOU TELL

4  US WHAT YOU OBSERVED OR HEARD? A. AS I WAS WALKING MR. BURTON

5  TO THE PATROL CAR, AGENT KIRK ASKED HIM WHERE THE (ALLEGED)

6  WEAPON WAS OR THE (ALLEGED) GUN WAS. I Q. DID YOU HEAR

7  AGENT KIRK ASK THE DEFENDANT IF HE COULD SEARCH THE RESIDENCE?

8  A. I DID NOT. Q. WERE YOU THE OFFICER THAT TRASPORTED THE

9  DEFENDANT TO EL CAJON POLICE STATION? A. YES. Q. WHEN DID THAT OCCUR?

10 A. WITHIN A FEW MINUTES OF PLACING HIM UNDER ARREST, I THINK I

11 GOT SOME INFORMATION FROM THE OTHER SUBJECT WHO WAS

12 THERE WITH HIM. Q. WHEN YOU TRANSPORTED THE DEFENDANT TO

13 THE POLICE STATION DID YOU PROCESS THE DEFENDANT? A. YES.

14 Q. AT SOME POINT DID YOU INDICATE TO THE DEFENDANT THAT

15 ANOTHER OFFICER WOULD THEN COME IN AND SPEAK WITH HIM?

16 A. I DID. Q. OFFICER HOLMES, AT THE POLICE STATION YOU INDICATED

17 THAT YOU TOLD THE DEFENDANT ANOTHER OFFICER WOULD SPEAK

18 TO HIM; IS THAT CORRECT? A. YES. Q. UPON INFORMING THE

19 DEFENDANT THAT ANOTHER OFFICER WOULD BE IN TO SPEAK WITH

20 HIM, DID THE DEFENDANT HAVE A RESPONSE? A. YES. HE DID. Q. DO YOU

21 REMEMBER WHAT HIS REPLY WAS? A. HE TOLD ME THAT HE WOULD

22 LIKE TO SPEAK TO AN ATTORNEY AND EXERCISE HIS 5TH AMENDMENT

23 RIGHT. Q. DID HE USE THAT LANGUAGE SPECIFICALLY CONCERNING

24 "MY 5TH AMENDMENT RIGHTS"? A. YES HE DID. MS. HANNAH: THANK YOU,

25 NOTHING FURTHER. THE COURT: MR. ADAIR. MR. ADAIR: THANK YOU, YOUR

26 HONOR. CROSS EXAMINATION BY MR. ADAIR: Q. OFFICER, YOU ARRIVED

27 AT THE LOCATION WHERE MR. BURTON WAS; CORRECT? A. CORRECT. Q. I

28 TAKE IT YOU WERE THE FIRST OFFICER OUT OR ON THAT SCENE; CORRECT?

MR. E.W. BURTON #E02320   IN PROPER
P.O. BOX 5246-CSATF/SP, C1-132L
CORCORAN, CA. 93212

1  A. CORRECT. Q. I TAKE IT YOU WERE THE FIRST OFFICER OUT SNOPER

2  Q. YOU HAD YOUR GUN OUT? A. EVENTUALLY EVENTUALLY, YES. Q. MR. BURTON WAS

3  THERE WITH HIS HANDS UP AT SOME POINT? A. CORRECT. Q. WAS

4  IT THAT POINT WHERE THE OTHER OFFICERS STARTED TO ARRIVE?

5  A. CORRECT, AND THE PROCESS I DIDN'T EXACTLY SEE BECAUSE I

6  WAS FOCUSED ON HIM, BUT THEY WERE ARRIVING DURING THAT

7  PROCESS, YES. Q. YOU SAID THAT YOU DIDN'T HANDCUFF HIM BUT

8  SOMEBODY ELSE DID? A. CORRECT. Q. AND DID YOU STILL HAVE

9  YOUR GUN OUT COVERING MR. BURTON AT THAT TIME? A. YES

10  Q. WHOSE RESPONSIBILITY WAS MR. BURTON AT THAT TIME? A. I WOULD

11  SAY MINE. Q. AND DID YOU STAY WITH MR. BURTON TO MAKE SURE THAT

12  HE DIDN'T DO ANYTHING THAT WOULD BE DANGEROUS TO THE OFFICERS

13  OR ANYBODY ELSE? A. I GUESS I'M NOT UNDERSTANDING YOUR

14  QUESTION. Q. ALL RIGHT, PUT IT SIMPLY, YOU WERE STILL WATCHING

15  MR. BURTON VERY CLOSELY; A. -- I MEAN, THERE WERE TWO OTHER

16  OFFICERS ON THE SCENE, SO IT WASN'T THAT I WAS DIRECTLY

17  STANDING THERE WATCHING HIM FOR 100 PERCENT OF THE TIME; THERE

18  WERE OTHER THINGS THAT WERE GOING ON AT THAT TIME, ONCE

19  HE WAS SECURED. Q. DID YOU PUT MR. BURTON IN YOUR PATROL

20  VEHICLE? A. YES Q. WHEN HE WAS IN YOUR PATROL CAR, WERE YOU THERE

21  WITH HIM? A. THE ENTIRE TIME HE WAS IN PATROL CAR? Q. YES A. I DON'T

22  RECALL Q. WERE THE WINDOWS DOWN IN YOUR PATROL CAR? A. -- BUT

23  I CAN'T SPECIFICALLY RECALL THAT DAY. Q. AND I BELIEVE YOU

24  TESTIFIED THAT YOU'VE WALKED MR. BURTON TO THE PATROL VEHICLE;

25  CORRECT? A. CORRECT. Q. WHEN DID YOU WRITE YOUR REPORT? MORE WAS

26  Q. AND I BELIEVE YOU TESTIFIED TO THE FACT THAT YOU NEVER

27  HEARD OR DID YOU EVER HEAR AGENT KIRK TALKING TO MR. BURTON A.

28  YES, I DID. Q. WHAT WAS SAID? A. THE PORTION THAT I HEARD WAS HIM

29  ASKING MR. BURTON WHERE THE (ALLEGED) WEAPON WAS.

MR. CARLOS TROCHA #J72729 IN PROPER
P.O. BOX 5246-CSATF/SP-C1-132L
CORCORAN, CA. 93212

1   STATEMENT OF FACTS - SEE EXHIBIT "B", PAGE 65, RT EXCERPT 897, LINES 12-

2   14, 16-28, SEE ALSO EXHIBIT "B", PAGE 66, RT EXCERPT 898 LINES 1-3, 11-28,

3   SEE EXHIBIT "B", PAGE 67, RT EXCERPT 899, LINES 1-24, SEE EXHIB, T.B, PAGE

4   68, RT EXCERPT 901, LINES 15-28, ALSO SEE EXHIBIT "B" PAGE 69, RT EXCERPT 902,

5   LINES 1-13, 19, 20, 24 SEE EXHIBIT "B", PAGE 70, RT EXCERPT 903, LINES 9, 10, 13-

6   14, 19, 20, 27, 28, SEE EXHIBIT "B" PAGE 76, RT EXCERPT 908, LINES 1, 16-28.

7   SEE ALSO EXHIBIT "B", PAGE 61, RT EXCERPT 892 (DATED 7-25-05), LINES 1-17, 20-

8   28.] THE COURT: OKAY, MR. TROCHA, ANYTHING ADDITIONAL THAT YOU WANTED

9   TO SAY AS TO THE ISSUES RELATING TO THE POLICE REPORTS AND ALSO

10  DEFENDANT'S · MR. TROCHA, YES, YOUR HONOR, FIRST, WITH THE POLICE REPORTS,

11  MY ORIGINAL COMMENTS CAN STAND ON THEM IN THAT REGARD, BUT TO ADD

12  TO IT THE MAIN PROBLEM WE ALSO HAVE WITH THESE POLICE REPORTS

13  GOES TO THE TRUSTWORTHINESS PRONG SHOULD THE COURT EVEN BEGIN

14  TO SEE THEM AS BUSINESS RECORDS, WHICH THEY AREN'T, THEY

15  AREN'T RECORDS FROM A BUSINESS. YES, THE POLICE ARE MANDATED TO

16  TAKE REPORTS, BUT THEY'RE NOT BUSINESS RECORDS OR OFFICIAL

17  RECORDS IN THE FACT THAT THEY'RE MADE IN PREPARATION OF TRIAL.

18  THEY'RE ALSO STOCKED FULL OF POLICE OFFICER'S OPINIONS, THOSE

19  OPINIONS ARE BASED OFF OF THIRD PARTY HEARSAY." IN THIS CASE WE

20  CAN'T TEST THE HEARSAY DECLARANT AT ALL BECAUSE THEY WON'T BE

21  IN COURT. IN ESSENCE, THE POLICE OFFICER SHOULD BE PRESENT IN COURT

22  FOR THE PEOPLE TO CROSS-EXAMINE IN THAT REGARD, -- NEVER

23  FACED CHARGES UPON THEM (PRIOR OFFENSE ALLEGATIONS) THEM, AND FROM

24  THE BEST I CAN TELL, WAS NEVER EVEN ARRESTED. I THINK THAT'S

25  COMPLETELY UNRELIABLE HEARSAY IN THIS CASE, THIS IS NOT A

26  BUSINESS RECORD EXCEPTION, IT'S NOT EVEN CLOSE." IT WOULD BE

27  AS IF SOMEONE FROM MY OFFICE WROTE THEIR OPINIONS AS TO MR. BURTON

28  --OR, IN ESSENCE, JUST PULL UP A BUNCH OF POLICE REPORTS IN THIS

35

MR. EUGENE HERRERA IN PRO PER
P.O. BOX 5246-CSATF/SP-C1-132L
CORCORAN CA. 93212

1  CASE WITHOUT PRESENTING ANY WITNESSES. MR. BURTON WOULD'NT HAVE ANY

2  CHANCE TO CROSS-EXAMINE THOSE WITNESSES, BUT BECAUSE WE THINK THEY'RE

3  RELIABLE, WE'RE GOING TO ADMIT THEM INTO EVIDENCE. ADDITIONALLY, THE FACT

4  THAT THEY'RE USED FOR IMPEACHMENT PURPOSES FOR -- THE FACTS OF THE

5  STATEMENTS COMING IN HAVE ALREADY COME IN. THE PAPERS IN WHICH

6  THEY'RE PRINTED ON THEMSELVES DO NOT COME INTO EVIDENCE, THEY NEVER HAVE.

7  THE PEOPLE URGES THE COURT TO STAY WITH THAT. THEY SHOULD NOT COME

8  INTO EVIDENCE BECAUSE THEY ARE NOT EVIDENCE. THEY ARE INADMISSIBLE

9  HEARSAY. REFERRING TO 1370, THE CODE SECTION MR. ADAIR HAS BROUGHT UP,

10  THAT CODE SECTION HAS BEEN JUST TORN APART BY CRAWFORD. WE'RE NOT

11  ALLOWED TO USE THAT-- THE COURT, I KNOW, BUT WE DON'T HAVE A

12  CRAWFORD ISSUE HERE. MR. TROCHA: WE DO IN THE FACT THAT CRAWFORD--

13  IT APPLIES TO ALL HEARSAY STATEMENTS. THE DECLARANT HAS TO BE AVAILABLE

14  FOR CROSS-EXAMINATION. IT'S NOT JUST FOR THE DEFENDANT TO CROSS-EXAMINE,

15  BUT FOR THE PEOPLE AS WELL, WHAT'S GOOD FOR THE GOOSE IS GOOD FOR

16  THE GANDER, THE COURT: WELL, THAT RAISES A GOOD POINT. UNDER WHAT

17  CONSTITUTIONAL AMENDMENT DOES CRAWFORD ARISE OUT OF, THE 5TH?

18  MR. TROCHA: IT COMES OUT OF THE 5TH AND 6TH. IT'S THE RIGHT TO CROSS-

19  EXAMINE WITNESSES, THE COURT: "BUT I THINK THAT'S THE DEFENDANT'S RIGHT."

20  MR. TROCHA: THE WAY WE READ CRAWFORD IS IF THE PEOPLE CAN'T GET IT IN,

21  THE DEFENDANT CAN'T GET IT IN EITHER, THERE'S NO HEARSAY EXCEPTION

22  SOLELY FOR DEFENDANTS, THE COURT: ALL RIGHT, THANK YOU, OKAY. GOING BACK

23  TO THE POLICE REPORTS AS BUSINESS RECORDS OR OFFICIAL RECORDS, I'M

24  NOT PERSUADED THAT THEY FALL WITHIN EITHER OF THOSE CATEGORIES,

25  THE PROBLEM IS THE TRUSTWORTHINESS STANDARD. I THINK YOU HAVE TO TAKE

26  A POLICE REPORT AS A WHOLE, AND YOU HAVE OFFICERS INVESTIGATING

27  THEY'RE GETTING INFORMATION FROM VARIOUS SOURCES, THEY'RE RECORDING

28  WHAT THEY SAW, WHAT THEY HEARD, WHAT THEY'RE TOLD, WHAT THEY'RE

MR. E.W. BURTON #F52770   ENMORE?
P.O. BOX 5246 - CSATF SF-1-122L
CORCORAN, CA 93212

1 TOLD ANOTHER PERSON SAID, IT HAS A WHOLE COMPILATION OF LAYERS OF

2 INFORMATION, AND I DON'T THINK WHEN YOU'RE LOOKING AT THE TRUSTWORTH-

3 INESS STANDARD FOR THE RECORD YOU CAN PICK AND CHOOSE AND SAY, "WELL,

4 CERTAIN PARTS OF IT MIGHT BE TRUSTWORTHY AND CERTAIN PARTS MIGHT

5 NOT," AND THEN SAY, "WELL, PART OF IT'S A BUSINESS RECORD AND PART OF

6 IT'S NOT." I THINK THAT TEST GOES TO THE WHOLE RECORD, EITHER

7 IT QUALIFIES AS A BUSINESS RECORD OR IT DOESN'T, AND FOR THAT

8 REASON I JUST DON'T SEE THIS AS FALLING INTO EITHER CATEGORY.

9 THE REPORTS ARE PREPARED FOR PURPOSES OF CRIME INVESTIGATION, FOR

10 DOCUMENTATION, FOR POSSIBLE PROSECUTION, THEY'RE PREPARED WITH A

11 MIND SET FROM A PROSECUTION AGENCY, WHICH I THINK IS DIFFERENT THAN

12 A GENERAL BUSINESS RECORD KEEP BY A TELEPHONE COMPANY OR A BANK

13 OR SOME OTHER INSTITUTION THAT NEEDS TO KEEP ACCURATE RECORDS

14 JUST FOR PURPOSES OF KEEPING RECORDS, NOT FOR BUILDING A CASE,

15 SO I DON'T SEE THAT THEY QUALIFY.--" I'M INTRIGUED BY THE CONCEPT

16 THAT CRAWFORD MIGHT APPLY TO THE PROSECUTION AS WELL.-- so Error Sub

17 IF THE OFFICER SHOWS UP AND IS PREPARED TO TESTIFY. Error Sub

18 MR. ADAIR: THANK YOU, THE COURT: -- AGAIN THAT WOULD BE A DOUBLE

19 LAYER OF HEARSAY, AND SINCE THE POLICE REPORTS DON'T QUALIFY AS A

20 BUSINESS RECORD OR OFFICIAL RECORD -- PARTICULARLY AT THE

21 CRAWFORD ISSUE. OKAY GOING BACK THEN TO THE OTHER POINTS --

22 I THINK, IS EVIDENCE CODE 1250, SEVERAL CASES THAT DID NOT ALLOW

23 A DEFENDANT'S STATEMENT. MR. TROCHA: YES, YOUR HONOR. I ACTUALLY -- DEFENSE,

24 WHERE IN THE PEOPLE ARE JUST SIMPLY NOT ALLOWED TO CROSS-EXAMINE

25 ANYONE VERSUS THE MENTAL STATE OF THE DEFENDANT, IN ESSENCE, WE WOULD

26 RUN INTO A GRIFFIN ERROR EVERY SINGLE TIME A CASE LIKE THIS CAME DOWN THE

27 PIPELINE. BECAUSE WE'D HAVE THREE WITNESSES UP THERE TALKING ABOUT

28 THE DEFENDANT'S MENTAL STATE OF WHICH THEY HAVE NO PERSONAL KNOWLEDGE,

MR. (ILLEGIBLE)
P.O. BOX 5246 CSATF/SP-C1-132L
CORCORAN, CA 93212

1  BECAUSE IT'S PARTICULAR TO THE DEFENDANT. IN ARGUMENT THE
2  ONLY THING I COULD BE LEFT WITH IS-- THE ONLY PERSON YOU'D
3  HEAR FROM ABOUT MENTAL STATE, WHO'S THE ONLY PERSON THAT'S
4  ACTUALLY QUALIFIED TO TESTIFY ABOUT WHAT HE WAS
5  THINKING AT THE TIME.> EL CAJON, CALIFORNIA; MONDAY, 7/25/05; 1:35
6  P.M. (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT OUT OF
7  THE PRESENCE OF THE JURY.) THE COURT: WE'RE ON THE RECORD. COUNSEL
8  AND DEFENDANT ARE PRESENT, JURY IS NOT PRESENT. I'VE REVIEWED THE
9  LAW ON A FEW OF THE ISSUES WE DISCUSSED BEFORE OUR BREAK.
10 DID EITHER COUNSEL WISH TO MAKE ANY ADDITIONAL COMMENTS?
11 STARTING WITH THE ISSUE OF 1250 OF THE EVIDENCE CODE. ANY ADDITIONAL
12 ARGUMENTS? MR. ADAIR: IF I COULD HAVE A MOMENT. IF YOU'RE TALKING
13 ABOUT SPECIFICALLY THE BUSINESS RECORDS EXCEPTION OR--
14 THE COURT: OR THAT AS WELL. ANY OF THE ARGUMENTS THAT YOU MADE
15 BEFORE HAND. MR. ADAIR: I DON'T--I WAS LOOKING AT ALR-- AGAINST
16 THE ADMISSION OF POLICE REPORTS. A LOT OF IT HAS TO DO WITH
17 THE RELIABILITY OF THE POLICE REPORTS, BY THE WAY, THE
18 FIRST THING PERHAPS TO KEEP IN MIND IS THAT GENERALLY
19 POLICE REPORTS DON'T COME IN AGAINST THE DEFENDANT
20 BECAUSE IT'S A DENIAL OF THE 6TH AMENDMENT RIGHT TO
21 CROSS-EXAMINE AND CONFRONT WITNESSES, ANOTHER REASON
22 WHY POLICE REPORTS DON'T COME IN IS BECAUSE THEY MAY NOT
23 BE TRUSTWORTHY. THEY MAY CONTAIN THE OBSERVATIONS AND
24 OPINIONS OF PEOPLE OTHER THAN THE-- SEE EXHIBIT 'D', PAGE 68, R.T
25 EXCERPT 820, LINES, 1-9, 12-27 THE DEFENDANT: MR. PLUMMER'S IN
26 LIMINE MOTION FOR THE FRUIT-OF-THE-POISONOUS-TREE BASED ON
27 THE (5TH AND 6TH AMENDMENT) MIRANDA VIOLATION THAT HAPPENED PRIOR
28 TO THE (14TH AMEND) 4TH AMENDMENT VIOLATION OF THE UNLAWFUL

28

P.O. BOX 5246 C SATF/SP-CI-132L
CORCORAN, CA. 93212

1  ENTRY, UNLAWFUL SEARCH AND SEIZURE, AS RULED BY JUDGE 8N018WB

2  PRECKEL AT 8N018WB. --- I'D LIKE TO CITE CASE PEOPLE VERSUS

3  TURNER, 1984 -- (          ) THE COURT: YOU'RE RELATING NOW

4  THE DEFENDANT -- I'M TALKING ABOUT (5TH AND 6TH AMENDMENTS) MIRANDA

5  VIOLATION, WHEREAS I WAS ARRESTED -- THE COURT: "WE'VE ALREADY

6  RULED THAT YOUR (ALLEGED) STATEMENTS AREN'T COMING IN,"

7  THE DEFENDANT -- FRUIT-OF-THE-POISONOUS-TREE MOTION WHERE

8  PROSECUTION CANNOT BENIFIT INDIRECTLY OR DIRECTLY FROM THE (5TH AND

9  6TH AMENDMENT'S) MIRANDA VIOLATION, WHICH HAPPENED PRIOR TO THE

10 UNLAWFUL ENTRY, THE COURT: LET ME STOP YOU RIGHT THERE

11 I KNOW THE GROUNDS OF THE MOTION -- ATTORNEY WAS INCOMPETENT OR

12 NOT PROPERLY REPRESENTING YOU? THE DEFENDANT YES, THE COURT:

13 ALL RIGHT. -- MOST OF THE COMPLAINTS YOU HAVE RAISED RELATE TO

14 ISSUES THAT AROSE BEFORE TRIAL. SEE EXHIBIT "D", PAGE 70, RT EXCERPT 45 LINES 21-26.

15 SEE EXHIBIT "D", PAGE 460 NOW 71, RT EXCERPT 46, LINES 25-28, SEE ALSO

16 EXHIBIT "D" PAGE 72, RT EXCERPT 47, LINES 14, AND 2 (1538.5 HEARING

17 APPROX. 1-31-05 OFFICER KIRK TESTIFYING) 7 THE COURT: PROCEED. BY MS. HANNAH:

18 Q. WHEN YOU ARRIVED AT THAT LOCATION, WHAT DID YOU FIND? A. OFFICER HOLMES

19 AND SEARGENT COIT WERE ALREADY ON THE SCENE. THERE WERE TWO BLACK

20 MALES, I BELIEVE, AT THAT -- Q. AFTER THE DEFENDANT WAS PLACED

21 INTO HANDCUFFS, DID YOU HAVE A CONVERSATION WITH THE DEFENDANT?

22 A. A SHORT CONVERSATION, YES, Q. WHAT WAS THE NATURE OF THAT

23 CONVERSATION? Q. WHEN YOU ASKED HIM ABOUT THE (ALLEGED) WEAPON, ABOUT

24 A -- A. I ASKED HIM WHERE THE (ALLEGED) WEAPON WAS. SEE EXHIBIT "D",

25 PAGE 73, RT. 48, LINES 3, 9, 10, 7 (BY OFFICER KIRK) A. I ASKED HIM WHERE

26 THE (ALLEGED) GUN WAS HE USED IN THE -- MR. ADAIR: OBJECTION YOUR HONOR

27 LEADING, THE COURT: OVERRULED, SEE EXHIBIT "D" PAGE 78, RT EXCERPT 53

28 LINES 1-21, 24, 25, 27, 28. (CROSS EXAMINATION OF AGENT KIRK BY MR. ADAIR.

39

MIKE M. BURTON #F-2723 IN PROPER
P.O. BOX 5276 - CSATF/SP. C1-132L
CORCORAN, CA. 93212

1  Q. ARE YOU ALSO A PATROL OFFICER OR-- A. WELL, AT THAT TIME I WAS

2  ACTUALLY ACTING SERGEANT. Q. AT THE TIME THAT YOU ARRIVED ON THE SCENE,

3  WAS MR. BURTON HANDCUFFED? A. HE WAS IN THE PROCESS OF BEING HANDCUFFED,

4  I BELIEVE. Q. SO YOU WERE THERE FAIRLY QUICKLY; CORRECT? A. YES, SIR.

5  Q. DO YOU REMEMBER A SECOND INDIVIDUAL BEING THERE ON THE SCENE THAT

6  WAS NOT A POLICE OFFICER? A. YES. Q. AND WHO WAS THAT OTHER

7  PERSON? A. I DON'T RECALL HIS NAME, BUT THERE WAS ANOTHER

8  BLACK MALE THERE. Q. WOULD IT BE FAIR TO DESCRIBE HIM AS A

9  YOUNGER MALE? A. YES. Q. YOUNGER THAN MR. BURTON? A. HE LOOKED TO BE,

10  YES. Q. DIDN'T YOU ASK THAT INDIVIDUAL, "WHERE IS THE (ALLEGED) GUN?"

11  Q. AND REFERRING TO THE YOUNGER BLACK MALE? A. CORRECT.

12  SEE EXHIBIT "D", PAGE 79, RT 54, LINES 1, 2, 12-24, SEE ALSO EXHIBIT "D"

13  PAGE 75, RT EXCERPT 50, LINES 9-11, 25, 26, SEE EXHIBIT "D" PAGE 76, RT EXCERPT 51

14  EXCERPT 51, LINES 5-17, 26-28 SEE EXHIBIT "D", PAGE 79, RT EXCERPT 54,

15  LINES 1, 2, 12-20, 22-24. BY MR. ERIOJ&UB ) BY MR. ADAIR: Q. DO YOU

16  REMEMBER THAT YOUNGER INDIVIDUAL STANDING NEAR THE DOORWAY TO THE

17  APARTMENT? SEE EXHIBIT "D", PAGE 74, RT. EXCERPT 49, LINES 6-14, SEE ALSO

18  EXHIBIT "D", PAGE 75, RT EXCERPT 50, LINES 9-11, 25, 26. SEE EXHIBIT "D", PAGE

19  76, RT EXCERPT 51, LINES 5-16-26-28, SEE EXHIBIT "D", PAGE 77, RT EXCERPT

20  52, LINES 1, 4-9 SEE EXHIBIT "D" PAGE 80, RT. EXCERPT 55, LINES 2-28, SEE

21  EXHIBIT "D" PAGE 81 RT EXCERPT 56, LINES 1-14. (BY MS. HANNAH) (AGENT KIRK

22  RESPONDING) Q. APPROXIMATELY WHERE WERE YOU STANDING IN REFERENCE TO

23  THE DEFENDANT WHEN YOU HAD THIS EXCHANGE? A. I WAS STANDING PROBABLY

24  ABOUT FIVE OR SIX FEET AWAY FROM HIM. Q. WHERE WAS THE DEFENDANT

25  POSITIONED WHEN YOU WERE ASKING THESE QUESTIONS? A. HE WAS STILL

26  IN THE PARKING LOT. Q. WAS HE STANDING? WAS HE SITTING?

27  A. I BELIEVE HE WAS SITTING. Q. WHEN YOU WENT INTO THE APARTMENT,

28  DID YOU FIND ANYTHING? A. YES I DID. Q. DID YOU SEARCH THE REST OF THE

#10

P.O. BOX 5246 - CSATF/SPC - 1326
CORCORAN, CA. 83212

1. APARTMENT? A. YES, I DID. Q. -- DID YOU SEARCH THE DEFENDANT'S VEHICLE?
2. A. YES, I DID. Q. AND DID YOU FIND ANYTHING INSIDE OF THE VEHICLE?
3. A. YES, I DID. Q. WAS THE DEFENDANT STILL PRESENT WHEN YOU SEARCHED
4. THE VEHICLE? A. -- I THINK HE HAD BEEN PLACED IN A VEHICLE.
5. Q. AGENT KIRK, YOU INDICATED THAT YOU DID SEARCH THE DEFENDANT'S CAR;
6. CORRECT? A. YES. Q. WHERE SPECIFICALLY INSIDE THE VEHICLE DID
7. YOU FIND ~~THESE SPECIFIED~~ THE ITEMS? A. THEY WERE INSIDE -- A BLACK POUCH
8. INSIDE THE GLOVE BOX. Q. DID YOU ALSO PHOTOGRAPH THESE ITEMS?
9. A. YES, I DID. Q. AND THEN DID YOU TAKE THESE ITEMS INTO CUSTODY OR
10. INTO EVIDENCE? A. YES, I DID. MS. HANNAH: THANK YOU, NOTHING FURTHER.
11. (CROSS EXAMINATION BY MR. ADAIR:) (AGENT KIRK RESPONDING) MR. ADAIR: Q. WOULD
12. IT BE FAIR TO SAY THAT THERE WERE A NUMBER OF ITEMS OF CLOTHING IN THE
13. CAR? A. I HAVEN'T REVIEWED THE PICTURE SINCE THE DAY I TOOK THEM, I
14. CAN'T RECALL. Q. DO YOU REMEMBER FINDING ANY INCENSE IN THE CAR?
15. A. IN WHAT? Q. INCENSE. INCENSE IS SUCH AS YOU BURN TO PRODUCE
16. A SMELL, A SCENT? A. I DON'T RECALL FINDING ANYTHING. Q. WAS THERE
17. ALSO A BACKPACK THERE AT THE SCENE? A. -- I DON'T RECALL
18. SEEING ONE. Q. DO YOU REMEMBER ANYTHING BEING ON TOP OF THE HONDA
19. THAT YOU SEARCHED, PAPER, BACKPACK, ANYTHING? A. ON TOP BEING --
20. Q. ON THE ROOF OF THE CAR. A. I DON'T RECALL Q. DID YOU RECOVER ANY
21. SUCH ITEMS FROM INSIDE THE CAR? A. RECOVER AND TAKE AS EVIDENCE?
22. Q. YES. A. I DON'T BELIEVE SO, I COULD REFER BACK TO MY REPORT
23. TO REFRESH MY MEMORY. Q. COULD YOU TAKE A LOOK AT YOUR REPORT
24. PLEASE. A. OKAY. Q. DOES THAT REFRESH YOUR MEMORY? A. SOMEWHAT.
25. Q. HOW WOULD YOU ANSWER THE QUESTION AT THIS TIME THEN? A. I
26. WOULD HAVE TO SAY I DON'T RECALL TAKING ANYTHING ELSE FROM
27. A BACKPACK. Q. OKAY. DO YOU KNOW WHERE THE CAR IS NOW? A. THE
28. LAST TIME I SAW THE CAR IT WAS AT THE TOW YARD. Q. HOW LONG
29. AGO WAS THAT? A. IT WOULD HAVE BEEN A COUPLE MONTH'S AGO.
30. MR. ADAIR: NO FURTHER QUESTIONS, THANK YOU, OFFICER. THE WITNESS: THANK YOU
31. SIR. THE COURT: MISS HANNAH, ANY REDIRECT? MS. HANNAH: JUST BRIEFLY.
32. SEE EXHIBIT "D" PAGE 85 RT. EXCERPT 735, LINES 12-20, 21, 23, 24, 25-28.
33. BY MR. TROCHA Q. (AGENT KIRK RESPONDING) THE HYUNDAI THAT YOU PREVIOUSLY DESCRIBED,
34. WERE YOU ABLE TO DETERMINE WHO IT BELONGED TO? A. YES, I WAS. Q. AND WHO DID
35. THE BELONG TO? A. MR. BURTON. Q. DID YOU HAVE OCCASION TO SEARCH THIS CAR?
36. A. YES, I DID.

