# TABLE OF CONTENTS

EXHIBIT B PAGES 1-87 ................................... 1

......................................................... 2

......................................................... 3

......................................................... 4

......................................................... 5

......................................................... 6

......................................................... 7

U.S. ................................................... 8

......................................................... 9

......................................................... 10

......................................................... 11

......................................................... 12

......................................................... 13

......................................................... 14

......................................................... 15

......................................................... 16

......................................................... 17

......................................................... 18

......................................................... 19

......................................................... 20

......................................................... 21

......................................................... 22

......................................................... 23

......................................................... 24

......................................................... 25

......................................................... 26

......................................................... 27

......................................................... 28

......................................................... 29

......................................................... 30

......................................................... 31

1    THE COURT: ALL RIGHT. ANY RESPONSE BY THE PEOPLE?

2    MS. HANNAH: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3    CIRCUMSTANCES AND THE RESULT OF THE INCIDENT THAT OCCURRED ON

4    MARCH 19TH OF LAST YEAR. WHETHER THE ISSUE -- THE WHOLE

5    QUESTION OF THE TRIAL IS WHETHER MR. BURTON IS THE PERSON THAT

6    COMMITTED THE ALLEGED CRIME, NOT WHETHER OR NOT MR. THOMAS IS, IN FACT,

7    A VICTIM OF A CRIME. ▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬

11    MS. HANNAH: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

14    ▬▬▬  BUT THE PEOPLE CAN CERTAINLY REFER TO MR. THOMAS AS

15    MR. THOMAS.

16    THE COURT: ALL RIGHT.



1     **THE COURT:**  ALL RIGHT.  LET'S GO BACK IN THE

2  HALLWAY FOR A MOMENT.

3         (THE COURT, BOTH COUNSEL, AND THE COURT

4         REPORTER EXIT THE COURTROOM.)

5         (THE FOLLOWING PROCEEDINGS WERE HEARD AT

6         SIDEBAR:)

7     **MR. ADAIR:**  I HAVE CONCERNS UNDER 352.  I'M

10  TYPE OF THING THAT I DON'T SEE WHAT THE RELEVANCE OF IT

11  IS.

14     **MR. TROCHA:**



21     WE HAVE EVIDENCE THAT THE DEFENSE HAS BROUGHT

22  OUT, AND IS GOING TO BRING OUT FURTHER IN THEIR CASE IN

23  CHIEF, THAT MR. THOMAS IS, IN FACT, THE AGGRESSOR.  I

24  BELIEVE THIS BELT BUCKLE SHOWS MR. BURTON ISN'T EXACTLY

25  A SAINT HIMSELF.

27     **THE COURT:**  ANYTHING FURTHER IN REPLY?

28     **MR. ADAIR:**  JUST IT'S PRETTY SPECULATIVE.  IS





1    WHAT HE MEANS JUST HAVING THE BELT BUCKLE WITH AN EMBLEM



3    **THE COURT:** ██████████████████████████████



I DON'T

8    THINK IT HAS STRONG PROBATIVE VALUE, ███████████

10    **MR. TROCHA:**  STANDING ALONE, IT'S NOT ENOUGH,

████████████████████████████████

12    **THE COURT:**  THAT'S FINE.  I THINK IT'S

13    APPROPRIATE AND THE OBJECTION IS OVERRULED.

14    **MR. ADAIR:**  THIS MIGHT BE A GOOD TIME TO

15    MENTION THAT I'M NOT SURE WHAT ELSE THAT BELONGED TO

16    MR. BURTON WOULD BE INTRODUCED --

17    **MR. TROCHA:**  AND, AGAIN, I DON'T WANT TO

18    BELABOR THE POINT.

19    **THE COURT:**  YOU'RE GOING TO HAVE THE CLOTHING

20    TO GO THROUGH ALL THE DIFFERENT THINGS HE JUST SAID?

21    **MR. TROCHA:**  NO.  I WANT TO HAVE HIM DESCRIBE

22    TODAY WHAT WAS RECOVERED.  WE HAVE IT IN EVIDENCE, ████



26    **THE COURT:**  SO IF THE DEFENDANT WERE TO

27    TESTIFY HE DIDN'T SHOOT ANYONE, ██████████████



1    **MR. ADAIR:** YES. HE BASICALLY SAID THAT

2    THINGS WERE FINE BETWEEN HE AND MELANIE CLARK UNTIL HE

3    GOT ARRESTED.

4    **THE COURT:** ALL RIGHT. WELL, IF THE PROBATION

5    OFFICER BECOMES AVAILABLE, I'LL CONSIDER THAT. AND

6    PROBABLY ADMISSIBILITY WILL DEPEND IN PART ON HOW MANY

7    OTHER WITNESSES YOU'VE ALREADY PRESENTED AS TO WHAT --

8    CONFLICT WITH WHAT MR. THOMAS HAS SAID.

9    I WENT THROUGH MY NOTES TO REVIEW IT.

10   MR. THOMAS, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, HE ADMITTED

11   QUITE A BIT TOO. SO YOUR INTENTION AND YOUR PURPOSE IS

12   TO SHOW HIS CHARACTER FOR VIOLENCE AND ALSO PERHAPS

13   DISHONESTY. HE HAS ADMITTED VARIOUS CONVICTIONS. HE'S

14   ADMITTED THAT HE FOUGHT A LOT WITH MS. CLARK. HE

15   ADMITTED SHOVING HER. HE -- AS TO THE STALKING

16   INCIDENTS, HE ADMITTED SOME OF THOSE INCIDENTS INCLUDING

17   THROWING OBJECTS AT THE WINDOW, CALLING ON THE PHONE,

18   MAKING MULTIPLE CALLS. HE DISPUTED THE DATE, BUT HE

19   AGREED HE DID THAT. HE AGREED THAT HE HAD TOLD HER THAT

20   IF HE DIDN'T GET THE CAR BACK, HE HAD A BULLET WITH HER

21   NAME ON IT.

22   SO THERE ARE -- THROUGH HIS OWN ADMISSIONS,

23   AND THEN AS TO -- LET'S SEE. I THINK HE'S STILL TALKING

24   ABOUT MS. CLARK WHEN HE SAYS THAT THEIR RELATIONSHIP WAS

25   STORMY; THAT HE WAS PHYSICAL A COUPLE OF TIMES, MAYBE 60

26   TO 70 ARGUMENTS; CHOKED HER IN '93; HAS A PROBLEM WITH

27   HIS TEMPER. SO I THINK ALREADY HE'S ADMITTED SOME OF

28   THAT. AND I'LL ALLOW YOU TO IMPEACH HIM ADDITIONALLY,



1   Lee Plummer
    Attorney at Law
2   State Bar # 77783
    4045 Bonita Rd. #202
3   Bonita, Ca. 91902

4   Telephone number (619) 267-1710

5   Attorney for Eric Wilton Burton

6

7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                  COURT OF THE EAST COUNTY DIVISION

11                        COUNTY OF SAN DIEGO

12  PEOPLE OF THE STATE OF CALIFORNIA, )   Date  8-20-04  9:30 am
                                       )              D-11
13                     Plaintiff,       )   No.  SCE238643
                                       )
14  vs.                                )   NOTICE OF MOTION FOR
                                       )
15  ERIC WILTON BURTON                 )   DISCOVERY
                                       )
16                     Defendant.       )   MEMORANDUM OF POINTS AND
                                       )   AUTHORITIES AND DECLARATION
17  _____)

18
    TRIAL DATE: August 23, 2004
19
    TO THE ABOVE-ENTITLED COURT AND TO MARIA HANNAH, DEPUTY DISTRICT
20  ATTORNEY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

21

22      PLEASE TAKE NOTICE that on _____, in Department _____ at _____, or as soon

23  thereafter as the matter may be heard, the defendant, ERIC WILTON BURTON, will move that the

24  Court compel discovery of the items previously requested informally of the prosecution on JULY 6,

25  2004, and not given to the defense. Those items are listed in the attached declaration of counsel. This

26  motion will be based on the attached memorandum of points and authorities, the attached declaration

27  ,all papers filed and records in this action, evidence taken at the hearing on this motion, and argument

28      at that hearing.

F  I  L  E  D    0011
Clerk of the Superior Court

JUL 3 0 2004

By: M. Rapolla, Deputy

0012

1

STATEMENT OF THE CASE

2   On March 23, 2004 the defendant was charged with attempted premeditated murder and assault with

3   a <sup>ALLEGED</sup> semi-automatic firearm. In addition there were allegations of personal use of a <sup>ALLEGED</sup> gun. A preliminary

4   hearing was held on April 28, 2004 and trial is presently set for August 23, 2004.

5

6

MEMORANDUM OF POINTS AND AUTHORITIES

7

8       AN INFORMAL DISCOVERY REQUEST HAS ALREADY BEEN MADE OF THE

9   PROSECUTION, AND THERE WAS NO RESPONSE

10

11       The defense is required to informally seek discovery at least 15 calendar days before asking for

12   court-ordered discovery. (Penal Code section 1054.5(b).) In this case, the defense met that obligation.

13   A letter was sent to the District Attorney's office on July 6, 2004. A copy of that informal request is

14   attached as Exhibit A. There has been no response to the request.

15

16       THE DEFENSE ASKS THE COURT TO ORDER THE PROSECUTION TO DISCLOSE TO

17   THE DEFENSE THE ITEMS LISTED BELOW. ALL OF THEM WERE REQUESTED

18   INFORMALLY OF THE PROSECUTION, BUT NONE HAVE BEEN GIVEN TO THE DEFENSE

19

20       The defense requests that the court order the prosecution to disclose all items that were requested

21   in the informal discovery request that is attached as Exhibit A, and that are described below.

22

23

24

25   DEFENDANT'S STATEMENTS

26

27   All <sup>ALLEGED</sup> statements by the defendant, however recorded or preserved, whether or not signed or

28   acknowledged by the defendant, whether made to police officers or to other people, and the names,

(6)

0013

1   addresses, and telephone numbers of any and all witnesses to the making of said statements. If such

2   statements were oral, they shall be reduced to written form and provided to defense counsel. If any such

3   statements were tape-recorded and/or videotaped, the defense shall be permitted to copy such videotape

4   and/or tape-recording and, in addition, any transcript made thereof. Any notes of any such statements,

5   utterances or memoranda shall be preserved, and a copy provided to the defense.

6

7      AUTHORITIES: Penal Code section 1054.1(b).

8

9

10      STATEMENTS USED DURING INTERROGATION OF DEFENDANT

11

12      All statements of any person that were shown, read, played, or paraphrased to the defendant

13   during any interrogation conducted by law enforcement. The content of any statements made to the

14   defendant or anyone else in the defendant's presence, which (a) were made in order to encourage the

15   defendant to cooperate with the police and/or (b) might reasonably be expected to have the effect of

16   encouraging the defendant to give a statement about the offense to the police.

17

18      AUTHORITIES: Penal Code section 1054.1(e); Brady v Maryland (1963) 373 US 83, 83 S Ct

19   1194, 10 L Ed 2d 215.

20

21

22      OBSERVATIONS OF DEFENDANT AT AND NEAR TIME STATEMENT MADE

23

24      All memoranda or reports of observations made by police officers, or prosecution investigators

25   and psychotherapists at or near the time of the arrest of the defendant, and at or near the time of the

26   making of any statement, utterance, or memoranda by the defendant, concerning the defendant's physical

27   appearance, emotional state or state of sobriety.

28



0014

1  AUTHORITIES: Penal Code section 1054.1(e).

2

3

4

5  PHOTOS, ETC. OF SCENE OF ALLEGED CRIME

6

7  All photographs, transparencies, slides, diagrams, motion pictures, and videotapes of the scene

8  of the alleged offense.

9

10  AUTHORITIES: Penal Code section 1054.1(c), (e).

11

12

13

14  WITNESSES TO BE CALLED AT TRIAL

15

16  The names, current addresses, telephone numbers, and all statements, oral or written, of every

17  prosecution witness whom the prosecution reasonably anticipates it is likely to call to testify at trial

18  including notes from interviews with these witnesses.

19

20  AUTHORITIES: Penal Code section 1054.1(a)

21

22

23  CRIMINAL RECORD OF WITNESSES TO BE CALLED AT TRIAL

24

25  For each witness who may be called to testify at trial, all records, including police reports, relating

26  to any felony conviction, or any misdemeanor charge, any pending charges, any pending parole or

27  probation, anywhere in California, both at the time of the alleged offense and presently pending. Also any

28  docket numbers or CEN numbers generated by the incident giving rise to the report.

0016

1  witness's mental or physical abilities to observe or recollect, or related to the subject matter of his or her

2  proposed testimony. All notes and reports of observations of police officers and investigators concerning

3  the state of sobriety at the time of the charged offenses of those witnesses.

4

5        AUTHORITIES: Penal Code section 1054.1(e); Evidence Code section 780; Brady v Maryland,

6  supra.

7

8

9        PRIOR VIOLENT ACTS OF ALLEGED VICTIM

10

11       Regarding the complaining witness, based on Penal Code section 1054.1(a), (d)-(f), and Brady

12  v Maryland, supra, counsel requests:

13

14       1. All records concerning the arrest or conviction of the complaining witness for specific acts of

15  aggression, together with the names and addresses of witnesses to such acts.

16

17       2. All records concerning any felony and misdemeanor convictions suffered by the complaining

18  witness to impeach his credibility.

19

20       3. All police reports made within the last five years in which the complaining witness reportedly

21  assaulted or otherwise engaged in violent conduct against the defendant. (Engstrom v Superior Court,

22  supra.)

23

24       4. All probation reports regarding the complaining witness made within the last five years. (Penal

25  Code section 1203.05.)

26

27       5. Any and all criminal charges pending against the complaining witness in any county in the State

28



0017

1   of California.

2

3          6. The probationary status of the complaining witness in any county in the State of California.

4

5          7. The police reports for all arrests and convictions for criminal activity on the part of the

6   complaining witness, as well as any docket numbers or CEN numbers generated by the incident giving

7   rise to the report.

8

9          AUTHORITIES: California Const article I, section 28(d); People v Wheeler (1992) 4 C4th 284,

10  14 CR2d 418; People v Mickle (1991) 54 C3d 140, 168, 284 CR 511.

11

12

13         DOCUMENTS USED TO REFRESH RECOLLECTION

14

15         All notes made by prospective witnesses relating to matters covered in their testimony at the

16  preliminary examination and all documents used by a prosecution witness to refresh his or her memory

17  at the preliminary examination or before trial.

