MR E.W. BURTON #F02720 INPROPER
P.O. BOX 5246 C3-115-50
CORCORAN, CA. 93212

# TABLE OF CONTENTS

1. EXHIBIT "6" PAGES 1-12 "A" EXCERPTS, 944,
2. 945, 332, 803, 157, 1213, 1213, 1214, 898, 899,
3. 570

1    **MR. ADAIR:** MY LANGUAGE MAY NOT BE PERFECT
2 JUST YET, BUT IN OTHER WORDS, TO MAKE IT CLEAR TO THE
3 JURY THAT AS FAR AS MR. BURTON'S HONEST AND REASONABLE
4 BELIEF, ~~[redacted]~~
5 HE WAS AWARE OF.
6    **THE COURT:** WELL, THAT'S FINE. ALTHOUGH AT
7 THIS POINT I'M NOT SURE WE HAVE HIM BEING AWARE OF ANY
8 OF THEM.
9    **MR. TROCHA:** CORRECT.
10   **THE COURT:** SO I'LL WAIT AND HEAR THE
11 EVIDENCE.
12   **MR. ADAIR:** ~~[redacted]~~. IT'S
13 JUST THAT THE JURY HASN'T BEEN ALLOWED TO HEAR ABOUT
14 THEM YET.
15   **THE COURT:** UNTIL WE HAVE EVIDENCE THAT THE
16 JURY HEARS OF HIS KNOWLEDGE OF PRIOR ACTS, THEN THAT'S
17 NOT AN INSTRUCTION THAT WOULD WORK. SO WE NEED TO WAIT
18 AND SEE WHAT, IF ANYTHING, EVIDENCE WE GET ON THAT SHOWS
19 THAT HE'S WAS AWARE OF ANY OF THIS.
20   **MR. ADAIR:** OKAY.
21   **THE COURT:** AND AGAIN HIS STATEMENTS TO HIS
22 MOM THAT HE WAS FEARFUL AREN'T THE WAY TO ESTABLISH IT,
23 BECAUSE IT'S NOT GOING TO BE OFFERED FOR ITS TRUTH AS TO
24 WHAT MR. THOMAS DID.
25   **MR. ADAIR:** ~~[redacted]~~
27 JUDGE GALLAGHER ASKED HIM IF HE WAS UNDER ANY DURESS
28 BECAUSE OF THE THREATS THAT WERE MADE TO HIM, ~~[redacted]~~

1 ~~[redacted]~~
2 ~~[redacted]~~
3 ~~[redacted]~~
4 ~~[redacted]~~
5 ~~[redacted]~~
6 ~~[redacted]~~
7 ~~[redacted]~~ I
8 ~~[redacted]~~
9 ~~[redacted]~~ HE'S NOT BEING CHARGED WITH ILLEGALLY
10 CARRYING A FIREARM. ~~[redacted]~~
11 ~~[redacted]~~
12 ~~[redacted]~~
13 ~~[redacted]~~
14     **MR. ADAIR:** BUT I THINK THE JURY SHOULD BE
15 INFORMED THAT IF SOMEBODY FEELS THAT THEY ARE IN GRAVE
16 DANGER, ~~[redacted]~~
17 ~~[redacted]~~
18 ~~[redacted]~~
19     **THE COURT:** ALL RIGHT. WHAT'S YOUR RESPONSE
20 TO THAT?
21     **MR. TROCHA:** I DON'T THINK THE JURY NEEDS TO
22 KNOW THAT IT'S IRRELEVANT. ~~[redacted]~~
23 ~~[redacted]~~, "A PERSON REASONABLY BELIEVED HE WAS IN GRAVE
24 DANGER," ~~[redacted]~~
25 ~~[redacted]~~
→ 26     **THE COURT:** WELL, HE HASN'T BEEN CHARGED WITH
27 ANY ILLEGAL FIREARM POSSESSION CRIMES. AND I DON'T
28 ~~[redacted]~~

