UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WILTON BURTON,<br><br>　　　　　　　　　　Petitioner,<br><br>　v.<br><br>MATTHEW CATE, Secretary of California Department of Corrections and Rehabilitation,<br><br>　　　　　　　　　　Respondent. | Civil No.　08cv0325-LAB (POR)<br><br>**REPORT AND RECOMMENDATION DENYING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 21]** |

## I. INTRODUCTION

On June 20, 2008, Petitioner Eric Wilton Burton filed a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 21.) In Grounds One and Two, Petitioner contends the trial court's failure to rule on his *Faretta* motion violated his 6th Amendment right to self-representation. *Id.* at 6-7.[1] In Ground Three, Petitioner contends the prosecution failed to disclose material exculpatory evidence in violation of the 14th amendment. *Id.* at 8. In Ground Four, Petitioner contends a *Batson* error, in that he was denied his right to a jury of his peers. *Id.* at 9.

On December 1, 2010, Respondent filed an Answer. (ECF No. 201.) First, Respondent contends the state courts' determination of the *Faretta* issue is entitled to deference. *Id.* at 13-17. Second, Respondent contends Petitioner cannot establish a *Brady* violation because he has not

---

[1] In light of the fact that the underlying facts of these two claims are the same, and for the sake of clarity, the Court shall address these claims together.

1 shown (1) the prosecution suppressed evidence, or (2) that he suffered prejudice as a result of the
2 allegedly suppressed evidence. *Id.* at 18-20. Third, Respondent contends the state courts'
3 reasonable denied Petitioner's *Batson* claim. *Id.* at 20-23.

4 On December 10, 2010, Petitioner filed his Traverse. (ECF No. 202.) Petitioner reasserts
5 the claims he made in his First Amended Petition. *Id.*

6 In consideration of the pleadings, the record, and controlling law, for the reasons set forth
7 below, the Court hereby RECOMMENDS the Petition be **DENIED**.

## II. PROCEDURAL BACKGROUND

9 The procedural history in this case is somewhat complex, and is therefore set forth in list-
10 fashion below:

11 • July 29, 2005, a jury convicted Petitioner of willful and premeditated attempted
12 murder (Cal. Penal Code §§ 664/187(a)/189), discharging a firearm from a motor
13 vehicle (Cal. Penal Code § 12034(c))), and assault with a semi-automatic firearm
14 (Cal. Penal Code § 245(b)). (Lodgment 1 at 278-88.)

15 • October 21, 2005, the trial court sentenced Petitioner to state prison for an
16 indeterminate term of life with parole plus a consecutive term of 25 years to life.
17 (Lodgment 1 at 309-312, 388.)

18 • July 3, 2006, Petitioner appealed his conviction to the Court of Appeal of the State of
19 California, Fourth Appellate District, Division One ("Court of Appeal"). (Lodgment
20 3.)

21 • November 26, 2006, Petitioner filed a petition for writ of habeas corpus with the
22 Court of Appeal. (Lodgment 9.)

23 • December 18, 2006, Petitioner filed a Motion for Ex Parte Appointment of Counsel
24 and a Motion to Proceed in Forma Pauperis. (Lodgments 10, 11.)

25 • December 5, 2006, the Court of Appeal notified Petitioner his writ of habeas corpus
26 and pending appeal would be considered at the same time. (Lodgment 12.)

27 • December 27, 2006, the Court of Appeal informed Petitioner his motions filed on
28 December 18, 2006 would be considered at the same time as his pending appeal.

(Lodgment 13.)
- April 25, 2007, the Court of Appeal affirmed the judgment. (Lodgment 6.)
- April 25, 2007, the Court of Appeal denied Petitioner's habeas petition and his two motions. (Lodgment 14.)
- May 7, 2007, Petitioner filed a habeas petition in the California Supreme Court. (Lodgment 15.)
- June 4, 2007, Petitioner filed a petition for review with the California Supreme Court. (Lodgment 7.)
- June 20, 2007, the California Supreme Court denied Petitioner's habeas petition. (Lodgment 16.)
- July 11, 2007, the California Supreme Court denied the petition for review. (Lodgment 8.)
- February 19, 2008, Petitioner filed a federal Petition for Writ of Habeas Corpus and an application to proceed in forma pauperis in the Southern District of California. (Doc. 1.)
- April 18, 2008, the Court granted Petitioner's application to proceed in forma pauperis but dismissed the case without prejudice because Petitioner failed to use the proper form and failed to allege exhaustion of state judicial remedies. (Doc. 4.)
- June 18, 2008, Petitioner filed a First Amended Petition (FAP). (Doc. 21.)
- July 3, 2008, the Court ordered the case reopened and ordered the Respondent respond to the FAP. (Doc. 22.)
- September 4, 2008, Petitioner filed a second petition for writ of habeas corpus in the California Supreme Court. (Lodgment 17.)
- September 22, 2008, Respondent filed a Motion to Dismiss the FAP alleging Petitioner failed to exhaust Ground 3 of his FAP. (Doc. 41.)
- October 3, 2008, Petitioner filed a Motion for Stay and Abeyance. (Doc. 47.)
- December 10, 2008, the Court issued a Report and Recommendation granting Petitioner's Motion for Stay and Abeyance, which was adopted by Judge Burns.