41

MR. E.W. BURTON #FE-2720 FOLSOM
P.O. BOX 5246 - C9ATF/SP.C1-132L
CORCORAN, CA 93212

Q. WHERE DID THIS SEARCH TAKE PLACE? A. RIGHT IN FRONT OF MR. BURTONS APARTMENT WHERE -- Q. AT THE SCENE A. YES. Q. DURING YOUR SEARCH DID YOU TAKE PHOTOGRAPHS OF THE AREA SEARCHED IN THE CAR? A. YES I DID. Q. DID YOU SEARCH THE GLOVE COMPARTMENT OF THIS - SEE EXHIBIT D, PAGE 86, RT EXCERPT 736, LINES 1, 2, 7-13, 19, 20, 21, 22, 24, 25-28. SEE ALSO EXHIBIT D, PAGE 87, RT EXCERPT 737, LINES 1, 4-25, 26, 27, 28. SEE EXHIBIT D, PAGE 88, RT EXCERPT 738, LINES 1-7, 27, 28. SEE EXHIBIT D, PAGE 89, RT EXCERPT 739, LINES 1-23. SEE EXHIBIT "D" PAGE 90, RT EXCERPT 743, LINES 8-9, 11, 12, 14, 15, 17-28, ALSO SEE EXHIBIT "D" PAGE 91, RT EXCERPT 744, LINES 1-4, 15-18. SEE EXHIBIT "D", PAGE 92, RT EXCERPT 745, LINES, 3-10, 15-28. SEE EXHIBIT "D" PAGE 93, RT EXCERPT 746, LINES 1-28, SEE EXHIBIT "D", PAGE 94, RT. EXCERPT 747, LINES 1-14 Q. CAR? A. (AGENT KIRK) YES, I DID. Q. WHAT DID YOU FIND INSIDE THAT GLOVE COMPARTMENT? A. INSIDE THE GLOVE COMPARTMENT? Q. YES. A. THE MAIN ITEM THAT I FOUND IN THERE WAS A BLACK ZIPPERED POUCH AND THE CONTENTS THAT WERE WITHIN IT. Q. WHAT DID YOU FIND INSIDE THAT POUCH? A. -- THERE WAS A BLACK DRAW STRING, NYLON-TYPE POUCH INSIDE THE ZIPPERED POUCH. INSIDE THE DRAWSTRING -- ALSO, IDENTIFICATION -- THREE FORMS OF IDENTIFICATION IN THE NAME OF MR. BURTON, AND TWO OF THEM OBTAINED THAT HAD HIS PHOTOGRAPH ON. Q. YOU TOOK PHOTOGRAPHS OF EACH OF THESE ITEMS? A. YES Q. SO FOCUSING YOUR ATTENTION ON TO PEOPLE'S -- (PHOTO OF BLACK NYLON ZIPPERED POUCH, WAS MARKED FOR IDENTIFICATION) -- PHOTO OF CLOSED RED BOX: -- PHOTO OF BLACK NYLON ZIPPERED POUCH, BLACK DRAW-STRING POUCH, AND HEALTH SOURCE ID CARD, WAS MARKED FOR IDENTIFICATION) THE WITNESS: 100 WOULD BE THE BLACK ZIPPERED POUCH CONTAINING THE ITEMS I PREVIOUSLY DESCRIBED. BY MR. TROCHA: Q. AND THE OTHER FIVE EXHIBITS ARE WHAT WAS FOUND INSIDE THIS POUCH? A. YES. Q. IN ADDITION, THIS IS THE BLACK LEATH Q. PHOTO OF HEALTH SOURCE ID CARD, WAS MARKED FOR IDENTIFICATION.) THE WITNESS: THOSE ARE THE TWO FORMS OF THE IDENTIFICATION I FOUND INSIDE THE NYLON POUCH. Q. AND THE REST OF THESE ARE THE PHOTOS OF THE POUCH ITSELF AND WHAT WAS FOUND INSIDE THE POUCH, CORRECT A. YES, SIR. Q. YOU SEIZED THE ITEMS DEPICTED IN, C, D, E, F, G, AND H INTO EVIDENCE? A. YES I DID. Q. SHOWING YOU NOW WHAT'S BEEN MARKED AS PEOPLE'S 152 (PEOPLE'S EXHIBIT 152, BLACK NYLON ZIPPERED POUCH, WAS MARKED FOR IDENTIFICATION.)

P.O. BOX 5246 - CSATF/SP. CI. 132L
CORCORAN CA. 93212

BY MR. TROCHA: Q. DO YOU RECOGNIZE PEOPLE'S 152? A. YES, ≠ DO.
Q. AND WHAT IS IT? A. IT'S THE BLACK ZIPPERED NYLON POUCH
THAT WAS INSIDE THE GLOVE BOX. Q. ASIDE FROM THE FACT
THAT IT'S NOW EMPTY, DOES IT APPEAR TO YOU IN THE SAME CONDITION
THAT IT APPEARED ON THE DAY YOU SEIZED IT? A. YES, IT DOES.
Q. "I NOTE THERE'S A LOCK ON THE POUCH, CORRECT?"
A. THAT'S CORRECT. Q. "WAS THAT LOCK THERE WHEN YOU FIRST
FOUND IT? A. YES IT WAS. Q. FINALLY, SHOWING YOU WHAT'S
BEEN MARKED AS PEOPLE'S 160, AND 161, 160 REFERRING TO THE POUCH,
( PEOPLE'S EXHIBIT 160, BLACK DRAWSTRING POUCH, WAS MARKED FOR
IDENTIFICATION.). BY MR. TROCHA: Q. CAN YOU DESCRIBE WHAT IS
CONTAINED WITHIN THAT EXHIBIT? A. THAT'S THE BLACK DRAWSTRING
POUCH AND AMMUNITION THAT WAS LOCATED INSIDE THE PREVIOUS
EXHIBIT, THE (LOCKED) ZIPPERED POUCH. Q. REFERRING TO PEOPLE'S 152?
A. THAT'S CORRECT. Q. NOW IN THAT EXHIBIT -- WHEN YOU FOUND THOSE
ITEMS IN PEOPLES 152, WHERE WERE BOTH EXHIBITS IN RELATION
TO EACH OTHER? A. THE ROUNDS WERE INSIDE OF THE DRAW STRING
POUCH. Q. AND THE DRAW STRING POUCH WAS INSIDE THE (LOCKED)
ZIPPERED POUCH? A. THAT'S CORRECT. Q. WITHIN THAT POUCH?
A. YES. Q. HOW MANY ROUNDS WERE CONTAINED A. 40 Q. THANK YOU
OFFICER. YOU ALSO NOTED THAT YOU FOUND SOME FORMS OF
IDENTIFICATION TO AN INDIVIDUAL BY THE NAME OF ALLEGED ERIC BURTON?
A. YES, I DID. Q. WHERE EXACTLY DID YOU FIND THESE IN RELATION
TO THE (LOCKED) BLACK ZIPPERED POUCH? A. THEY WERE IN THE
DRAW STRING POUCH, CLUB SYCUAN CARD, WAS MARKED FOR IDENTIFICATION)
HEALTH SOURCE ID CARD WAS MARKED FOR ALLEGED IDENTIFICATION.) Q. DO YOU
RECOGNIZE THESE THREE ITEMS? A. YES, I DO. - Q. WHAT IS THAT
ITEM? A. IT'S A SYCUAN CASINO AND RESORT CLUB MEMBER CARD IN THE
(ALLEGED) NAME OF ERIC BURTON. Q. HAVE YOU SEEN ONE OF THOSE
BEFORE? A. YES, I HAVE.

P.O. BOX 5246-05 ATF/SP-CI-132L
CORCORAN, CA. 93212

(EXHIBIT D, PAGE 93, RT EXCERPT 746 LINES 1-28) (Q. BY MR. TROCHA A. BY AGENT KIRK) Q. DOES THIS APPEAR TO BE SOMETHING THAT YOU WOULD GET FROM SYCUAN CASINO? A. YES, IT IS. Q. AND IT HAS (ALLEGEDLY) MR. BURTON'S NAME UPON IT? A. YES. IT DOES Q. FOCUSING YOUR ATTENTION ON TO PEOPLE'S 154. A. YES. Q. WHAT IS PEOPLE'S 154? A. IT'S A HEALTH SOURCE (EXPIRED) (ALLEGED) HEALTH SOURCE ID WITH THE NAME OF ERIC BURTON, CNA, AND A (ALLEGED) PHOTO OF MR. BURTON Q. NOW PEOPLE'S 162 NOW. A. IT'S A HEALTH SOURCE ID WITH THE (ALLEGED) NAME OF ERIC BURTON CNA, AND THE (ALLEGED) PHOTO OF MR. BURTON. Q. AND THESE THREE THINGS WERE FOUND WITH THE BULLETS, THE BOX OF BULLETS, AND THE BLACK POUCH INSIDE THE (LOCKED) BLACK ZIPPERED POUCH? A. THAT'S CORRECT. Q. IN SEARCHING THE CAR DID YOU FIND ANY EMPTY SHELL CASINGS? A. NO I DID NOT. Q. SPECIFICALLY, DID YOU SEARCH THE AREA OF THE DRIVER'S SIDE; PULLED THE SEAT, THE FLOOR BOARDS, AND POPPED THE DOOR POCKET? A. YES I DID. Q. DID YOU FIND ANY EMPTY SHELL CASINGS IN THAT AREA? A. NO, I DID NOT. Q. THANK YOU OFFICER. MR. TROCHA: NOTHING FURTHER. THE COURT: CROSS EXAM? MR. ADAIR: YES, YOUR HONOR. BY MR. ADAIR: Q. OFFICER, GOOD MORNING A. GOOD MORNING SIR. Q. OFFICER, YOU INDICATED THAT YOU SEARCHED THE HYUNDAI, AND IN ADDITION TO THE SEARCH, YOU TOOK PHOTOGRAPHS, CORRECT. Q. AND THERE WHERE ADDITIONAL ITEMS IN THE CAR OTHER THAN JUST THE ONES THAT YOU DESCRIBED, CORRECT? A. THERE WERE ITEMS IN THE CAR, YES. SEE EXHIBIT "D" PAGE 65 RT EXCERPT 714 LINES 18-28, SEE ALSO EXHIBIT "D", PAGE 66, RT EXCERPT 716, LINES 6-25, SEE EXHIBIT D, PAGE 67, RT EXCERPT 717, LINES 5-13) SEE ALSO EXHIBIT "D" PAGE 64, RT EXCERPT 713, LINES 5-15, 17-19.
MR. TROCHA: Q. WERE YOU ON DUTY BACK ON MARCH 19TH OF LAST YEAR? (OFFICER HOLMES) A. YES, I WAS. Q. DID YOU RECEIVE A CALL TO REPORT TO AN ADDRESS ON 425 EAST MAIN STREET? A. YES. I DID. Q. AND THAT'S, OF COURSE, WITHIN THE COUNTY OF SAN DIEGO? A. YES Q. WERE YOU ABLE TO ASSOCIATE-- WHAT TYPE OF STRUCTURES, IF ANY, ARE AT THIS ADDRESS? A. IT'S AN APARTMENT BUILDING. Q. WHERE THERE ANY VEHICLES IN THE PARKING LOT? A. YES. THERE WERE. Q. WERE YOU ABLE TO IDENTIFY ONE THAT BELONGED TO MR. BURTON? A. YES I DID. Q. AND WHAT TYPE OF VEHICLE WAS THAT? A. --THE MODEL ESCAPES ME AT THIS POINT IN

LINE BY BATCH # 723314a272

P.O. BOX 5246 CSATF/SP C1-132L

CORCORAN, CA, 93212

TIME. Q. WERE THERE ANY ITEMS IN OR AROUND THE VEHICLE THAT YOU
ALSO LATER SEIZED? A. YES. Q. WHAT WERE THOSE ITEMS?
A. THERE WAS PAPER WORK ON TOP OF A BLACK BACK PACK -- AND
I COLLECTED THAT. Q. -- DID YOU PLACE MR. BURTON UNDER ARREST?
A. I DID. Q. WAS HE TRANSPORTED TO THE EL CAJON POLICE
DEPARTMENT THEN? A. YES. Q. AT THE EL CAJON POLICE
DEPARTMENT, DID YOU HAVE THE OPPORTUNITY TO SEIZE AND
IMPOUND HIS CLOTHING? A. YES, I DID.
Q. (EXHIBIT "D" PAGE 64, RT EXCERPT 713, LINES 5-7, 11-15, 17-19) AND HOW
WOULD YOU GO ABOUT DOING SOMETHING LIKE THAT? A. THEN WE
WOULD HAVE THE PERSON REMOVE EACH ITEM OF CLOTHING
SEPARATELY, -- AND AFTER ALL THE CLOTHING IS COLLECTED,
WE ISSUE THEM A PAPER SUIT, WHICH THEY WOULD THEN WEAR.
Q. IS THIS A STANDARD PROCEDURE IN EVERY TYPE OF CASE?
A. -- NO. SEE EXHIBIT "B", PAGE 77, RT. EXCERPT 554, LINE 28, SEE ALSO
EXHIBIT "B", PAGE 87, RT EXCERPT 555, LINES, 1, 3, 4, 5, 10, 12, 19, 20, 27, 28.
SEE EXHIBIT "B", PAGE 79, RT EXCERPT 556, LINES 1-10, 26, 27. SEE EXHIBIT B
PAGE 79, RT EXCERPT 557, LINES, 3-11, 27, 28. SEE ALSO EXHIBIT B, PAGE 80,
RT EXCERPT 558, LINES, 1-5, 8, 9, 15, 17-27. SEE EXHIBIT B, PAGE 81, RT EXCERPT
559, LINES, 6-8, 29 21, 22, 27, 28, SEE EXHIBIT "B", PAGE 82, RT. EXCERPT 560
LINES 1, 2, 4, 5, 11, 12, 19, 21, 22, 23-28, SEE EXHIBIT "B", PAGE 83, RT EXCERPT 563,
LINES, 7-9, 15, 16. SEE EXHIBIT B, PAGE 84, RT. EXCERPT 564, LINES 26-28,
SEE EXHIBIT "B" PAGE 85, RT EXCERPT 565, LINES 1-25, SEE EXHIBIT B,
PAGE 86, RT EXCERPT 566, LINES 2, 4, 5, 6, 7, 9-17, 23, 27, 28. > BY MR. TROCHA,
(EXAMINATION OF ALLEGED EYE WITNESS TO AN EVENT ON THE DAY IN QUESTION.
SHANE COLBERT) Q. GOING BACK TO MARCH OF 2004, MARCH 19TH
SPECIFICALLY A. IT'S 389 (MEAN ADDRESS WHERE THE ALLEGED INCIDENT OCCURED)
Q. YOU WERE LIVING AT 389 AT THAT TIME? A. YES Q. SO IF I WAS DIRECTLY
IN FRONT OF - A. TO THE RIGHT. Q. DID YOU HEAR OR WITNESS SOMETHING
UNUSUAL? A. WELL, I HEARD PEOPLE Q. ABOUT HOW FAR AWAY WERE
YOU WHEN YOU FIRST HEARD THE VOICES? A. ABOUT 15 FEET ABOUT, ABOUT
15, 20 FEET. Q. AND WHAT KIND OF VOICES DID YOU HEAR? A. I HEARD
ARGUMENT, I HEARD TWO GUYS ARGUING. Q. SO THEY WERE MALE VOICES?
A. YES. Q. COULD YOU HEAR ANY WORDS THAT WERE BEING EXCHANGED?
A. NO, NOT REALLY. Q. COULD YOU SEE WHO WAS ARGUING AT THAT TIME?
A. NO

45

MR. C.W. PORTER #T6272
P.O. BOX 5246 CSATF/SP-CI-132L
COR CORAN CA. 93212

Q. ABOUT HOW MANY POPS DID YOU HEAR? A. ABOUT FOUR. Q. COULD YOU SEE WHAT WAS HAPPENING AT THAT TIME? A. NOT REALLY BECAUSE THE CAR WAS BLOCKING MY VIEW. Q. WHAT COULD YOU SEE? A. -- AND THEN BLOOD WAS LIKE EVERYWHERE. Q. THE GUY THAT HAD FALLEN, COULD YOU DESCRIBE HOW HE LOOKED? A. NO. Q. COULD YOU SEE ANYONE INSIDE THE "JETTA"? A. "I SAW ONE PERSON. Q. COULD YOU GENERALLY DESCRIBE THAT PERSON. A. HE WAS BLACK -- HE LOOKED LIKE 20. Q. HE LOOKED YOUNG TO YOU? A. YES.

Q. WHAT HAPPENED AFTER YOU HEARD THESE SOUNDS? A. I STOPPED AND FROZE. Q. HOW FAR AWAY WAS HE FROM THE CAR THAT YOU DESCRIBED? A. -- ABOUT 5 FEET, SOMETHING LIKE THAT. Q. THE DISTANCE BETWEEN -- YOU CAN USE DISTANCES HERE IN THE COURTROOM. A. ABOUT HALF WAY FROM ME TO YOU. Q. SO ABOUT -- A. ABOUT RIGHT THERE. Q. OKAY. THE COURT: YOU WANT THE RECORD TO REFLECT AN "ESTIMATE" OF THAT DISTANCE? MR. TROCHA: ABOUT 8 TO 10 FEET. BY MR. TROCHA. YOU SAID THIS PERSON WAS BLEEDING? A. YES. Q. DID YOU SEE HIM MOVE FROM THAT POSITION AT ANY TIME? A. YEAH. Q. DID YOU EVER SEE HIM JUMP OVER THE WALL OR DO ANYTHING OF THAT NATURE? A. "NO". Q. WHEN HE RAN -- A. HE WAS, LIKE, STUMBLING ALONG. Q. HOW LONG THIS ENTIRE EVENT LAST? A. NO LONGER THAN FIVE MINUTES. Q. SO YOU STAYED AND WATCHED THIS FOR THE ENTIRE -- A. YES. Q. -- DID YOU SEE THE CAR MOVE AT ALL? A. -- IT WAS JUST DEAD -- STOPPED ON THE STREET. Q. YOU SAID YOU HEARD YELLING, BUT YOU COULDN'T MAKE OUT ANY WORDS? A. YES. Q. AND YOU REMEMBER A CAR BEING IN THE STREET, CORRECT? A. YES. Q. -- AND YOU HEARD THIS ARGUMENT? A. YES. Q. (BY MR. ADAIR?) Q. BUT YOU DID SEE HIM 8 OR 10 FEET AWAY FROM THE CAR? A. YES, HE WAS STANDING STRAIGHT UP AT THE TIME. Q. OKAY. AND DO YOU REMEMBER ANYTHING ABOUT A TELEPHONE? A. NO. Q. OKAY. BUT YOU DID HEAR ARGUING? A. YES. Q. THANK YOU. THE COURT: ARE YOU DONE? MR. ADAIR: IF I COULD HAVE JUST A MOMENT YOUR HONOR? THE COURT: SURE. BY MR. ADAIR: Q. WHEN YOU SAW THIS PERSON RIGHT AFTER HE HAD -- DID YOU SEE A LITTLE GIRL NEAR HIM? A. NO. Q. DID YOU LATER SEE A LITTLE GIRL? A. NO. Q. OKAY. SO -- THANK YOU. MR. ADAIR: I HAVE NO FURTHER QUESTIONS. THE COURT: REDIRECT? MR. TROCHA: BRIEFLY. BY MR. TROCHA:

46

P.O. BOX 5246-C.S.A.T.F./S.P. C1-132L
CORCORAN, CA, 93212

Q. MR. COLBERT, -- WHERE WAS IT IN THE STREET EXACTLY?
A. IT WAS LIKE "RIGHT IN THE MIDDLE. Q. NOW THERE'S TWO
SIDE WALKS. -- WHICH OF THOSE SIDE WALKS WAS HE ON? A. -- THE
ONE ON THE STREET. Q. -- STREET SIDE OF IT?
A. THE STREET SIDE. Q. DID YOU SEE IF HE HAD ANYTHING IN HIS
HAND? A. NO. Q. WHEN I SAY THAT, DID YOU SEE HIS HANDS?
A. NO. Q. YOU SAID YOU HEARD TWO VOICES? A. YES. MR TROCHA:
YOUR HONOR, NOTHING FURTHER. THE COURT: ALL RIGHT.
SEE EXHIBIT B, PAGE 43, RT EXCERPT 169, LINES, 3,4, 7-15, 17, 28. ? MR ADAIR:
AND OUR OBJECTION IS BASED OR -- OUR MOTION IS BASED UPON THE
FACT THAT THERE ARE SOME -- THAT THERE WOULD ALSO HAVE BEEN
BLOOD ON THE GRASS AND ON THE SIDE WALK, AND THAT WAS NOT
PRESERVED, AND THAT APPARENTLY ONE OF THE -- HOSED OFF THE
AREA, THEREFORE, -- AND DEFENSE HAD NO OPPORTUNITY TO GET THAT
TYPE OF EVIDENCE. THE COURT: ALL RIGHT. LET ME HEAR FROM MS. HANNAH
ON THAT ISSUE. MS. HANNAH: IT'S THE PEOPLE'S POSITION, YOUR HONOR, THAT
-- THE STREET WHERE THE DEFENDANT WAS ALLEGED -- EVIDENCE.
I'M NOT SURE WHERE THIS -- SEE EXHIBIT B, PAGE 37, RT EXCERPT 663,
LINES, 9-26, ALSO SEE EXHIBIT "B", PAGE 38, RT. EXCERPT 665, LINES,
2-5, 8-12, SEE EXHIBIT "B" PAGE 35, RT EXCERPT 624, LINES 1-6,9,
10,11, 21, 22, 23, 24, 28, SEE ALSO EXHIBIT B, PAGE 36, RT EXCERP 625,
LINES, 1-11, 13, 28 ? BY MR ADAIR: (AGENT BENNETT RESPONDING?) Q.
AND REFFERING TO PICTURE A ON THIS PARTICULAR EXHIBIT, IT DOES
SHOW A SECTION LINE, CORRECT? A. YES, IT DOES. Q. AND I BELIEVE
THAT YOU INDICATED YESTERDAY THAT ON THAT LAWN SOMEWHERE,
YOU RECOVERED A PORTION OF A CORDLESS PHONE, CORRECT?
A. "I DIDN'T RECOVER IT. I PHOTOGRAPHED IT AND DOCUM-
ENTED IT'S LOCATION. Q. OKAY. AND APPARENTLY PEOPLES
EXHIBIT 128 -- THIS THE PORTION OF THE PHONE THAT YOU
PHOTOGRAPHED? A. YES. Q. DO YOU SEE THE LOCATION ON PHOTO A WHERE
THIS PIECE OF PHONE WAS FOUND? A. (INDICATING). Q. OKAY. THAT'S
THE PIECE. AND I THINK YOU STATED YESTERDAY THAT THERE
WERE A COUPLE OF OTHER SMALLER PIECES NEXT TO IT?
A. YES. Q. AND LET ME GET A MARKER SO WE CAN CIRCLE THAT

47

MR. E.W. BUSTOH #FO2720
P.O. BOX 5246 (SATF/SP-C/-132L
CORCORAN, CA. 93212

Q. AND I BELIEVE YOU ALSO INDICATED THAT WHEN YOU LOOKED
AT THE LAWN WHEN YOU FIRST ARRIVED THERE AT THE SCENE,
IT APPEARED TO BE WET? A. IT DID. Q. AND BECAUSE OF EN*
EN*** THE FACT THA. ANY BLOOD ON THE GRASS ITSELF? A. CORRECT.
Q. -- IT HAD BEEN BASICALLY WASHED AWAY AT THAT POINT? A. YES.
SEE EXHIBIT "G", PAGE 7, RT EXCERPT 1213, LINES 2, 3, 13, 14, 20, 21,
22, -28, ALSO SEE EXHIBIT G. PAGE 8, RT EXCERPT 1214, LINES 1-22, 26-
28, 7 MR. TROCHA: THE PROBLEM I HAVE IS THAT IT IMPLIES SELF-
DEFENSE. -- WITH A PERSON STANDING THEIR GROUND FOR SELF-DEFENSE.
THE COURT: WELL, THE PROBLEM IS THEY'RE VIEWING ALL THE
EVIDENCE AS IT APPLIES BOTH TO THE-- I'LL DO THE CONCLUDING
INSTRUCTIONS AND THEN RECESS. MR. ADAIR: PROBABLY FOR THE
RECORD, I SHOULD BRING A MOTION FOR A MISTRIAL. THE COURT:
MOTION'S DENIED ALSO, THE RECORD SHOULD REFLECT THAT
"BEFORE" STARTING HIS ARGUMENT, MR. ADAIR WANTED TO
UNSEAL THE EXHIBIT, WHICH IS THE TELEPHONE. AND I
DENIED THAT REQUEST. I FEEL, NUMBER ONE, IT'S SEALED
FOR A REASON AND IT HAS CONTAMINANT ON IT, "INCLUDING
BLOOD" (NEWLY DISCOVERED SUPPRESSED, DEFENSE REQUESTED
PURSUANT TO BRADY V. MARYLAND VIA DISCOVERY MOTION FILED AND
SERVED ON PROSECUTION APPROX. 7-6-04, AND ON OR ABOUT 7-30-04,
WITH NO RESPONSE, TAKEN OFF CALENDER.) AND THE "JURY" -- IT'S
A CLEAR PLASTIC BAG. THEY CAN SEE VERY CLEARLY WHAT IT
IS. AND DEMONSTRATING IT'S USE, I THINK, MR ADAIR HAS VERY
EASILY MADE HIS POINT, AND THE JURY CAN EXAMINE THE (FALSE
EVIDENCE) THE PHONE IN THE JURY ROOM THROUGH THE BAG.
MR. ADAIR: I WAS CONCERNED ABOUT HOW I WAS GOING TO SNEAK
OFF TO THE BATHROOM AND THOROUGHLY WASH MY HANDS. THE
COURT: SO NOW YOU DON'T HAVE TO. LET'S FINISH THE INSTRUCTION'S AND
THEN WE'LL GET THE JURY OUT. (THE COURT, BOTH COUNSEL, AND
THE COURT REPORTER ENTER THE COURTROOM) (THE FOLLING PROC-
EEDINGS WERE HELD IN @PEN COURT IN THE PRESENCE OF THE
JURY:) THE COURT: ALL RIGHT LADIES AND GENTLEMEN, I HAVE
A FEW CONCLUDING INSTRUCTIONS FOR YOU AND THEN YOU WILL BE
SENT OUT TO THE JURY ROOM FOR DELIBERATIONS.