18

19         AUTHORITIES: Penal Code section 1054.1(f).

20

21

22         PROSECUTION OFFERS TO DEFENDANT OR WITNESSES TO OBTAIN INFORMATION

23  OR TESTIMONY

24

25         As to defendant and all witnesses who may be called to testify at the trial of the case and any and

26  all persons who were percipient witnesses to the alleged offenses, whether or not they are to be called

27  to testify at the trial of the case: any and all promises, inducements, offers of reward or immunity, plea

28  agreements, or affirmative representations made or implied to such persons in an effort to obtain

1  information or testimony as to the investigation and/or prosecution of the alleged offenses as charged in
2  the information, and, as to such persons, any and all threats made or implied for a like purpose.

3

4        AUTHORITIES: Penal Code section 1054.1(e); Evidence Code section 780.

5

6

7

8        LAW ENFORCEMENT REPORTS, ETC.

9

10       All reports, notes, documents, diagrams, memoranda, and records, however recorded or
11  preserved, prepared by any police officer or at a police officer's direction in connection with this incident,
12  including, but not limited to, the investigating officers' log, defendant's booking sheet, and defendant's
13  arrest sheet. All notes made by any police officer in connection with this case shall be preserved and a
14  copy provided to defense counsel. "Notes," as used above, include those in the official case file and,
15  additionally, those outside the official file, such as "street files," "criminal investigation files," "field
16  investigation notes," etc.

17

18       It is further requested that the prosecution immediately notify all police officers involved in this
19  investigation to preserve any original notes that they may have made during this investigation.

20

21       AUTHORITIES: Penal Code section 1054.1(e)-(f); Brady v Maryland, supra. (See discussion
22  in the Prosecution Comment at the end of this motion.)

23

24

25

26  OPPORTUNITY TO VIEW ALL EVIDENCE

27

28       An opportunity to view and examine all physical evidence obtained in the investigation of the



charged offense, including a copy of all property record sheets, and copies of all photographs, motion pictures, videotapes, slides, or transparencies taken of any physical evidence and of the scene of the alleged offense, and copies of all photographs taken of the defendant at or near the time of the charged offense, including the booking photograph of the defendant.

AUTHORITIES: Penal Code section 1054.1(c).

REPORTS AND RECORDS OF EXPERTS CONCERNING CASE

All reports and records of all chemical, biological, medical, criminological, laboratory, or other testing and examination of any physical evidence in this action, including, but not limited to, the victim's body, bodily fluids, and/or clothing, and the defendant's body, bodily fluids, and/or clothing. All reports and records of experts involving mental examinations of the defendant or a witness in the case. Copies of any notes, tape recordings, or any other records or documents used or completed in the course of such testing and examination. The name, address, and telephone number of each person who conducted or performed any such test, examination, or analysis. The name, address, and telephone number of any person who reviewed any such test, examination, analysis, or report for any expert opinion, with a copy of each person's report, evaluation, review and/or analysis. The curriculum vitae of any expert who conducted a test, wrote a report, or reviewed an expert's test or report in this case, who will testify as an expert at the preliminary hearing or at trial.

AUTHORITIES: Penal Code section 1054.1(f).



0020

1
2
3    PROPERTY SEIZED FROM DEFENDANT
4
5        The exact location of any property seized from defendant by warrant or process, including a
6    specific description and inventory of such property; the circumstances of the search and seizure attendant
7    to such taking; the names and official positions of law enforcement personnel, whether federal, state, or
8    local, involved in said search and seizure, as well as the identities of any additional third persons who
9    were present; a specification of items that were seized in addition to those belonging to, or alleged to
10   belong to defendant, including those alleged to belong to others; the precise time of each search and
11   seizure; the exact beginning and ending time of the search; the exact time of any arrests made during the
12   search and the names, addresses, telephone numbers, and rank of the arresting officers, and the location
13   of such arrest; the manner of entry involved in said search and seizure; any reports of visual surveillance
14   of defendant, codefendant or third parties, by law enforcement officers conducted prior to any of the
15   aforesaid searches.
16
17       AUTHORITIES: Penal Code section 1054.1(c), (e); U.S. v Nolte (ND Cal 1965) 39 FRD 359.
18
19
20   EVIDENCE FAVORABLE TO DEFENDANT (BRADY DISCOVERY)
21
22       Any evidence that would tend to exonerate the defendant ("Brady" discovery), minimize his
23   probable sentence, or that constitutes information that the defense might use to impeach or contradict
24   prosecution witnesses. Brady discovery includes information that relates to the existence of evidence
25   tending to suggest that someone other than the defendant committed any or all of the crimes charged
26   against the defendant. Brady discovery also includes any evidence that would tend to support a factor
27   in either aggravation or mitigation as set forth in Penal Code section 190.3.
28



1    AUTHORITIES: Penal Code sections 1054.1(e), 1054.5(c); Izazaga v Superior Court (1991) 54

2    C3d 356, 378, 285 CR 231 (Brady disclosure required even though not included within Pen C §1054.1,

3    because it is mandated by United States Constitution); People v Ruthford (1975) 14 C3d 399, 406, 121

4    CR 261; Napue v Illinois (1959) 360 US 264, 3 L Ed 2d 1217, 79 S Ct 1173.

5

6

7

8    CONTINUING ORDER; COPIES OF ORDER TO BE GIVEN TO LAW

9

10    ENFORCEMENT

11

12    The defendant requests that each of the above orders be continuing orders through the completion

13    of trial, so that items granted that become available after the date of this order are to be made

14    immediately available to defense counsel. This order is to be given to the prosecutor's investigator and

15    to the police officer in charge of investigating this case, and those persons must immediately give all

16    reports to the prosecutor, who must immediately give them to defense counsel.

17

18    AUTHORITIES: See Pen C §1054.7.

19

20

21    Date: 7-30-04                     Respectfully submitted,

22

23

24

25

26

27                          LEE PLUMMER

28                          ATTORNEY AT LAW

(15)

0022

## DECLARATION IN SUPPORT OF MOTION FOR DISCOVERY

I, Lee Plummer, declare under penalty of perjury that:

1. I represent the defendant in the above-entitled action.

2. On information and belief, the records, documents and information sought by this motion are in the actual and/or constructive possession of the District Attorney of San Diego County.

3. The records, documents, and information sought by this motion are not available to the defendant or his counsel in the exercise of due diligence.

4. The records and documents sought by this motion are necessary to help prepare the defense in this action. The requested discovery will be helpful to the defense case in the following ways: locating witnesses and physical evidence; preparing for the cross-examination and impeachment of witnesses to be called by the prosecution; assessing the credibility of witnesses to be called by the prosecution; assessing the credibility of defense witnesses; corroborating the testimony of defense witnesses; identifying the need for defense expert witnesses.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 7-30-04

Lee Plummer

Attorney at Law



882

1      **THE COURT:**   1250 AND 1251?

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬

6      **MR. ADAIR:**   THE OTHER THING IS, IT ALSO SORT

7    OF TIES INTO MY REQUEST TO HAVE THE DECLARATIONS IN THE

8    CIVIL RESTRAINING ORDER PROCEEDINGS IN THIS COURT THAT

9    TOOK PLACE WHERE MR. BURTON DID EXPRESS THE FACT THAT HE

10   HAD BEEN THREATENED AND THAT HE WAS AFRAID OF THIS

11   PERSON.

12      **THE COURT:**   SO THAT WOULD BE THE DECLARATION

13   IN THE ORDER TO SHOW CAUSE --

14      **MR. ADAIR:**   YES, YOUR HONOR.

15      **THE COURT:**   -- THAT WAS FILED ON FEBRUARY 20TH

16   OF '04?

17      **MR. ADAIR:**   YES, YOUR HONOR.

18      -- AND THEN THERE IS NOT QUITE AN ELABORATE A

19   DECLARATION, BUT SOMETHING SIMILAR IN THE CHILD CUSTODY

20   DECLARATION IN A DIFFERENT PROCEEDING IN THIS COURT.

21      **THE COURT:**   AND THAT WOULD HAVE BEEN THE

22   CUSTODY DECLARATION THAT HE FILED AGAINST ANGELA --

23      **MR. ADAIR:**   SANDERS.

24      **THE COURT:**   -- SANDERS.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



*conflict of interest*

883



4       **THE COURT:**  ALL RIGHT.  LET ME JUST LOOK AT

5    THE DECLARATION HE FILED IN THE CIVIL HARASSMENT CASE.

6           SO THE NATURE OF HIS COMPLAINTS INCLUDE

7    THREATS OF PHYSICAL HARM AND DEATH OVER THE PHONE; WHILE

8    APPROACHING HIS VEHICLE;

12          OKAY.  MR. TROCHA, YOUR RESPONSE?

13          **MR. TROCHA:**  I THINK WE COVERED THIS IN

16    IT'S THE DEFENDANT FILING PAPERWORK WITH THE COURT AND

18    TO PROVE TO TRUTH THAT HE WAS THREATENED DESPITE THE

25    A DIFFERENT STORY.

26          **THE COURT:**  ALL RIGHT.  I'LL CONSIDER THAT

27    ~~AGAIN AT THE SAME TIME I LOOK AT THE OTHER ISSUE AND~~

28    I'LL LOOK AT THE CASE LAW INVOLVING 1250 AND 1251.

1235

1     **EL CAJON, CALIFORNIA; FRIDAY, 7/29/05; 3:07 P.M.**

2                            - - -

3              (THE FOLLOWING PROCEEDINGS HAVE BEEN ORDERED

4         SEALED BY THE COURT:)

5              **THE COURT:** ALL RIGHT.  MR. BURTON, WHAT IS

6     THE BASIS OF THE MARSDEN MOTION?

7              **THE DEFENDANT:** YES.  IT'S INEFFECTIVE

8     ASSISTANCE OF COUNSEL.  IT DEPRIVATED MY SIXTH AMENDMENT

9     RIGHT TO AN EFFECTIVE DEFENSE BY NOT PROVIDING THE COURT

10    WITH PERTINENT INFORMATION THAT HE HAD KNOWN ABOUT THAT

11    HE DID NOT PRESENT TO THE COURT.  ██████████████

      ████████████████████████████████████████████████████

13    WITNESSES.

14              ALSO, HE FAILED TO FILE THE APPROPRIATE

15    MOTIONS THAT NEEDED TO BE FILED.  ████████████████

16    ██████████ -- A MOTION WHEREAS MY DUE PROCESS WAS

17    VIOLATED BY PROSECUTION'S FAILURE WITHIN A TIMELY MANNER

18    TO PROVIDE DEFENDANT WITH DISCOVERY.  HE FAILED TO FILE

19    THE APPROPRIATE MOTIONS TO DISMISS DUE TO DUE PROCESS

20    VIOLATION.

21              THIS IS A LETTER THAT MR. PLUMMER HAD SENT TO

22    MS. HANNAH REQUESTING DISCOVERY, AND ANOTHER LETTER

23    WHERE DISCOVERY -- THE COURT WAS INFORMED THAT THE

24    PROSECUTION HAD ALREADY RECEIVED THE MOTION REQUESTING,

25    UNDER BRADY DISCOVERY.  PROSECUTION DID NOT RESPOND

26    ██████████████████████, AND I WOULD LIKE THE TRIER OF

27    FACT TO RECONSIDER -- TO RE-RULE ON MY MOTIONS.

28              EXCUSE ME.  I NEED MY ENVELOPE RIGHT THERE

(20)

1236

1    ON --

2              **THE COURT:** WELL, ACTUALLY, MR. BURTON, LET ME

3    STOP YOU RIGHT THERE.

5    MOTIONS?

6              **THE DEFENDANT:** YES, IT DOES, MA'AM.

7              **THE COURT:** ALL RIGHT.

8

9                                      . AS I TOLD YOU WHEN YOU RAISED

10   YOUR MARSDEN MOTION, I BELIEVE, ON THE FIRST DAY OF

11   TRIAL, YOU HAD RAISED ABOUT TEN POINTS.  NINE OF THEM

13   RAISED PRIOR TO THE FIRST DAY OF TRIAL.

14             ONE OF THOSE HAD TO DO WITH DISCOVERY ISSUES.

15   I FIND THAT AT THIS POINT RAISING NEW DISCOVERY ISSUES

16   OR ANYTHING RELATING TO MOTIONS THAT YOU PREVIOUSLY HAVE

17   RAISED REALLY DOESN'T PERTAIN TO A BASIS FOR RELIEVING

18   YOUR COUNSEL AT THIS STAGE.

19

20   AND IT'S DENIED.

21             WITH REGARD TO YOUR COMPLAINT ABOUT THE

22   INVESTIGATION OF DOCTORS, WE DID ADDRESS THAT EARLIER

23   THIS WEEK.  AND YOU'VE GIVEN ME ANOTHER DOCUMENT WHICH

24   SIMPLY CONFIRMS THAT YOU HAVE GLAUCOMA.  THERE WAS

25   TESTIMONY AT TRIAL -- I DON'T THINK THERE WAS A DISPUTE

26   ON THAT AND IT DOESN'T REALLY ADD TO THE EVIDENCE

27   ALREADY BEFORE US.  AND MR. ADAIR DID EXPLAIN TO THE

28   COURT EFFORTS MADE TO EXPLORE THE DEFENSE RELATING TO



1237

1    EYESIGHT   SO THAT MOTION, ALSO, I FIND IS NOT A BASIS

2    TO RELIEVE MR. ADAIR AT THIS TIME.

3                I WILL HAVE THE THREE DOCUMENTS THAT YOU

4    SUBMITTED MARKED AS A DEFENDANT'S NEXT IN ORDER FOR

5    PURPOSES OF THE COURT FILE SO THAT YOU'VE MADE YOUR

6    RECORD.  IT WOULD BE -- IT COULD BE A COURT EXHIBIT.  IT

7    WILL BE COURT EXHIBIT 2, AND IT WILL BE IN THE FILE FOR

8    ANY PURPOSES OF REVIEW FOR APPEAL, BUT YOUR MOTION IS

9    DENIED.

10               (COURT'S EXHIBIT 2, THREE-PAGE DOCUMENT, WAS

11               MARKED FOR IDENTIFICATION AND RECIEVED INTO

12               EVIDENCE.)

13   **THE DEFENDANT:**  MAY I MAKE ONE OTHER MOTION?

14   **THE COURT:**  ~~ONLY IF THIS~~ -- ON WHAT GROUNDS?