1          **MR. TROCHA:** NOT THAT I KNOW OF, NOR DO I KNOW

2     WHAT THE VIDEO WOULD BE OF.

3          **THE COURT:** WELL, AT THE TIME OF TRIAL, IT'S A

4     LITTLE LATE FOR DISCOVERY REQUEST.  SO THAT SHOULD HAVE

5     BEEN MADE BEFORE.  YOU CAN CERTAINLY INQUIRE OF THE

6     OFFICERS WHEN THEY'RE HERE IF THERE IS ANY VIDEOTAPE.

7          ALL RIGHT.  I THINK THAT EXHAUSTS THE MOTIONS.

8          MR. TROCHA, DID YOU HAVE ANYTHING ELSE?

9          **MR. TROCHA:** THERE WAS ONE THING, YOUR HONOR,

10    AND THE 911 TAPES REMINDED ME.  WE DO HAVE UNDER

11    SUBPOENA THE DISPATCHER THAT MR. THOMAS WAS SPEAKING TO

12    A~~T THE TIME OF THE SHOOTING~~.  AND I WAS REQUESTING --

13    WELL, ~~I JUST WANT TO BRING IT PRETRIAL BECAUSE THERE MAY~~

14    BE SOME HEARSAY ISSUES.

15         MY REQUEST IS TO HAVE HER TESTIFY INITIALLY

16    THAT SHE WAS TALKING TO MR. BURTON -- EXCUSE ME -- TO

17    ~~MR. THOMAS; WHAT SHE HEARD~~; THE NATURE OF THE CALL; AND

18    ~~HOW THE CALL ENDED~~.  NOT FOR PURPOSES OF THE TRUTH OF

19    WHAT THEY WERE TALKING ABOUT, BUT JUST TO ESTABLISH WHO

20    ~~MR. THOMAS WAS TALKING TO AT THE TIME IT WAS BEING~~

21    INQUIRY IN OR THERE'S ACQUISITIONS MADE THAT MR. THOMAS

22    AT THAT TIME WAS MAKING THREATS TO MR. BURTON WHEN THE

23    ~~SHOOTING OCCURRED OR JUST PRIOR TO THE SHOOTING~~

24    OCCURRING, I WOULD ASK THE COURT THEN TO ALLOW HER TO

25    TESTIFY AS TO THE CONTENTS OF THE CONVERSATION TO

26    DISPROVE THAT -- AS IT WOULD ALSO COME IN AS A

27    CONTEMPORANEOUS STATEMENT TO EXPLAIN THE ACTION.

28         **THE COURT:** IS THIS SOMEBODY YOU'RE PLANNING

```
 1    BELIEVE IS -- THE DECLARATION IN SUPPORT OF THE
 2    RESTRAINING ORDER THAT MR. BURTON GOT IS NOT IN EVIDENCE
 3    AT THIS TIME, BUT IN THAT IT DOES STATE THAT THOMAS HAD
 4    THREATENED TO KILL HIM.
 5              THE COURT:  WELL, IT SAYS THAT,
 6    IN EVIDENCE.


 9              MR. ADAIR:  UH-HUH.
10              THE COURT:
11    WOULD GIVE RISE TO A SELF-DEFENSE CLAIM,

13              MR. TROCHA:  I THINK --
14              THE COURT:  -- THINKING ABOUT WHAT INSTRUCTION
15    WILL APPLY UNTIL I KNOW WHAT THE DEFENSE IS, BUT I'LL
16    MAKE IT AS A NOTE TO BE CONSIDERING.  IF WE GET TO THE
17    POINT WHERE I DECIDE THAT I WOULD INSTRUCT AN
18    UNREASONABLE SELF-DEFENSE, BUT NOT THE FULL PACKAGE OF
19    SELF-DEFENSE THEORY.  THEN THE QUESTION WILL BE ARE
20    THERE ANY ADDITIONAL INSTRUCTIONS THAT NEED TO BE PULLED
21    OUT AND INCLUDED.
22              MR. ADAIR:  WELL, MY GOAL IS THAT ALL OF THE
23    INSTRUCTIONS CONCERNING BOTH REASONABLE AND UNREASONABLE
24    SELF-DEFENSE WILL BE NEEDED.
25              THE COURT:  OKAY.
```