|   |   |
|---|---|
| 1 | (Doc. 65, 89.)  Judge Burns also denied Respondent's motion to dismiss the petition |
| 2 | without prejudice.  (Doc. 89.) |

- March 11, 2009, the California Supreme Court denied the second petition for writ of habeas corpus.  (Lodgment 18.)
- April 22, 2009, the Court ordered Respondent to file a response to the petition.  (Doc. 93.)
- July 7, 2009, Respondent filed a motion to dismiss the FAP, asserting it was a mixed petition, subject to dismissal, because Petitioner failed to exhaust Ground 3 of his FAP.  (Doc. 101.)
- July 27, 2009, Petitioner filed an opposition, claiming he exhausted Ground 3 in the California Supreme Court.  (Doc. 102.)
- December 11, 2009, the Court filed an Order Denying Motion to Dismiss Without Prejudice and Order for Petitioner to File Lodgment 17.  (Doc. 135.)
- December 28, 2009, Petitioner filed Lodgment 17 with the Court.  (Doc. 138.)
- February 9, 2010, Respondent filed a Motion to Dismiss Petitioner's FAP.  (Doc. 143.)
- March 10, 2010, Petitioner filed an Opposition.  (Doc. 153.)
- June 30, 2010, the Court filed a Report and Recommendation that Respondent's Motion to Dismiss be denied.  (Doc. 168.)
- August 23, 2010, Judge Burns adopted the Court's Report and Recommendation.  (Doc. 168.)
- August 30, 2010, the Court ordered Respondent to file an Answer to the First Amended Petition, which was filed on December 1, 2010.  (Doc. 187, 201.)

After a somewhat lengthy history, this matter is now fully briefed and ready for decision.

### III. FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal opinion in People v. Burton, No. D047617 (Cal. Ct. App. 4th Dist. Div. 1, Apr. 25, 2007).  (Lodgement 6 at 2-3.)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C. §2254(e)(1).  See

Tinsley v. Borg, 895 F.2d 520, 524-26 (9th Cir. 1990) (stating that factual findings of both state trial and state appellate courts are entitled to presumption of correctness on federal habeas corpus review); Parke v. Raley, 506 U.S. 20, 26 (1992); Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to findings of fact of both state trial and appellate courts).

### A. Prosecution Case

Burton is the father of Angela Sanders's daughter, Dreona. In March 2004 Salinathan Thomas, the victim of Burton's assault, was in a dating relationship with Sanders. Burton had filed custody dispute papers and obtained a restraining order against Thomas.

On March 19, 2004, Thomas was with Sanders and her two daughters at a friend's apartment when Burton drove his vehicle into the driveway. Thomas came out of the apartment as Burton was starting to leave. Thomas told Burton to leave them alone, and Burton challenged Thomas to "come out 100 yards and say that." Burton then drove away. However, a few minutes later, Burton again drove by the apartment, and Thomas could see a passenger in the vehicle holding a rifle. Thomas called the police and stepped outside so that if Burton reappeared, Thomas could record Burton's license number to give to police.

Burton's vehicle reappeared and when approximately 35 feet from Thomas, Burton pulled out a gun, pointed it at Thomas, and began firing. Burton fired between 13 and 15 shots, striking Thomas several times. Thomas survived the shooting.

### B. Defense Evidence

Burton's friend, Mr. McKelvey, was with him. They left a Burger King and were driving to McKelvey's grandmother's house when they heard a woman shouting. They did not know who was shouting so they drove around the block. When they reached the apartment, they saw Sanders. They then saw Thomas, who looked angry, walking toward them and demanding that Burton get out of the vehicle. Burton twice warned Thomas to back away before Burton pulled out the gun and began firing. Dreona told police that, when Burton drove past on the final occasion, Thomas jumped over a wall to confront Burton and Burton then pulled out the gun and shot Thomas.

Burton's mother testified he stated he had been harassed by Thomas and there were always problems when Burton visited his daughter. Burton's mother advised him to get a restraining order against Thomas.