48
B

MR. E.N. GASTON #ER-272, EL PROPER
P.O. BOX 5246 (SATF/SP) C-132L
(CORCORAN, CA. 93212

SEE EXHIBIT B, PAGE 34, RT EXCERPT 170, LINES 1, 5-11, 20-23,
27. SEE ALSO, EXHIBIT B, PAGE 33, RT EXCERPT 322, LINES 4-21,
23, 24, 26, 27, 28. > MS. HANNA? -- COUNSEL IS REFERRING TO IN TERMS
OF ADDITIONAL BLOOD EVIDENCE. THE COURT: (APPROX 24 MARCH'05)
ALL RIGHT: THANK YOU, ARE THERE ANY PARTICULAR AREAS OF THE
SCENE THAT -- OR IS IT THAT YOU'RE ASKING OR ARE YOU ARGUING
THAT WHATEVER BLOOD WAS PRESENT, SHOULD HAVE BEEN PRESERVED?
MR. ADAIR: -- BLOOD ON THE GRASS ON THE SIDEWALK AND ON THE
STREET, -- FROM WHAT I JUST SAID, THE COURT: ALL RIGHT.
I'M LOOKING AT THE DIAGRAM. IT APPEARS TO HAVE BEEN
PREPARED ON MARCH 19TH '04, -- LODGED INTO EVIDENCE ON THAT
DATE, -- BASED UPON WHAT I'VE BEEN TOLD -- DIAGRAM SHOWS
DROPPINGS OF BLOOD IN VARIOUS LOCATIONS. MR. ADAIR: COULD
I HAVE JUST A MOMENT, YOUR HONOR? THE COURT: YOU MAY. (COUNSEL
AND THE DEFENDANT CONFER.) MR. ADAIR: I GUESS THERE'S ANOTHER
ISSUE UNDER TROM BETTA, YOUR HONOR, THAT THERE WAS -- THAT
THE EL CAJON POLICE DEPARTMENT DIDN'T PROPERLY SECURE
THE (ALLEGED) CRIME SCENE, AND THAT THERE WAS AN AREA
OF THE (ALLEGED) CRIME SCENE THAT WAS HOSED DOWN BY
EITHER THE POLICE DEPARTMENT OR ONE OF THE RESIDENCE
RESULTING IN THE DESTRUCTION OF VALUABLE EVIDENCE.
THE COURT: -- TIME -- IT SOUNDS -- IN MARCH. MR. ADAIR: (AT TRIAL)
AND I'M NOT SURE IF IT WAS RULED ON AT THE TIME THOUGH.
THE COURT: I REMEMBER SEEING CHARTS AND EXPLANATIONS
ABOUT THE SCENE AND SOME MAPPING OF -- WAS -- SO LET ME
JUST LOOK HERE, -- AND I THINK THE TRAIL OF (ALLEGED) BLOOD
WAS CONNECTED TO THE ISSUE OF HOSING DOWN THE STREET.
SEE EXHIBIT B, PAGE 35, RT EXCERPT 624, LINES 1-7, 9-11, 21-24, 28,
SEE ALSO EXHIBIT B, PAGE 36, R.T. EXCERPT 625, LINES 1-11, 13, 28.
BY MR. ADAIR?: (AGENT BENNETT RESPONDING?) Q. HOW DID YOU DETERMINE THIS
WAS A BLOOD TRAIL? (ALLEGED) A. THERE WERE SPOTS OF BLOOD
THAT I FOLLOWED FROM THE AREA WHERE THE BLOOD WAS ON
THE "CAR" (SUPPRESSED NEWLY DISCOVERED EVIDENCE) UP TO THE
WALKWAY WHERE IT TURNS AND GOES TO THE FRONT OF 324A.
(ALLEGED RESIDENCE OF CONVICTED FELONY KIAH MINCEY DEPORTED BY
THE PROSECUTION) AND I FOLLOWED THAT TO WHERE I FOUND THE

P.O. BOX 5246 - CSATF/SP C1-132L
CORCORAN, CA. 93212

(ALLEGED) BLOODY T-SHIRT PIECES. Q. — WAS THERE ANY WETNESS AT ALL ON THIS WALKWAY? A. THERE WAS. Q. YOU ALSO PHOTO GRAPHED THIS (ALLEGED) BLOOD TRAIL? A. I DID. Q. WHERE DID THIS BLOOD TRAIL END? A. IT (ALLEGEDLY) ENDED INSIDE OF 324A. Q. WHAT DID YOU FIND AT THE END OF THE (ALLEGED) BLOOD TRAIL — A. "A PHONE. Q. — IF ANYTHING? A. "A PHONE". Q. WAS THIS TELEPHONE DAMAGED IN ANY WAY? A. IT APPEARED TO HAVE BEEN DROPPED, BUT IT WASN'T DAMAGED LIKE THE ONE THAT WAS "FOUND IN THE GRASS AREA." Q. WHAT COLOR WAS THE PHONE? A. BLACK.

STATEMENT OF RELEVANT FACTUAL BACK GROUND.

AS EVIDENCED BY THE NOTED EXCERPTS PREVIOUSLY AND PRESENTLY IN THE LAST PAGES GIVE LIGHT TO THE FACT THAT PROSECUTION AND THE TRIAL COURT ENGAGED IN MISCONDUCT BY USING FALSE EVIDENCE OF A BLACK PHONE, THAT COUNSEL AND DEFENDANT WERENT ALLOWED TO EXAMINE, AS THE ALLEGED VICTIM MR. THOMAS TESTIFIED TO BEING ALLEGEDLY SHOT IN THE HAND VIA THROUGH AN ALLEGED TELEPHONE THAT WAS POSSIBLY THE PHONE POLICE AGENT-BENNETT PHOTO GRAPHED BUT FAILED TO COLLECT AS EVIDENCE AND INSTEAD THE COURT AND PROSECUTOR USED FALSE EVIDENCE OF A BLOODY BLACK PHONE WITH THE NEWLY DISCOVERED, AND SUPPRESSED BLOOD EVIDENCE, PREJUDICIALLY AS EVIDENCE PRE TRIALED REQUESTED BY THE DEFENCE THUS VIOLATING PETITIONERS 14TH U.S. CONST FEDERALLY GUARANTEED DUE PROCESS AND EQUAL PROTECTION RIGHTS. THE FAILURE TO DISCLOSE ALLEDGED VICTIM AKIAH MINCEY WITHOUT NOTICE OF THERE SUCH OF AN ALLEGED VICTIM, ALSO VIOLATED FEDERALLY GUARANTEED FUNDAMENTAL FAIRNESS AND 14TH AMENDMENT DUE PROCESS RIGHTS, ADDITIONALLY THE SUPPRESSION OF THE VEHICLE WITH ALLEGED BLOOD ON IT, DEFENDANT HAD ASKED PRETRIAL TO TEST ALLEGED BLOOD SAMPLES FORENSICALLY BUT WAS DENIED. THIS DENIED PETITIONER OF HIS RIGHT, FEDERALLY GUARANTEED TO MAKE A DEFENSE, SEE NOW TESTIMONY OF MR. HELSEL AT TIME OF PETITIONERS NOT UNCONSTITUTIONAL ARREST, AS WELL AS VIOLATION OF HIS FEDERALLY GUARANTEED 14TH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES.

50

BURTON #F02720 INFINITER
P.O. BOX 5246 - CSATF/SP-C1-132L
@ CR CORAN, CA 93212

SEE EXHIBIT B, PAGE 30, RT EXCERPT 681, LINES, 25-28 END EXHB 7-8
9-28, SEE ALSO EXHIBIT "B" PAGE 31, RT EXCERPT 682, LINES 7,8 AND
1-7, 10, 11, 12, 13 14, 15-23, 27-28.) THE COURT: ALL RIGHT, THE
MEMBERS OF THE PANEL HAVE LEFT THE COURTROOM. MR. TROCHA,
WHEN YOU HAD SUBMITTED YOUR MOTION ON EXCLUDING DEFENDANT'S
(ALLEGED) STATEMENTS, YOU GAVE ME A COPY OF THE TRANSCRIPT.
MR. TROCHA: YES, THE COURT: THERE ALREADY WAS ONE IN THE
FILE SO I'M GOING TO RETURN THIS ONE TO YOU. IF AT ANY POINT
WE NEED TO DEAL WITH IT FURTHER, YOU CAN VERIFY THAT IT'S
THE SAME VERSION. MR. TROCHA: THANK YOU, YOUR HONOR. THE COURT:
ALL RIGHT, THEN WE'LL BE IN RECESS FOR 15 MINUTES, THANK YOU.
(RECESS FROM 10:19 AM, TO 10:35 P.M) (THE FOLLOWING
PROCEEDINGS WERE HELD IN OPEN COURT OUT OF THE PRESENCE
OF THE JURY.) THE COURT: GO AHEAD MR. ADAIR: JUST SINCE
TESTIMONY CONCERNING THE (ALLEGED) BLOOD HAS NOW COME IN
PROBABLY PRETTY MUCH AS MUCH AS IT'S GOING TO, WE'D LIKE TO
RENEW THE MOTION CONCERNING THE REQUEST TO DISMISS
BASED UPON THE VIOLATION OF MR. BURTON'S DUE PROCESS RIGHTS
IN THE DESTRUCTION OF THE EVIDENCE -- ON THE GRASS, IT HAD
BEEN WASHED AWAY. WE BROUGHT THE MOTION PRETRIAL. IT'S JUST
THAT WE'RE RENEWING IT AGAIN AT THIS TIME BASED UPON THE
ADDITIONAL EVIDENCE THAT'S COME IN. THE COURT: ALL RIGHT,
WELL AT THIS POINT -- IT APPEARS THE ONLY TESTIMONY THAT
WAS HEARD WAS THAT IT WAS A PERSON LIVING -- IN FACT, THAT'S
WHY THE GRASS WAS WET. -- THE MOTION IS DENIED. MR TROCHA:
AND YOUR HONOR, JUST FOR THE RECORD, -- SPRAYED THE GRASS DOWN.
THE COURT: IT'S WET. MR. TROCHA: OKAY. THE COURT: ALL RIGHT, --
TESTIMONY IS THAT SOMEONE SPRAYED THE PORCH AT SOME POINT
IN TIME, THE COURT: ALL RIGHT. ANYTHING FURTHER? MR. TROCHA: NO.
THE COURT: LET'S BRING THE JURY IN. SEE EXHIBIT "B", PAGE 32, RT--
EX CERPT 176 (ON OR ABOUT 3-24-05) LINES 2-7, 9, 10-19, 23, 26-28.)
MS HANNAH: THERE WERE NO PHOTOGRAPHS. THE COURT: AND I TAKE IT
THE PEOPLE DON'T HAVE ANY? MS. HANNAH: WE DO NOT. THE COURT:
ALL RIGHT. WELL, DISCOVERY AS TO THE PEOPLE, IF THEY DON'T
HAVE IT, THEY CAN'T PRODUCE IT. -- PHOTOGRAPHS. -- AT LEAST

51

P.O. BOX 5246 - CS ATF/ISP CI-132L
CORCORAN, CA. 93212

INFORMALLY TO THE PROSECUTOR, THERE ARE NONE, SO YOU CAN'T
ORDER PRODUCTION OF SOMETHING THAT DOESN'T EXIST. ANYTHING
ELSE BEFORE WE DEAL WITH THE MARSDEN MOTION? MR. ADAIR:
THERE IS ONE ADDITIONAL THING, YOUR HONOR. THE-- DURING THIS
PROCEEDING -- AND I NOTICED IT EARLIER, BUT I THINK THIS IS
THE APPRIATE TIME TO BRING IN THE OBJECTION -- A REQUEST
AND AN OBJECTION. ALL ALONG WE'VE BEEN REFERRING TO MR.
THOMAS AS THE VICTIM, WHICH PRESUPPOSES THAT SOMEONE
COMMITTED A CRIME ON HIM (ALLEGED CRIME) -- SO IT'S OUR
REQUEST TO NOT USE THE TERM "VICTIM" -- COURTROOM -- AGAIN,
IT'S OUR REQUEST THAT MR. THOMAS BE REFERRED TO BY HIS
PROPER NAME AND THAT WE NO LONGER USE THE TERM (ALLEGED)
"VICTIM." SEE EXHIBIT "B", PAGE 1, RT EXCERPT 177, LINES 1-7, 14-16.
THE COURT: ALL RIGHT. ANY RESPONSE BY THE PEOPLE? MS. HANNAH:
-- CIRCUMSTANCES AND THE RESULT OF THE INCIDENT THAT
OCCURED ON MARCH 19TH OF LAST YEAR. WHETHER THE ISSUE--
THE WHOLE QUESTION OF THE TRIAL IS "WHETHER MR. BURTON
IS THE PERSON THAT COMMITTED THE (ALLEGED) CRIME, NOT
WHETHER OR NOT MR. THOMAS IS, IN FACT, A (ALLEGED)
VICTIM OF A CRIME. MS. HANNAH: -- BUT THE PEOPLE CAN
CERTAINLY REFER TO MR. THOMAS AS MR. THOMAS THE COURT:
ALL RIGHT. SEE EXHIBIT "B", PAGE 2, RT EXCERPT 719, LINES 21-
23. MR. TROCHA: WE HAVE EVIDENCE THAT THE DEFENSE
HAS BROUGHT OUT, AND IS GOING TO BRING OUT FURTHER
IN THEIR CASE IN CHIEF, THAT "MR. THOMAS IS, IN FACT, THE
AGGRESSOR". SEE EXHIBIT B, PAGE 3, RT EXCERPT 720, LINES 26,
AND 27. > THE COURT: SO IF THE DEFENDANT WERE TO TESTIFY
HE DIDN'T SHOOT ANYONE, (@ALLEGED). SEE EXHIBIT A" PAGE 75, RT.
EXCERPT 265, LINES 9, 10, 12, 20-22 > THE DEFENDANT: -- MY POINT IS,
(6-01-05)(HON. JUDGE SUPERVISOR EXARHOS PRESIDING) YOUR HONOR, THAT I'M
INNOCENT OF ALL CHARGES. THE COURT: OKAY FINE. NOW STOP, --
YOU HAVE CHOSEN TO PLEAD NOT GUILTY AND MAINTAIN YOUR INNOCENCE.
SO YOU HAVE THE ABSOLUTE RIGHT TO DO SO. SEE EXHIBIT "A"
PAGE 35, RT EXCERPT 199 (3-16-05) LINES 4,5, 8,9,11,12,, 25-28, SEE
ALSO EXHIBIT A, PAGE 36, RT EXCERPT 200, LINES 1,2,5,6,7,11,13,13

MR. E. W. BURTON
P.O. BOX 5246 - CSATF/SP-C1-132L
CEN CORAN, CA. 93212

1  ~~[struck through]~~  ErrorBB

2  ~~[struck through]~~  ErrorBar

3  ~~[struck through]~~  ErrorBar

4  ~~[struck through]~~  ErrorBar

5  ~~[struck through]~~  ErrorBar

6  ~~[struck through]~~  ErrorBar

7  ~~[struck through]~~  ErrorBar

8  ~~REPRESENT MR. BURTON. PREFER TO HAVE FACE TO FACE MEETING~~  ErrorBar

9  ~~WITH HIS ATTORNEY. IT'S MORE EFFICIENT TO COMMUNICATE IN~~  ErrorBar

10 ~~[struck through] ON YOUR ATTORNEY'S BEHALF.~~  ErrorBar

11 ~~THERE IS NOT [struck through] TO THE [struck through] MOTION~~  ErrorBar

Errorbar 12 ~~[struck]~~. SEE EXHIBIT "A" PAGE 112, RT EXCERPT 815, LINES 1-12, 16, 17, 18,

13 21-28, SEE ALSO EXHIBIT "A" PAGE 113, RT. EXCERPT 816, LINES 1-28, SEE EXHIBIT "A"

14 PAGE 114, RT EXCERPT 817, LINES 1, 2, 4-18, 20, 21, 25-28, SEE EXHIBIT "A" PAGE

15 115, RT EXCERPT 818, LINES 10-16, 20-26.) EL CAJON, CALIFORNIA; MONDAY,

16 7/25/05; 9:18 A.M. (THE FOLLOWING PROCEEDINGS HAVE BEEN ORDERED SEALED BY

17 THE COURT.) MR. BURTON, WHAT IS — FIRST OF ALL, I WOULD LIKE YOU TO TELL ME

18 WHAT CONCERNS YOU HAVE. ~~THE~~ DEFENDANT: MAY I URGE THE COURT TO HAVE

19 MY ATTORNEY SWORN? THE COURT: WHY? THE DEFENDANT: BECAUSE HE NEEDS

20 TO TESTIFY. THE COURT: YOU NEED TO TELL — THE DEFENDANT: THE JUDGE MAY

21 WANT TO ASK HIM — THE COURT: I'LL DECIDE IF I NEED TO DO THAT, THE

22 ~~DEFENDANT~~ Errorbar COURT: WHAT ARE THE REASONS? THE DEFENDANT: FOR

23 ONE THING, YOUR HONOR," I HAVE JUDICIAL PREDJUDICE, I HAVE JUDICIAL

24 CONFLICT OF INTEREST AS YOUR HONOR WAS THE ONE WHO WAS MY BEST

25 WITNESS IN THIS MATTER. AND I FEEL I'VE BEEN DENIED OF MY

26 RIGHT TO A FAIR AND IMPARTIAL TRIAL BECAUSE YOU WERE THE ONE

27 WHO SIGNED OFF ON THE TRO. — WHO MADE ME AWARE THAT

28 THOMAS STRUCK ANGELA SANDERS IN THE HEAD WITH THE GLASS.

P.O. BOX 5246-CSATF/SP-C1-132L
COR CORAN, CA. 93212

1. AND YOU ARE THE ONE THAT KNOWS THAT ANGELA SANDERS PERJURED HERSELF,
2. BECAUSE IN YOUR COURT AT THE EX PARTE HEARING WHERE YOU (P) RESIDED AT,
3. I HAD MY PAPERWORK FILLED OUT AS A PETITIONER, BUT YOU MADE US SWITCH
4. SEATS. YOU SAID THAT THE ACTION BEGAN IN THE FAMILY COURT, INITIATED
5. THROUGH CHILD SUPPORT DIVISION BY MS. SANDERS, AND YOU MADE ME
6. THE RESPONDENT. AND THEREFORE, YOU HAD KNOWLEDGED OF EVERYTHING,
7. MY FEARS OF THOMAS WAS PRESENT, IF I CAN REFER YOU TO YOUR OWN
8. TRANSCRIPT, YOU'LL SEE THAT HE WAS STALKING ME THEN. THE COURT:
9. AGAIN, LET ME STOP YOU RIGHT THERE SO IN WHAT WAY IS THAT A REASON
10. FOR DISCHARGING MR. ADAIR? THE DEFENDANT: I WANT A MOTION FOR A
11. MISTRIAL. I HAVE A CONFLICT OF INTEREST WITH COUNSEL BECAUSE
12. I MADE HIM AWARE OF THIS, AND I WANTED -- TO HAVE HIM SWORN.
13. HE'S AWARE OF THIS CONFLICT. THE COURT: OKAY, ARE THERE ANY
14. OTHER GROUNDS THE DEFENDANT: YES, THE COURT: WHAT OTHER
15. GROUNDS? THE DEFENDANT: WHEN I MADE MY MOTION TO GO PRO PER,
16. I FELT YOU WERE PREDJUDICE IN DENYING THAT AND ALL MY OTHER
17. MOTIONS BECAUSE -- THAT DENIED ME -- IT DEPRIVED ME OF MY 14TH
18. AMENDMENT RIGHT FOR DUE PROCESS, AND I'D LIKE A DISMISSAL
19. BASED ON A VIOLATION OF MY 6TH AMENDMENT RIGHT AND MY 14TH AMENDMENT
20. RIGHT, BECAUSE YOU DENIED ME MY RIGHT TO GO PRO PER AND YOU KNEW
21. THAT I WAS COMPETENT. THE COURT: AND WHAT IS THE -- HOW DOES THAT
22. RELATE TO YOUR -- THE DEFENDANT: COUNSEL WAS AWARE OF THIS AND
23. HE DID NOT INFORM THE COURT. THIS IS NEGLIGENCE IN MY PROSECUTION.
24. HE DID NOT INFORM THE COURT OF THIS MATTER. AND THAT IS THE INEFFECTIVE
25. ASSISTANCE OF COUNSEL IN VIOLATION OF MY 6TH AND 14TH AMENDMENT RIGHTS
26. TO DUE PROCESS, I'D LIKE A DISMISSAL ON THAT. COUNSEL IS AWARE
27. THAT PROSECUTION HAS NOT PROVIDED ME WITH ALL DISCOVERY AS MR.
28. PLUMMER HAD MOTIONED MS. MARIA HANNAH WITH MOTIONS ON [] BRADY FOR

54

P.O. BOX 5246-CSATF/SPci-132L
Cor Coran, CA. 93212

1  ALL DISCOVERY, PROSECUTION DID NOT RESPOND WITHIN A TIMELY MANNER,
2  THEREFORE, DENIED ME MY DUE PROCESS, BECAUSE I HAD THE RIGHT
3  TO BE ABLE TO KNOW THE EVIDENCE AGAINST ME, — I WOULD
4  OBJECT TO ANYTHING PROSECUTION WOULD SAY AS FAR AS THEIR.
5  THE COURT; OKAY, LET ME STOP YOU THERE, SO DISCOVERY ISSUE
6  IS ANOTHER REASON? THE DEFENDANT; DISCOVERY ISSUES AND—
7  THE COURT; ARE THERE ANY OTHER GROUNDS IN WHICH— THE DEFENDANT;
8  — AND THE POLICE ALSO DENIED ME MY DUE PROCESS AS FAR AS EQUAL
9  PROTECTION UNDER THE LAW; THE COURT; OKAY LET ME STOP YOU RIGHT
10 THERE, "I UNDERSTAND THAT MOTION, ARE THERE ANY GROUNDS ON WHAT
11 YOUR SEEKING TO CHALLENGE MR. ADAIR; THE DEFENDANT; CONFLICT OF
12 INTEREST BECAUSE— YOU WERE THE PRESIDING JUDGE AT THE TIME
13 THOMAS SHOWED UP AND HE WAS SERVED BY YOUR BALIFF IN YOUR
14 COURTROOM AT THE EX PARTE HEARING. I'VE BEEN FALSELY ARRESTED,
15 PROLONGED DETAINMENT, AND FALSE IMPRISONMENT, MY WHOLE DUE PROCESS,
16 MY CIVIL RIGHTS HAVE BEEN VIOLATED. COUNSEL HAS FAILED TO NOTIFY THE
17 COURTS, I HAVE SEE EXHIBIT "A", PAGE 116, RT EXCERPT 821, LINES, 1-5, SEE
18 EXHIBIT "A", PAGE 117, RT EXCERPT 822, LINES 3,4,5, 18-22, 25-28,
19 SEE EXHIBIT "A", PAGE 118, R.T. EXCERPT 823, LINES 3-10, 13, 14-16, 20-26, 28
20 SEE EXHIBIT "A", PAGE 119, RT EXCERPT 824, LINES 1-6, 10, 11, 18.) THE COURT; COMPLAINTS,
21 SO, NUMBER ONE, ALMOST OF ALL THESE ISSUES EXCEPT POSSIBLY THE CONFLICT
22 OF INTEREST RELATING TO THE RESTRAINING ORDER— WHICH I'LL HAVE MR. ADAIR
23 ADDRESS IN A MOMENT— THE COURT; I THINK THAT YOU INDICATED YOU MIGHT BRING
24 ANOTHER PRO PER MOTION ON THE DAY THAT "WE" DECIDED TO REFER YOU OUT
25 FOR 1368 PROCEEDINGS.— THE CHARGES— THERE WAS A SECOND AMENDED
26 COMPLAINT, AND IT WAS RAISED AND NOTICE GIVEN TO YOUR ATTORNEY PRIOR TO
27 TRIAL, AGAIN, I DON'T SEE ANY BASIS IN THAT ISSUE TO RELIEVE HIM, THE
28 FRUIT-OF-THE POISONOUS-TREE ARGUMENT—