15   ~~WE NEED TO HAVE THE PROSECUTOR BACK~~ --

16   **THE DEFENDANT:**  A MOTION FOR A RETRIAL.

17   **THE COURT:**  OKAY.  THAT WOULD BE A SEPARATE

18   MOTION.  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

     ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

     ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

     ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

22   **THE COURT:**  ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

23   ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪  BUT TODAY WOULD NOT BE

24   THE DAY.

25               **THE DEFENDANT:**  YES, MA'AM.

26               (CONCLUSION OF SEALED PROCEEDINGS.  UNSEALED

27               PROCEEDINGS CONTINUE ON PAGE 1238; ▪▪▪▪▪▪

28               ▪▪▪▪▪▪▪▪



329

1  PROCEDURALLY I COULD EVEN CONSIDER THE MOTION.  AND THEN

2  WE NEED TO GET OVER THAT HURDLE BEFORE WE GO TO THE

3  NEXT.

4          MR. ADAIR:  WELL, WE'VE REQUESTED

5  PHOTOGRAPHS -- I THINK IT STARTED WITH -- WITH THE PRIOR

6  ATTORNEY ON THE CASE APPROXIMATELY A YEAR AGO REQUESTING

7  PHOTOGRAPHS.  AND THEY -- ▓▓▓▓▓▓▓ -- THAT WAS IN

8  THE FORM OF, I THINK, A LETTER AND AN ACTUAL FILED

9  MOTION THAT WAS NEVER HEARD, A DISCOVERY MOTION.  THAT

10  WAS LAST YEAR.  I FOLLOWED UP WITH A LETTER.

12  I FOLLOWED UP WITH A LETTER REQUESTING PHOTOGRAPHS.  AND

15          SO I'M JUST SAYING WE JUST DIDN'T HAVE THE

16  PHOTOGRAPHS, ▓▓▓▓▓▓▓▓▓▓

17  CAR WAS.

18  SUPPRESSION MOTION -- ▓

20          THE COURT:  MR. TROCHA, DO YOU HAVE ANYTHING

21  TO SAY IN RESPONSE?

22          MR. TROCHA:  I DON'T KNOW THE HISTORY OF THE

23  PHOTOGRAPHS OR ANYTHING, ▓▓▓▓▓▓▓

27          THE COURT:  OKAY.



0023

**LEE PLUMMER**
Attorney at Law
4045 Bonita Rd. #202
Bonita, Ca. 91902
Telephone: (619) 267-1710
July 6, 2004

Maria Hannah
Office of the District Attorney
250 East Main
El Cajon, Ca. 92020

Re: Eric Burton SCE238643

Dear Miss Hannah,


    The purpose of this letter is to informally request discovery in the above mentioned case.
It appears from the discovery that I have received that there a photographs, tapes of statements,
diagrams of the crime scene and physical evidence that I have not seen. I request production of
all evidence sufficiently in advance of trial so that my client and I can adequately prepare for trial.

    Your assistance in this matter is greatly appreciated.


                                    Sincerely yours,



0104

MAR 1 6 2005

1  CHARLES H. ADAIR
   ATTORNEY AT LAW
2  533 F STREET, STE. 212
   SAN DIEGO, CA 92101
3  619/233-3161
   STATE BAR NUMBER: 52163

4

5  ATTORNEY FOR DEFENDANT

6

7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

9                            EAST COUNTY DIVISION

10

11

12  THE PEOPLE OF THE STATE OF            )   CASE NO: SCE 238643
    CALIFORNIA,                           )
13                                        )   NOTICE OF MOTION
            Plaintiff,                    )   TO EXCLUDE EVIDENCE
14                                        )
            vs.                           )
15                                        )
    ERIC BURTON,                          )   DATE: 3/16/05
16                                        )   TIME:  9:00 AM
            Defendant                     )   PLACE: DEPT. 11
17

18  _____

19  TO: THE DISTRICT ATTORNEY OF SAN DIEGO COUNTY, AND MARIA HANNAH,
        ASSISTANT DISTRICT ATTORNEY:

20  PLEASE TAKE NOTICE that on March 16th, 2005 at 9:00 AM , or as soon thereafter as the

21  matter may be heard in the courtroom of Department 11  of the above-entitled court, the defendant

22  will move for an order excluding evidence.

23     This motion will be made on the ground that the intentional, bad-faith loss or destruction of

24  material evidence by the prosecution has deprived the defendant of due process of law contrary to the

25  provisions of the Fourteenth Amendment to the United States Constitution and Article I, Section 15

26  of the California Constitution.

27

28

25

0105

The motion will be based on this notice of motion, on the attached memorandum of points and authorities served and filed herewith, on such supplemental memoranda of points and authorities as may hereafter be filed with the court, on all the papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing of the motion.

Dated: 3/14/05

Respectfully submitted

CHARLES H. ADAIR
Attorney for Defendant

F I L E D
Clerk of the Superior Court

JUL 1 3 2007

By: M. AGUILAR, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# COUNTY OF SAN DIEGO, EAST COUNTY DIVISION

PEOPLE OF THE STATE OF CALIFORNIA,    )
                                      )
                        PLAINTIFF,    )    SCE 238643
                                      )
        v.                            )    ORDER DENYING MOTION
                                      )    FOR DISCOVERY PURSUANT
ERIC WILTON BURTON,                   )    TO PENAL CODE § 1054.9
                                      )
                        DEFENDANT.    )
_____)

THE COURT, HAVING READ THE REQUEST OF THE DEFENDANT, ERIC BURTON, AND THE FILE IN THE ABOVE ENCAPTIONED MATTER, FINDS AS FOLLOWS:



1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3 ▬▬▬▬▬▬▬▬▬▬▬▬▬

4    On October 21, 2005, Defendant was sentenced to the total term of life with the

5 possibility of parole plus 25 years to life in state prison.

6    On June 12, 2007, Defendant filed the present motion for discovery pursuant to Penal

7 Code § 1054.9. Defendant contends that he has requested discovery from the prosecution,

8 but has not been provided with the materials.

9    Penal Code § 1054.9(a) states, "Upon the prosecution of a postconviction writ of

10 habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of

11 life in prison without the possibility of parole has been imposed, and on a showing that good

12 faith efforts to obtain discovery materials from trial counsel were made and were

13 unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant

14 be provided reasonable access to any of the materials described in subdivision (b)."

15    Penal Code § 1054.9 is not applicable to Defendant's case. This code section applies

16 to discovery requests made by defendants who have received a sentence of death or life

17 without the possibility of parole. In the present case, Defendant received a sentence of life

18 with the possibility of parole. As Defendant is eligible for parole, Penal Code § 1054.9 is not

19 applicable to his case.

20    Based on the foregoing, the motion for discovery pursuant to Penal Code § 1054.9 is

21 hereby DENIED.

22    Moreover, discovery is limited after the final judgment of an action. The court in

23 People v. Ainsworth (1990) 217 Cal.App.3d 247, 255, held that "jurisdiction of the trial court

24 upon issuance of the remittitur is limited to the making of orders necessary to carry- the

25 judgment into effect. (Citations.)...However, the limited powers of the trial court in

26 postremittitur proceedings do not encompass jurisdiction to entertain a detached motion for

27 discovery."

28    The Ainsworth court further held that "[t]he right to discovery is associated with the

1  fairness of the adversarial process during the course of trial.    (Citation.)    An accused is

2  entitled to any '"pretrial knowledge of any unprivileged evidence, or information that might

3  lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him*

4  *in preparing his defense....'"*  (*Ballard v. Superior Court* (1966) 64 Cal.2d 159, 167, original

5  italics.)    [¶]    There is no decisional or statutory authority for a trial court to entertain a

6  postjudgment discovery motion which is unrelated to any proceeding then pending before the

7  court.  The reason for such lack of authority is simple.  As with any other motion, a discovery

8  motion is not an independent right or remedy.    It is ancillary to an ongoing action or

9  proceeding.  After the judgment has become final, there is nothing pending in the trial court to

10  which a discovery motion may attach." *Id* at 250-251.

11          As the judgment in the above-entitled case is final, this Court would not have

12  jurisdiction to grant a discovery request.  There is nothing pending in the trial court to which

13  this request for discovery can attach.

14          The clerk's office is directed to serve a copy of the Order on (1) Defendant and (2) the

15  San Diego County District Attorney's Office.

16  **IT IS SO ORDERED.**

17

18  DATED:    JUL 1 3 2007        _____

19                                          HERBERT J. EXARHOS

                                               JUDGE OF THE SUPERIOR COURT

20

21

22

23

24

25

26

27

28

1   ABOUT 10:33.  AND THEN WE'LL GO UNTIL THE NOON HOUR.

2   DON'T DISCUSS THE CASE AMONGST YOURSELVES OR WITH ANYONE

3   ELSE.  DO NOT FORM ANY OPINIONS.  STEER CLEAR OF ANY

4   POTENTIAL WITNESSES WHO MIGHT BE IN THE HALLWAY.

5           (AT 10:18 A.M. THE JURY WAS EXCUSED AND THE

6           FOLLOWING PROCEEDINGS WERE HAD:)

7           **THE COURT:**  ALL RIGHT.  THE MEMBERS OF THE

8   PANEL HAVE LEFT THE COURTROOM.

9           MR. TROCHA, WHEN YOU HAD SUBMITTED YOUR MOTION

10  ON EXCLUDING DEFENDANT'S ALLEGED STATEMENTS, YOU GAVE ME A COPY

11  OF THE TRANSCRIPT.

12          **MR. TROCHA:**  YES.

13          **THE COURT:**  THERE ALREADY WAS ONE IN THE FILE

14  SO I'M GOING TO RETURN THIS ONE TO YOU.  IF AT ANY POINT

15  WE NEED TO DEAL WITH IT FURTHER, YOU CAN VERIFY THAT

16  IT'S THE SAME VERSION.

17          **MR. TROCHA:**  THANK YOU, YOUR HONOR.

18          **THE COURT:**  ALL RIGHT.  THEN WE'LL BE IN

19  RECESS FOR 15 MINUTES.

20          THANK YOU.

21          (RECESS FROM 10:19 A.M. TO 10:35 P.M.)

22          (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

23          COURT OUT OF THE PRESENCE OF THE JURY:)

24          **THE COURT:**  GO AHEAD.

25          **MR. ADAIR:**  JUST SINCE TESTIMONY CONCERNING

26  THE BLOOD HAS NOW COME IN PROBABLY PRETTY MUCH AS MUCH

27  AS IT'S GOING TO, WE'D LIKE TO RENEW THE MOTION

28  CONCERNING THE REQUEST TO DISMISS BASED UPON THE

1    VIOLATION OF MR. BURTON'S DUE PROCESS RIGHTS IN THE

2    DESTRUCTION OF THE EVIDENCE. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ON THE GRASS, IT HAD BEEN WASHED AWAY.

4         WE BROUGHT THE MOTION PRETRIAL.  IT'S JUST

5    THAT WE'RE RENEWING IT AGAIN AT THIS TIME BASED UPON THE

6    ADDITIONAL EVIDENCE THAT'S COME IN.

7         **THE COURT:**  ALL RIGHT.  WELL, AT THIS POINT

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮   IT APPEARS THE ONLY TESTIMONY THAT WAS

11   HEARD WAS THAT IT WAS A PERSON LIVING -- ▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮, IN FACT,

13   THAT'S WHY THE GRASS WAS WET. ▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  THE MOTION IS DENIED.

15        **MR. TROCHA:**  AND, YOUR HONOR, JUST FOR THE

16   RECORD, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   SPRAYED THE GRASS DOWN. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18        **THE COURT:**  IT'S WET. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮

20        **MR. TROCHA:**  OKAY.

21        **THE COURT:**  ALL RIGHT. ▮▮▮▮▮▮▮▮▮▮▮▮

22   TESTIMONY IS THAT SOMEONE SPRAYED THE PORCH AT SOME

23   POINT IN TIME. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26        **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER?

27        **MR. TROCHA:**  NO.

28        **THE COURT:**  LET'S BRING THE JURY IN.

*Prosecutions Exhibit #113*

*Failure ... People's exhibit #113*

*erased.*

*People's Evidence 113*



*loss & destruction of favorable evidence*

2          MS. HANNAH: ▓▓▓▓▓▓▓▓▓▓▓          THERE

3    WERE NO PHOTOGRAPHS.

4          THE COURT:  AND I TAKE IT THE PEOPLE DON'T HAVE ANY?

5          MS. HANNAH:  WE DO NOT.          *loss & destruction of evidence*

6          THE COURT:  ALL RIGHT.  WELL, DISCOVERY AS TO THE PEOPLE,

7    IF THEY DON'T HAVE IT, THEY CAN'T PRODUCE IT. ▓▓▓▓▓▓▓▓

8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9    PHOTOGRAPHS. ▓▓▓▓▓▓▓▓▓▓▓  AT LEAST INFORMALLY TO THE

10   PROSECUTOR, THERE ARE NONE.  SO YOU CAN'T ORDER PRODUCTION OF

11   SOMETHING THAT DOESN'T EXIST.

12          ANYTHING ELSE BEFORE WE DEAL WITH THE MARSDEN

13   MOTION?

14          MR. ADAIR:  THERE IS ONE ADDITIONAL THING, YOUR HONOR.

15   THE -- DURING THIS PROCEEDING -- AND I NOTICED IT EARLIER, BUT I

16   THINK THIS IS THE APPROPRIATE TIME TO BRING IN THE OBJECTION --

17   A REQUEST AND AN OBJECTION.  ALL ALONG WE'VE BEEN REFERRING TO

18   MR. THOMAS AS THE VICTIM, WHICH PRESUPPOSES THAT SOMEONE

19   COMMITTED A CRIME ON HIM.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23          SO IT'S OUR REQUEST TO NOT USE THE TERM "VICTIM"

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

26   COURTROOM -- AGAIN, IT'S OUR REQUEST THAT MR. THOMAS BE REFERRED

27   TO BY HIS PROPER NAME AND THAT WE NO LONGER USE THE TERM

28   "VICTIM."

1    EVIDENCE. ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃

▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃

3    MOTION IS DENIED.

4         NEXT MOTION?

5         **MR. ADAIR:**  COULD I HAVE JUST A MOMENT, YOUR

6    HONOR?

7         **THE COURT:**  YOU MAY.

8         (COUNSEL AND THE DEFENDANT CONFER.)