1 ~~WILL THEN ALSO BE ABLE TO GET A COPY TO MR. ADAIR.~~

2      MS. HANNAH: THANK YOU.

3      THE COURT: THEN WE FOUND SOME DOCUMENTS THAT CAME IN MORE
4 RECENTLY, APPARENTLY, THAT WERE NOT IN THE COURT FILE. AND I
5 ~~[redacted]~~

6 ~~[redacted]~~

7      AT LEAST THEY SEALED THEM WELL.

8      THESE ARE ALSO FROM SHARP MEMORIAL HOSPITAL. IT
9 LOOKS LIKE IT'S IN RESPONSE TO A PEOPLE'S SUBPOENA. THESE MAY
10 BE DUPLICATES.

11      MS. HANNAH: OKAY.

12      THE COURT: BUT IT'S, AGAIN, REFERRING TO MR. THOMAS.

13      MS. HANNAH: OKAY.

14      THE COURT: SO I'LL TURN THOSE, ALSO, OVER TO THE PEOPLE.

15      NOW, MR. ADAIR, WERE THERE SOME OTHER DOCUMENTS YOU
16 WERE EXPECTING, AS WELL?

17      MR. ADAIR: WE HAD SUBPOENAED -- I THINK THERE WERE OTHER
18 SUBPOENAS THAT WENT TO ANOTHER POLICE DEPARTMENT, THEIR RECORDS.

19 ~~[redacted]~~

20 ~~[redacted]~~

21      THE COURT: ALL RIGHT. GO AHEAD, AND DO THAT. AND
22 CERTAINLY IF ANYTHING ELSE COMES IN. AND PERHAPS WE'LL MAKE
23 SURE IF THEY COME IN DOWNSTAIRS, THAT THEY'LL ALERT US TO IT SO
24 WE CAN CONTACT YOUR OFFICE AND LET YOU KNOW, SINCE WE HAVE A FEW
25 DAYS BEFORE THE ACTUAL TRIAL.

26      MR. ADAIR: THANK YOU, YOUR HONOR.

1212

1 ~~[redacted]~~
2 ~~[redacted]~~
3 ~~[redacted]~~
4 ~~[redacted]~~
5 ~~[redacted]~~
6 ~~[redacted]~~
7 ~~[redacted]~~

8   **THE COURT:** ~~[redacted]~~. THE JURY CAN JUST
9   REMAIN. WE'LL STEP OUT IN THE HALLWAY FOR A MOMENT.
10         (THE COURT, BOTH COUNSEL, AND THE COURT
11         REPORTER EXIT THE COURTROOM.)
12         (THE FOLLOWING PROCEEDINGS WERE HEARD AT
13         SIDEBAR:)
14   **MR. ADAIR:** YOUR HONOR, I AM CONCERNED ABOUT
15   THE REMARK THAT I HAD OBJECTED TO BECAUSE BASICALLY IT
16   INDICATES THAT IT'S BASICALLY CANCELING OUT THE RIGHT OF
17   A PERSON WHO'S BEING ASSAULTED TO DEFEND THEMSELVES AND
18   ~~[redacted]~~.
19   **THE COURT:** WHAT I WAS THINKING OF DOING IS --
20   I'LL LET MR. TROCHA RESPOND -- I THINK THE ARGUMENT CAN
21   BE VIEWED TWO WAYS, ~~[redacted]~~
22   AGAINST THE LAWS I READ. I WAS GOING TO PROPOSE
23   REMINDING THE JURY THAT I GAVE THEM EXTENSIVE
24   INSTRUCTIONS ON SELF-DEFENSE WITH -- ~~[redacted]~~
25   OF PRINCIPLES THAT APPLY. I'LL JUST GOING TO READ ONE
26   TO THEM NOW BECAUSE OF SO MANY THEY HEARD YESTERDAY.
27   AND THEN I'LL READ THAT INSTRUCTION AGAIN. HAVE IT
28   RESTATED TO THEM.

1   **MR. ADAIR:** COULD I SEE IT AGAIN?