(Lodgment 6 at 2-3.)

## IV. DISCUSSION

### A. Standard of Review

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court

1  unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable
2  application of clearly established federal law; or (2) resulted in a decision that was based on an
3  unreasonable determination of the facts in light of the evidence presented at the state court
4  proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state
5  prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the
6  state court's determination; rather, the court applies an extraordinarily deferential review, inquiring
7  only whether the state court's decision was objectively unreasonable.  *Yarborough v. Gentry*, 540
8  U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Additionally, the state
9  court's factual determinations are presumed correct, and Petitioner carries the burden of rebutting
10 this presumption with "clear and convincing evidence."  28 U.S.C.A. § 2254(e)(1) (West 2006).

11       A federal habeas court may grant relief under the "contrary to" clause if the state court
12 applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a
13 case differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*,
14 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if
15 the state court correctly identified the governing legal principle from Supreme Court decisions but
16 unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the
17 "unreasonable application" clause requires that the state court decision be more than incorrect or
18 erroneous; to warrant habeas relief, the state court's application of clearly established federal law
19 must be "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

20       Where there is no reasoned decision from the state's highest court, the Court "looks through"
21 to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  If the
22 dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must
23 conduct an independent review of the record to determine whether the state court's decision is
24 contrary to, or an unreasonable application of, clearly established Supreme Court law.  *See Delgado*
25 *v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-
26 76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not
27 cite Supreme Court precedent when resolving a habeas corpus claim.  *Early*, 537 U.S. at 8.  "[S]o
28 long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court

1  precedent,]" *Id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*
2  Clearly established federal law, for purposes of § 2254(d), means "the governing principle or
3  principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*,
4  538 U.S. at 72.

5  Where a petitioner alleges a state court decision is based upon an unreasonable determination
6  of the facts in light of the evidence presented in state court, he or she must demonstrate that the
7  factual findings upon which the state court's adjudication rests is objectively unreasonable. *Miller-*
8  *El v. Cockrell*, 537 U.S. 322, 340 (2003).

9  **B.     Analysis**

10  Petitioner raises four grounds in his Petition. First, in Grounds One and Two, Petitioner
11  contends the trial court's failure to rule on his *Faretta* motion violated his 6th Amendment right to
12  self-representation. *Id.* at 6-7. Second, in Ground Three, Petitioner contends the prosecution failed
13  to disclose material exculpatory evidence in violation of the 14th amendment. *Id.* at 8. Third, in
14  Ground Four, Petitioner contends a *Batson* error, in that he was denied his right to a jury of his
15  peers. *Id.* at 9.

16  Respondent contends the state courts' rejection of Petitioner's claims was not contrary to, or
17  an unreasonable application of clearly established Supreme Court precedent, nor an unreasonable
18  determination of the facts in light of the evidence. (ECF No. 201.)

19       **1.     Grounds One and Two: Self Representation**

20  In Ground One of the First Amended Petition, Petitioner claims a "denial of 6th and 14th
21  Federally guaranteed right to self-representation, failure to rule on fundamentally separately
22  recognized timely invoked 6th Amendment motion." (ECF No. 21 at 6.) In support of this claim,
23  Petitioner contends that on March 6, 2005, he timely invoked his right to self-representation and
24  requested a *Marsden*[2] hearing to relieve counsel knowingly and intelligently. *Id.* Petitioner claims
25  he proffered two separate motions. *Id.* In Ground Two, Petitioner contends "failure to rule on [his]
26  timely filed motion 2 weeks prior to trial on 07-07-08, and 27 May 05." *Id.* at 7. In support of this
27  claim, Petitioner alleges that on July 7, 2008, he filed a timely *Faretta* motion, and the court refused

28
---
[2] *People v. Marsden*, 2 Cal.3d 118 (1970).

1    to exercise discretion and rule on the motion. *Id.* Petitioner also alleges that prior to his trial on

2    June 1, 2005, Petitioner filed a timely *Faretta* motion, but Judge Exharos failed to rule after

3    acknowledging Petitioner introduced a handwritten motion. *Id.* As stated above, because the

4    underlying facts of these two claims are the same, the Court shall address them together.

5        Respondent contends the state courts reasonably denied these claims in a decision that is

6    entitled to deference. ECF No. 13.)

7        In support of its analysis, the state appellate court made the following factual findings, to

8    which this Court must defer under 28 U.S.C. § 2254(e)(1). Moreover, these factual findings are

9    objectively reasonable and are amply supported by the record. *See* 28 U.S.C. § 2254(d)(2).