MATEW BURTON #F63320  IN PROPER
P.O. BOX 5246-C5ATF/SP C 1-132L
COR CORAN, CA. 92212

1. SO THE ONLY ISSUE I BELIEVE THAT MAY NEED SOME INPUT ON TO PERHAPS

2. BETTER UNDERSTAND THE CONCERN IS AN IS RAISED THAT SOMEHOW THIS COURT

3. IS ["A WITNESS"] OR HAS KNOWLEDGE ABOUT THE TRO PROCEEDINGS -- MR. ADAIR,

4. DO YOU HAVE ANY ADDITIONAL INFORMATION OR BACKGROUND ON THAT ISSUE?

5. MR. ADAIR: I BELIEVE YOU DID SIGN SOME OTHER DOCUMENTS IN THE

6. CASE. THE COURT: -- THE TRO BETWEEN MR. BURTON AND MR. THOMAS,

7. MR. ADAIR: -- IT LOOKS LIKE YOU SIGNED THE NOTICE THE COURT:

8. -- OSC HEARING? MR. ADAIR: THAT'S CORRECT, THE COURT: OKAY,

9. ALL RIGHT. -- SEE ANY REASON WHY ANY INVOLVEMENT I HAD IN A

10. FAMILY LAW -- DUE TO THIS COURT'S INVOLVEMENT IN THAT CASE.

11. MR. ADAIR: THE OTHER THING ABOUT IT IS THAT IT APPEARS THAT

12. ANYTHING THAT YOU -- IF YOU WERE TO HAVE [BEEN A WITNESS], IT'S

13. RELEVANT ISSUES IN THIS MATTER THAT THE DOCUMENTS

14. THEMSELVES COULD BE USED RATHER THAN YOURSELF -- CONFLICT,

15. THE COURT: ALL RIGHT. MR. ADAIR: MR BURTON WOULD LIKE TO ADDRESS

16. THE COURT AGAIN, THE COURT: ALL RIGHT. MR. BURTON YOU MAY ADDRESS

17. ME IN PARTICULAR WITH REGARD TO THE ISSUE THAT MR. ADAIR JUST

18. ADDRESSED ON THE RESTRAINING ORDER OR THE CUSTODY MATTER.

19. THE COURT: ALL RIGHT, GO AHEAD. THE DEFENDANT: YES, MA'AM. -- "YOU

20. MAY REFER YOU TO THE COURT CLERK'S RECORDS, SEE EXHIBIT "A" PAGE 129

21. RT EXCERPT 825, LINES 1-8, 19, 20, 21. THE COURT: ALL RIGHT, WELL, I THINK THAT --

22. THERE'S NO BASIS TO RELIEVE HIM BASED ON HIS STRATEGIC DECISION NOT TO

23. CHALLENGE THIS COURT. IT WOULD HAVE HAD TO BE A CHALLENGE FOR CAUSE

24. BECAUSE THERE'S ALREADY BEEN A PEREMPTORY EXERCISED AGAINST JUDGE HANOIAN, AND

25. HIS STRATEGIC DECISION NOT TO DO -- I FIND MR. ADAIR HAS PROPERLY

26. REPRESENTED DEFENDANT AND WILL CONTINUE TO DO SO -- TRANSCRIPT WILL

27. BE SEALED ABSENT ORDER PROPER FURTHER COURT ORDER -- WE NEED TO PROCEED

28. NOW WITH OUR JURY TRIAL SEE EXHIBIT B, PAGE 23, RT EXCERPT 329, LINES 4-10, 18 20-23

56

P.O. BOX 5246-CSATF/SP-C1-132L
CORCORAN, CA. 93212

2. SEE EXHIBIT "A" PAGE 25, RT. EXCERPT 189, LINES 1-8, 11-19, 21-28. SEE ALSO EXHIBIT "A"
3. PAGE 26, RT EXCERPT 190 LINE 4. SEE ALSO EXHIBIT "A", PAGE 27, RT EXCERPT 191,
4. LINES 18-28. 7 THE DEFENDANT: MY DAUGHTER (DEONA BURTON) BECAUSE SHE
5. ALSO WAS A EQUAL PROTECTANT ON THAT ORDER, WHICH WAS VIOLATED.
6. THE COURT: ANY OTHER MOTIONS YOU THOUGHT SHOULD BE FILED? THE DEFENDANT:
7. YES. ALSO, THERE ARE FALSE STATEMENTS THAT HAVE BEEN ENTERED INTO
8. THE RECORD AS FAR AS ME ALLEGEDLY -- AS FAR AS THE MOTION THAT
9. WAS WRITTEN TO 1538.5. THE COURT: ALL RIGHT. IS THIS THE SAME ISSUE
10. YOU HAD RAISED TO JUDGE PRECKEL, WHERE THERE WAS CONCERN RAISED BY
11. YOU THAT THE STATEMENT OF FACTS DIDN'T FULLY SET FORTH THINGS APP-
12. ROPRIATELY? THE DEFENDANT: WELL, WITH JUDGE PRECKEL -- THE COURT:
13. I JUST WANT TO KNOW IF THAT'S THE SAME ISSUE YOU'RE TALKING ABOUT?
14. THE DEFENDANT: -- BUT I WAS DENIED MY MARSDEN BY JUDGE PRECKEL. HE
15. NEVER GAVE ME AN OPPORTUNITY TO. THE COURT: WHAT OTHER ISSUES ARE
16. THERE BEYOND WHAT YOU'VE TOLD ME HAVE NOT BEEN ADEQUATE BY THE DEFENSE?
17. THE DEFENDANT: THE FACTS OF THE CASE HAVE BEEN MISSTATED. -- I ASKED HIM
18. TO FILE A MOTION WITH THE JUDGE -- YOUR SELF -- ORDERING PROSECUTION TO
19. TURN OVER ALL DISCOVERY BECAUSE MOTIONS THAT WERE FILED BY MR. PLUMMER
20. JULY -- TO COMPEL PROSECUTION TO TURN OVER ALL DISCOVERY. THE COURT:
21. IS THAT SOMETHING YOU HAD ORIGINALLY ASKED YOUR EARLIER COUNSEL?
22. THE DEFENDANT: -- EXTRAORDINARY WRIT OF MANDATE FOR REVIEW OF THE 1538.5
23. MOTION. -- APPEALING JUDGE PRECKELS DECISION AS FAR AS HIS DENIAL OF SUPPRESSING
24. THE VEHICLE, BECAUSE THE VEHICLE WAS UNLAWFULLY ENTERED, SEIZED AND
25. REMOVED FROM MY RESIDENCE WITHOUT -- (A WARRANT) THE COURT: -- THE WRIT OF
26. MANDATE FROM THE SUPPRESSION? THE DEFENDANT: YES. SEE EXHIBIT "A" PAGE
27. 28, RT EXCERT 192 LINES 1, 2, 5-8. THE DEFENDANT: WHERE I'M TRYING TO PREPARE
28. FOR TRIAL AND MAYBE GET THIS DISMISSED, BEFORE TRIAL.

Mr. Earl Lee Burton #82020
P.O. BOX 5246-CSATF/SP-C1-132L
CORCORAN, CA. 93212

1 THE COURT: WHY DON'T I STOP YOU THERE SINCE YOU'VE GIVEN ME

2 THE LIST OF THE TYPE OF MOTIONS, I THINK WHAT I NEED TO DO IS

3 GIVE MR. ADAIR AN OPPORTUNITY TO EXPLAIN WHAT WORK HE HAS DONE,

4 SEE EXHIBIT "A" PAGE 31, RT EXCERPT 195 LINES 7, 8, 9, MR. ADAIR: WELL PART

5 OF IT IS MR. BURTON HAS BEEN DOING A LOT OF RESEARCH ON HIS OWN

6 IN THE LAW LIBRARY AND HAS A LOT OF LEGAL THEORIES AS FAR

7 AS WHY THE CASE SHOULD BE DISMISSED, SEE EXHIBIT "A", PAGE 32,

8 RT EXCERPT 196, LINES 17-23, 25-28. THE COURT: -- MEETING WITH HIM,

9 AND SO DO YOU HAVE ANY TYPE OF ESTIMATE TO -- SINCE YOU CAME ON

10 THE CASE BACK IN NOVEMBER, DO YOU HAVE ANY WAY TO ESTIMATE HOW

11 OFTEN YOU'VE EITHER MET FACE TO FACE OR BY MR. ADAIR: I DON'T KNOW--

12 --I DON'T KNOW HOW MANY TIMES ON THE TELEPHONE WE'VE TALKED, --

13 I DID NOT TALK TO HIM MONDAY BECAUSE I -- AFTER WE TRAILED THE CASE

14 FOR TWO DAYS, I HAD TO LEAVE IMMEDIATELY TO MAKE AN APPOINTMENT

15 DOWNTOWN, (MR. BURTON DEFENDANT) HE WAS NOT IN THE COURTROOM FOR THE

16 TRAILING. SEE EXHIBIT "A", PAGE 34, RT EXCERPT 198 LINES 10-13-17, 21-23, 26, 27, 28. SEE ALSO EXHIBIT A, PAGE 35,

17 RT. EXCERPT 199, PAGE Nov 2006 LINES 1, 3, 8, 9, 11, 12, 16-18 THE COURT: WERE THOSE

18 DONE BY YOU OR BY MR. PLUMMER? MR. ADAIR: I THINK BOTH. I THINK MR. PLUMMER

19 FILED A NUMBER OF MOTIONS, INCLUDING A DISCOVERY MOTION AND THAT THEY

20 WERE BASICALLY TAKEN OFF CALENDAR. THE COURT: -- "PROTECTIVE ORDER"

21 AND, -- DO YOU HAVE ANY UNDERSTANDING? MR. ADAIR: AS FAR AS -- EXCUSE

22 ME. THE COURT: ALL RIGHT. MR. ADAIR: SOME OF THE MOTIONS THAT MR. BURTON

23 FEELS ARE VERY IMPORTANT IN HIS CASE -- IN MY VIEW POINT, -- SUCH AS THE

24 REQUEST FOR A WRIT OF MANDATE, IT SEEMS LIKE A WASTE OF TIME TO

25 CONCENTRATE ON THAT WITH THE -- ON TRIAL ISSUES. THE COURT: HE RAISED

26 AN ISSUE ABOUT FALSE STATEMENTS ON THE RECORD, MR. ADAIR: I THINK WHAT

27 HE MAY BE REFFERING TO IS WHEN I WROTE UP A STATEMENT OF FACTS, HE

28 DISAGREED WITH IT AND FELT -- HAS BEEN THAT THE STATEMENT OF FACTS

58

1 SEE EXHIBIT "A" PAGE 97, RT EXCERPT 17 LINES, 1-3, 10-13, 17-19,

2 STATEMENT OF FACTS - MARSDEN HEARING 11-05-04. THE HON. JUDGE PRECKEL

3 PRESIDING → THE COURT: MR. BURTON, IF I GRANT YOUR REQUEST -- AND LET

4 ME SAY PARENTHETICALLY YOU'RE IN MY VIEW, VERY WELL-SPOKEN.

5 YOU'VE OBVIOUSLY DONE SOME READING -- AND YOU'VE BEEN

6 THROWING AROUND THE MAJORITY OF THE AMENDMENTS IN THE BILL

7 OF RIGHTS AND A FEW OTHERS TO BOOT, -- BUT I'M NOT GOING

8 TO BELABOR THOSE MATTERS PRESENTLY OTHER THAN TO UNDERSCORE

9 MY BELIEF, STRONGLY-HELD BELIEF THAT ASSUMING THE COURT GRANTS

10 YOU YOUR REQUEST FOR A NEW COUNSEL, -- IT'S THE ATTORNEY'S JOB

11 TO REPRESENT YOU AND ADVOCATE YOUR POSITION AND PROTECT YOUR

RIGHTS AND INTERESTS. SEE NOW EXHIBIT "A", PAGE 3, RT EXCERPT 11, LINES,

1-24, 27, 28 → THE DEFENDANT: (MARSDEN HEARING 11-05-04) 'SO COUNSEL IN A SENSE

-- I DON'T WANT TO BE HARSH AND SAY LIED TO ME, (REFERRING TO MR. PLUMMER)

BUT HE DECEIVED ME AND HE CAME TO VISIT ME AND WE HAD A CONVERSATION

AND I ASKED HIM AGAIN, "IS THERE ANYTHING I CAN DO PRIOR TO TRIAL TO

SUPPRESS THIS EVIDENCE THAT WAS UNLAWFULLY OBTAINED, INCLUDING

MY ARREST," BECAUSE IN THE BEGINNING, AS I SAID, THERE WAS A

MIRANDA VIOLATION. I SHOULD HAVE BEEN MIRANDIZED WHEN

THE OFFICER BEGAN ASKING ME THAT DIRECT INCRIMINATING

QUESTION "[ ]," -- ALSO, HE ENTERED MY APARTMENT UNLAWFULLY

IN VIOLATION OF 4TH AMENDMENT (AND 14TH DUE PROCESS AND EQUAL PROTECTION

CLAUSES) -- ATTORNEY HAD TOLD ME NUMEROUS TIMES THAT THERE'S NOTHING

YOU CAN DO UNTIL TRIAL. OKAY. -- WORKED INDEPENDENT OF HIM BECAUSE ALSO

HE IS (HAS) NOT GATHERED, IN SEVEN MONTH'S, ANY EXCULPATORY EVIDENCE, I

DO NOT HAVE HARD DISCOVERY. EACH TIME I'VE COME TO COURT I HAVE NOT

RECEIVED A RECEIPT FROM THE COURT'S THAT I HAVE BEEN TO COURT.

MR. E. J. BURTON # F62320 IN PRO PER
P.O. BOX 5246-C-SATF/SP C1-132L
CORCORAN, CA. 93212

1. SEE EXHIBIT "E", PAGE 6, RT EXCERPT 28, LINES 13 AND 14 - MR. ADAIR: BY THE WAY,
2. COULD I ADDRESS DISCOVERY BRIEFLY? THE COURT: NO. WHEN I SAY "NO"
3. SEE EXHIBIT "E", PAGE 13, RT EXCERPT 64, LINES, 22-28 ALSO SEE
4. EXHIBIT "E", PAGE 14, RT EXCERPT 65, LINES 1-9 > MR. ADAIR: COULD I
5. HAVE A MOMENT WITH MY CLIENT, YOUR HONOR? THE COURT: SURE
6. MR. ADAIR. MR. ADAIR: YES, YOUR HONOR, BEFORE WE GO ANY FUTHER,
7. YOUR HONOR, MR. BURTON WOULD LIKE YOU TO READ HIM THE
8. COURT RULES CONCERNING HIS RIGHTS TO A CONTINUANCE,
9. HIS RIGHT TO AN IN CAMERA HEARING AND HIS RIGHT TO
10. APPEAL. THE COURT: WELL, I'M NOT GOING TO DO ANY OF THAT
11. AT THE MOMENT. PLUS IT'S NOT MY FUNCTION TO RECITE
12. LAW AND PROCEDURE FOR THE BENIFIT OF MR. BURTON. WE'RE
13. IN THE MIDST OF THIS HEARING AND WE'RE EITHER GOING
14. TO CONCLUDE THIS HEARING OR ELSE WE'RE GOING
15. TO FURTHER THE HEARING, SO TO SPEAK, BY ELICITING
16. ADDITIONAL TESTIMONY. MR. ADAIR: THANK YOU YOUR
17. HONOR. STATEMENT OF RELEVANT FACTS - COUNSEL ADAIR WAS ASLEEP DURING
18. A SUBSTANTIAL PORTION OF THE 1538.5, HAD FALSELY INFORMED THE COURT THAT
19. DEFENDANT WAS GOING TO TESTIFY, MISSTATED THE FACTS, DEFENDANT HAD NO
20. LEGAL ASSISTANCE. THE HON. JUDGE PRECKEL HAD TO AWAKEN COUNSEL,
21. COUNSEL WAS NOT CONCIOUS AND DID'NT UNDERSTAND WHAT WAS
22. TRANSPIRING AT ALL TIMES. COUNSEL WAS "ABSENT". THE TRIAL
23. COURT ABUSED IT'S DECRETION IN DENYING PETITIONER HIS RIGHT
24. TO AN IN CAMERA, HIS MARSDEN, BECAUSE CLEARLY AT THAT POINT
25. PETITIONER WAS CONDUCTING HIS OWN HEARING, THE COURT
26. FUTHER ABUSED IT'S DISCRETION IN IT'S UTTER REFUSAL TO INFORM
27. DEFENDANT ON HIS RIGHTS CONCERNING AN IN CAMERA, HEARING AND HIS
28. RIGHTS TO APPEAL THE 1538.5 HEARING. SEE EXHIBIT "E" PAGE 16, RT EXCERPT 78
29. LINES 25-28, SEE ALSO EXHIBIT "E", PAGE 17, RT EXCERPT 79 LINES 6, 9-12.

60

1  MR. ADAIR: (APPROX. ON OR ABOUT 1-28-05, 1530.5 HEARING, EXAMINING THE
2  ALLEGED CODEFENDANT MR. McKELVEY.) Q. BUT YOU WERE NEVER READ
3  YOUR RIGHT; CORRECT? THE COURT: HE'S ALREADY ANSWERED THAT
4  AND IT'S BECOMING VERY CLEAR THAT MR. BURTON IS NOW
5  DIRECTING THE QUESTIONING BY SCRIBBLING NOTES FOR
6  YOUR BENIFIT, MR. ADAIR, AND FRANKLY, A LOT OF THE QUESTIONS
7  ARE IRRELEVANT. DO YOU HAVE ANYTHING FURTHER? MR. ADAIR:
8  IF I COULD HAVE A MOMENT, YOUR HONOR. YOUR HONOR, MY CLIENT
9  WOULD LIKE YOU TO KNOW -- THE COURT: WHAT'S THAT
10  SUPPOSE TO MEAN? MR. ADAIR: I DON'T KNOW, YOUR HONOR.
11  THE COURT: NOR DO I. SO WE'RE GOING TO KEEP ON GOING
12  SEE NOW EXHIBIT "E", PAGE 11, RT. EXCERPT 58, LINES 25-28 AND SEE ALSO
13  EXHIBIT "E" PAGE 12, RT EXCERPT 59, LINES 1-12 > MR. ADAIR: YOUR HONOR, MAYBE
14  I MISSPOKE, WHAT I SAID WAS CONFUSING. I HAD HIM UNDER SUBPOENA.
15  THE PROSECUTION DID NOT. THE COURT: I UNDERSTOOD MISS HANNAH TO SAY
16  SEE DID HAVE HIM UNDER SUBPOENA. MS. HANNAH: NOT FOR THE MOTION,
17  YOUR HONOR. THE COURT: NO, I UNDERSTAND. MS. HANNAH: FOR TRIAL
18  THE COURT: I MEANT FOR TRIAL ON MONDAY. THE COURT: ON MONDAY.
19  MR. ADAIR: I'M SORRY. THE COURT: YOU RELEASED HIM TODAY, BUT
20  SHE'S GOT HIM UNDER THUMB, SO TO SPEAK, FOR TRIAL ON MONDAY
21  THAT'S WHY I'M ENLISTING HER ASSISTANCE TOGETHER
22  WITH YOUR RENEWED EFFORTS TO HAVE HIM
23  HERE MONDAY MORNING. OKAY? MR. ADAIR: YES, SIR. SEE EXHIBIT "E"
24  PAGE 15, RT EXCERPT 66, LINES 20-27. THE COURT: STATUS UPDATE,
25  PLEASE. MR. ADAIR: YOU KNOW, YOUR HONOR, I THINK THE BOTTOM LINE
26  IS THE DEFENSE SHOULD REQUEST A CONTINUANCE, AND I AM REQUESTING
27  A CONTINUANCE OF THIS, IN TALKING TO MR. BURTON -- THE COURT: WHEN YOU SAY
28  "OF THIS" YOU MEAN THE SUPPRESSION MOTION -- MR. ADAIR: THAT'S CORRECT. THE COURT: IN PARTICULAR?

1

2  STATEMENT OF FACTS

3  SEE EXHIBIT "A", PAGE 67, R.T. EXCERPT 256, LINES 1-5, 10-16, THE DEFENDANT:

4  (1-01-05, MARSDEN) WHAT I AM SAYING, SIR -- EXCUSE ME, IS THAT HE

5  CAME BEFORE YOU. -- I'M SORRY SIR, HE CAME TO YOU, HE MANIPULATED

6  ME TO GET A PEREMPTORY CHALLENGE. THE COURT: -- WAS A

7  PEREMPTORY CHALLENGE FILED IN THIS CASE? MR. ADAIR: IT WAS, YOUR

8  HONOR. THE COURT: AGAINST WHO? MR. ADAIR: AGAINST JUDGE -- THE COURT:

9  HANOIAN? MR. ADAIR: HANOIAN. YES YOUR HONOR. SEE EXHIBIT "A", PAGE 65,

10  R.T EXCERPT 254, LINES 15, 16, 18-24, THE COURT: MR. ADAIR, YOU ARE SAYING IS

11  WORKING FOR THE PROSECUTION? THE COURT: IS THAT WHAT YOU ARE

12  SAYING? THE DEFENDANT: YES SIR. -- I AM SAYING HE'S STATE INTERPOSED.

13  THE COURT: HE'S WHAT? "MR. ADAIR": "HE'S STATE INTERPOSED. THE COURT:

14  STATE INTERPOSED, THE DEFENDANT: HE'S COURT APPOINTED.

15  RELEVANT FACTUAL BACKGROUND - THE HON. JUDGE HANOIAN WAS THE MAGISTRATE

16  PRESIDING OVER THE PETITIONERS PRELIMINARY HEARING, BOUND PETITIONER

17  OVER FOR TRIAL WITHOUT PROBABLE CAUSE BASED ON TESTIMONY OF

18  INSUFFICIENT EVIDENCE, THAT WAS UNLAWFUL SEIZED FROM PETITIONER'S HOME,

19  SUPPRESSED AS EVIDENCE AT THE 1538.5 HEARING. PETITIONER BELIEVES THAT

20  AFTER HE HAD ALREADY BEEN SEEN IN JUDGE HANOIAN'S COURT HE COULD'NT THEN

21  BE PEREMPTORILY CHALLENGED AFTER THE FACT. SEE NOW EXHIBIT "A", PAGE 80,

22  R.T. EXCERPT 797, LINES 1-11, THE COURT: (HON. L. HALGREN) ALL RIGHT, SO YOU HAVE

23  YOUR FRAME WORK AS TO WHAT YOU CAN DO. MR. ADAIR: YES, YOUR HONOR. THE COURT:

24  I THINK -- "MR. ADAIR": "IT'S FUN BEING A PROSECUTOR. THE COURT: IT DOES PUT

25  YOU IN A DIFFERENT ROLE, DOESN'T IT? ALL RIGHT LET'S TALK ABOUT

26  EXHIBITS. WE DON'T REALLY IN MY VIEW NEED TO DO THIS ON THE RECORD

27  BECAUSE WE WILL DO A MORE FULL INSTRUCTION REVIEW ON THE RECORD

28  AT THE END OF THE CASE.

P.O. BOX 5246 - CSATF/4P-C1-132L
COR CORAN, CA. 93212

1. SEE EXHIBIT "B", PAGE 5 & 5 through 5, PAGES, 5,6,7,8,9,10,11,12,13,14,15,16,17, RT
2. EXCERPTS, 0011,0012,0013,0014,0015,0016,0017,0018,0019,0020,0021 AND 0022,
3. LINES 1-28 (SEE ALL) AS SO STIPULATED AND SO SPECIFIED (MOTION FOR DISCOVERY
4. FILED, ON OR ABOUT JULY 30,04 BY DEFENSE COUNSEL MR. PLUMMER, SERVED ON
5. PROSECUTION, MS. HANNA, WHO COUNSEL ALLEGES FAILED TO RESPOND, DISCOVERY
6. MOTION WAS FILED PURSUANT TO BRADY V. MARYLAND SUPRA, SEE ALSO, EXHIBIT B
7. PAGE 24, RT EXCERPT 0023, SO STIPULATED (MR. PLUMMERS LETTER DATED
8. 06 JULY 04, REQUESTING INFORMAL DISCOVERY FROM D.A. MS. HANNAH),
9. SEE EXHIBIT "B", PAGE 27, PETITIONS DENIED MOTION FOR DISCOVERY
10. PURSUANT TO P.C. § 1054.9 FILED 13 JULY 07,
11. SEE EXHIBIT "B" PAGE 22, RT EXCERPT 1237, LINES 13,14,16 -18,23,24.
12. (MARSDEN 7-29-05) THE DEFENDANT: MAY I MAKE ONE OTHER MOTION?
13. THE COURT--ON WHAT GROUNDS: THE DEFENDANT: A MOTION FOR
14. A RETRIAL. THE COURT: OKAY, THAT WOULD BE A SEPARATE MOTION,
15. -- BUT TODAY WILL NOT BE THE DAY, SEE EXIBIT B, PAGE 56, R.T. EXCERPT
16. 1071, LINES 1-9, 12-15, MR. ADAIR: THE ORDER OR EVEN IF YOU
17. WANT TO TAKE JUDICIAL NOTICE THAT THERE WAS A RESTRAINING
18. ORDER ISSUED IN THIS CASE ON A CERTAIN DATE. THE COURT:
19. IT'S NOT REALLY IN DISPUTE. DO YOU HAVE ANY OBJECTION TO THAT?
20. MR. TROCHA: WELL WE'RE NOT TRYING TO PROVE MR. THOMAS
21. VIOLATED A RESTRAINING ORDER, -- HE HAD KNOWLEDGE THERE
22. WAS AN ORDER: THE COURT: I CAN TAKE JUDICIAL NOTICE THAT
23. THAT WAS ISSUED ON THAT DATE, I'LL DO THAT. MR. ADAIR: THANK
24. YOU, YOUR HONOR, THE COURT: OKAY, THANK YOU. BYE, SEE EXHIBIT B, PAGE
25. 57, RT EXCERPT 1071 (7-27-05), LINES 5,6,10,13-32 (THE COURT: LET'S
26. GO ON THE RECORD, COUNSEL AND THE DEFENDANT ARE PRESENT, THE JURY IS NOT,
27. MR. TROCHA: RIGHT, (THE COURT): ~ON THE JUDICIAL NOTICE, I REVIEWED THE FILE.
28. WOULD IT BE SIMPLY ADEQUATE TO NOTE UNDER THE CASE NUMBER THAT

63

M.E. BURTON # P62569 WORKER
P.O. BOX 5246 - CSATF/SD-C1-132L
COR CORAN, CA. 93212

1  ON SUCH AND SUCH A DATE AN ORDER FOR INJUNCTION PROHIBITING
2  HARASSMENT WAS ISSUED BY THE COURT PROTECTING MR. BURTON?
3  MR. ADAIR: CORRECT. THE COURT: THAT'S ALL YOU NEED? MR. ADAIR: THAT
4  WOULD BE FINE, YOUR HONOR. THE COURT: ALL RIGHT, I'LL DO THAT.
5  SEE EXHIBIT B, PAGE 55, RT. EXCERPT 1069, LINES 2, 3, 4, 5, 10, 11, 15, 16, 19, 25,
6  -28. THE COURT: WELL, I'M NOT EVEN SURE HOW WE WOULD KNOW IT'S
7  HIS BACKPACK. -- THE OFFICERS FOUND A BACKPACK, WE DON'T
8  HAVE TESTIMONY AS TO WHOSE IT IS OR ANYTHING. -- THE COURT: OKAY
9  WELL, IF IT FALLS ALONG THE LINES OF THE DECLARATIONS FILED
10 WITH THE TRO, IT WAS -- MR. TROCHA, ESSENTIALLY, IT'S GOING
11 TO PROVE A STATEMENT THAT CAN'T BE CROSS-EXAMINED, THAT --
12 MR. ADAIR: FOR PROOF OF HIS -- PROBLEMS. MR. ADAIR: I WOULD LIKE
13 TO INTRODUCE A COPY OF THE RESTRAINING ORDER? THE COURT:
14 THE ORDER? RELEVANT FACTUAL BACKGROUND - PROSECUTION HELD AND
15 SUPPRESSED DEFENSE EXHIBIT UNTIL 7-27-05, APPROX 2 WEEKS INTO
16 TRIAL, DEFENSE COUNSEL ADAIR DID A TARDY INSPECTION OF DEFENDANTS
17 ALLEGED BACKPACK, ALLEGED TO BE FOUND ON THE ROOF OF HIS CAR
18 BY POLICE ON 19 MARCH 05, PROSECUTION USED FALSE INFORMATION
19 FROM AN ALLEGED NOTE BOOK FOUND INSIDE OF THIS BACKPACK NEVER
20 IN PETITIONERS CONTROL, THE COURT DENIED PETITIONERS RIGHT TO
21 MAKE A DEFENSE, AS COPIES FOUND IN BACKPACK OF DOCUMENTS
22 WERE TAKEN FROM A COURT FILE BY DEFENDANT ON APPROXIMATELY 20 FEB 01
23 PETITIONER HAD KNOWLEDGE AND PROOF THAT HE HAD KNOWN ABOUT MR. THOMAS'S
24 VIOLENT CRIMINAL BEHAVIOR, EVIDENCE THAT WAS ADMISSIBLE UNDER
25 352, THE COURT PRED JUDICIALLY ERROR IN DENYING PETITIONER HIS
26 U.S. CONST RIGHT TO MAKE A DEFENSE UNDER THE DUE PROCESS CLAUSE AND
27 EQUAL PROTECTION OF THE 14TH AMENDMENT, PROSECUTIONS SUPPRESSION
28 OF EVIDENCE FAVORABLE TO DEFENSE AND FAILURE TO TIMELY DISCLOSE

64

MR. E. N. NORTON #D2720 FW.PROP.
P.O. BOX 5246-CSATF FAC. 1-132C
CORCORAN, CA. 93212

STATEMENT OF FACTS.