9         **MR. ADAIR:**  I GUESS THERE'S ANOTHER ISSUE

10   UNDER TROMBETTA, YOUR HONOR.  THAT THERE WAS -- THAT THE

11   EL CAJON POLICE DEPARTMENT DIDN'T PROPERLY SECURE THE

12   CRIME SCENE, AND THAT THERE WAS AN AREA OF THE CRIME

13   SCENE THAT WAS HOSED DOWN BY EITHER THE POLICE

14   DEPARTMENT OR ONE OF THE RESIDENCE RESULTING IN THE

15   DESTRUCTION OF VALUABLE EVIDENCE.

16         **THE COURT:** ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃

17   TIME -- IT SOUNDS -- IN MARCH.

18         **MR. ADAIR:**  AND I'M NOT SURE IF IT WAS RULED

19   ON AT THAT TIME THOUGH.

20         **THE COURT:**  I REMEMBER SEEING CHARTS AND

21   EXPLANATIONS ABOUT THE SCENE AND SOME MAPPING OF --

▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃

23   WAS -- ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃       SO LET ME

24   JUST LOOK HERE.

25   ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃

26   ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃       AND I THINK THE TRAIL

27   OF BLOOD WAS CONNECTED TO THE ISSUE OF HOSING DOWN THE

28   STREET. ▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃▃



1    COUNSEL IS REFERRING TO IN TERMS OF ADDITIONAL BLOOD EVIDENCE.

5        THE COURT:  ALL RIGHT.  THANK YOU.

6        ARE THERE ANY PARTICULAR AREAS OF THE SCENE THAT

7        OR IS IT THAT YOU'RE

8    ASKING OR ARE ARGUING THAT WHATEVER BLOOD WAS PRESENT,

9    , SHOULD HAVE BEEN PRESERVED?

10    MR. ADAIR:

11    BLOOD ON THE GRASS, ON THE SIDEWALK AND ON THE STREET,

14    FROM WHAT I JUST SAID.

20        THE COURT:  ALL RIGHT.  I'M LOOKING AT THE DIAGRAM.  IT

21    APPEARS TO HAVE BEEN PREPARED ON MARCH 19TH, '04,

22    LODGED INTO EVIDENCE ON THAT DATE.

23    , BASED UPON WHAT I'VE BEEN TOLD,

27    DIAGRAM SHOWS DROPPINGS OF BLOOD IN VARIOUS LOCATIONS,

34

624

1     Q.    HOW DID YOU DETERMINE THIS WAS A BLOOD TRAIL?

2     A.    THERE WERE SPOTS OF BLOODS THAT I FOLLOWED

3  FROM THE AREA WHERE THE BLOOD WAS ON THE CAR UP TO THE

4  WALKWAY WHERE IT TURNS AND GOES TO THE FRONT OF 324 A.

5  AND I FOLLOWED THAT TO WHERE I FOUND THE BLOODY T-SHIRT

6  PIECES.

7     Q.

8

9    WAS THERE ANY WETNESS OR MOISTURE AT ALL ON THIS

10  WALKWAY?

11     A.    THERE WAS.



21     Q.    YOU ALSO PHOTOGRAPHED THIS BLOOD TRAIL?

22     A.    I DID.

23     Q.    WHERE DID THIS BLOOD TRAIL END?

24     A.    IT ENDED INSIDE OF 324 A.



28     Q.    WHAT DID YOU FIND AT THE END OF THE BLOOD



625

```
 1    TRAIL --
 2         A.   A PHONE.
 3         Q.   -- IF ANYTHING?
 4         A.   A PHONE.
 5         Q.   WAS THIS TELEPHONE DAMAGED IN ANY WAY?
 6         A.   IT APPEARED TO HAVE BEEN DROPPED, BUT IT
 7    WASN'T DAMAGED LIKE THE ONE THAT WAS FOUND IN THE GRASS
 8    AREA.
 9         Q.   WHAT COLOR WAS THE PHONE?
10         A.   BLACK.
11         Q.   YOU PHOTOGRAPHED THIS BLOOD TRAIL FROM,
```



```
13         A.   I DID.
```

```
28         Q.   AND YOU MENTIONED SOMETHING ABOUT A T-SHIRT.
```

(36)

1    IF WE DO IT THIS WAY.

2    **BY MR. ADAIR:**

3        Q.    AGENT, ██████████████████████████.    YOU

4    RECOGNIZE THIS, CORRECT?

5        A.    I DO.

6        Q.    AND REFERRING TO PICTURE A ON THIS PARTICULAR

7    EXHIBIT, IT DOES SHOW A SECTION LINE, CORRECT?

8        A.    YES, IT DOES.

9        Q.    AND I BELIEVE THAT YOU INDICATED YESTERDAY

10   THAT ON THAT LAWN SOMEWHERE, YOU RECOVERED A PORTION OF

11   A CORDLESS PHONE, CORRECT?

12       A.    I DIDN'T RECOVER IT.    I PHOTOGRAPHED IT AND

13   DOCUMENTED ITS LOCATION.

14       Q.    OKAY.    AND APPARENTLY PEOPLE'S EXHIBIT 128 --

15   THIS THE PORTION OF THE PHONE THAT YOU PHOTOGRAPHED?

16       A.    YES.

17       Q.    DO YOU SEE THE LOCATION ON PHOTO A WHERE THIS

18   PIECE OF PHONE WAS FOUND?

19       A.    (INDICATING).

20       Q.    OKAY.    THAT'S THE PIECE.    AND I THINK YOU

21   STATED YESTERDAY THAT THERE WERE A COUPLE OF OTHER

22   SMALLER PIECES NEXT TO IT?

23       A.    YES.

24       Q.    AND LET ME GET A MARKER SO WE CAN CIRCLE THAT.

25       **MR. ADAIR:**    WE'LL USE A RED A MARKER, YOUR

26   HONOR.

27   **BY MR. ADAIR:**

28       Q.    IF I COULD GIVE YOU THE RED MARKER, PLEASE.



665

1      A.    THAT WOULD BE FAIR TO SAY.

2      Q.    AND I BELIEVE YOU ALSO INDICATED THAT WHEN YOU

3  LOOKED AT THE LAWN WHEN YOU FIRST ARRIVED THERE AT THE

4  SCENE, IT APPEARED TO BE WET?

5      A.    IT DID.



8  ANY BLOOD ON THE GRASS ITSELF?

9      A.    CORRECT.

10     Q.    ██████████████    IT HAD BEEN BASICALLY

11  WASHED AWAY AT THAT POINT?

12     A.    YES.





578



10      Q.   DID MR. THOMAS USE FOUL LANGUAGE?

11      A.   I'M ASSUMING HE DID.

12      Q.   YOU CAN'T REMEMBER?

13      A.   HE WAS VERY AGITATED.



22   **BY MR. TROCHA:**

23      Q.   _____ DID

24   HE SAY GOODBYE OR INDICATE --

25      A.   _____

26   _____   AND I RECEIVED IMMEDIATE 911 CALLS AFTERWARDS



660

1    A.    IT WAS THE SAME DAY.  I ACTUALLY DICTATED MY

2   NOTES AT 10:30 ON -- LET'S SEE -- ON THE 19TH.

3    Q.    AND DO YOU REMEMBER IF YOU WERE DICTATING AS

4   YOU SAW MR. THOMAS OR WAS IT MUCH AFTER?

5    A.    IT WAS PROBABLY AFTER I HAD INITIALLY CLEANED

6   OUT THE WOUND TEMPORARILY.

7         EXCUSE ME.  IF I CAN CORRECT WHAT I STATED

8   EARLIER.  ON MY DICTATION I SAID THAT THE TIME OF

9   INITIAL CONSULTATION WAS 6:00 P.M.

10    Q.    SO THAT WOULD HAVE BEEN FAIRLY SOON AFTER HE

11  ARRIVED?  I'LL ACTUALLY REFER YOU TO PAGE 1 OF

12  DR. HAMMERSTEAD'S TRAUMA HISTORY AND PHYSICAL.  TIME OF

13  ARRIVAL --

14    A.    1507.  YES.

15    Q.    OKAY.  SO FOR THE LAY PEOPLE --

16    A.    IT'S --

17    Q.    -- THAT WOULD BE APPROXIMATELY FIVE, SEVEN

18  MINUTES AFTER 5:00 IN THE AFTERNOON?

19    A.    YES.

20    Q.    AND DR. HAMMERSTEAD MADE NOTES AS FAR AS

22    A.    YES.

26    Q.    OKAY.  BUT DR. HAMMERSTEAD NOTED THAT

27  MR. THOMAS ADMITTED TO A COUPLE OF BEERS PRIOR TO THE

28  ACCIDENT?



1      A.    YES.

2      Q.    AND THAT THERE WAS AN ODOR OF AN ETHANOL

3    BEVERAGE ON BREATH?

4      A.    YES.

5      Q.    HE'S NOT TALKING ABOUT ANYBODY EXCEPT

6    MR. THOMAS, CORRECT?

7      A.    CORRECT.

8      Q.    AND ETHANOL BEVERAGE BASICALLY IS ALCOHOL?

9      A.    YES.

10      Q.    SO THE LONG AND SHORT OF IT IS THAT IT APPEARS

11    MR. THOMAS HAD BEEN DRINKING?

12      A.    HE STATED THAT HE DRANK A COUPLE OF BEERS

14      Q.    DO YOU HAVE -- HAVE YOU BEEN TRAINED AS TO THE

16      A.    I'VE BEEN TRAINED AS FAR AS THE INJURIES, YES.

21      Q.    THANK YOU VERY MUCH, DOCTOR.

22         **THE COURT:**  ANY REDIRECT?

23         **MR. TROCHA:**  NO, YOUR HONOR.  THANK YOU.

24         **THE COURT:**  ALL RIGHT.  DOCTOR, YOU ARE

25    EXCUSED.  THANK YOU VERY MUCH.

26         (THE WITNESS EXITS THE COURTROOM.)



1    BUT THE CLEAREST EXAMPLE WOULD BE WHERE LET'S SAY

2    MR. THOMAS IS IN THE CLOSET WITH THE STICK CONCEALING A

3    KNIFE.   THE OFFICERS DID SEE AND REPORTED IN THEIR

4    REPORTS THAT MR. THOMAS WAS IN THE CLOSET.   HE HAD THE

5    STICK.   AFTER HE LEFT THEY LOOKED AT THE STICK CLOSELY.

6    THE STICK CONCEALED A KNIFE.   THEY'RE REPORTING DIRECTLY

7    WHAT THEY OBSERVED IN THE POLICE -- OR THEY'RE REPORTING

8    IN THEIR POLICE REPORT.

9            THE OTHER THING IS THERE WAS ANOTHER

10   INCIDENT -- DIFFERENT OFFICERS, I BELIEVE -- WHERE THE

11   OFFICER HEARD MR. THOMAS ON THE TELEPHONE MAKE THE

12   THREATS.   SO IT'S NOT SOMEBODY REPORTING TO THEM.   THEY

13   THEMSELVES -- OR ONE OF THE OFFICERS, HIMSELF OR

14   HERSELF, HEARD THE THREATS BEING MADE BY MR. THOMAS TO

15   MELANIE CLARK.

16            **THE COURT:**   ALL RIGHT.

17    -- I UNDERSTAND YOUR POINT,

18                                          .   IF WE

19   HAVE THE OFFICERS, CERTAINLY THEY CAN TESTIFY,

21            **MR. ADAIR:**                        YOUR

22   HONOR,                                    IT IS

23   MATERIAL THAT IS EXTREMELY IMPORTANT TO MR. BURTON'S

24   DEFENSE.   WE'RE ASKING THAT THAT BE RECEIVED PURSUANT TO

25   HIS CONSTITUTIONAL RIGHTS TO PRESENT A DEFENSE.   WE

26   BELIEVE THAT'S SUPPORTED BY BOTH THE CALIFORNIA

27   CONSTITUTION AND THE U.S. CONSTITUTION --

(42)

3          AND OUR OBJECTION IS BASED OR -- OUR MOTION IS BASED

4     UPON THE FACT THAT THERE ARE SOME -- ████████████████████
████████████████████████████████████████████████████████████
█████████████████

7     THAT THERE WOULD ALSO HAVE BEEN BLOOD ON THE GRASS AND ON THE

8     ████████, AND THAT WAS NOT PRESERVED.  AND THAT APPARENTLY ONE

9     OF THE -- ████████████████████████████████████, HOSED

10    OFF THE AREA.  THEREFORE, ████████████████████████

11    ██████  AND THE DEFENSE HAD NO OPPORTUNITY TO GET THAT TYPE OF

12    EVIDENCE.

13         THE COURT:  ALL RIGHT.  LET ME HEAR FROM MS. HANNAH ON

14    THAT ISSUE.

15         MS. HANNAH:  IT'S THE PEOPLE'S POSITION, YOUR HONOR, THAT

16    ██████████████████████████████████████████████████████████

17    ███████████████████.  THE STREET WHERE THE DEFENDANT WAS ALLEGED

18    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

21    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

28    EVIDENCE.  I'M NOT SURE WHERE THIS -- ████████████████████

0369

**SCE238643  Burton, Eric**                                            **7-22-05**

9:50 am Karli Kenfield is excused. The people recall **JOHN BENNETT, ECPD,** who is reminded he remains under oath, and cross-examination resumes.



10:17 am John Bennett is excused.  The jurors are admonished and excused for the morning recess. Court is in recess.

10:33 am Court is again in session with counsel as previously noted, the defendant, the investigating officer. The defense renews their motion to dismiss the case based on destruction of evidence.  The motion is **DENIED**.

10:37 am The jurors are now present in the courtroom. The people call **DAN CLINE, ECPD,** who is sworn and examined.