2   **MR. TROCHA:** THE PROBLEM I HAVE IS THAT IT

3   IMPLIES SELF-DEFENSE. ~~[redacted]~~

4-9 ~~[redacted]~~

10  WITH A PERSON STANDING THEIR GROUND FOR SELF-DEFENSE,

11-12 ~~[redacted]~~

13  **THE COURT:** WELL, THE PROBLEM IS THEY'RE

14  VIEWING ALL THE EVIDENCE AS IT APPLIES BOTH TO THE

15-19 ~~[redacted]~~

20  ~~[redacted]~~. I'LL DO THE CONCLUDING INSTRUCTIONS AND THEN

21  RECESS.

22  **MR. ADAIR:** PROBABLY FOR THE RECORD, I SHOULD

23  BRING A MOTION FOR A MISTRIAL.

24  **THE COURT:** MOTION'S DENIED.

25  ALSO, THE RECORD SHOULD REFLECT THAT BEFORE

26  STARTING HIS ARGUMENT, MR. ADAIR WANTED TO UNSEAL THE

27  EXHIBIT, WHICH IS THE TELEPHONE. AND I DENIED THAT

28  REQUEST. I FEEL, NUMBER ONE, ~~[redacted]~~



1   AND IT HAS CONTAMINANT ON IT, INCLUDING BLOOD. AND THE

2   JURY -- IT'S A CLEAR PLASTIC BAG. THEY CAN SEE VERY

3   CLEARLY WHAT IT IS. AND DEMONSTRATING IT'S USE, I

4   THINK, MR. ADAIR HAS VERY EASILY MADE HIS POINT. AND

5   THE JURY CAN EXAMINE THE PHONE IN THE JURY ROOM THROUGH

6   THE BAG.

7          **MR. ADAIR:** I WAS CONCERNED ABOUT HOW I WAS

8   GOING TO SNEAK OFF TO THE BATHROOM AND THOROUGHLY WASH

9   MY HANDS.

10         **THE COURT:** SO NOW YOU DON'T HAVE TO.

11         LET'S FINISH THE INSTRUCTIONS AND THEN WE'LL

12   GET THE JURY OUT.

13         (THE COURT, BOTH COUNSEL, AND THE COURT

14         REPORTER ENTER THE COURTROOM.)

15         (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN

16         COURT IN THE PRESENCE OF THE JURY:)

17   **THE COURT:** ALL RIGHT.

18         LADIES AND GENTLEMEN, I HAVE A FEW CONCLUDING

19   INSTRUCTIONS FOR YOU AND THEN YOU WILL BE SENT OUT TO

20   THE JURY ROOM FOR DELIBERATIONS.

21         YESTERDAY I READ TO YOU FOR ABOUT 50 MINUTES

22   OF THE INSTRUCTIONS. OBVIOUSLY, THEY WERE LENGTHY. ~~AND~~

23   ~~NONE OF THEM ARE MORE IMPORTANT THAN THE OTHER. YOU~~

24   ~~NEED TO CONSIDER, EVEN THOUGH COUNSEL ARGUED INSTEAD~~

25   ~~ON SELF-DEFENSE AND THE OTHER COUNSEL SELF-DEFENSE~~

26   THEORY. I HAVE JUST ONE INSTRUCTION I WANT TO STATE AT

27   THIS TIME TO CLARIFY THE LAW ON ONE POINT AND THEN I

28   WILL GIVE YOU YOUR CONCLUDING INSTRUCTIONS.

1   DECLARANT AT ALL BECAUSE THEY WON'T BE IN COURT.  IN
2   ESSENCE, THE POLICE OFFICER SHOULD BE PRESENT IN COURT
3   FOR THE PEOPLE TO CROSS-EXAMINE IN THAT REGARD.
4            I HAVE A PIECE OF PAPER IN FRONT OF ME WITH A
5   BUNCH OF OPINIONS FROM 1992, WHICH, IN ADDITION, WERE
6   REVIEWED BY A DISTRICT ATTORNEY FROM MY OFFICE AT THAT

8   CRIMINAL OFFENSE.  NOW THE DEFENSE WANTS TO BRING THEM
9   IN AND USE THEM TO SHOW THAT THESE THINGS ACTUALLY DID
10  HAPPEN WHEN MR. THOMAS HAS DENIED THEM,
11  CHARGES UPON THEM, AND FROM THE BEST I CAN TELL,