10   Specifically, the Court of Appeal set forth the relevant background as follows:

> On March 24, 2005, on the day of trial, Burton requested a *Marsden* hearing and also moved under *Faretta* to represent himself. However, when defense counsel requested the court investigate Burton's competence under section 1368, the court stated that although it believed Burton was "capable of understanding the nature of these proceedings," there was sufficient evidence to raise a substantial doubt as to Burton's competence either to assist his counsel or to conduct his own defense in a rational manner. Accordingly, the court suspended proceedings under section 1368 to allow an evaluation of Burton's competence, and told Burton that "[i]f it's determined that you're competent, then you are certainly free to raise a *Marsden* or a *Faretta* motion or whatever else you think is appropriate, and then the court at that time will evaluate it," but that it was premature to entertain the motions until the court was satisfied as to Burton's competence. [¶] At a May 23, 2005 hearing, the court found Burton competent to stand trial and resumed the proceedings. On June 1, 2005, at a hearing to set the trial date, Burton again moved for new counsel under *Marsden* and the court held an in camera hearing to address the motion. At the outset of that hearing, Burton stated he had "some motions and some papers" but the court instructed Burton they would deal only with the *Marsden* motion because the prosecutor was absent. While articulating his complaints against Mr. Adair (his appointed attorney), Burton stated that when he informed Adair of his intention to represent himself in March 2005, which motion Burton complained "the court [erred] in denying," Adair "retaliated against that [and] placed me under a [section] 1368 hold." Burton complained that even though the judge "stated that he found me competent, [and] [f]rom my understanding, if the defendant is competent and he has made a timely motion to [represent himself,] he has that right to do so," the "court and Mr. Adair were overreaching and placed me under a [section] 1368 hold." Burton then argued the testing and hearing resulted in a finding of competence, and stated, "Prior to my *Marsden*, I had also made a [*Faretta*] motion. I felt that the court [erred] and violated my Sixth Amendment rights, the judge also violated my 14th [Amendment] rights to due process, and when your due process is violated . . . I'd like to motion the court to release me from custody. I have been unlawfully detained." The court then cautioned Burton that "you are drifting off into your other motions now. We are still here on the *Marsden* motion, we're not here on unlawful detention or [propria persona] rights. The only issue here is whether or not Mr. Adair should be discharged as your attorney." Burton then continued his list of complaints against Mr. Adair, and concluded by asserting, "I would really like to substitute counsel. Because, at this point, with my disease and illnesses, I feel that I should

have counsel. And I would like to substitute counsel, your honor." The court ultimately denied the *Marsden* motion. [¶] The next time Burton mentioned *Faretta* was on the fourth day of trial, when he made another *Marsden* motion. Burton argued counsel had been incompetent in numerous regards, had a conflict of interest, and there were conflicts between Burton and counsel over trial decisions, in part because counsel was aware Burton had tried to assert in propria persona rights but did not pursue them. The court, rejecting the latter claim, noted there "initially had been an indication that you [wanted] to file [in propria persona], but then you asked to raise a *Marsden* motion first[, and] I heard that motion [and] ruled on it . . . [a]nd there was no renewal of the [propria persona] motion" after the competency issue had been resolved. Burton later resurrected his claim that his *Faretta* motion had been timely and was erroneously denied, but the court rejected that claim, stating, "The [propria persona] motion – if you had intended or thought you wanted that renewed [after the section 1368 issue was resolved], you could have done that on the first day of trial. You did not. Well, now it's the second week of trial. I find this untimely and raised for the purpose of delay." [¶] The final occasion Burton raised *Faretta* to the trial court was in connection with his motion for new trial. At that time. Burton asserted he was entitled to a new trial because a previously filed motion asserting *Faretta* had not been ruled on, and because of new evidence. The court, after examining its file, located a 15-page handwritten document mailed July 7, 2005, which was styled as a "motion to dismiss"; the motion mentioned the word "*Faretta*" in the caption and (at page 13) the right of self-representation was cursorily mentioned. However, the court noted that, even assuming the issue was a proper ground for a new trial, it would deny the motion because Burton did not raise the issue at the first court date following July 7, 2005, or at any appropriate time, even though Burton had demonstrated he was both willing and able to assert issues concerning his representation when he wanted the court to rule on them, and therefore the court concluded Burton did not assert the request in a timely or sufficient manner.

(Lodgment 6 at 8-10; see also Lodgment 2 at 210-216, 251-266, 815-825, 1242-1248.)