ON OR ABOUT 11-05-04, PETITIONER HAD A MARSDEN HEARING, AT WHICH POINT MR. PLUMMER RESIGNED OF THE CASE, HE HAD FILED A 1538.5 MOTION THAT BEGAN WITH THE (5TH AND 6TH AMENDMENT) VIOLATION ALSO KNOWN AS A MIRANDA VIOLATION, PRIOR TO THE POLICE UNCONSTITUTIONAL ENTRY OF PETITIONER'S RESIDENCE WITHOUT CONSENT AND SEIZED EVIDENCE LATER SUPPRESSED THAT WAS UNLAWFULLY SEIZED, THE ALLEGED MIRANDA VIOLATION OCCURED AS ARRESTING OFFICER HOLMES WAS ESCORTING, ALLEGEDLY PETITIONER TO HIS PATROL VEHICLE AFTER PETITIONER HAD BEEN DRAWN UPON WITH OFFICER HOLME'S GUN, AND UNCONSTITUTIONALLY SEIZED IN HIS PERSON, IN HIS REASONABLE EXPECTATION OF PRIVACY. OFFICER HOLMES HAD NOT AT THIS POINT MIRANDIZED (GIVEN 5TH AND 6TH AMENDMENT WARNINGS) AT THE POINT IN TIME AGENT KIRK ASKED THE PETITIONER A DIRECT INCRIMINATING QUESTION, PETITIONER SHOULD'VE BEEN, BUT HADN'T BEEN MIRANDIZED (GIVEN 5TH AND 6TH AMENDMENT WARNINGS) DEFENSE COUNSEL MR. PLUMMER. FAILED TO ITEMIZE EACH ITEM UNCONSTITUTIONALLY SEIZED, OMITTED FACTS, DIDN'T BEGAN THE 1538.5 SUPPRESSION MOTION BASED ON THE (14TH U.S. CONST. AMEND. VIOLATION) 4TH AMENDMENT VIOLATION, AND VIOLATED DIVISION III COURT RULES, WHICH HE HAD DEEMED THE MOTION TO BE AN ABANDONMENT MOTION, AS PETITIONER HAD LEARN THROUGH HIS RESEARCHING AS A LAYMAN. SEE NOW EXHIBIT "D" PAGE 32, RT EKCERPTS, LINES, 3-23, SEE ALSO EXHIBIT "D" PAGE 33, RT EKCERPT 6, LINES 3-22, SEE ALSO, EXHIBIT "D" PAGE 34, LINES 3-10, 17-21 SEE EXHIBIT "D" PAGE 35, RT EKCERPT 8, LINES 1, AND 23, SEE ALSO 1538.5 MOTION FILED 10-20-2004, BY MR. PLUMMER, EXHIBIT, D, PAGES, 36, 37, 38, RT EKCERPTS, 0067, 0068, 0069, LINES 1-28 ON ALL.> THE COURT (HON. JUDGE PRECKLE): SO I UNDERSTAND THAT YOU DON'T BELIEVE THAT YOU'RE BEING EFFECTIVELY REPRESENTED BY MR. PLUMMER, I NEED TO KNOW FACTS AND SPECIFICS THAT LEAD YOU TO THAT CONCLUSION. THE DEFENDANT: NO. 1, I WOULD LIKE THOSE MOTIONS PULLED BECAUSE THEY ARE INSUFFICIENT, THE COURT: YOU WOULD LIKE THE MOTIONS WHAT? THE DEFENDANT: PULLED, THE 1538 (5) MOTIONS THAT WERE FILED-- INCORRECTLY. THEY WILL BE DEEMED INSUFFICIENT DUE TO THE FACT THAT ITEMS WERE NOT SPECIFICALLY LISTED PERTAINING TO ITEMS THAT WERE SEIZED.

5

MATHEW BURTON #F02720 IN PROPER
P.O. BOX 5246 CSATF/SP. C1-132L
COR CORAN, CA. 92212

I HAVE NOT AS YET AT THIS POINT, AFTER REQUESTING SEVERAL
TIMES, TO HAVE RECEIPT OF THE PROPERTY THAT WAS SEIZED
FROM ME. MY LIFE, MY PROPERTY HAVE BEEN SEIZED FROM ME
UNLAWFULLY. IT WAS NOT MENTIONED IN THE FIRST MOTION THAT
WAS SUBMITTED THAT PRIOR TO INTERROGATION THERE WAS ALSO
AN ADDITIONAL 4TH AMENDMENT VIOLATION WHEREAS EVIDENCE WAS
TAKEN FROM MY BODY, BELT, PANTS, SHIRT, SOCKS, SHOES, AND GLASSES
WERE REMOVED FROM MY BODY, -- TAKEN AND PLACED WITH OTHER
PROPERTY THAT WAS SEIZED, -- THAT VIOLATION OF THE 4TH
AMENDMENT SHOULD HAVE BEEN MENTIONED IN THE MOTION
BECAUSE IT WAS DONE WITHOUT WARRANT, AND ALSO THERE
WAS A VIOLATION OF PENAL CODE 147 AS I BELIEVE PRIOR TO
INTERROGATION, I WAS STRIPPED NAKED, PUT INTO A WHITE PAPER
SUIT, BAREFOOT AND FREEZING AND PLACED IN THE ISOLATION CELL
FOR APPROXIMATELY ONE HOUR PRIOR TO INTERROGATION.
   THE COURT! YOU WERE UNDER ARREST DURING ALL OF THAT?
THE DEFENDANT: I WAS PLACED IMMEDIATELY UNDER
ARREST, YOUR HONOR, FROM THE POINT OF CONTACT WITH THE POLICE,
THE COURT: GO AHEAD. THE DEFENDANT: THERE WAS STATEMENTS
ENTERED ALSO IN THAT FIRST MOTION THAT WERE FALSE STATEMENTS
THAT I SPECIFICALLY TOLD MY ATTORNEY, MR. PLUMMER, THAT I DID NOT
MAKE, AFTER THE POLICE MADE DIRECT INCRIMINATING STATEMENTS,
"WHERE IS --" OR QUESTION AND DIRECT INCRIMINATING QUESTION,
"[?]." -- I STUCK TO MY RIGHT TO REMAIN SILENT. I SAID NOTHING,
-- BEFORE INTERROGATION (AT THE POLICE STATION) I INVOKED MY 6TH
AMENDMENT RIGHT TO COUNSEL IMMEDIATELY FOLLOWED BY MY
5TH AMENDMENT RIGHT TO REMAIN SILENT, MR. PLUMMER DID NOT
MENTION THAT IN THE MOTION. HE OMITTED THAT -- AFTER I
INVOKE(D) MY 5TH AMENDMENT RIGHT AND THE OFFICER INITIATED
THE CONVERSATION, I DID NOT, I THEN AGAIN WAS QUESTIONED,
-- A ROLE IN DENYING MY 1ST AMENDMENT RIGHT TO FREEDOM OF
SPEECH AND EXPRESSION IN VIOLATION OF PENAL CODE 851(D). I
WAS DETAINED PAST THREE HOURS, UPON MY IMMEDIATE REQUEST
TO SPEAK TO MY ATTORNEY, I SHOULD HAVE BEEN ALLOWED TO CALL
MY ATTORNEY, -- LIKE A SLAVE, SHACKLED AND BARE FOOT,
PHOTO GRAPH'S WERE TAKEN -- SINCE I AM BASICALLY A

66

P.O. BOX 5246 CSATF/SP C1-132L
CORCORAN, CA. 93212

LAYMAN IN THIS FIELD. SEE EX'HIBIT "D", PAGE 37, AT EXCERPT
0068, LINES 21-27, SEE ALSO EXHIBIT "D", PAGE 38, AT EXCERPT 0069,
LINES 1-7, 18-26. STATES "(MOTION FILED 10-20-04 BY MR. PLUMMER
DEFENSE COUNSEL)"THIS MOTION CHALLENGES ALL PHYSICAL
(AND INTANGIBLE) EVIDENCE SEIZED OR OBTAINED AS A RESULT OF
THE DEPRIVATION OF THE LIBERTY OR RIGHT TO PRIVACY OF THE FOLLOWING
PERSON; ERIC BURTON (DEFENDANT)--THE COMPLAINED OF SEARCH AND SEIZURE
VIOLATES DEFENDANT'S FOURTH AMENDMENT RIGHTS UNDER THE UNITED
STATES CONSTITUTION,--MORE SPECIFICALLY, THIS MOTION IS BASED
ON VIOLATION OF DEFENDANT'S REASONABLE EXPECTATION OF
PRIVACY, AS GUARANTEED BY THE FOURTH, FIFTH, AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ON THE
FOLLOWING PARTICULAR GROUNDS; THE POLICE ACTION WAS
WITHOUT A WARRANT, AND LACKED SUFFICIENT CAUSE TO JUSTIFY
THE INVASION OF LIBERTY COMPLAINED OF; THE ARREST "OUTSIDE"
DEFENDANT'S PLACE OF RESIDENCE WITHOUT A WARRANT;
MEMORANDUM OF POINTS AND AUTHORITIES (ATTACHED TO THIS MOTION);
DATE: 10-19-04 RESPECTFULLY SUBMITTED, BY LEE PLUMMER,
ATTORNEY AT LAW. ~~SEE EXHIBIT "D" ...~~

MR. E. W. BURTON #F02720 INPROPER
P.O. BOX 5246 C-SATF/SP-C1-132L
COR CORAN, CA 92212
STATEMENT OF FACTS

MATERIAL EXCULPATORY EVIDENCE TO THE DEFENSE AFTER
A DISCOVERY MOTION WAS FILED BY DEFENSE ON 30 JULY 04,
VIOLATED PETITIONER'S FEDERALLY GUARANTEED U.S. CONSTITUTIONAL
RIGHTS, IN VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION
CLAUSES OF THE 5TH AND 14TH AMENDMENTS, PETITIONERS
FUNDAMENTAL RIGHTS TO A FAIR TRIAL WAS VIOLATED BY THE
TRIAL COURT. SEE EXHIBIT "B" PAGE 48, R.T. EXCERPT 1051, LINES,
20, 23-28, ONE OF THE THINGS I STILL HAVE TO DO -- COME --
SOME EVIDENCE IN THERE, IF I CAN FIND IT -- WHAT MAYBE --
IN THERE IS, LIKE, A LIST OF CASES AGAINST MR. THOMAS
THAT MY CLIENT HAS RESERVED, I WOULD BE INTRODUCING
THAT AT 1:30. I SUPPOSE, BUT WE'VE TALKED ABOUT GOING
INTO THE BACK PACK BUT I JUST HAVEN'T HAD THE TIME TO
DO IT. SEE NOW EXHIBIT "E", PAGE 25, R.T. EXCERPT 0379, DATED 7-27-05,
SEC 11:55 AM; THE PEOPLE INDICATE THAT THEY OBJECT TO THE POSSIBILITY
THAT THE DEFENSE MAY HAVE TESTIMONY RELATING TO A BACKPACK
FOUND IN THE DEFENDANT'S CAR AS IT WAS NEVER IDENTIFIED AS
BEING THE DEFENDANT'S. THE COURT RESERVES ON THIS ISSUE,
SEE SAME R.T. EXCERPT 0379, AT 1:30; COURT IS AGAIN IN SESSION WITH ALL
COUNSEL AS PREVIOUSLY NOTED AND THE DEFENDANT IS PRESENT, DEFENSE
COUNSEL REQUEST THAT HE BE PERMITTED TO EXAMINE THE BACKPACK
(ALLEGEDLY) FOUND IN THE DEFENDANT'S CAR, THE COURT GRANTS
THAT REQUEST SEE SAME R.T. EXCERPT 0379 AT 2:32PM; -- OUT OF
THE PRESENCE OF THE JURORS, THE DEFENSE PRESENTS SOME
ADDITIONAL DOCUMENTS (APPLICATION FOR RESTRAINING ORDER
MS. SANDERS OBTAINED AGAINST MR. THOMAS) THAT THEY WOULD
LIKE TO INTRODUCE INTO EVIDENCE, THE COURT RULES THAT
THESE DOCUMENTS MAY BE MARKED AS AN EXHIBIT, BUT
IS NOT ADMISSIBLE AND WILL NOT BE RECEIVED,
SEE EXHIBIT "B" PAGE 49, R.T. EXCERPT 1109, LINES 1-11, 18, 19, 21-28
MR. ADAM, THE ORIGINALS THAT WERE TAKEN OUT OF MR. BURTON'S
(ALLEGED) BACK PACK, THEY INDICATE -- AT LEAST MOST OF
THEM, ARE RESTRAINING ORDERS, IN FACT,

68

MR. ELL BURTON, #F-2780 IN PROPER
P.O. BOX 5246-CSATF/SP.C.1-132L
CORCORAN CA. 93212

WE WOULD BE INTRODUCING ALL OF THOSE INTO EVIDENCE
TO SHOW SOME KNOWLEDGE BY MR. BURTON OF THOMAS' TENDENCIES
TOWARDS VIOLENCE AND ABUSE. THE COURT: ALL RIGHT, AND FOR
THE RECORD, -- MR. TROCHA, YOUR RESPONSE? MR. TROCHA: --
ORDER IN CONJUNCTION WITH THE DOMESTIC VIOLENCE CASE OF
2000 -- THE INCIDENT FROM 2000. -- THE EFFECT THOSE DOCUMENTS
HAD -- UPON HIS PSYCHE -- WANTS TO BRING IN THESE DOCUMENTS --
IN ORDER FOR THE JURY TO ACCEPT THAT HE THOUGHT OF THESE
SAME DOCUMENTS -- "AND HE SHOULD HAVE SEEN THESE DOCUMENTS
PROBABLY AT THE BEGINNING OF TRIAL AS OPPOSED TO RIGHT NOW
THEY ARE. (SEE EXHIBIT "B", PAGE 50, R.T. EXCERPT 1110, LINES 5,6,9, 12-
16, 19, 20, 21, 22, 27, 28, SEE ALSO, EXHIBIT B, PAGE 51, R. TEK CENT 1111,
LINES 1, 2-6, 8, 9, -16, 19-22, 24-28.) -- DOCUMENTS -- AGAIN, THE
DEFENDANT, SINCE HE'S NOW CLAIMING HE KNEW OF THESE
DOCUMENTS, "SHOULD HAVE BEEN AVAILABLE" -- TIME. BUT
APPARENTLY THE EFFECT -- MR. ADAIR: YOUR HONOR, -- THEY'RE BEING
OFFERED TO SHOW THAT THIS INFORMATION THAT MR. BURTON
WAS AWARE OF -- "HAD THE DOCUMENTS APPARENTLY TAKEN
FROM A COURT FILE -- AND I THINK IT'S CERTAINLY RELEVANT
EVIDENCE AS TO HIS STATE OF MIND. THE COURT: ALL RIGHT,
WELL, I'VE LOOKED AT THE DOCUMENTS. -- PHOTO COPIES OF
INCIDENTS THAT OCCURED IN 2000 AND 1997. IT WOULD BE --
WERE IN THE BACK PACK, -- EXTENT MR. BURTON WAS AWARE
OF THEM. -- IN THAT THEY'RE, YOU KNOW -- OCCURED QUITE SOME
TIME BEFORE. WHEN MS. SANDERS WAS -- IT WILL NOT BE
RECEIVED. YOU CAN HAVE IT MARKED AS DEFENSE'S NEXT IN
ORDER FOR THE RECORD, BUT NOT AS ADMISSIBLE EVIDENCE.
MR. ADAIR: WELL, AMONG OTHER THINGS, IT INDICATES THAT MR.
BURTON WOULD KNOW MR. THOMAS WAS ON PAROLE. I THINK THAT'S
RELEVANT INFORMATION INDICATING THAT A PERSON MIGHT
BELIEVE THAT MR. BURTON THOMAS WAS DANGEROUS, THAT
HE HAD BEEN TO PRISON -- BUT WHETHER MR. BURTON WAS AWARE OF
SOME OF THOSE THINGS OR THE ALLEGATIONS AND HAD A REASONABLE
FEAR OF MR. THOMAS. THE COURT: WELL, AGAIN, A PERSON COULD BE ON --
BE VIOLENCE. AND, -- I THINK IT'S -- WHAT MR. BURTON KNEW ABOUT THEM --
SO IT WILL BE MARKED AS DEFENSE F FOR THE RECORD, BUT NOT RECEIVED.

69

M. NEW BORTON #J 55272 IN PRO PER
P.O. BOX 5246 - C SATF/SP C1-132L
CORCORAN, CA. 93212

STATEMENT OF FACTS

PETITIONER WAS STANDING IN THE THRESHOLD OF HIS APARTMENT MANAGER'S DOORWAY UNIT 6 AT 425 E. MAIN ST. IN EL CAJON, CA. 92020, ALLEGED TO BE MAKING A PHONE CALL, HOWEVER NO PHONE WAS EVER IN PETITIONER'S HANDS, OR OTHERWISE IN HIS POSSESSION ON 19 MARCH 04. PETITIONERS APARTMENT UNIT WAS UNIT #5 AT 425 E. MAIN STREET IN E.C. CA. 92020, WHILE STANDING AT THE THRESHOLD OF HIS RESIDENTIAL MANAGERS DOORWAY IN A PRIVATE DWELLING AREA, WHERE HE HAD A REASONABLE EXPECTATION AGAINST POLICE, UNCONSTITUTIONAL INTRUSION, AND UNREASONABLE-NESS, IN A PRIVATE RESIDENTIAL LIVING AREA, NOT IN PUBLIC VIEW. THE POLICE EXCEEDING THE TERRY LINE OF AUTHORITY, SEIZED PETITIONERS PERSON WITH UNREASONABLE, EXCESSIVE, INTRUSIVE FORCE, AS HE WASN'T IN POSSESSION OF ANY WEAPONS. THE OFFICER'S INTRUSION WAS WARRANTLESS, AFTER SEIZING PETITIONERS PERSON, HANDCUFFING HIM, ARRESTING HIM, PUT HIM INSIDE A PATROL VEHICLE WITHIN SECONDS OF INITIAL CONTACT WITH PETITIONER, INDICATING IN NO WAY WAS HE FREE TO LEAVE, AND WITHOUT WARRANT AND WITHOUT CONSENT, SEARCHED PETITIONER'S HOME, OF WHICH HE HAD NOT OCCUPIED. POLICE DISCOVERED ANOTHER BLACK MALE INSIDE UNBEKNOWSTED TO PETITIONER. PETITIONER'S APARTMENT MANAGER MR. HELSEL WAS PRESENT, AND AN EYE WITNESS TO THE POLICE'S UNLAWFULLY, SEIZURE OF PETITIONES PERSON, INVASION OF HIS HOME, SEIZURE AND SEARCH THERE OF AND THE SEARCH AND UNCONSTITUTIONAL SEIZURE WITHOUT WARRANT OF PETITIONERS VEHICLE PARKED ON THE CURTILAGE OF PETITIONERS HOME. NOW SEE TESTIMONY DIRECT EXAMINATION BY MS. HANNAH. D.A. ——

70

ERIC W. BURTON
P.O. BOX 5246-C SATFISP CI-132L
CORCORAN, CA. 93212

1. THERE WITH HIM? A. THE ENTIRE TIME HE WAS IN PATROL CAR?
2. Q. YES. A. I DON'T RECALL. Q. WERE THE WINDOWS DOWN IN YOUR
3. PATROL CAR? A. -- BUT I CAN'T SPECIFICALLY RECALL THAT DAY.
4. Q. AND I BELIEVE YOU TESTIFIED THAT YOU'VE WALKED MR. BURTON
5. TO THE PATROL VEHICLE, CORRECT? A. CORRECT. Q. WHEN DID YOU
6. WRITE YOUR REPORT ON THIS INCIDENT? A. I WOULD HAVE WRITTEN
7. IT THAT AFTERNOON. Q. BUT WITHIN WHAT, A COUPLE OF HOURS AFTER
8. THE EVENTS TOOK PLACE? A. CORRECT. Q. AND I BELIEVE YOU
9. TESTIFIED TO THE FACT THAT YOU NEVER HEARD OR DID YOU EVER HEAR
10. AGENT KIRK TALKING TO MR. BURTON? A. YES, I DID. Q. WHAT WAS
11. SAID? A. THE PORTION THAT I HEARD WAS HIM ASKING MR. BURTON WHERE
12. THE (ALLEGED) WEAPON WAS. SEE EXHIBIT "D", PAGE 53, RT EXCERPT 90, LINES,
13. 10-12, 20-27, SEE ALSO EXHIBIT D, PAGE 54, R.T. EXCERPT 91, LINES 7-12, 17-19,
14. 25-28, SEE EXHIBIT "D", PAGE 55 RT EXCERPT 92, LINES, 17-24, SEE EXHIBIT "D"
15. PAGE 56, RT EXCERPT 93, LINES, 2-10, 16-18, 21-28, SEE EXHIBIT "D", PAGE
16. 57, R.T. EXCERPT. 94, LINES 1-8, 25-28. SEE EXHIBIT "D", PAGE 58, RT EXCERPT
17. 95, LINES, 1-4, 7,8, 12-15, 22, 25-28. SEE EXHIBIT "D", PAGE 59, R.T. EXCERPT
18. 96, LINES, 1-7, 9,10,14,15, 19-28, SEE EXHIBIT "D" PAGE 60, RT EXCERPT 98,
19. LINES, 4,5,7,8, 12-19, SEE EXHIBIT "D", PAGE 61, RT EXCERPT 100, LINES 2-25,
20. SEE EXHIBIT "D" PAGE 62, RT EXCERPT 101, LINES, 13-28.
21. BY MR. ADAIR: Q. MR. HELSEL, DO YOU KNOW ERIC BURTON? A. YES I DO.
22. Q. MR. HELSEL, COULD YOU INDICATE IN WHAT CONTEXT YOU KNOW MR.
23. BURTON? IN OTHER WORDS, DO YOU LIVE -- A. I'M A PROPERTY MANAGER
24. FOR QUINN PROPERTY MANAGEMENT COMPANY IN SAN DIEGO, AND HE RENTED A
25. PROPERTY FROM US OUT IN EL CAJON, 425 EAST MAIN, APARTMENT 5. Q. WERE
26. YOU PRESENT LAST YEAR AT A TIME WHEN HE WAS ARRESTED? A. YES.
27. Q. COULD YOU EXPLAIN TO US WHAT YOU SAW OR HEARD? WHAT WAS THE
28. FIRST THING THAT YOU NOTICED THAT SEEMED UNUSUAL. MS. HANNAH: OBJECTION,

71

MR. JOE BURTON #F-13220 IN PROPER
P.O. BOX 5246 - CSATF/SP CI-132L
CORCORAN CA. 93212

1. LEADING. THE COURT: OVERRULED, YOU CAN ANSWER, JUST TELL US WHAT HAPPENED,
2. WHAT YOU SAW. THE COURT: WHERE IS THIS IN RELATION TO YOUR APARTMENT?
3. THE WITNESS (MR. HELSEL) I'M IN 6. THE COURT: ALL RIGHT, GO AHEAD MR.
4. ADAIR. BY MR. ADAIR: Q. COULD YOU TELL US HOW MANY UNITS ARE IN THAT?
5. A. THERE'S SIX. Q. HOW FAR AWAY FROM YOU WAS HE AT THE TIME THAT THE
6. OFFICERS ARRESTED HIM? A. HE WAS RIGHT IN FRONT OF ME AT FIRST,
7. THEN THEY MADE HIM STEP OUT, LAY DOWN ON THE BLACK TOP, PUT HIS
8. HANDS BEHIND HIM. Q. HOW FAR WAS HE AWAY FROM YOU AT THE TIME
9. HE WAS LAID DOWN ON THE BLACKTOP? A. TEN FEET. Q. WERE YOU
10. STILL WATCHING AT THAT POINT? A. PRETTY MUCH SO, YES. Q. COULD
11. YOU TELL US THE NEXT THING THAT YOU SAW OR HEARD, A. " THE YOUNG
12. MAN KEPT OPENING THE DOOR IN APARTMENT 5, AND THE ATTENTION WAS
13. DRAWN. THE OFFICER SAW THAT, SO HE WENT OVER THERE AND KNOCKED
14. ON THE DOOR BECAUSE THE KID CLOSED THE DOOR AS HE CAME UP,
15. HE OPENED THE DOOR, AND I GUESS THEY WANTED ACCESS AND THE
16. KID WOULDN'T LET HIM -- Q. LET ME INTERRUPT FOR A SECOND AND
17. ASK YOU HOW FAR AWAY FROM YOU WAS THE POLICE CAR THAT MR. BURTON
18. A. THE POLICE CAR WAS 20 FEET PLUS MAYBE 25, Q. WAS THE NEXT
19. THING THAT HAPPENED? A. I'M NOT SURE WHETHER THE OFFICERS
20. CHANGED OR THE OFFICER, IT'S BEEN AWHILE, ANYHOW, ONE OF THE
21. OFFICERS WENT INTO THE UNIT, BROUGHT THE KID OUTSIDE, AND THEY
22. HAD SOMETHING WITH HIM, -- BUT I DIDN'T SEE IT BECAUSE IT
23. WAS WRAPPED. Q. WERE THEY CARRYING SOMETHING THAT WAS
24. WRAPPED? A. SOMETHING, YES. Q. DID YOU HEAR ANY PART OF THE
25. CONVERSATION BETWEEN MR. BURTON AND THE POLICE OFFICERS
26. AFTER HE WAS PUT INTO-- MR. MR. BURTON WAS PUT INTO THE POLICE
27. CAR? A. NO, ONCE HE WAS IN THE CAR, HE WAS TOO FAR AWAY FROM ME,
28. I KNOW BETTER THAN TO APPROACH THE CAR WHEN SOMEBODY IS IN CUSTODY.