The following people's exhibits are marked for identification:



- Mr. Thomas' gray and black sweat pants – bloodstains on back



```
 1    RECALLING AGENT BENNETT FROM YESTERDAY.
 2             (THE NEXT WITNESS ENTERS THE COURTROOM.)
 3         THE COURT:  GOOD MORNING, SIR.
 4             AGENT JOHN BENNETT,
 5    CALLED BY THE PEOPLE, HAVING BEEN PREVIOUSLY SWORN,
 6    RESUMED THE STAND AND TESTIFIED FURTHER AS FOLLOWS:
 7         THE WITNESS:  MORNING.
 8         THE COURT:  PLEASE REMEMBER YOU'RE STILL UNDER
 9    OATH FROM YESTERDAY.
10         THE WITNESS:  YES.
11         THE COURT:  AND I THINK WE'RE AT THE POINT OF
12    CROSS-EXAMINATION.
13         MR. ADAIR:  YES, YOUR HONOR.  THANK YOU.
14             CROSS-EXAMINATION
15    BY MR. ADAIR:
16      Q.  AGENT BENNETT, GOOD MORNING.
17      A.  GOOD MORNING.
18      Q.  IF I GATHER CORRECTLY, YOU'RE NOT A FORENSIC
19    EXPERT AS FAR AS, SAY, ███████████ -- WELL,
20    ████████████████████████████.  IS THAT CORRECT?
21      A.  THAT'S CORRECT.
      ████████████████████████████████████████████
      ████████████████████████████████████████████
      ████████████████████████████
25      Q.  OKAY.  AND LET'S SEE.  YESTERDAY YOU WERE
26    TALKING -- EXCUSE ME JUST A MOMENT.
27         THE COURT:  DO YOU WANT TO USE THE STAND?
28         MR. ADAIR:  PERHAPS THIS IS BEST, YOUR HONOR,
```



773

1    AGAIN THAT SOME OF THESE SHELL CASINGS THAT WE CAN SEE

2    ▓▓▓▓▓▓▓▓▓▓▓   THEY ARE SLIGHTLY DAMAGED AND SOMEWHAT

3    SMUSHED (SIC), FOR LACK OF A BETTER WORD.   ASIDE FROM

4    THE EIGHT YOU FOUND HERE, DID YOU FIND ANY OTHER SHELL

5    CASINGS, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6        A.   NO.

7        Q.   DID YOU FIND ANY OVER IN THE GUTTERS OF EITHER

8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9        A.   NO.

10        Q.   THESE ARE THE ONLY SHELL CASINGS THAT WERE

11   FOUND WITHIN THIS ENTIRE BLOCK, CORRECT?

12        A.   CORRECT.

13   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

46

900



11           **THE COURT:** ░░, I BELIEVE.

12          **MR. TROCHA:**

14    OUR OFFICE DIDN'T FILE ANYTHING.

15    TO BE SEEN INSIDE THIS COURTROOM.

16           **THE COURT:**   ALL RIGHT.

1051

1   THAT HE ACTED IN CONFORMITY WITH SUCH CHARACTER ON

2   MARCH 19TH, 2004."  I THINK THAT'S APPROPRIATE.  I WOULD

3   PUT THAT IN RIGHT AFTER THE CONVICTION INSTRUCTIONS.

4            WHAT I'M NOT SURE IS APPROPRIATE IS THE OTHER

5   ONE I CRAFTED RELATING TO "EVIDENCE" -- AGAIN,

6   MR. THOMAS' ACTS -- "TO THE EXTENT IT WAS SHOWN THAT

7   DEFENDANT WAS AWARE OF SUCH ACTS MAY BE CONSIDERED AS

8   RELEVANT TO HIS ACTUAL OR REASONABLE BELIEF." ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

12  ON THE DAY IN QUESTION, ███████████████████████

███████████████████████████████████

14            MR. ADAIR, WHAT'S YOUR THOUGHT?

15            **MR. ADAIR:**  I WOULD REQUEST THAT.  AS FAR

16  AS -- THERE WERE CERTAIN THINGS THAT WERE STATED TO HIM

17  THAT CAUSED HIM, ███████████████████, TO BE

18  FRIGHTENED.  AND WE JUST DON'T HAVE THE DETAILS OF WHAT

19  THOSE WERE IN FRONT OF THE JURY.

20            ONE OF THE THINGS I STILL HAVE TO DO -- ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

23  SOME EVIDENCE IN THERE.  ███████████████████████

24  IN THERE IS, ███████  A LIST OF CASES AGAINST MR. THOMAS

25  THAT MY CLIENT HAS RESERVED.  I WOULD BE INTRODUCING

26  THAT AT 1:30, I SUPPOSE, BUT WE'VE TALKED ABOUT GOING

27  INTO THE BACKPACK, BUT I JUST HAVEN'T HAD THE TIME TO DO

28  IT.



1   THE ORIGINALS THAT WERE TAKEN OUT OF MR. BURTON'S

2   ALLEGED BACKPACK.  THEY INDICATE -- ███████████████

3   ███ -- AT LEAST MOST OF THEM ARE RESTRAINING ORDERS, IN

4   FACT, ███████████████████████

5          WE WOULD BE INTRODUCING ALL OF THOSE INTO

6   EVIDENCE TO SHOW SOME KNOWLEDGE BY MR. BURTON OF THOMAS'

7   TENDENCIES TOWARDS VIOLENCE AND ABUSE.

8          **THE COURT:**  ALL RIGHT.  AND FOR THE RECORD,

███████████████████████████████████

███████████████████████████████████

11          MR. TROCHA, YOUR RESPONSE?

12          **MR. TROCHA:**  █████████████████████

███████████████████████████████████████

███████████████████████████████████████

15   ORDER IN CONJUNCTION WITH THE DOMESTIC VIOLENCE CASE OF

16   2000 -- THE INCIDENT FROM 2000.

███████████████████████████████████████

███████████████████████████████████████

19   THE EFFECT THOSE DOCUMENTS HAD, ████████, UPON HIS PSYCHE

███████████████████████████████████████

███████████████████████████████████████

22   WANTS TO BRING IN THESE DOCUMENTS -- ████████████████

23   ████████████████████████████ -- IN ORDER FOR THE

24   JURY TO ACCEPT THAT HE THOUGHT OF THESE SAME DOCUMENTS



27   AND HE SHOULD HAVE SEEN THESE DOCUMENTS PROBABLY AT THE

28   BEGINNING OF TRIAL AS OPPOSED TO RIGHT NOW.  THEY ARE

1110

1    DOCUMENTS. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5         AGAIN, THE DEFENDANT, SINCE HE'S NOW CLAIMING

6    HE KNEW OF THESE DOCUMENTS, SHOULD HAVE BEEN AVAILABLE

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    TIME, BUT APPARENTLY THE EFFECT, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮

12        **MR. ADAIR:**   YOUR HONOR, ▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   THEY'RE BEING

14   OFFERED TO SHOW THAT THIS IS INFORMATION THAT MR. BURTON

15   WAS AWARE OF. ▮▮▮▮▮▮▮▮▮▮▮▮▮

16   HAD THE DOCUMENTS APPARENTLY TAKEN FROM A COURT FILE --

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   AND I

19   THINK IT'S CERTAINLY RELEVANT EVIDENCE AS TO HIS STATE

20   OF MIND.

21        **THE COURT:**   ALL RIGHT.   WELL, I'VE LOOKED AT

22   THE DOCUMENTS. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   PHOTOCOPIES OF

28   INCIDENTS THAT OCCURRED IN 2000 AND 1997.   IT WOULD



1111

1   BE -- ~~━━━━━━━━━━━━━━━━━━━━~~

2   WERE IN THE BACKPACK. ~~━━━━━━━━━━━━━━━━~~

3   ~~━~~ EXTENT MR. BURTON WAS AWARE OF THEM. ~~━━━━~~

4   ~~━━━━━━━━━━━━━━━━━~~ IN THAT THEY'RE, YOU

5   KNOW, ~~━━━━━━━━━━━━━━━━━━━━~~

6   OCCURRED QUITE SOME TIME BEFORE.  WHEN MS. SANDERS WAS

    ~~━━━━━━━━━━━━━━━━━━━━━━━━━━━~~

8   ~~━━━━━━━━━━━━━━━━~~ IT WILL WOULD NOT BE

9   RECEIVED.                        *Defd right to make*
                                     *a defense*

10          YOU CAN HAVE IT MARKED AS DEFENSE'S NEXT IN

11  ORDER FOR THE RECORD, BUT NOT AS ADMISSIBLE EVIDENCE.

12          **MR. ADAIR:**  WELL, AMONG OTHER THINGS, IT

13  INDICATES THAT MR. BURTON WOULD KNOW MR. THOMAS WAS ON

14  PAROLE.  I THINK THAT'S RELEVANT INFORMATION INDICATING

15  THAT A PERSON MIGHT BELIEVE THAT MR. THOMAS WAS

16  DANGEROUS, THAT HE HAD BEEN TO PRISON, ~~━━━━━━━~~

17  ~~━━~~

18                  ~~━━━━━━━━━━━━━━━━━━~~

19  ~~━━━━━━━━━~~ BUT WHETHER MR. BURTON WAS AWARE OF

20  SOME OF THOSE THINGS OR THE ALLEGATIONS AND HAD A

21  REASONABLE FEAR OF MR. THOMAS.

22          **THE COURT:**  WELL, AGAIN, A PERSON COULD BE ON

    ~~━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━~~

24  BE VIOLENCE.  AND, ~~━━━━━━━━━━━~~, I THINK IT'S

25  ~~━━━━━━━━━━━━━━━━━~~ WHAT MR. BURTON

26  KNEW ABOUT THEM, ~~━━━━━━━━━━━━━━~~

27          SO IT WILL BE MARKED AS DEFENSE F FOR THE

28  RECORD, BUT NOT RECEIVED.



1112

```
 1            (DEFENSE EXHIBIT F, ████████████

 2            RESTRAINING ORDER, WAS MARKED FOR

 3            IDENTIFICATION.)

 4        THE COURT:  ALL RIGHT.  THEN I THINK WE'RE

 5   READY TO -- AS SOON AS THE JURY HAS THEIR QUICK BREAK,

 6   WE CAN BRING THEM IN TO DO INSTRUCTIONS.

 7        MR. ADAIR:  I'LL EXCUSE MY INVESTIGATOR THEN,

 8   YOUR HONOR, TO TAKE THE WITNESS HOME.

 9        THE COURT:  ALL RIGHT.

10        MR. ADAIR:  AND MY CLIENT NEEDS TO USE THE

11   RESTROOM.

12        THE COURT:  OKAY.  WE SHOULD DO THAT THEN

13   BEFORE WE BRING THE JURY IN.

14        MR. ADAIR:  I'M SORRY.  I THOUGHT WE NEEDED TO

15   GO THROUGH THE OTHER WHILE HE WAS HERE.

16            (RECESS FROM 2:40 P.M. TO 2:50 P.M.)

17            (AT 2:50 P.M. THE JURY ENTERED THE COURTROOM

18            AND THE FOLLOWING PROCEEDINGS WERE HAD:)

19        THE COURT:  OUR JURY MEMBERS HAVE RETURNED.

20   COUNSEL AND DEFENDANT ARE PRESENT.

21            LADIES AND GENTLEMEN, YOU'VE HEARD ALL THE

22   EVIDENCE NOW, AND IT'S MY DUTY TO INSTRUCT YOU ON THE

23   LAW THAT APPLIES TO THIS CASE.  THE LAW REQUIRES THAT I

24   READ THESE INSTRUCTIONS TO YOU.  YOU WILL HAVE THESE

25   INSTRUCTIONS IN WRITTEN FORM IN THE JURY ROOM WITH A FEW

26   EXTRA COPIES SO YOU CAN REFER TO THOSE DURING YOUR

27   DELIBERATIONS.  YOU DO NOT NEED TO TAKE NOTES AT THIS

28   TIME.
```



0380

**SCE238643 Burton, Eric**                                                      **7-27-05**

**Defense Exhibit F** – application for restraining order Ms. Sanders obtained against Mr. Thomas, marked for identification.

2:35 pm Court is in recess.

2:50 pm Court is again in session with all counsel as previously noted, the defendant and all jurors are present. The Court instructs the jury on the laws applicable to this case.

3:44 pm The jurors are admonished and excused for the afternoon recess. Court is in recess.

3:59 pm Court is again in session with all counsel present as previously noted, the defendant and all jurors are present.  The People present closing arguments.

4:30 pm The jurors are admonished and excused for the evening and ordered to return on **July 28, 2005 at 9:00 am in department 10.**

Counsel are ordered to return on **July 28, 2005 at 8:45 in department 10.**

The defendant is remanded to the custody of the Sheriff with bail set in the amount of **$500,000.00** and shall be produced on **July 28, 2005 at 9:00 am in department 10**. Court is adjourned.

-nl-

**TRIAL MINUTES**                                                                  4

527

```
1           MR. ADAIR:   COULD I HAVE A MOMENT, YOUR HONOR?

2           THE COURT:   YES.

3           MR. ADAIR:   COULD WE APPROACH SIDEBAR, YOUR

4    HONOR?

5           THE COURT:   YES.   WITH THE REPORTER?

6           MR. ADAIR:   YES.

7           THE COURT:   ALL RIGHT.

8           (THE COURT, BOTH COUNSEL, AND THE COURT

9            REPORTER EXIT THE COURTROOM.)

10           (THE FOLLOWING PROCEEDINGS WERE HEARD AT

11            SIDEBAR:)

12           MR. ADAIR:   I HAVE THE RECORD CONCERNING THAT

13    INCIDENT.

14           THE COURT:   WHAT'S THE TIME FRAME WE'RE

15    TALKING ABOUT?

16           MR. ADAIR:   WE'RE TALKING ABOUT -- LET ME

17    SEE -- 2001, 2002.

18           THE COURT:   AND IS THIS ANY PART OF WHAT HE

19    WAS CONVICTED FOR IN '02?

20           MR. ADAIR:   HE WAS CONVICTED IN '96.

21           THE COURT:   NO.   WITH MS. SANDERS DIDN'T HE

22    HAVE A CONVICTION --

23           MR. TROCHA:   IT WAS AN AMERICAN LEGION

24    INCIDENT.

25           MR. ADAIR:   WAIT.   WHAT I HAVE HERE --

26           THE COURT:   SO IS THIS SOMETHING BEFORE OR

27    AFTER THE AMERICAN LEGION INCIDENT?

28           MR. ADAIR:   BEFORE.
```



1069

1   ANYTHING OF THAT NATURE IN.  IT'S LIKE THE TRO.

2           THE COURT:  WELL, I'M NOT EVEN SURE HOW WE

3   WOULD KNOW THAT IT'S HIS BACKPACK.

4           THE OFFICERS FOUND A BACKPACK.  WE DON'T

5   HAVE TESTIMONY AS TO WHOSE IT IS OR ANYTHING.  SO I

6   THINK IT WOULD BE DIFFICULT.

10          THE COURT:  OKAY.  WELL, IF IT FALLS ALONG THE

11  LINES OF THE DECLARATIONS FILED WITH THE TRO, IT WAS



15          MR. TROCHA:  I MEAN, ESSENTIALLY, IT'S GOING

16  TO PROVE A STATEMENT THAT CAN'T BE CROSS-EXAMINED,

19          MR. ADAIR:  FOR THE PROOF OF HIS --



25  PROBLEMS.

26          MR. ADAIR:  I WOULD LIKE TO INTRODUCE A COPY

27  OF THE RESTRAINING ORDER.

28          THE COURT:  THE ORDER?



1070

1       **MR. ADAIR:**  THE ORDER OR EVEN IF YOU WANT TO

2  TAKE JUDICIAL NOTICE THAT THERE WAS A RESTRAINING ORDER

3  ISSUED IN THIS CASE ON A CERTAIN DATE.

4       **THE COURT:**  IT'S NOT REALLY IN DISPUTE.