15                 .  IT WOULD BE AS IF SOMEONE FROM MY
16  OFFICE WROTE THEIR OPINIONS AS TO MR. BURTON -- OR, IN
17  ESSENCE, JUST PULL UP A BUNCH OF POLICE REPORTS IN THIS
18  CASE WITHOUT PRESENTING ANY WITNESSES.  MR. BURTON
19  WOULDN'T HAVE ANY CHANCE TO CROSS-EXAMINE THOSE
20  WITNESSES.  BUT BECAUSE WE THINK THEY'RE RELIABLE, WE'RE
21  GOING TO ADMIT THEM INTO EVIDENCE.  ADDITIONALLY, THE
22  FACT THAT THEY'RE USED FOR IMPEACHMENT PURPOSES FOR
23  MS. SANDERS AND MR. THOMAS -- THE FACTS OF THE
24  STATEMENTS COMING IN HAVE ALREADY COME IN.  THE PAPERS
25  IN WHICH THEY'RE PRINTED ON THEMSELVES DO NOT COME INTO
26  EVIDENCE.  THEY NEVER HAVE.  THE PEOPLE URGES THE COURT
27  TO STAY WITH THAT.  THEY SHOULD NOT COME INTO EVIDENCE
28  BECAUSE THEY ARE NOT EVIDENCE.  THEY ARE INADMISSIBLE

```
1    HEARSAY.
2              REFERRING TO 1370, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3    ▓▓▓▓▓▓▓▓▓, THAT CODE SECTION HAS BEEN JUST TORN
4    APART BY CRAWFORD.  WE'RE NOT ALLOWED TO USE THAT --
5              THE COURT:  I KNOW.  BUT WE DON'T HAVE A
6    CRAWFORD ISSUE HERE.
7              MR. TROCHA:  WE DO IN THE FACT THAT CRAWFORD
8    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  IT APPLIES TO ALL HEARSAY
9    STATEMENTS.  THE DECLARANT HAS TO BE AVAILABLE FOR
10   CROSS-EXAMINATION.  IT'S NOT JUST FOR THE DEFENDANT TO
11   CROSS-EXAMINE, BUT FOR THE PEOPLE AS WELL.  WHAT'S GOOD
12   FOR THE GOOSE IS GOOD FOR THE GANDER.
13             THE COURT:  WELL, THAT RAISES A GOOD POINT.
14             UNDER WHAT CONSTITUTIONAL AMENDMENT DOES
15   CRAWFORD ARISE OUT OF, THE 5TH?
16             MR. TROCHA:  IT COMES OUT OF THE 5TH AND 6TH.
17   IT'S THE RIGHT TO CROSS-EXAMINE -- CONFRONT AND
18   CROSS-EXAMINE WITNESSES.
19             THE COURT:  BUT I THINK THAT'S THE DEFENDANT'S
20   RIGHT.
21             MR. TROCHA:  THE WAY WE READ CRAWFORD IS IF
22   THE PEOPLE CAN'T GET IT IN, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23   IN EITHER.  THERE'S NO HEARSAY EXCEPTION SOLELY FOR
24   ▓▓▓▓▓▓▓▓▓.
25   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
```