On direct appeal, Petitioner claimed his convictions should be reversed because the trial court improperly denied his motion for self-representation. (Lodgment 3 at 19-31.) On April 25, 2007, the Court of Appeal rejected this argument in a reasoned opinion. (Lodgment 6.) Petitioner also presented this claim to the California Supreme Court in a petition for review, which the court summarily denied. (Lodgment 7, 8.) Accordingly, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis. *Ylst*, 501 U.S. at 803. Citing *Faretta* and California law, the appellate court noted a defendant has a federal constitutional right to self-representation in a criminal proceeding, but he must make his request "knowingly and intelligently," "unequivocally," and "within a reasonable time before trial." (Lodgment 6 at 11, citing *Faretta*, 422 U.S. at 819.) Further, the state appellate court noted that where "it is clear from the record that the defendant never made an unequivocal assertion of his right to self-representation...[a] trial court [does] not err in declining to consider such a request." (Id., citing *People v. Valdez* (2004) 32 Cal.4th 73, 99.) With these authorities in mind, the state appellate court

1 concluded as follows:

2     The only pretrial hearing at which Burton asserted a desire to represent himself was at the March 24, 2005 hearing, when he both attempted to replace his counsel under *Marsden* and expressed a wish to represent himself. However, the court concluded consideration of his requests was premature considering the potential mental competence questions, but advised Burton that "[i]f it's determined that you're competent, then you are certainly free to raise a *Marsden* or a *Faretta* motion or whatever else you think is appropriate, and then the court at that time will evaluate it." Although Burton subsequently resurrected his *Marsden* request, he did not thereafter unequivocally reassert his request to represent himself in propria persona. To the contrary, in his May 2, 2005 letter to the court, when he provided additional reasons supporting his *Marsden* request, Burton stated "I would like to be relieve[d] of Mr. Adair as my counsel and substituted with another. I believe it isn't in my best interest to [represent myself]." "I feel with a new attorney [who is] interested in proving my [innocence] would be the right and proper cure. . . . I am requesting please, a *Marsden* ASAP." (Italics added.) Moreover, at the next court hearing, Burton forcefully pursued his *Marsden* motion, but mentioned *Faretta* only in connection with his complaint against his attorney and as grounds for a motion to dismiss. As to the latter motion, the court cautioned Burton not to drift off into other motions because the court was focused "on the *Marsden* motion, . . . not . . . on unlawful detention or [propria persona] rights." Burton asserted, echoing his May 2 letter, "I would really like to substitute counsel. Because, at this point, with my disease and illnesses, I feel that I should have counsel. And I would like to substitute counsel, your honor." When Burton's June 1, 2005, *Marsden* motion was denied, Burton did not articulately and unmistakably reassert a demand to represent himself in propria persona in a timely fashion.

    We conclude the trial court correctly found the only timely motion that articulately and unmistakably asserted a demand to represent himself in propria persona was Burton's initial March 24, 2005 motion, and substantial evidence (in the form of Burton's express words and subsequent inaction) supports the conclusion Burton subsequently abandoned that motion. Accordingly, the court did not err in declining sua sponte to rule on Burton's abandoned *Faretta* motion.

(Lodgment 6 at 12-13.)

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to be represented by counsel. *Faretta*, 422 U.S. at 807. The Sixth and Fourteenth Amendments also guarantee a defendant the right to represent himself, but in order to invoke this right, a defendant must waive his Sixth Amendment right to counsel and the waiver must be "knowing, voluntary and intelligent." *See Iowa v. Tovar*, 541 U.S. 77, 88-89 (2004) (citing *Faretta*, 422 U.S. at 806); *see also Faretta*, 422 U.S. at 835. "When a defendant elects to waive the right to be represented by trial counsel, '[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed.'" *Tovar*, 541 U.S. at 89. Further, a defendant's *Faretta* request must also be timely, unequivocal and not made for purposes of delay. *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001). While no formal script is required to invoke the right and obtain the

1 waiver, courts should consider "a range of case-specific factors, including the defendant's education
2 or sophistication, the complex or easily grasped nature of the charge, and the stage of the
3 proceeding." *Tovar*, 541 U.S. at 88-89 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

4     The state court cited and applied *Faretta* and California law consistent with *Faretta* and did
5 not decide this case differently than *Faretta* on a set of materially indistinguishable facts. Therefore,
6 the state court's decision is not "contrary to" clearly established Supreme Court law. *Williams*, 529
7 U.S. at 412-13.