72

P.O. BOX 5246 - CSATF/SP CI-132L
(COR CORAN CA. 93212

1  STAY OUT OF IT. MR. ADAIR: COULD I HAVE A MOMENT, YOUR HONOR?

2  THE COURT: SURE. BY MR. ADAIR: Q MR. HOW HOLD, COULD YOU DESCRIBE

3  TO THE COURT THE APARTMENT COMPLEX THAT YOU WERE THE MANAGER

4  OF, THE ONE WE HAVE BEEN TALKING ABOUT? A. THERE'S SIX UNITS

5  IN AN "L" PATTERN. FIRST THERE'S A ONE BEDROOM, AND THEN THERE'S A

6  STUDIO AND THEN THERE'S A LAUNDRY FACILITY AND THEN THERE'S A

7  GARAGE AND THEN THERE'S ANOTHER TWO STUDIOS, AND HIS WAS IN

8  THE CORNER. Q. HOW FAR AWAY FROM YOUR UNIT WAS HIS UNIT?

9  A. 25 MORE FEET ENOUGH 25 FEET MORE. Q. WHEN MR. BURTON WAS

10  ARRESTED BY THE POLICE, WAS HE IN THE PARKING LOT AREA? A. "HE

11  WAS STANDING RIGHT IN FRONT OF MY UNIT. HE WAS TALKING TO ME

12  WHEN THEY DROVE UP. Q. SO THERE'S NO GARDEN OR ANYTHING LIKE

13  THAT. A. THEY HAVE PLANTS AND SHRUBBERY OUT IN FRONT OF EACH UNIT.

14  Q. HOW ABOUT HOW FAR FROM THE UNITS? A. WELL, IT'S LOW BELOW

15  THE WINDOW. THE FLOWERS ARE BELOW THE WINDOW Q THE PARKING

16  LOT IS SHARED WITH THE GRAND BAR? A. NO, THE GRAND HAS THEIR SIDE.

17  I HAD DESIGNATED FOR TENANTS OVER THERE, -- THE PEOPLE IN THE BAR

18  KNEW BECAUSE I WOULD TELL ALEX AND JASON, WHO WERE THE OWNERS

19  OF THE BUSINESS, MR. ADAIR: MAY I HAVE ONE MOMENT, YOUR HONOR.

20  Q. WHEN THE POLICE ARRESTED HIM (MEANING MR. BURTON) A. "HE WAS STANDING

21  IN FRONT OF MY UNIT, NO. 6. Q YEAH. A. HE WAS STANDING RIGHT THERE. MR. ADAIR:

22  COULD I HAVE A MOMENT, YOUR HONOR? NO FURTHER QUESTIONS, YOUR HONOR. THANK YOU.

23  THE COURT: ALL RIGHT, MISS HANNAH, CROSS EXAMINATION. MS. HANNAH: THANK YOU, YOUR

24  HONOR. CROSS-EXAMINATION- BY MS. HANNAH: Q. MR. HECSEL? A. YES. Q DID YOU

25  SEE MR. BURTON MAKE A PHONE CALL? A. -- I DON'T REMEMBER.

26  Q. WHEN THE POLICE ARRIVED -A. WE WERE TALKING AND WE WERE

27  EXCHANGING SOME DIALOGUE, ALL OF A SUDDEN THERE THEY WERE.

28  Q. WHEN THE POLICE ARRIVED, DID THEY CONTACT THE DEFENDANT? A. -

73

MIKE BURTON #727202 A PROPER
P.O. BOX 5246 CSATF/SP C1-132L
COR CERAN, CA. 93212

1  OH, YES. Q. AND DID YOU OBSERVE THIS OCCURRING? A. YES, RIGHT

2  IN FRONT OF ME. MS. HANNAH: THANK YOU, NOTHING FURTHER. THE COURT:

3  MR. ADAIR, DO YOU HAVE ANY FURTHER QUESTIONS? MR. ADAIR: BRIEFLY

4  YOUR HONOR, (REDIRECT EXAMINATION) BY MR. ADAIR: Q. MR. HELSEL, WHEN

5  THE POLICE ARRIVED, DID THEY HAVE THEIR GUNS OUT? A. YES, Q. AND

6  THEY HAD THEIR GUNS OUT UNTIL MR. BURTON WAS HANDCUFFED?

7  A. YES. MR. ADAIR: THANK YOU VERY MUCH. THE COURT: THIS ALL

8  HAPPENED PRETTY QUICKLY ONCE THE POLICE ARRIVED ON THE SCENE?

9  A. PRETTY QUICK. Q. THEY TOOK HIM DOWN AT GUN POINT, THEY PRONED

10 HIM OUT ON THE GROUND? A. YES, BUT HE WASN'T FIGHTING OR

11 ANYTHING. THE COURT: UNDERSTOOD. Q. HOW LONG WOULD YOU

12 ESTIMATE HE WAS ON THE GROUND BEFORE THEY ESCORTED HIM TO

13 ONE OF THE PATROL CARS? A. --15, 20 SECONDS, 30 SECONDS.

14 Q. DO YOU RECALL ANY CONVERSATION -- HEARING ANY CONVERSATION

15 ABOUT SEARCHING MR. BURTON'S APARTMENT OR HIS VEHICLE OR

16 BOTH? A. NO, I DIDN'T HEAR ANYTHING. THE COURT: COUNSEL

17 ANYTHING FURTHER BASED UPON THE COURT'S INQUIRIES? MR. ADAIR: NO,

18 YOUR HONOR. THE COURT: MISS HANNAH? MS. HANNAH: NO. THE COURT: ALL

19 RIGHT, MR. HELSEL, THANK YOU VERY MUCH FOR BEING WITH US, YOU MAY

20 STEP DOWN. YOU'RE FREE TO GO. SEE NOW EXHIBIT "D" PAGE 65, RT. EXCERPT

21 714, LINES 18-28, SEE ALSO EXHIBIT "D" PAGE 66, RT EXCERPT 716, LINES,

22 6-16, 1, 19-25, SEE EXHIBIT D, PAGE 67, RT EXCERPT 717, LINES 5-13,

23 SEE EXHIBIT "D" PAGE 64, RT. EXCERPT 713, LINES 5, 6, 7, 11-15, 17, 18, 19.

24 MR. TROCHA: (OFFICER HOLMES, TRIAL TESTIMONY). Q. WERE YOU ON DUTY

25 BACK ON MARCH 19TH OF LAST YEAR? (04) A. YES, I WAS. Q. DID YOU RECEIVE

26 A CALL TO REPORT TO AN ADDRESS ON 425 EAST MAIN STREET? A. YES, I

27 DID. Q. AND THIS IS WITHIN EL CAJON? A. CORRECT. Q. AND THAT'S

28 OF COURSE, WITHIN THE COUNTY OF SAN DIEGO? A. YES.

74

1  Q. WERE YOU ABLE TO ASSOCIATE -- WHAT TYPE OF STRUCTURES, IF

2  ANY, ARE AT THIS ADDRESS? A. IT'S AN APARTMENT BUILDING. Q. WERE

3  THERE ANY VEHICLES IN THE PARKING LOT? A. YES, THERE WERE. Q. WERE

4  YOU ABLE TO IDENTIFY ONE THAT BELONGED TO MR. BURTON? A. YES, I DID.

5  Q. AND WHAT TYPE OF VEHICLE WAS THAT? A. -- THE MODEL ESCAPES

6  ME AT THIS POINT IN TIME. Q. WERE THERE ANY ITEMS IN OR AROUND

7  THE VEHICLE THAT YOU LATER SEIZED? A. YES. Q. WHAT WERE THOSE

8  ITEMS? A. THERE WAS PAPER WORK ON TOP OF A BLACK BACKPACK, --

9  WHICH ENGREWS AND I COLLECTED THAT. Q. -- DID YOU PLACE MR.

10  BURTON UNDER ARREST? A. I DID. Q. WAS HE TRANSPORTED TO THE

11  EL CAJON POLICE DEPARTMENT THEN? A. YES. Q. AT THE EL CAJON

12  POLICE DEPARTMENT, DID YOU HAVE THE OPPORTUNITY TO SEIZE AND IMPOUND

13  HIS CLOTHING? A. YES, I DID. Q. AND HOW WOULD YOU GO ABOUT DOING

14  SOMETHING LIKE THAT? A. -- THEN WE WOULD HAVE THE PERSON

15  REMOVE EACH ITEM OF CLOTHING SEPARATELY -- AND AFTER ALL THE

16  CLOTHING IS COLLECTED, WE ISSUE THEM A PAPER SUIT, WHICH THEY

17  WOULD THEN WEAR. Q. IS THIS STANDARD PROCEDURE IN EVERY TYPE

18  OF CASE? A. -- NO. SEE EXHIBIT "D", PAGE 69, RT. EX CEPT 44, LINES 26-28, SEE ALSO

19  EXHIBIT "D" AGE 70, RT EXCERPT 45, LINES 3-7, 21-26, 28. SEE EXHIBIT "D", PAGE 71, RT.

20  EXCEPT 46, LINES, 1-17, 19, 20, 21-28. SEE ALSO EXHIBIT "D", PAGE 72, RT. EX CERPT 47,

21  LINES 14 AND 21, SEE EXHIBIT "D", PAGE 73, RT. EXCERPT 48, LINES 3, 9, 10, 12,

22  SEE EXHIBIT "D" PAGE 74, RT. EXCERPT 49, LINES, 6-14, SEE EXHIBIT "D", PAGE 75, RT EXCERPT

23  50, LINES 9-11, 25, 26. BY MS. HANNAH: Q. AGENT KIRK, WHERE ARE YOU EMPLOYED?

24  A. POLICE DEPARTMENT IN THE CITY OF EL CAJON. Q. HOW LONG HAVE YOU

25  BEEN SO EMPLOYED? A. 15 YEARS. Q. WERE YOU ON DUTY ON MARCH 19TH OF THE

26  YEAR 2004? A. YES, MA'AM I WAS. Q. DID YOU RESPOND TO A LOCATION OF

27  425 EAST MAIN STREET? A. YES, MA'AM, THE COURT: PROCEED. BY MS. HANNAH: Q.

28  WHEN YOU ARRIVED AT THAT LOCATION, WHAT DID YOU FIND? A. OFFICER HOLMES AND



75

P.O. BOX 5246 CSATF/SP-C1-132L
CORCORAN CA. 93212

1   SERGEANT COIT WERE ALREADY ON THE SCENE. THERE WERE TWO BLACK MALES.

2   I BELIEVE, AT THAT-- BELIEVE IT WAS A FOUR DOOR, SITTING IN A PARKING SPOT

3   RIGHT IN FRONT OF APARTMENT NO. 5. Q. AND YOU RECALL WHETHER OR NOT THERE WERE

4   ANY OTHER OFFICERS AT THE SCENE WHEN YOU ARRIVED OTHER THAN AGENT COIT AND

5   OFFICER HOLMES OR SERGEANT, EXCUSE ME, COIT? A. THAT'S ALL I REMEMBER

6   WHEN I ARRIVED. I KNOW Q. WHEN YOU ARRIVED AT THE SCENE, DID THE

7   OTHER OFFICERS HAVE THEIR GUNS OUT OR ANYTHING OF THAT NATURE?

8   A. OFFICER HOLMES HAD HIS GUN OUT, YES. Q. DID YOU EVENTUALLY SEE

9   OFFICER HOLMES OR ONE OF THE OFFICERS PLACE ONE OF THE

10  BLACK MALES INTO HAND CUFFS? A. YES, I DID. Q. DO YOU SEE THE PERSON

11  THAT HE PLACED INTO HANDCUFFS IN THE COURTROOM TODAY? A. YES Q.

12  CAN YOU POINT THAT INDIVIDUAL OUT AS TO WHERE A. HE'S SITTING AT THE

13  DEFENSE TABLE. THE BLACK MALE. THE COURT: IDENTIFYING THE DEFENDANT,

14  MR. BURTON. BY MS. HANNAH: Q. AFTER THE DEFENDANT WAS PLACED INTO HANDCUFFS,

15  DID YOU HAVE A CONVERSATION WITH THE DEFENDANT? A. A SHORT CONVERSATION

16  YES, Q. WHAT WAS THE NATURE OF THAT CONVERSATION? Q. WHEN YOU ASKED

17  HIM ABOUT THE (ALLEGED) WEAPON, ABOUT A. A. I ASKED HIM WHERE THE (ALLEGED)

18  WEAPON WAS, A. I ASKED HIM WHERE THE (ALLEGED) GUN WAS HE USED IN THE,

19  MR. ADAIR: OBJECTION, YOUR HONOR. LEADING. THE COURT: OVERRULED. BY MS HANNAH:

20  Q. APPROXIMATELY WHERE WERE YOU STANDING IN REFERENCE TO THE DEFENDANT

21  WHEN YOU HAD THIS EXCHANGE? A. I WAS STANDING PROBABLY ABOUT FIVE

22  OR SIX FEET AWAY FROM HIM. Q. WHERE WAS THE DEFENDANT POSITIONED WHEN

23  YOU WERE ASKING THESE QUESTIONS? A. HE WAS STILL IN THE PARKING

24  LOT. Q. WAS HE STANDING? WAS HE SITTING? A. I BELIEVE HE WAS

25  SITTING Q. WHEN YOU WENT INTO THE APARTMENT, DID YOU FIND

26  ANYTHING? A. YES I DID. Q. DID YOU SEARCH THE REST OF THE APARTMENT?

27  A. YES, I DID. SEE NOW. EXHIBIT "D", PAGE 76, RT. EX CERPT 51, LINES 5,6-13, 15-19, 25-

28  28, SEE ALSO EXHIBIT "D" PAGE 77, RT EXCEPT 52, LINES 1, 4-28, SEE EXHIBIT "D" PAGE 78,

PO BOX 5246 - CSATF SPC 1-132L
COR CORAN, CA 93212

1  RT EXCERPT 53, LINES 1, 2, 3, 5, 6, 21, 24, 25, 27, 28. SEE ALSO, EXHIBIT "D", PAGE 79,

2  RT. EXCERPT 54 LINES, 1, 2, 5, 6, 8-20, 22-24. ENOTE&B 12-20, 22, 23, 24. SEE EXHIBIT

3  "D", PAGE 80, RT EXCERPT 55, LINES 2-28, SEE AS WELL, EXHIBIT "D" PAGE, 81, RT,

4  EXCERPT 56, LINES 1-14. Q. DID YOU SEARCH THE DEFENDANT'S VEHICLE? A. YES,

5  I DID. (AGENT KIRK) Q. AND DID YOU FIND ANYTHING INSIDE OF THE VEHICLE? A. YES,

6  I DID. Q. WAS THE DEFENDANT STILL PRESENT WHEN YOU SEARCHED THE

7  VEHICLE? A. -- I THINK HE HAD BEEN PLACED IN A VEHICLE. Q. AGENT KIRK, YOU

8  INDICATED THAT YOU DID SEARCH THE DEFENDANTS CAR; CORRECT? A. YES ENOTE&B

9  DID YOU FIND ANYTHING OF NOTE THAT YOUFOUND OF ENOTE&B. Q. WHERE

10 SPECIFICALLY INSIDE THE VEHICLE DID YOU FIND THESE ITEMS? A. THEY WERE

11 INSIDE -- A BLACK POUCH INSIDE THE GLOVE BOX. Q. DID YOU ALSO

12 PHOTOGRAPH THESE ITEMS? A. YES I DID. Q. AND THEN DID YOU TAKE THESE

13 ITEMS INTO CUSTODY OR INTO EVIDENCE? A. YES I DID. MS. HANNAH: THANK

14 YOU. NOTHING FURTHER. (CROSS EXAMINATION) BY MR. ADAIR. Q. AGENT KIRK --

15 THE COURT: MR. ADAIR, GO AHEAD. BY MR. ADAIR: Q. GOOD MORNING, A. GOOD

16 MORNING, SIR. Q. AGENT KIRK, IT APPEARS IN THIS CASE THAT YOU BASICALLY

17 COLLECTED EVIDENCE? A. YES, I DID. Q. TOOK PHOTOGRAPHS? A. YES, SIR, Q. ALL

18 RIGHT, IS THAT -- WAS THAT YOUR RESPONSIBILITY ON THIS PARTICULAR

19 INCIDENT? A. YES, IT WAS, Q. IS THAT WHAT YOU -- THE FUNCTION THAT

20 YOU NORMALLY PERFORM FOR THE EL CAJON POLICE DEPARTMENT? A. IT'S

21 ONE OF MY FUNCTIONS, YES. Q. ARE YOU ALSO A PATROL OFFICER OR --

22 A. WELL, AT THAT TIME I WAS ACTUALLY ACTING SERGEANT. Q. AT THE

23 TIME THAT YOU ARRIVED ON THE SCENE, WAS MR. BURTON HANDCUFFED? A. I ENOTE&B

24 BELIEVE ENOTE&B. A. HE WAS IN THE PROCESS OF BEING HANDCUFFED, I

25 BELIEVE. Q. SO YOU WERE THERE FAIRLY QUICKLY; CORRECT? A. YES, SIR.

26 Q. DO YOU REMEMBER A SECOND INDIVIDUAL BEING THERE ON THE SCENE

27 THAT WAS NOT A POLICE OFFICER? A. YES. Q. AND WHO WAS THAT OTHER

28 PERSON? A. I.

MR. E.W. BURTON #F02720 5NAP0-A6C
P.O.BOX 5246 C SATF 15P C1-132L
CORCORAN CA. 93212

SEE EXHIBIT "D", PAGE 31 R.T. EXCERPT 72, LINES, 24-28.

MR. ADAIR: I GUESS THERE'S AN ISSUE AS TO WHETHER I

WOULD BE ABLE TO ILLICIT RELEVANT EVIDENCE AS TO THE

ALLEGED VICTIM'S ( MR. THOMAS AND. MR. KIAH MINXEY?) TENDENCIES

TO VIOLENCE, THE COURT: I THINK YOU'VE ELICITED AMPLE --

MR. TROCHA: "HE'S ADMITTED -- (THE

MR. E.W. BURTON #T02728 LABORER
P.O. BOX 524 CSATF/SP C1-132L
CORCORAN CA. 9 3212

1. STATEMENTS OF FACTS. PETITIONER CONTENDS - THAT THE TRIAL COURT'S DENIAL OF HIM AND

2. HIS COUNSEL DENIED 14TH DUE PROCESS, AND ALSO DENIED HIS DUE PROCESS RIGHT TO DISCOVERY,

3. SEE EXHIBIT "B", PAGE 59, R.T. EXCERPT 175, LINES 7, 8, 10-12, 14, 15,

4. 20-28, SEE ALSO EXHIBIT E, PAGE 5, RT EXCERPT 27, LINES 26, 27, 28, SEE

5. ALSO EXHIBIT "E" PAGE 6, RT EXCERPT 28, LINES, 1-4, 13, 14, SEE EXHIBIT, E, PAGE

6. 9, RT EXCERPT 31, LINES 10-12, 14-27, 28, SEE EXHIBIT "E" PAGE 10 RT EXCERPT 32 LINES 1-5

7. SEE EXHIBIT "E" PAGE 7, RT EXCERPT 29, LINES 14-16, 18.

8. SEE EXHIBIT "E" PAGE 3, RT EXCERPT 25, LINES 14-28, ALSO SEE EXHIBIT "E" PAGE

9. 4, RT EXCERPT 26, LINES, 1-28. 7 THE COURT: (HON JUDGE PRECKEL)- ALL RIGHT.

10. ANYTHING ELSE? MR. ADAIR: YOUR HONOR, I -- BUT THERE WAS A CAMERA

11. THAT WAS (SUPPRESSED EVIDENCE BY THE PROSECUTION) BEING USED BY

12. EITHER THE-- EITHER MR. THOMAS IN THIS CASE OR MS. SANDERS, WHO

13. IS ONE OF THE (ALLEGED) WITNESSES, -- WE'RE ASKING THAT WE'D

14. BE GIVEN A CHANCE TO EXAMINE IT. THE COURT: IN HIS PRELIMINARY

15. HEARING? (TESTIMONY ON THE CAMERA) MR. ADAIR: I BELIEVE THAT'S

16. CORRECT, YOUR HONOR. THE COURT: WHAT'S YOUR RESPONSE ON THAT?

17. MS. HANNAH: YOUR HONOR, I'VE HAD AN OPPORTUNITY TO TALK TO MR. THOMAS

18. -- HE SAYS THAT HE DID USE A CAMERA-- HE SAID HE JUST USED IT TO

19. KIND OF SCARE-- THE COURT: I THINK HE TESTIFIED IT WAS DIGITAL.

20. (DEFENSE WAS DENIED HIS RIGHT TO EXAMINE CAMERA FOR FINGER PRINTS,

21. OF MR. THOMAS, KIAH MINCEY, AND MS. SANDERS, AS WELL AS DEMONSTRATE

22. FLASH AS RELATIVE TO "FIRE FLASH". THE TRIAL COURT'S DENIAL

23. AND PROSECUTIONS SUPPRESSION OF FAVORABLE EVIDENCE VIOLATED PETITIONERS

24. RIGHT TO MAKE A DEFENSE, AS MR. THOMAS TESTIFIED THAT CONVICTED

25. FELON KIAH MINCEY CONSPIRITORIOUSLY GAVE HIM THE CAMERA.)

26. MR. ADAIR: (1538.5 HEARING ON OR ABOUT 31 JAN05) CONCERNING THE CAMERA, I

27. BELIEVE IT IS -- BECAUSE IT'S PHYSICAL EVIDENCE WHICH IS EXCULPATORY

28. OR MAY BE EXCULPATORY, HE FEELS IT IS EXCULPATORY, THE COURT:

Case 3.07-cv-00251-LAB-POR    Document 1-4    Filed 02/19/2008    Page 81 of 101

1 WELL, THAT'S PROOF AGAIN THAT A LITTLE KNOWLEDGE IS A

2 DANGEROUS THING THAT CAMERA IS NOT SUBJECT TO ANY SUPPRESSION

3 MOTION, MR. ADAIR: BY THE WAY, COULD I ADDRESS DISCOVERY

4 BRIEFLY? THE COURT: NO. WHEN I SAY "NO", MR. ADAIR: ALL RIGHT,

5 I THINK THE LAST ITEM YOUR HONOR, IS THERE ARE CERTAIN ITEMS

6 OF EVIDENCE THAT I WOULD LIKE TO LOOK AT PRIOR TO THE HEARING.

7 VIEW-- THE COURT: YOU'RE GOING TO HAVE TO BE A LITTLE MORE

8 SPECIFIC THAN THAT. MR. ADAIR: THERE ARE PHOTOGRAPHS THAT

9 WERE TAKEN OF THE CAR, THE AUTOMOBILE, I DON'T KNOW-- I DON'T

10 HAVE A LIST OF PHOTOGRAPHS. I DON'T KNOW ANY ONE HAS EVER

11 PREPARED, OR AT LEAST IT WAS NEVER GIVEN TO ME, SO I CAN'T

12 SAY WHAT PHOTOGRAPHS EXIST AND DON'T EXIST, BUT I

13 BELIEVE THAT THEY'RE IN THE REPORTS. IT DOES INDICATE THAT

14 THERE ARE PHOTOGRAPHS OR MR. BURTON'S CAR, AND PART OF

15 OUR MOTION COVER'S THE SEARCH OF THE CAR, OF COURSE, IF--

16 I'M NOT SURE WHAT THE PROSECUTION'S POSITION IS AS FAR AS

17 THE JUSTIFICATION FOR THE SEARCH OF MR. BURTON'S APARTMENT

18 AND THE CAR, WHETHER THAT'S GOING TO BE RELEVANT.

19 THE COURT: JUSTIFICATION ASSERTED BY THE PEOPLE IS SET OUT IN

20 THEIR OPPOSITION AS HERETOFORE FILED THAT YOUR CLIENT, ALLEGEDLY,

21 UNDER LINE ALLEGEDLY, BECAUSE IT'S NOT YET BEEN ADDRESSED

22 BY WAY OF EVIDENCE-- THE RESIDENCE-- SEARCH OF HIS APARTMENT.

23 MR. ADAIR: AFTER HE READ THE MOTION TO SUPPRESS THAT I FILED, MR.

24 BURTON FELT THAT THE STATEMENT OF FACTS WAS INADEQUATE AND

25 DID NOT FULLY AND ACCURATELY REFLECT THE-- IS ASKED ME TO

26 CHANGE THOSE AND REFLECT MORE ACCURATELY, SO. : MR. ADAIR:

27 COULD I HAVE JUST A MOMENT, YOUR HONOR? THE COURT: SURE. MR. ADAIR:

28 MY CLIENT INFORMS ME HE WANTS AN IN CAMERA HEARING, THE COURT:

29 WELL, WHAT HE WANTS AND WHAT HE'S GOING TO GET ARE TWO

1. DIFFERENT THINGS. THERE'S NO REASON TO GO IN CAMERA. WE'RE GOING
2. TO PROCEED ON THE RECORD, MR. ADAIR: MY CLIENT ALSO INFORMED
3. ME HE WOULD LIKE A MARSDEN. THE COURT: NO. WE'RE NOT GOING
4. TO TAKE UP A MARSDEN MOTION BECAUSE, AGAIN, I'M VERY FAMILIAR
5. WITH THE HISTORY OF THIS CASE AND, FRANKLY, -- YOU'RE NOW THE
6. THIRD ATTORNEY OF RECORD, AT ANOTHER TIME HE HAS SOUGHT MARSDENS
7. AGAINST PREVIOUS COUNSEL, AND I GUESS HE'S OF THE MIND
8. THAT HE DRIVES THIS CASE, WELL, -- AND I KNOW OF NO REASON
9. THAT WOULD JUSTIFY A MARSDEN HEARING PRESENTLY CONCERNING
10. YOUR REPRESENTATION OF HIM. MR. ADAIR: CAN I JUST HAVE
11. A MOMENT, YOUR HONOR? (PAUSE) MR. ADAIR: MR. BURTON IS INDICATING
12. TO ME THAT THERE ARE SOME ADDITIONAL ITEMS OF EVIDENCE
13. THAT HE'S DISCOVERED THAT SHOULD BE THE SUBJECT OF THE 1538.5
14. SUPPRESSION MOTION THAT WERE NOT LISTED IN THE LIST OF ITEMS
15. TO BE SUPPRESSED. THE COURT: "SOUNDS TO ME LIKE YOUR PRESENT
16. MOTION, AND THE LIKE MOTION THAT WAS FILED BY THE PRIOR ATTORNEY,
17. MR. PLUMMER. MR. ADAIR: HE HAS A LIST OF APPROXIMATELY 41 ITEMS
18. WHICH WERE PART OF THE EVIDENCE LIST BY THE POLICE
19. DEPARTMENT THAT HE WISHES SUPPRESSED. THE COURT: WE'LL
20. MAKE A COPY OF THAT LIST, TREAT IT AS AN ATTACHMENT TO
21. THE PENDING MOTION, AND DEEM THAT EVIDENCE TO FALL
22. WITHIN THE CONFINES OF THE PRESENT MOTION. DO YOU HAVE ANY
23. QUARREL WITH THAT, MISS HANNAH? MS. HANNAH: NO, YOUR HONOR. THE
24. COURT: ALL RIGHT. MAKE THESE COPIES. SEE EXHIBIT "E" PAGE
25. 13, RT. EXCERPT 64, LINES 22-28, SEE ALSO EXHIBIT E, PAGE 14, RT. EXCERPT 65,
26. LINES 1-5. > MR. ADAIR: COULD I HAVE A MOMENT WITH MY CLIENT, YOUR HONOR?
27. THE COURT: SURE. MR. ADAIR. MR. ADAIR: YES, YOUR HONOR. THANK YOU. BEFORE WE
28. GO ANY FURTHER, YOUR HONOR, MR. BURTON WOULD LIKE YOU TO READ HIM