5       DO YOU HAVE ANY OBJECTION TO THAT?

6       **MR. TROCHA:**  WELL, WE'RE NOT TRYING TO PROVE

7  THAT MR. THOMAS VIOLATED A RESTRAINING ORDER.

8  ~~RELEVANCE THAT THE ORDER WAS ACTUALLY~~

9  THERE.  HE HAD KNOWLEDGE THERE WAS AN ORDER;

~~. . .~~

11  ~~. . .~~

12       **THE COURT:**  I CAN TAKE JUDICIAL NOTICE THAT

13  THAT WAS ISSUED ON THAT DATE.  I'LL DO THAT.

14       **MR. ADAIR:**  THANK YOU, YOUR HONOR.

15       **THE COURT:**  OKAY.  THANK YOU.  BYE.

16       (AT 12:00 P.M. THE NOON RECESS WAS TAKEN UNTIL

17       1:30 P.M. OF THE SAME DAY.)

18

19

20

21

22

23

24

25

26

27

28



```
 1        EL CAJON, CALIFORNIA; WEDNESDAY, 7/27/05; 1:34 P.M.

 2                              - - -

 3              (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

 4        COURT OUT OF THE PRESENCE OF THE JURY:)

 5              THE COURT:  LET'S GO ON THE RECORD.  COUNSEL

 6        AND DEFENDANT ARE PRESENT.  THE JURY IS NOT.

 7    ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

10              MR. TROCHA:  RIGHT.

11              THE COURT:  ALL RIGHT.  SO WE'LL DO THAT AFTER

12        THEY REST.

13              ON THE JUDICIAL NOTICE, I REVIEWED THE FILE.

14        WOULD IT BE SIMPLY ADEQUATE TO NOTE UNDER THE CASE

15        NUMBER THAT ON SUCH AND SUCH A DATE AN ORDER FOR

16        INJUNCTION PROHIBITING HARASSMENT WAS ISSUED BY THE

17        COURT AGAINST MR. THOMAS PROTECTING MR. BURTON?

18              MR. ADAIR:  CORRECT.

19              THE COURT:  THAT'S ALL YOU NEED?

20              MR. ADAIR:  THAT WOULD BE FINE, YOUR HONOR.

21              THE COURT:  ALL RIGHT.  I'LL DO THAT.  ████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

      ████████████████████████████████████████████████████
```

57

1    ~~REDACTED~~

2    ~~REDACTED~~

3    ~~REDACTED~~ BUT I THINK THAT MR. BURTON'S ENTITLED TO, IN

4    PRESENTING HIS DEFENSE, ~~REDACTED~~

5    SELF-DEFENSE THEORY.   THAT IT IS RELEVANT THAT HE TOLD

6    HIS MOTHER AT LEAST A MONTH BEFOREHAND THAT HE HAD SOME

7    FEAR BASED ON THREATS. ~~REDACTED~~

8    ~~REDACTED~~

9    ADMISSIBLE.

10             SO IS THAT CLEAR ON THAT ISSUE?

11        **MR. ADAIR:**  YES, YOUR HONOR.

12        **MR. TROCHA:**  YOUR HONOR, THE ISSUE I HAVE

13   THOUGH IS THAT THE DEFENSE IS THEN GOING TO TURN AND

14   ARGUE THESE THREATS HAPPENED BECAUSE THE DEFENDANT TOLD

15   HIS MOM ABOUT IT.

16        **THE COURT:**  WELL, NO, THEY'RE NOT, BECAUSE I'M

17   GOING TO INSTRUCT THE JURY THAT IT'S NOT BEING ADMITTED

18   FOR ITS TRUTH.   AND I'LL INSTRUCT THEM ON THAT AT THE

19   TIME THE TESTIMONY IS PRESENTED AND I'LL INSTRUCT THEM

20   AGAIN AT THE CONCLUDING INSTRUCTION.   AND IF THAT

21   ARGUMENT'S MADE DURING ARGUMENT, YOU CAN OBJECT AND I'LL

22   SUSTAIN IT.

23        **MR. TROCHA:**  ~~REDACTED~~ -- I MEAN,

24   ~~REDACTED~~

25   ~~REDACTED~~.   AND IT'S ESSENTIALLY THE

26   DEFENDANT'S TESTIMONY THROUGH HIS MOTHER, WHICH THERE'S

27   NO WAY I CAN EFFECTIVELY CROSS-EXAMINE HER ON THAT

28   BECAUSE -- "WELL, THAT'S WHAT ERIC TOLD ME," ~~REDACTED~~



1  

2

3

4

5

6

7        ALL RIGHT.  ANYTHING ELSE?

8        MR. ADAIR:  YOUR HONOR, I --

9

10       .  BUT THERE SUPPOSEDLY WAS A CAMERA THAT WAS BEING USED

11  BY EITHER THE -- EITHER MR. THOMAS IN THIS CASE OR MS. SANDERS,

12  WHO IS ONE OF THE WITNESSES,

13

14                                              , WE'RE ASKING THAT

15  WE'D BE GIVEN A CHANCE TO EXAMINE IT.

16

17

18

19       THE COURT:

20  IN HIS PRELIMINARY HEARING?

21       MR. ADAIR:  I BELIEVE THAT'S CORRECT, YOUR HONOR.

22       THE COURT:  WHAT'S YOUR RESPONSE ON THAT?

23       MS. HANNAH:  YOUR HONOR, I'VE HAD AN OPPORTUNITY TO TALK

24  TO MR. THOMAS,

25                    .  HE SAYS THAT HE DID USE A CAMERA,

26                          .  HE SAID HE JUST USED IT TO KIND OF SCARE

27

28       THE COURT:  I THINK HE TESTIFIED THAT IT WAS DIGITAL.

528

```
1          THE COURT:  OKAY.

2          MR. ADAIR:  AND IT INDICATES THERE ARE PRIOR

3    DOMESTIC VIOLENCE REPORTS ON FILE WITH THE EL CAJON

4    POLICE DEPARTMENT.  THERE IS ONE ON MARCH 4TH, 2001, AND

5    ONE ON JANUARY 20TH OF 2002.

6          THE COURT:  BUT WE DON'T KNOW WHAT THE REPORTS

7    SAY OR WHAT THE CONTENT WAS?

8          MR. TROCHA:  NO.

9          THE COURT:  ALL RIGHT.  WHAT'S YOUR RESPONSE?

10         MR. TROCHA:  MY RESPONSE, NUMBER ONE, WE

11

12

13

14    BEGIN WITH AND IT'S MAKING MR. THOMAS BE TERRIBLE --

15

16

17

18         THE COURT:

19

20    THERE'S REFERENCE TO A DV INCIDENT.

21    OF THINGS, PHYSICAL, VERBAL,

22         HE SAID THEY ARGUED.

23    EXACTLY WHAT THE INCIDENT WAS,

24

25

26    352.

27

28
```



1      **EL CAJON, CALIFORNIA; MONDAY, 7/25/05; 1:35 P.M.**

2                           - - -

3                (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

4                COURT OUT OF THE PRESENCE OF THE JURY:)

5                **THE COURT:**  WE'RE ON THE RECORD.  COUNSEL AND

6      DEFENDANT ARE PRESENT.  JURY IS NOT PRESENT.

7                I'VE REVIEWED THE LAW ON A FEW OF THE ISSUES

8      WE DISCUSSED BEFORE OUR BREAK.

9                DID EITHER COUNSEL WISH TO MAKE ANY ADDITIONAL

10     COMMENTS?  STARTING FIRST WITH THE ISSUE OF 1250 OF THE

11     EVIDENCE CODE.  ANY ADDITIONAL ARGUMENTS?

12               **MR. ADAIR:**  IF I COULD HAVE A MOMENT.

13               IF YOU'RE TALKING ABOUT SPECIFICALLY THE

14     BUSINESS RECORDS EXCEPTION OR --

15               **THE COURT:**  OR THAT AS WELL.  ANY OF THE

16     ARGUMENTS THAT YOU MADE BEFOREHAND.

17               **MR. ADAIR:**  I DON'T -- I WAS LOOKING AT ALR

20     AGAINST THE ADMISSION OF POLICE REPORTS.  A LOT OF IT

21     HAS TO DO WITH THE RELIABILITY OF THE POLICE REPORTS.

22               BY THE WAY, THE FIRST THING PERHAPS TO KEEP IN

23     MIND IS THAT GENERALLY POLICE REPORTS DON'T COME IN

24     AGAINST THE DEFENDANT BECAUSE IT'S A DENIAL OF THE 6TH

25     AMENDMENT RIGHT TO CROSS-EXAMINE AND CONFRONT WITNESSES.

26     ANOTHER REASON WHY POLICE REPORTS DON'T COME IN IS

27     BECAUSE THEY MAY NOT BE TRUSTWORTHY.  THEY MAY CONTAIN

28     THE OBSERVATIONS AND OPINIONS OF PEOPLE OTHER THAN THE



ALLEGED WITNESS LIST SENT TO PETITIONER BY MR. ADAIR
APPROX 9/07

BONNIE DUMANIS
District Attorney
KRISTIAN P. TROCHA
Deputy District Attorney
State Bar Number 216985
East County Branch
250 E. Main Street, Suite 500
El Cajon, CA 92020
(619) 441-4544

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, | CT. No. SCE238643 |
| | DA No. MAJ339 |
| v. | **PEOPLE'S WITNESS LIST** |
| ERIC WILTON BURTON, Defendant. | Date: July 17, 2005 |
| | Time: 8:45 a.m. |
| | Dept: 11 |

Comes now the plaintiff, the People of the State of California, by and through their attorneys, BONNIE DUMANIS, District Attorney, KRISTIAN P. TROCHA, Deputy District Attorney, and respectfully submits the following PEOPLE'S WITNESS LIST.

I.

**WITNESS LIST**

The People submit the following list of potential witnesses:

1)   Officer R. Gonsalves, El Cajon Police Department

2)   Officer D. Holmes, El Cajon Police Department

3)   Officer D. Cline, El Cajon Police Department

4)   Officer Y. Mendoza, El Cajon Police Department

5)   Sergeant J. Redman, El Cajon Police Department

6)   Sergeant Coit, El Cajon Police Department

7)   Agent S. Kirk, El Cajon Police Department

8)  Agent J. Bennett, El Cajon Police Department

9)  Kendall Hildenbrand, El Cajon Police Department

10)  Steven Dowell, El Cajon Police Department Crime Laboratory

11)  Dr. Herman Hammerstead, MD, Sharp Memorial Hospital

12)  Dr. Karli J. Kenfield, MD, Sharp Memorial Hospital

13)  Al Culbertson, District Attorney Investigator

14)  Salinanthan Thomas, ALLEGED victim

15)  Dreyona Burton, ALLEGED victim (minor)

16)  Angela Sanders, witness

17)  Diane McKenney, witness

18)  Mary Jo Bettcher, witness

19)  Clyde Owens, Jr., witness

20)  Shane Colbert, witness (minor)

21)  Teresa Colbert, witness

Dated:  July 17, 2005

Respectfully Submitted,

BONNIE DUMANIS
District Attorney

By: _____
KRISTIAN P. TROCHA
Deputy District Attorney

Attorneys for Plaintiff

1    YOU ARE TO PAY A RESTITUTION FINE PURSUANT TO

2  PENAL CODE 1202.4(B) IN THE AMOUNT OF $10,000 TO BE PAID

3  FORTHWITH OR AS PROVIDED IN PENAL CODE 285.5.  AND PAY

4  AN ADDITIONAL RESTITUTION FINE PURSUANT TO PENAL CODE

5  1202.45 OF $10,000 TO BE STAYED UNLESS PAROLE IS

6  REVOKED.

7    YOU ARE TO PAY RESTITUTION PURSUANT TO PENAL

8  CODE 1202.4(F) TO SALINATHAN THOMAS AND KIAH, K-I-A-H,

9  MINCEY, SHOULD ADDITIONAL LOSSES BE REPORTED.

10   AND TO PAY $17,838.57 TO THE VICTIM'S

11  COMPENSATION PROGRAM, CLAIM NO. 821546, SUBJECT TO

12  MODIFICATION BY THE COURT TO BE PAID FORTHWITH OR AS

13  PROVIDED IN PENAL CODE 2085.5.

14   THE COURT WILL NOT ORDER RESTITUTION AS TO

15  DREONA BURTON, AS THERE WAS AN ACQUITTAL ON COUNT 4.

16   YOU HAVE THE RIGHT TO APPEAL THIS JUDGMENT.

17   YOU MUST FILE A NOTICE OF APPEAL WITHIN 60

18  DAYS OF SENTENCING.

19   YOU HAVE THE RIGHT TO APPOINTED COUNSEL ON

20  APPEALS.

21   YOU ARE REMANDED TO CUSTODY OF THE SHERIFFS TO

22  BE DELIVERED TO THE DEPARTMENT OF CORRECTIONS UPON

23  PREPARATION OF THE ABSTRACT.

24   IS THERE ANYTHING FURTHER?

25   **MR. TROCHA:**  NO, YOUR HONOR.

26   **THE COURT:**  THANK YOU.  WE'LL BE IN A BRIEF

27  RECESS.

28   (CONCLUSION OF PROCEEDINGS.)



897

1    REQUIRE THAT THERE BE ANYBODY -- I DON'T KNOW IF THE

2    OFFICER'S AVAILABLE, BUT THE STATUTE ITSELF COVERS NOT

3    JUST, I GUESS, DOMESTIC VIOLENCE REPORTS, BUT IT

4    INCLUDES LIKE DIARY ENTRIES.  APPARENTLY THE STATUTE IS

5    PASSED BECAUSE OF THE OJ SIMPSON CASE WHERE THE DIARY

6    ENTRIES OF THAT CASE WERE KEPT OUT OF THE CRIMINAL CASE.

7    SO APPARENTLY IT'S TO COVER NOT JUST POLICE REPORTS BUT

8    ANY KIND OF WRITINGS THAT MIGHT INDICATE THE VIOLENCE

9    INFLICTED UPON A VICTIM.

10              **THE COURT:**  ALL RIGHT.