570

1  ~~AND COULD THEY BE PUBLISHED TO THE JURY?~~
2  ~~THE COURT: THAT WOULD BE EXHIBITS C, D, AND E.~~
3  ~~MR. ADAIR: YES, YOUR HONOR.~~
4  **THE COURT**: DO YOU HAVE ANY OBJECTION?
5  **MR. TROCHA**: NO.
6  **THE COURT**: ALL RIGHT. WHY DON'T WE DO THAT.
7  SIR, YOU'RE FREE TO GO. LET THE JURY RIGHT
8  NOW QUICKLY PASS THE PHOTOGRAPHS STARTING WITH JUROR 1,
9  AND THEN PASS THEM AROUND. THAT WILL HELP YOU BETTER
10 TRACK WHAT THE TESTIMONY HAS BEEN. AND THEN WHEN WE'RE
11 DONE WITH THAT, WE'LL TAKE OUR AFTERNOON RECESS. AND
12 DON'T DISCUSS THE EXHIBITS AT THIS TIME. YOU'LL HAVE A
13 CHANCE BACK IN THE JURY ROOM.
14 ~~(DEFENDANT'S EXHIBITS C, D, AND E WERE~~
15 ~~RECEIVED AND PUBLISHED TO THE JURY.)~~
16 **THE COURT**: WHILE THEY'RE DOING THAT, LET ME
17 SEE BOTH COUNSEL AT SIDEBAR ON A SCHEDULING MATTER.
18        (BENCH CONFERENCE, NOT REPORTED.)
19 **THE COURT**: ALL RIGHT. ALTERNATE JUROR 1, YOU
20 CAN HAND THOSE TO DEPUTY MITCHELL. AND AT THIS TIME
21 WE'LL HAVE THE JURORS TAKE THEIR BREAK. WE HAVE A LEGAL
22 ISSUE TO DEAL WITH AS WELL AS TAKE OUR BREAK. SO I'M
23 GOING TO HAVE YOU IN RECESS FOR ABOUT 20 MINUTES.
24 REASSEMBLE OUTSIDE THE DOORS IN 20 MINUTES AND WE'LL
25 RESUME. DON'T DISCUSS THE CASE WITH ANYONE. DON'T FORM
26 ANY OPINIONS.
27        (AT 2:35 P.M. THE JURY WAS EXCUSED AND THE
28        FOLLOWING PROCEEDINGS WERE HAD:)

1. ~~Statement of case~~
2. ~~[struck through]~~
3. ~~[struck through]~~
4. ~~[struck through]~~
5. ~~[struck through]~~
6. ~~[struck through]~~
7. ~~[struck through]~~
8. argument
9. CA(9)CAL ~~The~~ fourth amendment rather than the ~~Fourteenth~~
10. amendment addresses pretrial deprivations of liberty
11. U.S.C.A. Const. Amends 4, 14. Galbraith v. County of Santa Clara 307
12. F.3d 1119.
13. CA 9 Cal 2003 In evaluating a custodial arrest executed by
14. state officials, federal courts must determine the
15. reasonableness of the arrest in reference to state
16. law governing the arrest. Bingham v. City of Manhattan Beach 341 F.3d 939
17. CA(9) Cal 2003 To evaluate claims of unreasonable
18. seizures and detentions in the course of an arrest,
19. investigatory stop, and other seizures of an individual,
20. a court applies an objective reasonableness standard
21. U.S.C.A. Const. Amend. 4
22. US Cal 1963. Information too vague and from too
23. untested a source to permit judicial officer to accept
24. it as probable cause for arrest warrant is
25. insufficient information upon which to base
26. arrest without warrant. Fed Rules Crim. Proc. rules
27. 3, 4, 18 USCA; U.S.C.A. Const. amend 4. Wong Sun v. U.S.
28. CA9 (Cal) 2002 It is a violation of Miranda to
    question an individual who is in custody after he has
    requested counsel. U.S.C.A. Const. amend. 5 Ghent v. Woodford,
    279 F.3d 1121 as amended.

```
 1            THE COURT: ALL RIGHT. MR. PLUMMER, IS THERE
 2   ANYTHING FURTHER THAT YOU WISH TO PLACE ON THE RECORD BEFORE
 3   THE COURT RULES?
 4            MR. PLUMMER: NO, YOUR HONOR.
 5            THE COURT: ALREADY. THANK YOU.
 6            THE COURT, AS ITS LISTENED TO MR. BURTON AND MR.
 7   PLUMMER, HAS ALSO BEEN FURTHER REVIEWING THE PROCEDURAL
 8   HISTORY OF THIS CASE AS SET OUT IN THE MATERIALS WITHIN THE
 9   COURT FILE. THE COURT NOTES THAT THE PRELIMINARY
10   EXAMINATION, AS I STATED BEFORE, WAS CONDUCTED ON APRIL
11   28 [redacted] MR. BURTON WAS HELD TO ANSWER [redacted]
12   [redacted]
13   PLUMMER ENTERED THE CASE [redacted]
14   [redacted]
15   [redacted] AN ORIGINAL TRIAL DATE SET OF JULY 12TH [redacted]
16   [redacted]
17   [redacted]
18   [redacted]
19   [redacted]
20            ALSO, ON AUGUST 18TH TRIAL WAS CONTINUED TO
21   OCTOBER 25TH, AND THEN AT A FURTHER READINESS HEARING ON
22   OCTOBER 13TH THE TRIAL DATE WAS ONCE AGAIN CONTINUED AND
23   RESET FOR DECEMBER 6TH OF THIS YEAR, WHICH IS STILL THE
24   PRESENT TRIAL DATE.
```