8     Nor is the state appellate court's decision an unreasonable application of *Faretta*.
9 Petitioner's first *Faretta* request at the March 24, 2005 hearing was unequivocal. However, the trial
10 court suspended the proceedings in order to allow an evaluation of Petitioner's competence, thereby
11 implying that despite the fact the request was unequivocal, it was not "knowing, voluntary and
12 intelligent." *See Iowa v. Tovar*, 541 U.S. 77, 88-89 (2004) (citing *Faretta*, 422 U.S. at 806); *see also*
13 *Faretta*, 422 U.S. at 835. Thereafter, Petitioner failed to unequivocally reassert his request to
14 represent himself. Conversely, in both his May 2, 2005 letter to the court as well as during a
15 subsequent court hearing, Petitioner stated he did not believe it was in his best interest to represent
16 himself. Therefore, as the appellate court found, it was reasonable for the trial court to conclude
17 Petitioner had abandoned his request to represent himself. *See Sandoval*, 241 F.3d at 774.

18     For the foregoing reasons, the appellate court's denial of Petitioner's *Faretta* claim is neither
19 contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*,
20 529 U.S. at 412-13. It is also not based on an unreasonable determination of the facts. 28 U.S.C.
21 § 2254(d)(2). Accordingly, Petitioner is not entitled to relief as to this claim.

22     **2.    Ground Three: Brady Claim**

23     In Ground Three of the First Amended Petition, Petitioner claims the prosecution failed to
24 disclose material exculpatory evidence in violation of the Fourteenth Amendment. (ECF No. 21 at
25 8.) In support of this claim, Petitioner contends that on July 4, 2006, his attorney sent an informal
26 letter of discovery to the deputy district attorney, but the deputy district attorney failed to respond.
27 *Id.* Further, Petitioner contends the judge and her bailiff were witnesses to Thomas, the victim in the
28 underlying crime, being served with a restraining order, and therefore, the judge and bailiff were

1  "witnesses to Burton's fear." *Id.* Petitioner alleges the bailiff, who he identifies as "S. Jones #1031"
2  was "newly discovered" by him. *Id.* Although it is difficult to discern exactly what evidence
3  Petitioner believes was withheld, Petitioner contends the prosecution failed to disclose evidence
4  about a witness Petitioner eventually discovered was a bailiff at the court in violation of *Brady*. *Id.*

5  Petitioner presented this claim in a habeas petition filed in the California Supreme Court on
6  September 4, 2008. (Lodgment 17.) However, there is no state court opinion addressing the merits
7  of this claim, as the state supreme denied the claim on procedural grounds. (Lodgment 18.) Because
8  this claim was not adjudicated on the merits in the state court, AEDPA deference does not apply and
9  the Court must conduct a de novo review of this claim. *Killian v. Poole*, 282 F.3d 1204, 1208 (9th
10 Cir. 2002). Although AEDPA deference does not apply to this claim, the Court must remain
11 mindful that "judgments of conviction and sentence carry a presumption of finality and legality and
12 may be set aside only when a state prisoner carries his burden of proving that [his] detention violates
13 the fundamental liberties of the person, safeguarded against state action by the Federal
14 Constitution." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

15 In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court held that a prosecutor must
16 disclose all material evidence, including impeachment evidence, to the defendant. *Brady*, 373 U.S.
17 at 87. In order to establish a Brady violation, Petitioner must prove three elements: (1) the evidence
18 was suppressed by the prosecution, either willfully or inadvertently, (2) the withheld evidence was
19 either exculpatory or impeachment material, and (3) the evidence was material to the defense. *See*
20 *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Benn v. Lambert*, 283 F.3d 1040, 1052-53 (9th
21 Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985) and *United States v. Agurs*,
22 427 U.S. 97, 110 (1976).) Evidence is material "if there is a reasonable probability that, had the
23 evidence been disclosed to the defense, the result of the proceeding would have been different."
24 *Bagley*, 473 U.S. at 682. Failure to disclose material evidence violates due process. *Id.* at 678.

25 Here, Petitioner has failed to establish a *Brady* violation. First, Petitioner has not established
26 the prosecution actually suppressed any evidence, either willfully or inadvertently. Contrary to
27 Petitioner's assertion, there is no evidence the bailiff's identity was kept a secret from Petitioner.
28 Accordingly, the Court concludes Petitioner has failed to satisfy the first prong of the Brady test.

*See Strickler*, 527 U.S. at 281-82.