1. THE COURT RULES CONCERNING HIS RIGHTS TO A CONTINUANCE, HIS RIGHT

2. TO AN IN CAMERA HEARING AND HIS RIGHT TO APPEAL.

3. THE COURT: WELL, I'M NOT GOING TO DO ANY OF THAT AT THE

4. MOMENT, PLUS IT'S NOT MY FUNCTION TO RECITE LAW AND PROCEDURE

5. FOR THE BENEFIT OF MR. BURTON. SEE FURTHER EVIDENCE OF COURT'S

6. BIAS TOWARDS DEFENDANT AFTER considering THE FACT THAT THE

7. TRIAL JUDGE HON. L. HALGREN WAS AN EYE WITNESS IN HER COURTROOM

8. ON OR ABOUT 23 FEB. 04, TO MR. THOMAS'S STALKING OF DEFENDANT AS

9. SHE SIGNED OFF OF A PREVIOUS JUDGES RESTRAINING ORDER PROTECTING

10. PETITIONER AGAINST MR. THOMAS. SEE NOW EXHIBIT "B" PAGE 58, RTEXG-

11. RPT 911, LINES 12-23, 25-28, MR. TROCHA: YOUR HONOR, THE ISSUE I

12. HAVE THOUGH IS THAT THE DEFENSE IS THEN GOING TO TURN AND

13. ARGUE THESE THREATS HAPPENED BECAUSE THE DEFENDANT TOLD HIS

14. MOM ABOUT IT. THE COURT: WELL NO, THEY'RE NOT, BECAUSE I'M

15. GOING TO INSTRUCT THE JURY THAT ITS NOT BEING ADMITTED FOR

16. IT'S TRUTH. AND I'LL INSTRUCT THEM ON THAT AT THE TIME THE

17. TESTIMONY IS PRESENTED AND I'LL INSTRUCT THEM AGAIN AT THE

18. CONCLUDING INSTRUCTION, AND IF THAT ARGUMENT'S MADE DURING

19. ARGUMENT, YOU CAN OBJECT AND I'LL SUSTAIN IT, MR. TROCHA: --

20. I MEAN -- AND IT'S ESSENTIALLY THE DEFENDANT'S TESTIMONY

21. THROUGH HIS MOTHER, WHICH THERE'S NO WAY I CAN EFFECTIVELY

22. CROSS-EXAMINE HER ON THAT BECAUSE -- "WELL, THAT'S WHAT ERIC

23. TOLD ME." SEE EXHIBIT B, PAGE 18, RT. EXCERPT 883, LINES 4-8, 12, 13, 16, 18,

24. 25, 26, 28. 7 THE COURT: ALL RIGHT, LET ME JUST LOOK AT THE DECLARATION

25. HE FILED IN THE CIVIL HARASSMENT CASE, SO THE NATURE OF HIS

26. COMPLAINTS INCLUDE THREATS OF PHYSICAL HARM AND DEATH OVER THE

27. PHONE; WHILE APPROACHING HIS VEHICLE - OKAY. MR. TROCHA, YOUR RESPONSE

28. MR. TROCHA: I THINK WE COVERED THIS IN -- IT'S THE DEFENDANT FILING

1. PAPER WORK WITH THE COURT AND -- TO PROVE TO TRUTH THAT HE
2. WAS THREATENED DESPITE THE -- A DIFFERENT STORY. THE COURT:
3. ALL RIGHT, I'LL CONSIDER THAT -- I'LL LOOK AT THE CASE
4. LAW INVOLVING 1250 AND 1251, SEE EXHIBIT "A", PAGE 29 LINES 11,
5. 12, 14, 15, 17-21, 24, 26, 27, 7. THE COURT: (HON. L. HALGREN) CAN YOU BE
6. MORE SPECIFIC? THE DEFENDANT: YES, -- MR. THOMAS VIA MY CELL
7. PHONE (ON 19 MARCH 04) BECAUSE MY DAUGHTER WOULD CALL ME.
8. ON MY CELL PHONE, AND HE CALLED, THREATENING ME. AND I
9. ASKED (MR. ADAIR) -- RETRIEVE AND REVIVE THOSE MESSAGES, WHICH
10. WOULD SUPPORT MY CASE. BECAUSE -- THE COURT: LET ME MAKE SURE
11. I UNDERSTAND. THE -- THERE WERE CALLS MADE TO YOUR CELL
12. PHONE -- THE DEFENDANT: YES -- THE COURT: AND THEN AT SOME
13. POINT YOU ASKED THE DEFENSE. THE DEFENDANT: RIGHT. THE
14. PHONE NUMBER IS AREA CODE 619-253-1895, IT'S A SPRINT PHONE.
15. SPRINT PCS. SEE EXHIBIT "A", PAGE 21, RT EXCERPT 185, LINES
16. 11-16, 18-24. 7. THE COURT: NUMBER ONE, -- FOLLOW UP ON THE
17. THREATS ON YOUR CELL PHONE, THE DEFENDANT: YES, GET IT
18. REVIVED OR SOMETHING. THE COURT: WHAT WAS THE NEXT
19. CONCERN YOU HAD? THE DEFENDANT: THE NEXT CONCERN THAT
20. I'VE HAD -- THAT -- THE TIME OF MY ARREST, AND THE POLICE DID NOT
21. ALLOW ME TO CALL MY ATTORNEY AFTER BEING THERE FOR THREE
22. HOURS. THE COURT: WHAT I NEED YOU TO FOCUS ON IS MR. ADAIR,
23. NOT -- THE DEFENDANT: YES, MA'AM, AND THE POINT THAT I WAS MAKING
24. WAS THAT I DID NOT MEET WITH AN ATTORNEY UNTIL 14 DAY AFTER MY
25. ARREST. SEE EXHIBIT "A" PAGE 23, RT EXCERPT 187, LINES 12-2 2-9, 13-
26. 21. THE COURT: ALL RIGHT. SO GOING BACK TO THE ISSUE OF
27. THE TESTING -- FORENSIC TESTING, YOU HAD MADE THAT REQUEST

MR. EW BURTON #F027708
P.O. Box 5246 - CSATF/SP-01-132L
COR CORAN CA. 93212

1. FROM AN EARLIER ATTORNEY, BUT THEN YOU ALSO ASKED THAT OF
2. MR. ADAIR? THE DEFENDANT: YES THE COURT: SO HE HASN'T DONE
3. THE TESTING, AND YOU'RE COMPLAINING ABOUT THAT? THE DEFENDANT:
4. YES. THE COURT: I UNDERSTAND YOUR ARGUMENT, I UNDERSTAND
5. WHAT YOU'RE TRYING TO SAY ON THAT. YOU THINK THERE SHOULD
6. HAVE BEEN TESTING, AND THERE WASN'T? THE DEFENDANT: YES
7. THE COURT: WHAT OTHER ISSUES RELATING TO THE DEFENSE
8. HAVE NOT BEEN DONE THAT YOU THINK SHOULD HAVE? THE DEFENDANT:
9. THERE ARE OTHER WITNESSES THAT COULD HAVE BEEN INTERVIEWED
10. -- OTHER WITNESSES THAT I WOULD LIKE TO SUBPOENA.
11. SEE EXHIBIT "A", PAGE 24, RT EXCERPT 188, LINES 9-11, 17-19, 21-24,
12. THE COURT: OKAY, ANY OTHER COMPLAINTS ABOUT THE DEFENSE OF
13. YOUR CASE? THE DEFENDANT: -- BE IN JAIL HERE FOR ONE YEAR --
14. WITHOUT PROBABLE CAUSE, THE COURT: -- THE SUPPRESSION MOTION,
15. WHAT -- THE DEFENDANT: DUE TO THE FACT THAT MY DAUGHTER
16. DREONA BURTON WAS ALSO A PROTECTED PERSON ON THE RESTRAINING
17. ORDER. - PRELIMINARY HEARING -- HE (MEANING MR. THOMAS) CALLED HER-
18. SEE EXHIBIT A, PAGE 25, RT EXCERPT 189 LINES 1-8, 11-19, 21-28,
19. THE DEFENDANT: (MEANING MR. THOMAS AT PRELIM.) DISSUADING OF A WITNESS,
20. MY DAUGHTER, BECAUSE SHE WAS ALSO A EQUAL PROTECTANT
21. ON THAT ORDER, WHICH WAS VIOLATED. THE COURT: ALL RIGHT.
22. ANY OTHER MOTIONS YOU THOUGHT SHOULD BE FILED? THE DEFENDANT: YES ALSO,
23. THERE ARE FALSE STATEMENTS THAT HAVE BEEN ENTERED INTO THE RECORD
24. AS FAR AS WE ALLEGEDLY -- AS FAR AS THE MOTION THAT WAS WRITTEN
25. TO 1538.5, THE COURT: ALL RIGHT, IS THIS THE SAME ISSUE YOU HAD RAISED
26. TO JUDGE PRECKEL, WHERE THERE WAS CONCERN RAISED BY YOU THAT THE
27. STATEMENT OF FACTS DIDN'T FULLY SET FORTH THINGS APPROPRIATELY?
28. THE DEFENDANT: WELL, WITH JUDGE PRECKEL --

84

1  THE COURT: I JUST WANT TO KNOW IF THAT'S THE SAME ISSUE YOU'RE

2  TALKING ABOUT? THE DEFENDANT: -- BUT I WAS DENIED MY MARSDEN

3  (MOTION) BY JUDGE PRECKEL. HE NEVER GAVE ME AN OPPORTUNITY TO --

4  THE COURT: WHAT OTHER ISSUES ARE THERE BEYOND WHAT YOU'VE

5  TOLD ME HAVE NOT BEEN ADEQUATE BY THE DEFENSE?

6  THE DEFENDANT: THE FACTS OF THE CASE HAVE BEEN MISSTATED,

7  -- I ASKED HIM TO FILE A MOTION WITH THE JUDGE -- YOURSELF --

8  ORDER PROSECUTION TO TURN OVER ALL DISCOVERY BECAUSE

9  MOTIONS THAT WERE FILED BY MR. PLUMMER JULY - SEE EXHIBIT A"

10  PAGE 26, RT EXCERPT 190, LINE 4, THE DEFENDANT: TO COMPEL

11  PROSECUTION TO TURN OVER ALL DISCOVERY (MARSDEN HEARING 3-16-05)

12  SEE EXHIBIT "A" PAGE 33, RT EXCERPT 197, LINES 1,4,10-20.7 THE COURT:

13  HE INDICATES THAT -- INSUFFICIENT. MR. ADAIR: WELL THE THREATS

14  ON THE CELL PHONE -- I HAVE NOT CHECKED ON THAT. BUT MY

15  UNDERSTANDING WOULD BE ANY CONVERSATIONS WITH REGARD TO THREATS

16  WOULD HAVE BEEN RECORDED ON SOME SORT OF VOICE MAIL THAT

17  WOULD HAVE -- THE COURT: HE'S RAISED THE ISSUE OF FORENSIC

18  TESTING. MR. ADAIR: AGAIN I CAME ON THE CASE SIX -- APPROXIMATELY

19  SIX MONTHS, SEVEN, EIGHT MONTHS -- EIGHT MONTHS LATER. AND AT LEAST

20  IN MY MIND, -- IT WOULD APPEAR THAT ANY ATTEMPT TO DO LUMINAL TESTING

21  OR WHATEVER WILL NOT BE PRODUCTIVE. SEE EXHIBIT "A," PAGE 34, RT

22  EXCERPT 198, LINES 10-17.7 THE COURT: WERE THOSE DONE BY YOU OR BY

23  MR. PLUMMER? MR. ADAIR: I THINK BOTH, I THINK MR. PLUMMER FILED

24  A NUMBER OF MOTIONS, INCLUDING A DISCOVERY MOTION, AND THAT THEY

25  WERE BASICALLY TAKEN OFF CALENDAR. THE COURT: -- PROTECTIVE

26  ORDER AND -- DO YOU HAVE ANY UNDERSTANDING? MR. ADAIR: AS FAR AS --

27  EXCUSE ME, THE COURT: ALL RIGHT. SEE EXHIBIT "A" PAGE 36, RT EXCERPT,

28  200, LINES 11-13,14,17-22.7 THE COURT: ALL RIGHT -- MOTION TO

1. COMPEL DISCOVERY, IS THERE STILL ANY LURKING DISCOVERY ISSUES?

2. MR. ADAIR: FIRST OFF. — AND IT CAN'T BE RESOLVED, — FIRST OFF, I'VE

3. SENT A LETTER, TO HER REQUESTING CERTAIN ITEMS, MR. PLUMMER

4. DID THE SAME. MR. PLUMMER FILED A MOTION THAT WAS SERVED ON HER —

5. DISCOVERY ISSUES WITH THE PROSECUTOR. SEE EXHIBIT A, PAGE 85,

6. R.T. EXCERPT 1242, LINES 8-10, 12-16. MR. ADAIR: FINE, THANK YOU, YOUR HONOR,

7. YOUR HONOR, THE FIRST ISSUE, I BELIEVE, AS RAISED IN OUR PAPERS ARE

8. MR. BURTON'S FARETTA (PRO SE) MOTION, — HE HAD MAILED IT TO THE COURT

9. AND IT HAD BEEN FILED APPARENTLY ON OR ABOUT JULY 7TH OF THIS YEAR

10. BEFORE TRIAL STARTED AND IT'S OUR CONTENTION THAT THAT NEEDED

11. TO BE RULED ON. SEE NOW EXHIBIT 'A' PAGE 87, R.T. EXCERPT 1243, LINES, 14,

12. 16, 18-25, MR. ADAIR: THE SITUATION REALLY WOULD GIVE RISE TO A --

13. ACQUITTAL -- FOR ALL OF THOSE REASONS AND PARTICULARLY THE

14. REASONS THAT IT IS IN THE INTEREST OF JUSTICE, THIS IS THE KIND OF

15. THING THAT COULD AFFECT A JURY, MOST PROBABLY WOULD AFFECT A

16. JURY, WE'RE ASKING FOR A NEW TRIAL. THE COURT: OKAY THANK YOU.

17. MR. TROCHA, WOULD YOU CARE TO RESPONSE? MR. TROCHA: YES YOUR HONOR,

18. SEE EXHIBIT 'A' PAGE 88, R.T. EXCERPT 1245, LINES 5-24, ALSO SEE EXHIBIT 'A'

19. PAGE 89, R.T. EXCERPT 1246, LINES 1-28. 7 MR. TROCHA: MR. BURTON HAS A

20. DOCUMENT, WHICH -- IT'S A COPY, I GUESS, OF THE DOCUMENT, WHICH

21. HE HAD FILED APPARENTLY BACK IN JULY, I BELIEVE IT APPEARS

22. TO BE MAILED TO THE COURT AND PART OF MANY ISSUES THAT HE

23. RAISES IN THE DOCUMENT APPEARS TO BE A FARETTA MOTION. MR. TROCHA:

24. THERE DOES APPEAR TO BE A FILE STAMP ON THE ENVELOPE, THE COURT:

25. WHATEVER HAS BEEN FILED WITH THE COURT WOULD BE IN THE COURT

26. FILE. MR. ADAIR: COULD I HAVE THIS FILED AS AN EXHIBIT, YOUR HONOR?

27. THE COURT: THE PURPOSE OF IT BEING? IS IT MR. BURTON'S REPRESENTATION

28. THAT THIS IS THE DOCUMENT HE FILED WITH THE COURT? MR. ADAIR, YES

MR. E.W. BURTON #F52780
P.O. BOX 3246 CSATP/ISA CI-132L
CORCORAN, CA. 93212

YOUR HONOR, THE COURT: WELL, WHY DON'T YOU LET ME LOOK AT IT,

1. IT MAY BE THAT WE HAVE IT IN THE COURT FILE, IN WHICH CASE WE

2. DON'T NEED TO DO THAT. (COUNSEL HANDS DOCUMENT TO THE COURT.) THE COURT:

3. ALL RIGHT. THAT DOCUMENT IS IN THE COURT FILE AND THERE IS AN ENVELOPE

4. PRECEDING THE DOCUMENT WHERE THE ENVELOPE IS FILE-STAMPED JULY 7TH,

5. SO WE DON'T NEED TO HAVE ANOTHER COPY, AND THAT, JUST FOR THE

6. RECORD, IS A DOCUMENT WHICH IS IN HANDWRITING IN PENCIL STATING

7. AT THE ~ NOTICE OF MOTION, AND MOTION TO DISMISS BECAUSE DENIAL

8. OF RIGHT TO DUE PROCESS, SIXTH (FOURTH), AND FIFTH AMENDMENT

9. VIOLATIONS" AND THEN IT GOES ON WHERE ANOTHER THREE OR FOUR

10. INCHES OF ~ RAISING OTHER ISSUES, AND IN THE MIDDLE OF THAT ON

11. THE FRONT PAGE THERE IS A REFERENCE TO THE WORD "FARETTA" (PRO SE).

12. SO I THINK THAT MAKES THE RECORD AS TO WHAT WAS FILED.

13. (SEE EXHIBIT "B" PAGE 110, R.T. EXCERPT 313, LINES 1-25.) THE COURT: ALL RIGHT,

14. GREAT. IN THE MEANTIME, WE'LL ADDRESS OTHER ISSUES, THE NEXT POINT IS,

15. YOU (MEANING MR. ADAIR) RAISED THE FACT THAT MR. BURTON HAD FILED SOME

16. DOCUMENTS WITH THE COURT, THEY WERE WITH MY AUTHORIZATION, RETURNED

17. BECAUSE HE IS REPRESENTED BY COUNSEL, AND SO, MR. BURTON, YOU NEED TO UNDER-

18. STAND THAT THE WAY MOTIONS ARE BROUGHT TO THE COURT IS IF YOUR

19. ATTORNEY FEELS THERE IS A LEGAL BASIS FOR BRINGING A MOTION, HE WILL

20. PRESENT THAT. WE DON'T OPERATE WITH ESSENTIALLY DOUBLE TEAMING. WE DON'T

21. HAVE BOTH THE DEFENDANT AND THE ATTORNEY SEPARATELY BRINGING MOTIONS

22. BUT INSTEAD THROUGH YOUR COUNSEL MOTIONS ARE BROUGHT, SO THE MOTIONS

23. THAT MR. ADAIR, THROUGH HIS LEGAL EXPERIENCE AND TRAINING, HE DEEMS

24. APPROPRIATE TO RAISE, I WILL CONSIDER. BUT I WILL NOT CONSIDER SEPARATE

25. MOTIONS FILED BY YOU. JUST SO YOU UNDERSTAND OUR PROCEDURE, WITH REGARD TO

26. THE ARRAIGNMENT, I BELIEVE THE SECOND AMENDED INFORMATION, WHICH WAS

27. FILED ON JUNE 16TH AT THE LAST HEARING, MR. ADAIR WAS PRESENT AT

1. BOTH, AND HAD NOTICE OF THAT, BUT MR. BURTON WAS NOT. SO I

2. BELIEVE HE NEEDS TO BE ARRAIGNED ON THE SECOND AMENDED

3. INFORMATION. SO WHY DON'T WE PROCEED WITH THAT AT THIS TIME,

4. (ON OR ABOUT 19 JULY 05 FIRST DAY OF TRIAL) SEE EXHIBIT A, PAGE 111,

5. RT EXCERPT 14, LINES 14-26 - (11-05-04 HON. JUDGE PRECKLE PRESIDING) THE COURT:

6. MR. BURTON, IS THERE ANYTHING FURTHER YOU WISH TO SAY? THE DEFENDANT: YES,

7. SIR, YOUR HONOR, — THAT THERE ALSO WAS INFRINGEMENT UPON MY 14TH

8. AMENDMENT RIGHTS TO DUE PROCESS. AND ALSO MY DAUGHTER WHO —

9. ORDERS, AND SHE DID NOT RECIEVE EQUAL PROTECTION UNDER THE LAW. AND I

10. FEEL I DIDN'T EITHER BECAUSE WHEN IT CAME UP CONCERNING THE RESTRA-

11. INING ORDER — ONCE RESTRAINING ORDERS — FROM THE INFORMATION I

12. GATHERED, WHETHER THEY HAVE BEEN SERVED OR NOT, THEY'RE SUPPOSED

13. TO BE MAINTAINED BY LAW ENFORCEMENT OFFICERS. SEE EXHIBIT "A" PAGE 112,

14. RT EXCERPT 815, LINES 21-28, SEE ALSO EXHIBIT "A" PAGE 113, RT EXCERPT 816, LINES 1-28,

15. SEE EXHIBIT A, PAGE 114, RT. EXCERPT 817, LINES 1, 2-18, 21, 25-28. SEE EXHIBIT "A",

16. PAGE 115, RT EXCERPT 818, LINES 10-16, 20-26. SEE EXHIBIT "A", PAGE 119

17. RT EXCERPT 824, LINES 1-6, 10, 11, 18? THE COURT: WHAT ARE THE REASON?

18. THE DEFENDANT: FOR ONE THING, YOUR HONOR, I HAVE JUDICIAL PREJUDICE.

19. I HAVE JUDICIAL CONFLICT OF INTEREST AS YOUR HONOR WAS THE

20. ONE WHO WAS MY BEST WITNESS IN THIS MATTER, AND I FEEL I'VE

21. BEEN DENIED OF MY RIGHT TO A FAIR AND IMPAIRTIAL TRIAL, BECAUSE

22. YOU WERE THE ONE WHO SIGNED OFF ON THE TRO — WHO MADE ME

23. AWARE THAT THOMAS HAD STRUCK ANGELA SANDERS IN THE HEAD

24. WITH THE GLASS, AND YOU ARE THE ONE THAT KNOWS ANGELA

25. SANDERS PERJURED (SIC) HERSELF, BECAUSE IN YOUR COURT AT

26. THE EX PARTE HEARING (FAMILY COURT) WHERE YOU RESIDED AT.

27. I HAD MY PAPER WORK FILED OUT (PROPER) AS A PETITIONER, BUT

28. YOU HAD MADE US SWITCH SEATS, YOU SAID THAT THE ACTION

1. BEGAN IN THE FAMILY COURT, INITIATED THROUGH CHILD SUPPORT
2. DIVISION BY MS. SANDERS, AND YOU MADE ME THE RESPONDENT,
3. AND, THEREFORE, YOU HAD KNOWLEDGE OF EVERYTHING, MY
4. FEARS OF THOMAS WAS PRESENT. IF I CAN REFER YOU
5. TO YOUR OWN TRANSCRIPT, YOU'LL SEE THAT HE WAS
6. STALKING ME THEN. THE COURT: AGAIN, LET ME STOP
7. YOU RIGHT THERE. SO IN WHAT WAY IS THAT A REASON FOR
8. DISCHARGING MR. ADAIR? THE DEFENDANT: I WANT A MOTION
9. FOR A MISTRIAL. I HAVE A CONFLICT OF INTEREST WITH
10. COUNSEL BECAUSE I MADE HIM AWARE OF THIS. AND I
11. WANTED, -- TO HAVE HIM SWORN, HE'S AWARE OF THIS CONFLICT
12. THE COURT: OKAY, ARE THERE ANY OTHER GROUNDS? THE DEFENDANT:
13. YES. THE COURT: WHAT OTHER GROUNDS? THE DEFENDANT:
14. WHEN I MADE MY MOTION TO GO PRO PER, I FELT YOU WERE
15. PREDJUDICE IN DENYING THAT AND ALL MY OTHER MOTIONS
16. BECAUSE -- THAT DENIED ME -- IT DEPRIVED ME OF MY
17. 14TH AMENDMENT RIGHT FOR DUE PROCESS. AND I'D LIKE
18. A DISMISSAL BASED ON A VIOLATION OF MY 6TH AMENDMENT
19. AND MY 14TH AMENDMENT RIGHT, BECAUSE YOU DENIED ME MY RIGHT
20. TO GO PRO PER AND YOU KNEW THAT I WAS COMPETENT.
21. THE COURT: AND WHAT IS THE-- HOW DOES THAT RELATE TO YOUR--
22. THE DEFENDANT: COUNSEL WAS AWARE OF THIS AND HE DID NOT
23. INFORM THE COURT. THIS IS NEGLIGENCE IN MY PROSECUTION
24. (SIC). HE DID NOT INFORM THE COURT OF THIS MATTER, AND THAT
25. IS THE INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF
26. MY 6TH AND 14TH AMENDMENT RIGHTS TO DUE PROCESS. I'D LIKE
27. A DISMISSAL ON THAT. COUNSEL IS AWARE THAT PROSECUTION
28. HAS NOT PROVIDED ME WITH ALL DISCOVERY, PROSECUTION KNOWS