11              **MR. ADAIR:**  BUT WE'LL TRY TO FIND THE OFFICER.

12              **THE COURT:**  OKAY.  MR. TROCHA, ANYTHING

13    ADDITIONAL THAT YOU WANTED TO SAY AS TO THE ISSUES

14    RELATING TO THE POLICE REPORTS AND ALSO DEFENDANT'S

15    ~~STATEMENTS TO THE MOTHER?~~

16              **MR. TROCHA:**  YES, YOUR HONOR.

17              FIRST, WITH THE POLICE REPORTS, MY ORIGINAL

18    COMMENTS CAN STAND ON THEM IN THAT REGARD.  BUT TO ADD

19    TO IT THE MAIN PROBLEM WE ALSO HAVE WITH THESE POLICE

20    REPORTS GOES TO THE TRUSTWORTHINESS PRONG SHOULD THE

21    COURT EVEN BEGIN TO SEE THEM AS BUSINESS RECORDS, WHICH

22    THEY AREN'T.  THEY AREN'T RECORDS FROM A BUSINESS.  YES,

23    THE POLICE ARE MANDATED TO TAKE REPORTS, BUT THEY'RE NOT

24    BUSINESS RECORDS OR OFFICIAL RECORDS IN THE FACT THAT

25    THEY'RE MADE IN PREPARATION OF TRIAL.  THEY'RE ALSO

26    STOCKED FULL OF POLICE OFFICERS' OPINIONS.  THOSE

27    OPINIONS ARE BASED OFF OF THIRD PARTY HEARSAY.

28              IN THIS CASE WE CAN'T TEST THE HEARSAY



1   DECLARANT AT ALL BECAUSE THEY WON'T BE IN COURT.   IN

2   ESSENCE, THE POLICE OFFICER SHOULD BE PRESENT IN COURT

3   FOR THE PEOPLE TO CROSS-EXAMINE IN THAT REGARD.

4   ~~I HAVE A PIECE OF PAPER IN FRONT OF ME WITH A~~

5   ~~BUNCH OF OPINIONS FROM 1992, WHICH, IN ADDITION, WERE~~

6   ~~REVIEWED BY A DISTRICT ATTORNEY FROM MY OFFICE AT THAT~~

7   ~~TIME AND FOUND NOT TO BE CREDIBLE ENOUGH TO ISSUE A~~

8   ~~CRIMINAL OFFENSE.~~ ~~NOW WE'RE THE NAME OF POLICE THEM~~

9   ~~IN ANY ONE THEM TO SHOW THAT THESE THINGS ACTUALLY DID~~

10  ~~HAPPEN WHEN MR. BURTON WHO DENIES THEM~~, NEVER FACED

11  CHARGES UPON THEM, AND FROM THE BEST I CAN TELL, WAS

12  NEVER EVEN ARRESTED.  I THINK THAT'S COMPLETELY

13  UNRELIABLE HEARSAY IN THIS CASE.            *are this one?*

14        THIS IS NOT A BUSINESS RECORD EXCEPTION.  IT'S

15  NOT EVEN CLOSE.  IT WOULD BE AS IF SOMEONE FROM MY

16  OFFICE WROTE THEIR OPINIONS AS TO MR. BURTON -- OR, IN

17  ESSENCE, JUST PULL UP A BUNCH OF POLICE REPORTS IN THIS

18  CASE WITHOUT PRESENTING ANY WITNESSES.  MR. BURTON

19  WOULDN'T HAVE ANY CHANCE TO CROSS-EXAMINE THOSE

20  WITNESSES.  BUT BECAUSE WE THINK THEY'RE RELIABLE, WE'RE

21  GOING TO ADMIT THEM INTO EVIDENCE.  ADDITIONALLY, THE

22  FACT THAT THEY'RE USED FOR IMPEACHMENT PURPOSES FOR

23  ~~THE ENTIRELY CHOICE~~ -- THE FACTS OF THE

24  STATEMENTS COMING IN HAVE ALREADY COME IN.  THE PAPERS

25  IN WHICH THEY'RE PRINTED ON THEMSELVES DO NOT COME INTO

26  EVIDENCE.  THEY NEVER HAVE.  THE PEOPLE URGES THE COURT

27  TO STAY WITH THAT.  THEY SHOULD NOT COME INTO EVIDENCE

28  BECAUSE THEY ARE NOT EVIDENCE.  THEY ARE INADMISSIBLE

```
 1   HEARSAY.

 2            REFERRING TO 1370, THE CODE SECTION MR. ADAIR

 3   HAS BROUGHT UP, THAT CODE SECTION HAS BEEN JUST TORN

 4   APART BY CRAWFORD.  WE'RE NOT ALLOWED TO USE THAT --

 5            THE COURT:  I KNOW.  BUT WE DON'T HAVE A

 6   CRAWFORD ISSUE HERE.

 7            MR. TROCHA:  WE DO IN THE FACT THAT CRAWFORD

 8   ████████████████████████.  IT APPLIES TO ALL HEARSAY

 9   STATEMENTS.  THE DECLARANT HAS TO BE AVAILABLE FOR

10   CROSS-EXAMINATION.  IT'S NOT JUST FOR THE DEFENDANT TO

11   CROSS-EXAMINE, BUT FOR THE PEOPLE AS WELL.  WHAT'S GOOD

12   FOR THE GOOSE IS GOOD FOR THE GANDER.

13            THE COURT:  WELL, THAT RAISES A GOOD POINT.

14            UNDER WHAT CONSTITUTIONAL AMENDMENT DOES

15   CRAWFORD ARISE OUT OF, THE 5TH?

16            MR. TROCHA:  IT COMES OUT OF THE 5TH AND 6TH.

17   IT'S THE RIGHT TO CROSS-EXAMINE -- CONFRONT AND

18   CROSS-EXAMINE WITNESSES.

19            THE COURT:  BUT I THINK THAT'S THE DEFENDANT'S

20   RIGHT.

21            MR. TROCHA:  THE WAY WE READ CRAWFORD IS IF

22   THE PEOPLE CAN'T GET IT IN, THE DEFENDANT CAN'T GET IT

23   IN EITHER.  THERE'S NO HEARSAY EXCEPTION SOLELY FOR

24   DEFENDANTS.
```



1    ~~XXXXXXXXXXXX~~.  ~~XXXXX~~, IN FACT, ~~XXXXX XXXXXX~~

2    ~~XXXXXXX~~.  SOME OF THESE FORMED THE BASIS FOR THE

3    PROSECUTION CHARGE OF STALKING AGAINST MR. THOMAS IN

4    WHICH HE WENT TO PRISON.

5    ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

6    ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

7    ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

8    ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

9    ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

10   ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

11   ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

12   ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

13   ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

14   ~~XXXXXXXXX~~

15              **THE COURT:**  ALL RIGHT.  THANK YOU.

16              OKAY.  GOING BACK TO THE POLICE REPORTS AS

17   BUSINESS RECORDS OR OFFICIAL RECORDS, I'M NOT PERSUADED

18   THAT THEY FALL WITHIN EITHER OF THOSE CATEGORIES.  THE

19   PROBLEM IS THE TRUSTWORTHINESS STANDARD.  I THINK YOU

20   HAVE TO TAKE A POLICE REPORT AS A WHOLE.  AND YOU HAVE

21   OFFICERS INVESTIGATING THEY'RE GETTING INFORMATION FROM

22   VARIOUS SOURCES.  THEY'RE RECORDING WHAT THEY SAW, WHAT

23   THEY HEARD, WHAT THEY'RE TOLD, WHAT THEY'RE TOLD ANOTHER

24   PERSON SAID.  IT HAS A WHOLE COMPILATION OF LAYERS OF

25   INFORMATION.  AND I DON'T THINK WHEN YOU'RE LOOKING AT

26   THE TRUSTWORTHINESS STANDARD FOR THE RECORD YOU CAN PICK

27   AND CHOOSE AND SAY, "WELL, CERTAIN PARTS OF IT MIGHT BE

28   TRUSTWORTHY AND CERTAIN PARTS MIGHT NOT," AND THEN SAY,



902

1    "WELL, PART OF IT'S A BUSINESS RECORD AND PART OF IT'S

2    NOT."  I THINK THAT TEST GOES TO THE WHOLE RECORD.

3    EITHER IT QUALIFIES AS A BUSINESS RECORD OR IT DOESN'T.

4    AND FOR THAT REASON I JUST DON'T SEE THIS AS FALLING

5    INTO EITHER CATEGORY.  THE REPORTS ARE PREPARED FOR

6    PURPOSES OF CRIME INVESTIGATION, FOR DOCUMENTATION, FOR

7    POSSIBLE PROSECUTION.  THEY'RE PREPARED WITH A MINDSET

8    FROM A PROSECUTION AGENCY, WHICH I THINK IS DIFFERENT

9    THAN A GENERAL BUSINESS RECORD KEPT BY A TELEPHONE

10   COMPANY OR A BANK OR SOME OTHER INSTITUTION THAT NEEDS

11   TO KEEP ACCURATE RECORDS JUST FOR PURPOSES OF KEEPING

12   RECORDS, NOT FOR BUILDING A CASE.  SO I DON'T SEE THAT

13   THEY QUALIFY.      THE COURT:

14   ~~WITH REGARD TO THE ISSUE ON MS. SOTELO,~~

15   ~~PARTICULARLY SINCE THERE'S A QUESTION AS TO WHETHER OR NOT~~

16   ~~SHE MIGHT BE AVAILABLE TO TESTIFY AS TO WHAT SHE SAID,~~

17   ~~I'M GOING TO RESERVE ON THAT ONE UNTIL I'VE JUST RAISED~~

18   ~~THE ISSUE THAT I LOOK AT THE DATE.  ON THE 250, IT LOOKS~~

19   ~~LIKE IT'S INCLUDABLE.~~  I'M INTRIGUED BY THE CONCEPT THAT

20   CRAWFORD MIGHT APPLY TO THE PROSECUTION AS WELL. ~~AND I~~

21   ~~AGREE AT THIS POINT.  BUT IT WOULD NEED AGAIN TO BE AN OFFICER~~

22   ~~AVAILABLE WHO COULD SAY WHAT SHE TOLD THE OFFICER, AND~~

23   ~~I DON'T EVEN KNOW THAT WE HAVE THAT AT THIS POINT.  SO~~

24   ~~IF THIS OFFICER SHOWS UP AND IS PREPARED TO TESTIFY,~~

25   ~~THEY'RE FREE TO RULE ON THAT, BUT OTHERWISE IT CAN'T BE~~

26   ~~CONSIDERED.  AT A MINIMUM, THE OFFICER WOULD PRESENT HIS~~

27   ~~OR HER OBSERVATIONS AS TO WHAT THEY SAW.  AND ANY OF THE~~

28   ~~OFFICERS COULD PRESENT ANY EXCITED UTTERANCE IF SUCH~~



903



1   EXISTS.

9        **MR. ADAIR:**  THANK YOU.

10       **THE COURT:**

12    AGAIN, THAT WOULD BE A DOUBLE LAYER OF HEARSAY.

13   AND SINCE THE POLICE REPORTS DON'T QUALIFY AS A BUSINESS

14   RECORD OR OFFICIAL RECORD,

19   PARTICULARLY AT THE CRAWFORD ISSUE.

20        OKAY.  GOING BACK THEN TO THE OTHER POINTS

     I THINK, IS EVIDENCE CODE 1250.

28   SEVERAL CASES THAT DID NOT ALLOW A DEFENDANT'S STATEMENT



1    REASONS BOTH STATED IN THAT.

2           **THE COURT:**   THE OBJECTION IS NOTED.

3           **MR. ADAIR:**   THANK YOU, YOUR HONOR.

4



1    TO COOPERATE AND DECIDED HE DID NOT WANT THAT TO BE

2    DONE.

3              I ALSO RECALL THAT BEFORE OUR LAST SENTENCING

4    HEARING, MR. ADAIR ASKED FOR A CONTINUANCE BECAUSE HE

5    HAD INITIALLY ATTEMPTED TO HAVE A PSYCHOLOGICAL

6    EVALUATION DONE BEFORE THE SENTENCING HEARING, AND

7    MR. BURTON HAD AGAIN REFUSED.

14   DATE.  SO THE MOTION IS DENIED.

15             WITH REGARD THEN TO SENTENCING, LET ME STATE

16   MY TENTATIVE SENTENCE AND THEN I WILL HEAR ANY COMMENTS

17   FROM COUNSEL.

18             THE TENTATIVE SENTENCE BASED UPON THE FINDINGS

19   OF THE JURY IS TO DENY PROBATION.

20             SENTENCE ON COUNT 1 IS LIFE PLUS 25 YEARS TO

21   LIFE; SENTENCE ON COUNT 2 OF 12 YEARS AND COUNT 3 OF 19

22   YEARS WILL BE STAYED PURSUANT TO PENAL CODE 654.

23             ARE THERE ANY FURTHER COMMENTS FROM THE

24   PROBATION DEPARTMENT AND ANY UPDATE ON CREDITS?

25             **MS. PARK:**  WE HAVE AN UPDATE ON CREDITS, YOUR

26   HONOR.  582, PLUS 87 FOR 2933.1 CREDITS; FOR A TOTAL OF

27   669.

28             **THE COURT:**  87 4019?

(72)

1250

1    **MS. PARK:**  2933.1.

2    **THE COURT:**  WHAT WAS THE TOTAL?

3    **MS. PARK:**  669.

4    **THE COURT:**  ALL RIGHT.  AND I DON'T THINK --

5  DID YOU STATE YOUR NAME FOR THE RECORD.

6    **MS. PARK:**  NO.  IT'S TONI PARK.

7    **THE COURT:**  THANK YOU.

8    ANY FURTHER COMMENTS FROM THE DISTRICT

9  ATTORNEY?

10    **MR. TROCHA:**  NO, YOUR HONOR.

11    **THE COURT:**  IS THERE ANY VICTIM OR FAMILY

12  MEMBERS WHO WISHES TO GIVE A STATEMENT?

13    **MR. TROCHA:**  MR. THOMAS STATED HE WANTED TO BE

14  PRESENT, BUT HE IS NOT PRESENT.

15    **THE COURT:**  ALL RIGHT.  AND MR. ADAIR?

16    **MR. ADAIR:**  YES, YOUR HONOR.