argument - 4th amend violation Suppression Motion        GINO

U.S. Cal 1975. Because of importance of governmental interest in combating illegal entry of aliens at the border, the minimal intrusion of a brief stop, and the absence of practical alternative for policing the border, when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the United States, he may stop the car briefly and investigate the circumstances that provoke suspicion, but the stop and inquiry must be reasonably related in scope to the justification for their initiation and the officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause. Immigration and Nationality Act § 274(a)(2), 8 U.S.C.A. § 1324(a)(2) U.S.C.A. Const. Amend 4 U.S. Ca Const. amend 4 U.S. v Brignoni-Ponce 95 S.Ct. 2574, 422 U.S. 873, 45 L.Ed.2d 607.

U.S. Cal 1963. Information too vague and from too untested a source to permit judicial officer to accept it as probable cause for arrest warrant is insufficient information upon which to base arrest without warrant. Fed. Rules Crim. Proc. rules 3, 4, 18 U.S.C.A. USCA const amend 4 Wong Sun v U.S.

CA 9 Cal 2009. Government failed to show that connection between unlawful traffic stop and search of car was sufficiently attenuated to dissipate the taint caused by the illegality, and thus cocaine seized in search should have been suppressed as "fruit of the poisonous tree" where after stopping car officer noticed defendant lying in back seat without seat belt, officer continued to question occupants of car even after being informed that single license plate was lawful, officer called for back up and asked for consent to search, after receiving conflicting answers to his questioning a drug sniffing dog then alerted to drugs in trunk, and officers began their search there, finding and seizing cocaine. U.S. 4 amendt. U.S. v. Foppe 993 F.2d 1444.

(14)

0137

Argument

U.S. Cal 1971. Subjective good faith belief would not in itself justify either arrest of person mistakenly believed to be person police had probable cause to arrest or search of apartment in which arrest took place.
Hill v. California 91 S.ct. 1106, 401 U.S. 797, 28 L.Ed. 2d. 484

U.S. Cal 1963 Quantum of information which constitutes "probable cause" - evidence which would warrant a man of reasonable caution in belief that felony has been committed must be measured by facts of particular case in which legality of arrest is questioned
Wong Sun v. U.S. 83 ct 407.

Absence or denial of Counsel
U.S. Cal 1966 - Independent of any other constitutional proscription, preventing attorney from consulting with client is violation of Sixth Amendment right to assistance of counsel and excludes any statement obtained in its wake U.S.C.A. Const. amendt 6. Miranda v. Arizona 86 S.ct 1602, 384 US 436.

U.S. Cal 1966 Presence of counsel in case presented, would have been adequate protective device necessary to made process of police interrogation conform to dictates of privilege. His presence would have insured that statements made in government-established atmosphere were not product of compulsion U.S.C.A. Const. amend. 5, 6.

Ca. 9, Cal. 2003, The Prosecution's failure to disclose favorable evidence violates due process when the evidence is material. U.S.C.A. Const. Amend 14.

Belmontes V. Woodford, 350 F. 3d 861 rehearing and rehearing denied 359 F. 3d 1079

Ca 9 cal 2003 Suppression of material evidence by prosecution results in due process violation regardless of whether there is good faith on prosecutions part. U.S.C.A. Const. Amend. 5, 14.

Hall v. Director of Corrections 343 F. 3d 976

C.A. 9 (Cal) 2003 When potentially exculpatory evidence is destroyed, the government violates a defendants right to due process if the unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. U.S.C.A. Const. Amend 5.

U.S. V. Rivera-Relle 333 F. 3d 914

(12)

need hope not amplus ass