Second, Petitioner cannot demonstrate the withheld evidence was either exculpatory or impeachment material. Specifically, Petitioner's assertion the bailiff was a "witness to his fear" does not establish the bailiff's testimony would have been "favorable" to him. *Strickler*, 527 U.S. at 281-82. Accordingly, the Court concludes Petitioner has failed to satisfy the second prong of the Brady test. *Id.*

Third, Petitioner is unable to demonstrate the information related to the bailiff's identity was material because there is no reasonable probability that the result of Petitioner's trial would have been different if the allegedly suppressed evidence had been disclosed to the defense. *Bagley*, 473 U.S. at 682. A review of the record demonstrates there was other evidence to suggest Petitioner feared Thomas, the victim. Specifically, Petitioner's mother testified that Thomas bothered and threatened Petitioner. (Lodgment 2 at 992-993.) She also testified Petitioner got a restraining order against Thomas because he was afraid of him. *Id.* Second, a neighbor testified he saw Petitioner arguing with Thomas prior to the shooting. *Id.* at 554-568. Third, Derrell McKelvey, Petitioner's friend who was with Petitioner during the shooting, testified Thomas approached Petitioner and told him to get out of the car to fight. *Id.* at 546-47, 834-35. Fourth, Angela Sanders testified Petitioner and Thomas had "exchanged words" and cursed at each other on two or three prior occasions. *Id.* at 519-521. Finally, Officer Mendoza testified that Petitioner's daughter told him Thomas became confrontational with Petitioner and jumped over a wall to confront Petitioner on the day of the shooting. *Id.* at 1026-1029. Despite all of this evidence, the jury ultimately rejected the contention that Petitioner was justified in shooting Thomas. Thus, even if the bailiff had testified that Petitioner feared Thomas, the result of Petitioner's trial would have been no different. Accordingly, the Court concludes Petitioner has failed to satisfy the third prong of the Brady test. *See Strickler*, 527 U.S. at 281-82

For the foregoing reasons, Petitioner is unable to establish a *Brady* violation. Accordingly, Petitioner is not entitled to relief as to this claim.

///

///

### 3.     Ground Four: Batson Error

In Ground Four of the First Amended Petition, Petitioner claims *"Batson* error, denial of 14th U.S. Fed. Guaranteed right to a jury of his peers without race neutral justification." (ECF No. 21 at 9.) Respondent contends the state court reasonably denied this claim. (ECF No. 201 at 20.)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prevents a prosecutor from systematically eliminating potential jurors on the basis of racial identity. *Batson*, 476 U.S. 79 (1986). In *Purkett v. Elem*, 514 U.S. 765 (1995), the United States Supreme Court outlined the steps a court must follow in conducting a *Batson* analysis:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination. *Hernandez v. New York*, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 1865-66, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.*, at 375, 111 S.Ct. at 1874 (O'CONNOR, J., concurring in judgment); *Batson, supra*, at 96-98, 106 S.Ct., at 1722-1723.

*Id.* at 1170-71; *see also Mitleider v. Hall*, 391 F.3d 1039, 1047 (9th Cir. 2004). "In deciding whether the defendant has made the requisite showing [of a prima facie case of racial discrimination], the trial court should consider all relevant circumstances." *Batson*, 476 U.S. at 96. A state court's determination as to whether a prima facie case has been made is a factual determination entitled to a presumption of correctness. *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999).

Petitioner raised his claim regarding *Batson* error in the petition for review he filed in the California Supreme Court, which the Court summarily denied. (Lodgments 7, 8.) Accordingly, this Court must "look through" to the state appellate court's opinion denying this claim as the basis for its analysis. *Ylst*, 501 U.S. at 803. The appellate court held substantial evidence supported the trial court's denial of Petitioner's *Wheeler*[3] motion based on a finding that no prima facie case of discrimination had been made. (Lodgment 6.) Specifically, the Court of Appeal analyzed Petitioner's claim as follows:

---

[3] The standard in *People v. Wheeler*, 22 Cal. 3d 258 (1978) is equivalent to the constitutional standard enunciated in *Batson v. Kentucky*, 476 U.S. 79 (1986).

Burton did not establish, based on all of the circumstances, that there was a reasonable inference the juror (Ms. R.) was excused because of her race. (*People v. Howard*, *supra*, 1 Cal.4th at p. 1154.) Ms. R., like Burton, was African-American. However, racial identity between the excused juror and the defendant alone does not suffice to raise a prima facie showing (*People v. Davenport*, *supra*, 11 Cal.4th at p. 1201) and, because Ms. R. was apparently the only African-American among the jury pool, Burton cannot show her dismissal was part of a pattern of excusing African-American jurors.

Burton appears to argue that, because there were additional facts suggesting Ms. R. would have been pro-prosecution and her responses to other questions were consistent with a normal person's responses, he satisfied his burden of showing facts from which an inference can be drawn that Ms. R. was excused because of her race. Burton notes Ms. R. had several extended family members connected to law enforcement, and she stated her prior experience and reaction to being assaulted would not affect her ability to be fair or to assess the self-defense issue present in the case. However, there were numerous responses during voir dire that provide substantial evidence to support the trial court's conclusion there were "a variety of non-discriminatory reasons why prosecution may feel she would not be a good juror for their case," and therefore Burton had not made a prima facie showing of a reasonable inference Ms. R. was excused because of her race.