1. AS MR PLUMMER HAD MOTIONED, MS. MARIA HANNA WITH MOTIONS

2. ON -- BRADY, FOR ALL DISCOVERY, PROSECUTION DID NOT RESPOND

3. THEREFORE, DENIED ME MY DUE PROCESS, BECAUSE I HAD THE

4. RIGHT TO BE ABLE TO KNOW THE EVIDENCE AGAINST ME -- I

5. WOULD OBJECT TO ANYTHING PROSECUTION WOULD SAY AS FAR

6. AS THEIR -- THE COURT: OKAY. LET ME STOP YOU THERE - SO

7. DISCOVERY ISSUE IS ANOTHER REASON? THE DEFENDANT: DISCOVERY

8. ISSUES AND -- THE COURT: ARE THERE ANY OTHER GROUNDS IN --

9. THE DEFENDANT: AND THE POLICE ALSO DENIED ME MY DUE PROCESS

10. AS FAR AS EQUAL PROTECTION UNDER THE LAW. THE COURT:

11. OKAY. LET ME STOP YOU RIGHT THERE. "I UNDERSTAND THAT MOTION"

12. ARE THERE ANY OTHER GROUNDS ON WHAT YOUR SEEKING TO CHALLENGE

13. MR. ADAIR? THE DEFENDANT: CONFLICT OF INTEREST BECAUSE -- YOU

14. WERE THE PRESIDING JUDGE AT THE TIME, THOMAS SHOWED UP AND

15. HE WAS SERVED BY YOUR BAILIFF IN YOUR COURTROOM AT THE

16. EX PARTE HEARING. I'VE BEEN FALSELY ARRESTED, PROLONGED

17. DETAINMENT, AND FALSE IMPRISONED, MY WHOLE DUE PROCESS, MY

18. CIVIL RIGHTS HAVE BEEN VIOLATED. COUNSEL HAS FAILED TO

19. NOTIFY THE COURTS. SEE EXHIBIT "A" PAGE 118, RT. EXCERPT 823, LINES

20. 3-16, 20-26, 28. THE COURT: MR. ADAIR, DO YOU HAVE ANY ADDITIONAL

21. INFORMATION OR BACKGROUND ON THE ISSUE? MR. ADAIR: I BELIEVE YOU DID

22. SIGN SOME OTHER DOCUMENTS IN THE CASE. THE COURT: -- THE TRO BETWEEN

23. MR. BURTON AND MR. THOMAS, MR. ADAIR: -- IT LOOKS LIKE YOU SIGNED THE

24. NOTICE THE COURT: OSC HEARING? MR. ADAIR: THAT'S CORRECT. THE COURT:

25. OKAY ALL RIGHT. -- SEE ANY REASON WHY ANY INVOLVEMENT I HAD IN A

26. FAMILY LAW DUE TO THIS COURT'S INVOLVEMENT IN THAT CASE. MR. ADAIR.

27. THE OTHER THING ABOUT IT IS THAT IT APPEARS THAT ANYTHING

28. THAT YOU -- IF YOU WERE TO HAVE BEEN A "WITNESS", IT'S RELEVANT

1. ISSUES IN THIS MATTER THAT THE (GENUINE) DOCUMENTS
2. THEMSELVES COULD BE USED RATHER THAN YOURSELF. -- CONFLICT.
3. THE COURT: ALL RIGHT SEE EXHIBIT "A" PAGE 119, RT EXCERPT 824,
4. LINES, 1-6, 10, 11, 18. > MR. ADAIR: MR. BURTON WOULD LIKE TO ADDRESS THE
5. COURT AGAIN. THE COURT: ALL RIGHT. MR. BURTON YOU MAY ADDRESS
6. ME IN PARTICULAR WITH REGARD TO THE ISSUE THAT MR. ADAIR JUST
7. ADDRESSED ON THE RESTRAINING ORDER OR THE CUSTODY MATTER.
8. THE COURT: ALL RIGHT, GO AHEAD. THE DEFENDANT: YES, MA'AM. --
9. -- YOU MAY REFER YOU TO THE COURT CLERK'S RECORDS. SEE
10. EXHIBIT "A", PAGE 120, RT EXCERPT 825, LINES 2-8, 15-21. > THE COURT:
11. ALL RIGHT. WELL, I THINK THAT -- THERE'S NO BASIS TO RELIEVE
12. HIM BASED ON HIS STRATEGIC DECISION NOT TO CHALLENGE THIS
13. COURT, IT WOULD HAVE HAD TO BE A CHALLENGE FOR CAUSE BECAUSE
14. THERE'S ALREADY BEEN A PEREMPTORY EXERCISED AGAINST JUDGE
15. HANOIAN. (THE JUDGE THAT PRESIDED OVER THE PRELIMINARY HEARING,
16. THE COMMITTING MAGISRATE, WITHOUT PROBABLE CAUSE.) AND HIS
17. STRATEGIC DECISION NOT TO DO — I FIND THAT MR. ADAIR HAS PROPERLY
18. REPRESENTED DEFENDANT AND WILL CONTINUE TO DO SO. THE MOTION IS
19. DENIED. THE RECORDING OF THIS PROCEEDING INCLUDING THE
20. TRANSCRIPT WILL BE SEALED ABSENT FURTHER COURT ORDER. WE
21. NEED TO PROCEED NOW WITH OUR JURY TRIAL. BRING THE PROSECUTION
22. IN AND THE COURTROOM WILL BE OPEN. SEE EXHIBIT A, PAGE 97, RT
23. EXCERPT 17, LINES 1-7, 17-19. (HON. JUDGE PRECKEL 11-05-04) THE COURT: MR.
24. BURTON, IF I GRANT YOUR REQUEST -- AND LET ME SAY PARENTHETICALLY YOU'RE IN
25. MY VIEW, VERY WELL-SPOKEN, YOU'VE OBVIOUSLY DONE SOME READING -- AND
26. YOU'VE BEEN THROWING AROUND THE MAJORITY OF THE AMENDMENTS IN
27. THE BILL OF RIGHTS AND A FEW OTHERS TO BOOT -- IT'S THE ATTORNEY'S JOB TO
28. REPRESENT YOU AND TO ADVOCATE YOUR POSITION AND PROTECT YOUR RIGHTS AND INTERESTS!

1  STATEMENT OF FACTS — SEE EXHIBIT "A", PAGE 82, RT EXCERPT 753, LINES
2  1-16 — 7 EL CAJON, CALIFORNIA; FRIDAY, 7/22/05; 1:34 P.M.
3  ( THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT
4  OUT OF THE PRESENCE OF THE JURY:) THE COURT: LET'S GO
5  ON THE RECORD BEFORE WE BRING IN THE JURY. I HAVE
6  ANOTHER DOCUMENT THAT MR. BURTON HAD SENT TO THE COURT.
7  IT WAS ROUTED THROUGH DEPARTMENT 7, I BELIEVE, BUT IT
8  APPEARS TO BE ANOTHER "PRE TRIAL OR TRIAL MOTION
9  THAT HE HAD WANTED THE COURT TO CONSIDER. I'LL
10  GIVE THAT TO MR. ADAIR, IF HE THINKS IT HASN'T BEEN
11  ADDRESSED AND HE WISHES TO ADDRESS THAT, HE CAN DO
12  SO AT THE RIGHT TIME, MR. ADAIR: THANK YOU, YOUR HONOR.
13  THE COURT: I THINK AT THIS TIME WE'RE READY TO BRING THE
14  JURY IN.
15  STATEMENT OF FACTS — PROSECUTION FAILED TO DISCLOSE
16  AN ADVERSE WITNESS MS. HILDENBRAND, AFTER DEFENSE
17  HAD FILED A MOTION FOR DISCOVERY, PROSECUTION'S PRESENTATION
18  OF THIS WITNESS WAS UNECESSARY AND UNDULY PREJUDICE AS
19  HER TESTIMONY WAS BASED ON HEARSAY AS THE ALLEGED
20  911 TAPES HAD ALREADY BEEN DESTROYED BY THE POLICE AGAIN
21  AFTER A DEFENSE MOTION HAD BEEN FILED, AS PROSECUTOR MR.
22  TROCHA STATED "HE DID NOT KNOW THE HISTORY OF THE DEFENSE
23  REQUESTED SUPRESSED PHOTO GRAPHS OR ANY THING".
24  SEE EXHIBIT "D" PAGE 25, RT EXCERPT 332, LINES 3-5, 8-11, 14-16
25  SEE ALSO EXHIBIT "D" PAGE 26, RT EXCERPT 333 LINES 1,2, 4,5, 11-17, 19-
26  22, 26 THE COURT: WELL, AT THE TIME OF TRIAL, IT'S A LITTLE
27  LATE FOR DISCOVERY REQUEST, SO THAT SHOULD HAVE BEEN
28  MADE BEFORE. — MR. TROCHA, DID YOU HAVE ANYTHING ELSE?

92

1 MR. TROCHA: THERE WAS ONE THING, YOUR HONOR, AND THE 911 TAPES

2 REMINDED ME, WE DO HAVE UNDER SUBPOENA THE DISPATCHER

3 (ALLEGED) THAT MR. THOMAS WAS SPEAKING TO -- BE SOME HEARSAY

4 ISSUES. MY REQUEST IS TO HAVE HER TESTIFY INITIALLY THAT

5 SHE WAS TALKING TO MR. BURTON -- THE COURT: TO CALL IN YOUR

6 CASE IN CHIEF? MR. TROCHA: IT IS -- WITHOUT GETTING INTO

7 ANY DETAILS OF THE CALL; THE COURT: ALL RIGHT. MR. ADAIR, YOUR

8 RESPONSE TO THAT? MR. ADAIR: "OBJECTION", BUT I BELIEVE SEE'S

9 A WITNESS THAT WAS RELATIVELY LATE DISCOVERED OR WHATEVER,

10 I DON'T BELIEVE THERE ARE ANY REPORTS CONCERNING HER

11 STATEMENTS THAT I'VE RECEIVED. THE COURT: WELL, WHY DON'T

12 YOU CONSULT WITH MR. TROCHA ON THAT. DID YOU KNOW THE NAME OF

13 THE WITNESS? MR. TROCHA: I DO. IT'S KENDALL HILDENBRAND,

14 SEE EXHIBIT "O" PAGE 9, RT EXCERPT 323, LINES 5,10,13,18,19,22,23,24,

15 26-28, SEE ALSO EXHIBIT "O", PAGE 10, RT EXCERPT 324, LINES 1-5. MR. ADAIR:

16 I GUESS A FURTHE TROMBETTA MOTION (DEFENDANT'S ALLEGED MISSING

17 PHONE, NEVER IN HIS POSSESSION AT TIME OF ARREST) -- HE WAS DOING

18 OTHER THINGS; THE COURT: ALL RIGHT, ANY RESPONSE TO THAT?

19 MR. TROCHA: I MEAN -- CELLPHONE, I DON'T KNOW, BUT I VIEWED THE

20 EVIDENCE. MR. ADAIR: IS THIS THE CELL PHONE THAT BELONGED TO

21 MR. BURTON? MR. TROCHA: I DON'T KNOW WHO IT BELONGED TO.

22 THE COURT: OKAY -- AND I DON'T HAVE SUFFICIENT EVIDENCE AT THIS

23 POINT -- PARTICULARLY UNDER A TROMBETTA MOTION - SO THAT MOTION

24 IS DENIED. (COUNSEL AND THE DEFENDANT CONFER), MR. ADAIR: THERE IS

25 ONE OTHER WITNESS (AN ALIBI WITNESS COUNSEL FAILED TO

26 INTERVIEW AND SUBPOENA, PROVING DEFENDANT'S WHERE ABOUTS AT

27 TIME OF ALLEGED CRIME) APPARENTLY, ACCORDING TO MR. BURTON, AND THATS

28 A BARBARA SAVAGLIO, THE COURT: MS SAVAGLIO, ALLRIGHT THANK-

MR. E.W. BURTON #F02720 IN PROPER
P.O. BOX 5246 CSATT/SP-C1-132L
CORCORAN, CA. 93212

1  SEE EXHIBIT B, PAGE 20, RTEKCERPT 1235, LINES 5-11, 13,
2  14-27, SEE ALSO EXHIBIT B, PAGE 21, RTEKCERPT 1236, LINES 2, 3, 5,
3  6, 7, 9-11, 13-18, 19, 7 THE COURT: (7-29-05) ALL RIGHT, MR. BURTON,
4  WHAT IS THE BASIS OF THE MARSDEN MOTION? THE DEFENDANT: YES.
5  IT'S INEFFECTIVE ASSISTANCE OF COUNSEL. IT DEPRIVATED MY
6  SIXTH AMENDMENT RIGHT TO AN EFFECTIVE DEFENSE BY NOT PROVIDING
7  THE COURT WITH PERTINENT INFORMATION THAT HE HAD KNOWN
8  ABOUT THAT HE DID NOT PRESENT TO THE COURT, --WITNESSES,
9  ALSO, HE FAILED TO FILE THE APPROPRIATE MOTIONS THAT NEEDED
10  TO BE FILED -- A MOTION WHEREAS MY DUE PROCESS WAS VIOLATED
11  BY PROSECUTIONS FAILURE WITHIN A TIMELY MANNER TO PROVIDE
12  DEFENDANT WITH DISCOVERY. HE FAILED TO FILE THE APPROPRIATE
13  MOTIONS TO DISMISS DUE TO DUE PROCESS VIOLATION. THIS IS
14  A LETTER THAT MR. PLUMMER HAD SENT TO MS. HANNAH REQUESTING
15  DISCOVERY, AND ANOTHER LETTER WHERE DISCOVERY -- THE COURT
16  WAS INFORMED THAT THE PROSECUTION HAD ALREADY RECEIVED
17  THE MOTION REQUESTING, UNDER BRADY DISCOVERY. PROSECUTION
18  DID NOT RESPOND -- AND I WOULD LIKE THE TRIER OF FACT TO
19  RECONSIDER -- TO RERULE ON MY MOTIONS. THE COURT: WELL,
20  ACTUALLY, MR. BURTON, LET ME STOP YOU RIGHT THERE. -- MOTION?
21  THE DEFENDANT: YES, IT DOES, MA'AM. THE COURT: ALL RIGHT, -- AS I
22  TOLD YOU WHEN YOU RAISED YOUR MARSDEN MOTION, I BELIEVE, ON THE
23  FIRST DAY OF TRIAL, YOU HAD RAISED ABOUT TEN POINTS, NINE OF THEM
24  RAISED PRIOR TO THE FIRST DAY OF TRIAL, ONE OF THOSE HAD TO DO
25  WITH DISCOVERY ISSUES. I FIND THAT AT THIS POINT RAISING NEW
26  DISCOVERY ISSUES OR ANYTHING RELATING TO MOTIONS THAT YOU
27  PREVIOUSLY HAVE RAISED REALLY DOESN'T PERTAIN TO A BASIS FOR
28  RELIEVING YOUR COUNSEL AT THIS STAGE. -- AND IT'S DENIED.

94

1  SEE EXHIBIT "A", PAGE 94, RT EXCERPT 457, LINES 1-7, 21. THE COURT:
2  FIRST OF ALL, I DID RECEIVE ANOTHER DOCUMENT, MR. BURTON, THAT
3  YOU HAD SENT TO THE COURT. IT JUST MADE IT'S WAY UP TO MY
4  DEPARTMENT. I THINK IT OVER LAPS WITH ISSUES MR. ADAIR
5  RAISED ON THE FIRST DAY OF TRIAL. AGAIN, I'M HANDING IT
6  TO MR. ADAIR. SO IF THERE ARE ANY ADDITIONAL LEGAL
7  ISSUES THAT HE THINKS ARE APPROPRIATE TO FILE, HE
8  CAN DO SO. -- MR. TROCHA: THAT'S FINE.
9  SEE EXHIBIT "A", PAGE 93, RT EXCERPT 0147, IT IS PETITIONERS
10 POSTMARKED, COURT FILED STAMPED DATED BOTH 7-07-05, AND
11 7-08-05, IT IS THE ENVELOPE APPARENTLY THAT CONTAINED
12 PETITIONERS FARETTA PRO SE MOTION, AND MOTION TO DISMISS
13 DUE TO FEDERALLY GUARANTEED DUE PROCESS VIOLATIONS, THE
14 COURT PREDJUDICIALLY AND ERRONEOSLY FAILED TO RULE ON
15 PETITIONERS TIMELY MOTIONS, IT WAS AWARE OF BY EXAMPLE
16 OF THESE EXCERPTS THE TRIAL COURT VIOLATED PETITIONER'S
17 FUNDAMENTALLY GUARANTEED RIGHT TO A FAIR AND IMPARTIAL
18 TRIAL. THE FAILURE TO RULE ON PETITIONERS MOTIONS AND
19 FORCING AND UNWANTED COUNSEL GOES AGAINST THE VERY
20 PRINCIPLES OF THE BILL OF RIGHTS, THE 6TH AND FOURTEENTH
21 AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES.
22 A PRO SE REVERSAL IS WARRANTED. PREJUDICE IS
23 INHERENT IN THIS CASE, AS THE TRIER OF FACT WAS
24 INFACT A DEPORTED MATERIAL WITNESS FAVORABLE TO PROVING
25 PETITIONER'S INNOCENCE, PETITIONER STIPULATES GENUINE
26 COURT BUSINESS TESTIMONIAL 2006 RECORDS AS TESTIMONIAL
27 EVIDENCE. PETITIONER WAS DEPRIVED OF HIS FEDERALLY
28 GUARANTEED FUNDAMENTAL RIGHT TO A FAIR AND IMPARTIAL TRIAL.

1   SEE EXHIBIT B, PAGE 23, RT EXCERPT 329 (PROSECUTIONS REBUTTAL

2   ON RECORD) LINES 1-10, 20-23, 27, 7 MR. ADAIR: WELL, WE'VE

3   REQUESTED PHOTOGRAPHS -- I THINK IT STARTED WITH-- WITH THE PRIOR

4   ATTORNEY ON THE CASE APPROXIMATELY A YEAR AGO REQUESTING

5   PHOTOGRAPHS. AND THEY -- THAT WAS IN THE FORM OF, I THINK

6   A LETTER AND AN ACTUAL FILED MOTION THAT WAS NEVER HEARD,

7   A DISCOVERY MOTION. THAT WAS LAST YEAR, I FOLLOWED UP

8   WITH A LETTER. THE COURT: MR. TROCHA, DO YOU HAVE ANYTHING

9   TO SAY IN RESPONSE? MR. TROCHA: "I DON'T KNOW THE

10  HISTORY OF THE PHOTOGRAPHS OR ANYTHING." THE COURT: OKAY.

11  SEE EXHIBIT B, PAGES, 27, 28, 29 PETITIONER'S POST TRIAL

12  MOTION/ORDER DENYING DISCOVERY PURSUANT TO P.C. § 1054.9, FILED

13  7-13-07, SEE EXHIBIT B, PAGE 73, RT EXCERPT 1250, LINES 4-16,

14  18-26, SEE ALSO EXHIBIT B, PAGE 71, RT EXCERPT 1251, LINES 1-3, SEE

15  ALSO EXHIBIT B, PAGE 74, RT EXCERPT 1252, LINES 16-28) THE COURT:

16  ALL RIGHT, AND I DON'T THINK-- DID YOU STATE YOUR NAME FOR THE

17  RECORD, MS. PARK: NO, IT'S TONI PARK. THE COURT: THANK YOU. ANY

18  FURTHER COMMENTS FROM THE DISTRICT ATTORNEY? MR. TROCHA: NO,

19  YOUR HONOR. THE COURT: IS THERE ANY VICTIM OR FAMILY MEMBERS

20  WHO WISHES TO GIVE A STATEMENT? MR. TROCHA: MR. THOMAS

21  STATED HE WANTED TO BE PRESENT, BUT HE IS NOT PRESENT,

22  THE COURT: ALL RIGHT. AND MR. ADAIR? MR. ADAIR: YES, YOUR

23  HONOR.-- FOR THE RECORD, I'D LIKE TO OBJECT TO THE

24  STATUTES THAT APPARENTLY MAKE THE SENTENCE MANDATORY,

25  AND THAT'S ON PAGE 7 OF THE PROBATION REPORT UNDER

26  PROBATION ELIGIBILITY, WHERE IT STATES THE DEFENDANT IS

27  ABSOLUTELY INELIGIBLE FOR A GRANT OF PROBATION PURSUANT

28  TO PENAL CODE SECTIONS 1203(B)(2), 1203(E)(3), AND 12022.53.

1  FOR THE RECORD, I'M OBJECTING BASED UPON THE MANDATORY

2  NATURE OF THOSE, AND WOULD ASK YOUR HONOR TO USE YOUR

3  DISCRETION IN NOT-- IN CONSIDERING A GRANT OF PROBATION.

4  THE OBJECTION IS BASED UPON CONSTITUTIONAL REASONS

5  BOTH STATED IN THAT, THE COURT: THE OBJECTION IS NOTED,

6  MR. ADAIR: THANK YOU, YOUR HONOR.

7  THE COURT: MR. BURTON, THE COURT FINDS AS FOLLOWS"

8  FIRST OF ALL, WITH REGARD TO PROBATION ELIGIBILITY, YOUR

9  COUNSEL HAS RAISED AN OBJECTION TO THE STATUTORY

10  INELIGIBILITY. THE COURT OVERRULES THAT OBJECTION AND

11  FINDS THAT THE LAW IS CONSTITUTIONAL. COURT IS BOUND BY

12  THE LAW, HOWEVER, EVEN IF THE COURT WERE NOT AND IF

13  THE COURT HAD DISCRETION, THE COURT WOULD NOT BE

14  GRANTING PROBATION IN THIS CASE DUE TO THE SEVERE

15  NATURE OF THE CHARGES, AND I DO NOT FIND THERE ARE

16  ANY GROUNDS THAT WOULD CONVINCE THE COURT THAT YOU

17  WOULD BE ELIGIBLE OR AN APPROPRIATE CANDIDATE FOR

18  PROBATION, SEE EXHIBIT "B", PAGE 64, RT EXCERPT 1255, LINES

19  7-28- 7-15 7 THE COURT: YOU ARE TO PAY RESTITUTION

20  PURSUANT TO PENAL CODE 1202.4(F) TO SALINATION THOMAS

21  AND "KIAH, K-I-A-H, MINCEY," SHOULD ADDITIONAL LOSSES BE

22  REPORTED, AND TO PAY $17,838.57 TO THE (ALLEGED) VICTIM'S

23  COMPENSATION PROGRAM, CLAIM NO. 821546, SUBJECT TO

24  MODIFICATION BY THE COURT TO BE PAID FORTHWITH OR AS

25  PROVIDED IN PENAL CODE 2085.5. THE COURT WILL NOT ORDER

26  RESTITUTION AS TO DREONA BURTON, (EQUAL PROTECTION OR RESTRAINING

27  ORDER) AS THERE WAS AN ACQUITTAL ON COUNT 4.

28

97

1  STATEMENT OF FACTS

2  THE ACCUSATIONAL DELAY WAS DONE TO GAIN AN UNFAIR

3  TACTICLE ADVANTAGE OVER DEFENDANT AS HE WAS DENIED

4  HIS FEDERALLY GUARANTEED RIGHT TO BE PRESENT IN COURT.

5  COUNSEL HAD ALLEGEDLY BEEN GIVEN NOTICE OF THE

6  AMENDED COMPLAINT, BUT DEFENDANT WASN'T UNTIL 19 JULY 05,

7  THE FIRST DAY OF TRIAL, PETITIONER RAISED THIS ISSUE

8  ON RECORD. ADDITIONALLY PROSECUTION, AFTER A DEFENSE

9  MOTION HAD BEEN FILED AND SERVED ON PROSECUTION WITH

10  NO RESPONSE FAILED TO GIVE DEFENDANT NOTICE OF AN

11  ALLEDGED VICTIM KIAH MINCEY, WHO WAS NOT MADE

12  AVAILABLE AT TRIAL. PETITIONER CONTENDS HE WAS

13  DEPORTED BY THE POLICE AND PROSECUTION, AND THUS

14  PETITIONERS FEDERALLY GUARANTEED 14TH U.S. CONST. AMENDT

15  DUE PROCESS AND EQUAL PROTECTION CLAUSES WERE

16  VIOLATED. PETITIONER WAS DENIED HIS PRIOR RIGHT TO CROSS-

17  EXAMINATION. THE PROSECUTOR'S AMENDING OF THE CHARGING

18  INDICTMENT MADE DEFENDANT STATUTORILY UNCONSTITUTIONALLY

19  INELIGIBLE FOR PROBATION, AS PETITIONER HAD NO PRIOR

20  CRIMINAL CONVICTIONS AND WAS OTHERWISE ELIGIBLE FOR

21  ACQUITAL AND PROBATION. THE UNCHARGED AND UNPROVEN

22  ALLEGATIONS OF A CRIME AGAINST AN UNDISCLOSED,

23  ALLEGED VICTIM KIAH MINCEY WAS INHERENTLY PREDJUDICIAL AND WAS

24  A QUESTION FOR THE JURY TO DECIDE. THE SENTENCING OF

25  DEFENDANT OF AN INFAMOUS UNCHARGE, UNPROVEN CRIME VIOLATED

26  HIS FEDERALLY GUARANTEED RIGHT TO NOTICE, DUE PROCESS, AND

27  WAS UNCONSTITUTIONAL, THE TRIAL COURT LACK JURISDICTION TO

28  CONVICT AND SENTENCE PETITIONER OF AN ALLEGED CULMULATIVE OFFENSE.

1  STATEMENT OF FACTS

2  SEE EXHIBIT G, PAGE 2. RT EXCERPT 945, LINES, 9,10,

3  14, 15, 16, 19 - 24, 26, 27,

4  THE COURT?: HE'S NOT BEING CHARGED WITH ILLEGALLY

5  CARRYING A (ALLEGED) FIREARM.

6  MR. ADAIR: BUT I THINK THE JURY SHOULD BE INFORMED

7  THAT IF SOMEBODY FEELS THAT THEY ARE IN GRAVE

8  DANGER, THC

9  THE COURT: ALL RIGHT. WHAT'S YOUR RESPONSE TO THAT?

10  MR. TROCHA: I DON'T THINK THE JURY NEEDS TO KNOW

11  THAT IT'S IRRELEVANT. -- "A PERSON REASONABLY BELIEVED

12  HE WAS IN GRAVE DANGER,"

13  THE COURT: WELL, HE HASN'T BEEN CHARGED WITH

14  ANY ILLEGAL FIREARM POSSESSION CRIMES, AND I DON'T

15  RELEVANT FACTUAL BACKGROUND

16  AS THE EXCERPTS SHOW, CLEARLY PETITIONER'S

17  DUE PROCESS WAS VIOLATED BY THE STATE TRIAL

18  COURT. PROSECUTIONS DENIAL TO PETITIONER'S

19  FEDERALLY GUARANTEED RIGHT TO THE DISCLOSURE

20  AS MANDATED BY THE UNITED STATES CONSTITUTION'S

21  DUE PROCESS AND EQUAL PROTECTION CLAUSES OF

22  THE 14TH U.S. CONST AMENDMENT DEPRIVED PETITIONER HIS

23  FEDERALLY GUARANTEED FUNDAMENTAL RIGHT TO

24  A FAIR AND IMPARTIAL TRIAL. DEFENDANT HAD NO

25  PRIOR CONVICTIONS. THIS WAS AN ALLEGED CRIME

26  OF WHODUNIT AS ALLEGED IN THE EXCERPTS BY D.A.

27  MS. HANNAH. FUTHER MORE A CLOSE CASE AS DEFENDANT

28  WAS ACQUITTED OF COUNT 4. THE LOSS + DESTRUCTION OF EVIDENCE

29  FAVORABLE TO DEFENSE, SUPPRESSION OF DEFENSE EXHIBIT F 911 CALL, BY PROSECUTION
DENIED PETITIONER HIS RIGHT TO MAKE A DEFENSE, VIOLATED DUE PROCESS.

94

MR. E.W. BURTON #F02720 IN PROPER
P.O. BOX 5246 - CSATF/SP-C1-132L
CORCORAN, CA. 93212

1  STATEMENT OF FACTS

2    SEE EXHIBIT G, PAGE 2, RT. EXCERPT 945, LINES 23, 24, 26,

3  27, MR. TROCHA: -- "A PERSON REASONABLY BELIEVED HE

4  WAS IN GRAVE DANGER." THE COURT: WELL, HE HASN'T BEEN

5  CHARGED WITH ANY ILLEGAL FIRE ARM POSSESSION CRIMES.

6  SEE EXHIBIT G, PAGE 12, RT EXCERPT 0138, LINES 1-28

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28