18    FOR THE RECORD, I'D LIKE TO OBJECT TO THE

19  STATUTES THAT APPARENTLY MAKE THE SENTENCE MANDATORY.

20  AND THAT'S ON PAGE 7 OF THE PROBATION REPORT UNDER

21  PROBATION ELIGIBILITY, WHERE IT STATES THE DEFENDANT IS

22  ABSOLUTELY INELIGIBLE FOR A GRANT OF PROBATION PURSUANT

23  TO PENAL CODE SECTIONS 1203(B)(2), 1203(E)(3), AND

24  12022.53.

25    FOR THE RECORD, I'M OBJECTING BASED UPON THE

26  MANDATORY NATURE OF THOSE, AND WOULD ASK YOUR HONOR TO

27  USE YOUR DISCRETION IN NOT -- IN CONSIDERING A GRANT OF

28  PROBATION.  THE OBJECTION IS BASED UPON CONSTITUTION AL

1252



16          **THE COURT:**    MR. BURTON, THE COURT FINDS AS

17    FOLLOWS:

18              FIRST OF ALL, WITH REGARD TO PROBATION

19    ELIGIBILITY, YOUR COUNSEL HAS RAISED AN OBJECTION TO THE

20    STATUTORY INELIGIBILITY.    THE COURT OVERRULES THAT

21    OBJECTION AND FINDS THAT THE LAW IS CONSTITUTIONAL.

22    COURT IS BOUND BY THE LAW.    *The Court last discussed to leave for*

23              HOWEVER, EVEN IF THE COURT WERE NOT AND IF THE

24    COURT HAD DISCRETION, THE COURT WOULD NOT BE GRANTING

25    PROBATION IN THIS CASE DUE TO THE SEVERE NATURE OF THE

26    CHARGES.    AND I DO NOT FIND THERE ARE ANY GROUNDS THAT

27    WOULD CONVINCE THE COURT THAT YOU WOULD BE ELIGIBLE OR

28    AN APPROPRIATE CANDIDATE FOR PROBATION.



1254

1    THE COUNT 2 SENTENCE IS STAYED PURSUANT TO

2   PENAL CODE SECTION 654.

3    THE 12022.53(D), ENHANCEMENT, IS NOT IMPOSED

4   AS THE VICTIM IS THE SAME AS IN COUNT 1.

5    AS TO COUNT 3, FOR VIOLATION OF PENAL CODE

6   SECTION 245(B), ASSAULT WITH A ALLEGED SEMIAUTOMATIC FIREARM,

7   THE MIDTERM OF SIX YEARS IS ORDERED.

8    ON THE PENAL CODE 12022.5(A), ENHANCEMENT, THE

9   MIDTERM OF FOUR YEARS IS ORDERED.

10    ON THE PENAL CODE 12022.55(A), ENHANCEMENT,

11   DISCHARGE OF A FIREARM FROM A VEHICLE, THE MIDTERM OF

12   SIX YEARS IS ORDERED.

13    AND ON THE PENAL CODE 12022.7(A), ENHANCEMENT,

14   THE MIDTERM OF THREE YEARS IS ORDERED; ALL CONSECUTIVE

15   FOR A TOTAL TERM OF 19 YEARS.

16    THE COUNT 3 SENTENCE IS STAYED PURSUANT TO

17   PENAL CODE SECTION 654.

18    ACCORDINGLY, YOU ARE COMMITTED TO THE

19   DEPARTMENT OF CORRECTIONS FOR THE AGGREGATE TERM OF LIFE

20   PLUS 25 YEARS TO LIFE WITH CREDIT FOR TIME SERVED OF 554

21   ACTUAL DAYS -- EXCUSE ME.  THAT WAS THE OLD CREDIT

22   DETERMINATION.  CREDIT FOR TIME SERVED OF 582 ACTUAL

23   DAYS AND 87 2933 CONDUCT CREDITS -- 2933.1 CREDITS, FOR

24   A TOTAL OF 669.

25    YOU'RE ORDERED TO SUBMIT TO DNA TESTING

26   PURSUANT TO PENAL CODE 296.



908

1        **MR. TROCHA:**  YES, YOUR HONOR.  I ACTUALLY

10

11

12

13

14

15

16    DEFENSE, WHEREIN THE PEOPLE ARE JUST SIMPLY NOT ALLOWED

17    TO CROSS-EXAMINE ANYONE VERSUS THE MENTAL STATE OF THE

18    DEFENDANT.

19            IN ESSENCE, WE WOULD RUN INTO A GRIFFIN ERROR

20    EVERY SINGLE TIME A CASE LIKE THIS CAME DOWN THE

21    PIPELINE.  BECAUSE WE'D HAVE THREE WITNESS UP THERE

22    TALKING ABOUT THE DEFENDANT'S MENTAL STATE OF WHICH THEY

23    HAVE NO PERSONAL KNOWLEDGE, BECAUSE IT'S PARTICULAR TO

24    THE DEFENDANT.  IN ARGUMENT THE ONLY THING I COULD BE

25    LEFT WITH IS -- THE ONLY PERSON YOU'D HEAR FROM ABOUT

26    MENTAL STATE, WHO'S THE ONLY PERSON THAT'S ACTUALLY

27    QUALIFIED TO TESTIFY ABOUT WHAT HE WAS THINKING AT THE

28    TIME.







1    (THE NEXT WITNESS ENTERS THE COURTROOM.)

2    **THE CLERK:**  PLEASE RAISE YOUR RIGHT HAND TO BE

3    SWORN.

4    YOU DO SOLEMNLY STATE THAT THE EVIDENCE YOU

5    SHALL GIVE IN THIS MATTER SHALL BE THE TRUTH, THE WHOLE

6    TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

7    **SHANE COLBERT,**

8    CALLED BY THE PEOPLE, HAVING BEEN FIRST DULY SWORN, WAS

9    EXAMINED AND TESTIFIED AS FOLLOWS:

10   **THE WITNESS:**  I DO.

11   **THE CLERK:**  THANK YOU.  PLEASE BE SEATED IN

12   THE WITNESS STAND.

13   WILL YOU PLEASE STATE YOUR FULL NAME, SPELLING

14   BOTH YOUR FIRST AND LAST NAME FOR THE RECORD.

15   **THE WITNESS:**  SHANE DAVID COLBERT.  S-H-A-N-E,

16   C-O-L-B-E-R-T.

17   **THE CLERK:**  THANK YOU.

18   **THE COURT:**  SIR, WHY DON'T YOU PULL THE

19   MICROPHONE UP JUST A LITTLE BIT.  THERE YOU GO.

20   **DIRECT EXAMINATION**

21   BY MR. TROCHA:

22   Q.   GOOD AFTERNOON, MR. COLBERT.

23   A.   AFTERNOON.

24   Q.   YOU'RE A HIGH SCHOOL STUDENT?

25   A.   YES.

26   Q.   SENIOR, READY TO GRADUATE?

27   A.   YES.

28   Q.   GOING BACK TO MARCH OF 2004, MARCH 19TH







556

1    A.   ABOUT 15 FEET ABOUT.   ABOUT 15, 20 FEET.

2    Q.   AND WHAT KIND OF VOICES DID YOU HEAR?

3    A.   I HEARD ARGUMENT.   I HEARD TWO GUYS ARGUING.

4    Q.   SO THEY WERE MALE VOICES?

5    A.   YES.

6    Q.   COULD YOU HEAR ANY WORDS THAT WERE BEING

7    EXCHANGED?

8    A.   NO, NOT REALLY.

9    Q.   COULD YOU SEE WHO WAS ARGUING AT THAT TIME?

10   A.   NO.









26   Q.   ABOUT HOW MANY POPS DID YOU HEAR?

27   A.   ABOUT FOUR.

28



557



3    Q.    COULD YOU SEE WHAT WAS HAPPENING AT THAT TIME?

4    A.    NOT REALLY BECAUSE THE CAR WAS BLOCKING MY

5    VIEW.

6    Q.    WHAT COULD YOU SEE?

7    A.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8    ▓▓▓▓ AND THEN BLOOD WAS LIKE EVERYWHERE.

9    Q.    THE GUY THAT HAD FALLEN, COULD YOU DESCRIBE

10    HOW HE LOOKED?

11    A.    NO.

27    Q.    COULD YOU SEE ANYONE INSIDE THE JETTA?

28    A.    I SAW ONE PERSON.



558

1     Q.   COULD YOU GENERALLY DESCRIBE THAT PERSON.

2     A.   HE WAS A BLACK,

3          HE LOOKED LIKE 20.

4     Q.   HE LOOKED YOUNG TO YOU?

5     A.   YES.

8     Q.   WHAT HAPPENED AFTER YOU HEARD THESE SOUNDS?

9     A.   I STOPPED AND FROZE.

15    Q.   HOW FAR AWAY WAS HE FROM THE CAR THAT YOU

16    DESCRIBED?

17    A.

18         ABOUT 5 FEET.   SOMETHING LIKE THAT.

19    Q.   THE DISTANCE BETWEEN -- YOU CAN USE DISTANCES

20    HERE IN THE COURTROOM.

21    A.   ABOUT HALFWAY FROM ME TO YOU.

22    Q.   SO ABOUT --

23    A.   ABOUT RIGHT THERE.

24    Q.   OKAY.

25         **THE COURT:**  YOU WANT THE RECORD TO REFLECT AN

26    ESTIMATE OF THAT DISTANCE?

27         **MR. TROCHA:**  ABOUT 8 TO 10 FEET.



559



6    **BY MR. TROCHA:**

7         Q.    YOU SAID THIS PERSON WAS BLEEDING?

8         A.    YES.



20        Q.    DID YOU SEE HIM MOVE FROM THAT POSITION AT ANY

21    TIME?

22        A.    YEAH. 

25

27        Q.    DID YOU EVER SEE HIM JUMP OVER THE WALL OR DO

28    ANYTHING OF THAT NATURE?



560

1     A.   NO.

2     Q.   WHEN HE RAN -- 

4     A.   ██████████████.   HE WAS, LIKE, STUMBLING

5     ALONG.

11    Q.   HOW LONG DID THIS ENTIRE EVENT LAST?

12    A.   NO LONGER THAN FIVE MINUTES.



19    Q.   SO YOU STAYED AND WATCHED THIS FOR THE ENTIRE

21    A.   YES.

22    Q.   ██████████████████, DID YOU SEE THE CAR

23    MOVE AT ALL?

24    A.   ████████.   IT WAS JUST DEAD -- STOPPED ON THE

25    STREET.

26    Q.   YOU SAID YOU HEARD YELLING, BUT YOU COULDN'T

27    MAKE OUT ANY WORDS?                 Keeps suppressed

28    A.   YES.


(82)



7       Q.    AND YOU REMEMBER A CAR BEING IN THE STREET,

8   CORRECT?

9       A.    YES.



15      Q.    -- AND YOU HEARD THIS ARGUMENT?

16      A.    YES.



82

564



26    Q.   BUT YOU DID SEE HIM 8 OR 10 FEET AWAY FROM THE

27    CAR?

28    A.   YES.   HE WAS STANDING STRAIGHT UP AT THE TIME.



565

1      Q.   OKAY.  AND DO YOU REMEMBER ANYTHING ABOUT A

2  TELEPHONE?

3      A.   NO.

4      Q.   OKAY.  BUT YOU DID HEAR ARGUING?

5      A.   YES.

6      Q.   THANK YOU.

7           **THE COURT:**  ARE YOU DONE?

8           **MR. ADAIR:**  IF I COULD HAVE JUST A MOMENT,

9  YOUR HONOR?

10          **THE COURT:**  SURE.

11  **BY MR. ADAIR:**

12     Q.   WHEN YOU SAW THIS PERSON RIGHT AFTER HE HAD

13  ▮▮▮▮▮▮▮, DID YOU SEE A LITTLE GIRL NEAR HIM?

14     A.   NO.

15     Q.   DID YOU LATER SEE A LITTLE GIRL?

16     A.   NO.

17     Q.   OKAY.  SO -- THANK YOU.

18          **MR. ADAIR:**  I HAVE NO FURTHER QUESTIONS..

19          **THE COURT:**  REDIRECT?

20          **MR. TROCHA:**  BRIEFLY.

21                **REDIRECT EXAMINATION**

22  **BY MR. TROCHA:**

23     Q.   MR. COLBERT, ▮▮▮▮▮▮▮▮▮▮▮▮, WHERE

24  WAS IT IN THE STREET EXACTLY?

25     A.   IT WAS LIKE RIGHT IN THE MIDDLE, ▮▮▮▮▮▮



2     Q.   NOW, THERE'S TWO SIDEWALKS. ███████████

███████████████████████████████████████████████

4    ███████████████████████████. WHICH OF

5    THOSE SIDEWALKS WAS HE ON?

6     A.  ████████████████████████. THE ONE

7    ON THE STREET.

    ██████████████████████████████████████

9    STREET SIDE OF IT?

10    A.  THE STREET SIDE.

11    Q.  DID YOU SEE IF HE HAD ANYTHING IN HIS HAND?

12    A.  NO.

13    Q.  WHEN I SAY THAT, DID YOU SEE HIS HANDS?

14    A.  NO.

15    Q.  YOU SAID YOU HEARD TWO VOICES?

16    A.  YES.

17    **MR. TROCHA:**  YOUR HONOR, NOTHING FURTHER, ███

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████                ██████████████

23    **THE COURT:** ████████████ ALL RIGHT. ████████

████████████████

███████████████████████████████████████████████

███████████████████████████████

27    **THE COURT:**  ANY RECROSS?

28    **MR. ADAIR:**  YES, YOUR HONOR.



555



1    SPECIFICALLY, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2    ▓▓▓▓▓▓▓

3    A.    ▓▓    IT'S 389.

4    Q.    YOU WERE LIVING AT 389 AT THAT TIME?

5    A.    YES.

10    Q.    SO IF I WAS STANDING DIRECTLY IN FRONT OF

12    A.    TO THE RIGHT.

13    Q.    IS IT THE NEXT HOUSE OVER OR A FEW BLOCKS UP?

14    A.    IT'S AN APARTMENT NEXT TO THE APARTMENT IN

15    FRONT OF THE PLACE.

19    Q.    DID YOU HEAR OR WITNESS SOMETHING UNUSUAL?

20    A.    ▓▓▓▓▓▓▓▓▓▓.    WELL, I HEARD PEOPLE

27    Q.    ABOUT HOW FAR AWAY WERE YOU WHEN YOU FIRST

28    HEARD THE VOICES?

87