During voir dire, defense counsel asked Ms. R.'s opinion about a person's right to employ deadly force in self-defense, and specifically asked if "somebody who continues to act violently and make threats and whatever, do you think that someone who's confronted with a person like that is entitled to act [in self-defense] based on what they'd seen in the past?" She responded that "[i]f you feel like you're being threatened, then you have a right to protect yourself." The prosecutor, following that questioning, asked Ms. R. whether, "if a person seemed to act unreasonably in a situation, would you still give them the benefit of the doubt that they acted reasonably in that situation?" and Ms. R. responded, "Yes. It depends on the situation," and then elaborated by giving examples of what conduct she might consider, and then volunteered that among the circumstances she was "curious about [was] who had the restraining order? He did or the other guy?" She then stated she needed to know everything "especially if we have to sit here and we're going to have to pass judgment . . . we need to see it all, because I sure would hate to have convicted somebody that--and I didn't do it correctly or I sent him to jail or something and he shouldn't have been." Ms. R. also told defense counsel that "[n]ow that I found my way to God, it's--taking a life is hard," and the prosecutor, inquiring of the entire panel, stated "Ms. [R.] brought up a very good point. . . [A] lot of people have different religious beliefs . . . . Does anybody have a problem or conflict with their beliefs that would not allow them to sit in judgment essentially of another person?"

The trial court, concluding Burton had not made a prima facie showing that Ms. R. was excused based solely on race, stated the court could identify "a variety of non-discriminatory reasons why prosecution may feel she would not be a good juror for their case," including "concerns . . . about how she might approach the issue of self defense" and "[h]er expressed views about her religion." The record suggested she might give Burton the benefit of the doubt even were he acting unreasonably, and her unprompted inquiry about who obtained the restraining order suggested she might unduly favor Burton's self-defense claim once she learned it was Burton who had obtained the restraining order against Thomas. Moreover, her religious views, coupled with her statements expressing concern about "hav[ing] to pass judgment" and that she would "hate to have convicted somebody that . . . I didn't do it correctly," could legitimately raise alarms that Ms. R. would be more reluctant to convict Burton than would other jurors. Under these circumstances, there is substantial evidence to support the trial court's finding Burton did not make a

|   |   |
|---|---|
| 1 | prima facie showing Ms. R. was excused because of her race, and instead there were legitimate race-neutral grounds upon which the prosecutor might have excused her. (*People v. Howard*, *supra*, 1 Cal.4th at p. 1155.) |
| 2 | |

3   (Lodgment 6 at 5-7; see also Lodgment 2 at 104-105, 112-113, 138-144, 150-157.)

4   The state court cited and applied *Batson v. Kentucky*, 476 U.S. 79 (1986) and California law
5   consistent with *Batson* and did not decide this case differently than *Batson* on a set of materially
6   indistinguishable facts. (*See* Lodgment 6 at 3-7.) Therefore, the state court's decision is not
7   "contrary to" clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

8   Nor is the state appellate court's decision an unreasonable application of *Batson*. As the
9   state appellate court noted, the trial court could identify various non-discriminatory reasons why
10  juror Ms. R. was excused. Specifically, a review of the record demonstrates her particular views on
11  self-defense as well as her religious views could have led prosecutors to doubt her ability to be an
12  impartial juror. Therefore, the appellate court's conclusion that there was substantial evidence to
13  support the trial court's finding that Petitioner did not make a prima facie showing that Ms. R. was
14  excused because of her race is objectively reasonable. *Lockyer*, 538 U.S. at 75.

15  For the foregoing reasons, the appellate court's denial of Petitioner's *Batson* claim is neither
16  contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*,
17  529 U.S. at 412-13. It is also not based on an unreasonable determination of the facts. 28 U.S.C.
18  § 2254(d)(2). Accordingly, Petitioner is not entitled to relief as to this claim.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## V. CONCLUSION

After thorough review of the record in this case and based on the foregoing, the Court hereby RECOMMENDS the Petition be **DENIED.**

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1994). Any party may file written objections with the Court and serve a copy on all parties on or before **July 1, 2011.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **July 15, 2011.** The parties are further advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: June 2, 2011

*[signature]*

LOUISA S PORTER
United States Magistrate Judge

cc:   The Honorable Larry A. Burns
    all parties